1    GREENBERG TRAURIG, LLP
     Howard J. Steinberg (SBN CA 89291)
2    1840 Century Park East, Suite 1900
     Los Angeles, California 90067-2121
3    Telephone: 310.586.7700
     Facsimile: 310.586.7800
4    Email:  steinbergh@gtlaw.com
     Attorneys for Defendants
5    BLUE WOLF CAPITAL PARTNERS, LLC
     BLUE WOLF CAPITAL FUND II, L.P.
6    BLUE WOLF CAPITAL ADVISORS L.P.
     BW PIEZO HOLDINGS, LLC

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **NORTHERN DIVISION**

11

| | |
|---|---|
| In re | CASE NO. 9:16-bk-11912-DS |
| CHANNEL TECHNOLOGIES GROUP, LLC, | Chapter 11 |
|      Debtor, | Adv. No. 9:18-ap-01058-DS |
| CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC, | NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT |
|      Plaintiffs. | |
| v. | DATE:     February 6, 2019 |
| BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, L.P., GLADSTONE INVESTMENT CORPORATION, BLUE WOLF CAPITAL ADVISORS, L.P., BW PIEZO HOLDINGS, LLC, FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL, II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE II, INC., PENGDI HAN, DHAN, LLC, GRANT THORNTON, LLP, CTG ADVANCED MATERIALS, LLC, CTS CORPORATION, ELECTRO OPTICAL INDUSTRIES, DUFF & PHELPS, and CIT BANK, N.A, | TIME:     10:30 a.m. |
| | PLACE:   Courtroom 201 |
|      Defendants. | |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE AND TO THE PLAINTIFF AND ITS COUNSEL:**

 **PLEASE TAKE NOTICE** that on February 6, 2019, at 10:30 a.m., or as soon thereafter as the matter may be heard, a hearing will be conducted before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in Courtroom 201 of the United States Bankruptcy Court located at 1415 State Street, Santa Barbara, California, 93101, to consider the Motion of Defendants Blue Wolf Capital Partners, LLC, Blue Wolf Capital Fund II, L.P., Blue Wolf Capital Advisors L.P.,  and BW Piezo Holdings, LLC (collectively, the "Blue Wolf Entities") (the "Motion") to dismiss the First Amended Complaint [Docket No. 9] ("Complaint") filed by Plaintiff Corporate Recovery Associates, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC ("Trustee"), pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As further set forth in the Motion, the Complaint fails to adequately plead facts to sufficiently state a plausible claim against the Blue Wolf Entities.

 The Motion is based on this Notice, Memorandum, all pleadings in adversary proceedings and the underlying bankruptcy case, and such other and further evidence and argument as may be presented at the time of any hearing on this matter.

 **PLEASE TAKE FURTHER NOTICE** that pursuant to Stern v. Marshall, 131 S.Ct. 2594 (2011), and Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553 (9th Cir. 2012), the Defendants do not consent to entry of final orders or judgment by the bankruptcy judge in this adversary proceeding, and hereby reserve Defendants' right to withdraw the reference of this proceeding.

 **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(c)(2) requires that any response to the Motion be filed with the Bankruptcy Court and served upon counsel for the Blue Wolf Entities at the addresses appearing in the upper-left hand corner of the caption page to this Notice at least fourteen (14) days before the hearing hereon. Pursuant to Local Bankruptcy Rule 9013-1(h), the

NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1   failure to timely file and serve a written opposition may be deemed by the court to be consent to the

2   granting of the relief requested in the Motion.

3   DATED:  January 7, 2019                    GREENBERG TRAURIG, LLP

4

5                                              By: /s/ Howard J. Steinberg
                                               Howard J. Steinberg
6                                              Attorneys for Defendants
                                               BLUE WOLF CAPITAL PARTNERS, LLC
7                                              BLUE WOLF CAPITAL FUND II, L.P.
                                               BLUE WOLF CAPITAL ADVISORS L.P.
8                                              BW PIEZO HOLDINGS, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................ | 1 |
| II. | STATEMENT OF FACTS ................................................................................... | 2 |
| | A. | BW Piezo Holdings, LLC  Is Formed in December 2011 for the Purpose of Acquiring Channel Technologies Group, LLC from Alta Properties, Inc. ........... 2 |
| | B. | BW Piezo Holdings, LLC Forms CTG Advanced Materials, LLC and Assets of Channel Technologies Group, LLC Are Used to Acquire the Assets of H.C. Materials in October 2013 ................................................................ 2 |
| | C. | The Blue Wolf Entities and CTG Technologies Group, LLC Are Alleged to be Alter Egos ......................................................................................................... 2 |
| | D. | The Segregation Between CTG and AM Is Alleged to be Fictional ................... 3 |
| | E. | The Segregation Between CTG, AM, and BWP Is Alleged to be Fictional ....... 3 |
| | F. | CTG Is Alleged to Have Financial Struggles ..................................................... 4 |
| | G. | AM Is Sold in March 2016 and the Proceeds Are Allegedly Used to Pay the Blue Wolf Entities, Various Lenders, and Insiders ............................................. 5 |
| | H. | BWCF Loans Money to CTG ............................................................................... 6 |
| | I. | CTG's Subsidiary Is Sold at a Cut Rate Price .................................................... 6 |
| III. | LEGAL STANDARD .......................................................................................... | 6 |
| IV. | ARGUMENT ...................................................................................................... | 7 |
| | A. | The Trustee Cannot Obtain an Alter Ego Remedy Against the Blue Wolf Entities .................................................................................................................. 7 |
| | | 1. Alter Ego is a Procedural Device, Not a Claim or Cause of Action ......... 7 |
| | | 2. Under California Law, an Entity Cannot Pierce Its Own Corporate Veil ............................................................................................................. 7 |
| | | 3. A Trustee Cannot Assert an Alter Ego Claim Against Equity Holders on Behalf of Creditors ................................................................. 8 |
| | | 4. The Alter Ego Allegations Do Not State Grounds for a Remedy ............ 10 |
| | B. | Fraudulent Transfer Claims A, B, C, and D Cannot State a Claim .................. 11 |
| | | 1. Overview of Claims A, B, C, and D ........................................................ 11 |
| | | 2. The Elements of a Fraudulent Transfer Claim Involving Actual Intent to Hinder, Delay, or Defraud .......................................................... 11 |
| | | 3. The Elements of a Constructive Fraudulent Transfer Claim .................. 12 |
| | | 4. The Exhibit A Transfers Are Subsequent Transfers and Cannot be Set Aside Unless the Initial Transfer in 2013 is Avoidable ..................... 12 |
| | | (a) A Claim Against the Initial Transferee Must be Stated ........................ 12 |
| | | (b) No Facts or even Elements of a Claim Are Alleged to Set Aside the Initial Transfer in 2013 under an Actual Fraudulent Transfer Claim ..................................................................................................... 13 |
| | | (c) No Facts or even Elements of a Claim Are Alleged to Set Aside the Initial Transfer in 2013  under a Constructive Fraudulent Transfer Claim ..................................................................................... 13 |
| | | 5. Claims A and B are Time Barred ............................................................. 13 |
| | | 6. Claims A, B, C and D Do Not State a Claim against the Blue Wolf Entities With Respect to the 2016 Transfers ........................................... 14 |
| | | (a) No Transfers to Blue Wolf Capital Partners, LLC or BWP are Identified ............................... 14 |
| | | (b) No Facts Are Set Forth Explaining Why the Blue Wolf Entities Should be Liable for Transfers to Unrelated Entities ............................ 14 |

(c)  No Facts Are Set Forth Explaining Why BWCP Should Be Liable as a Subsequent
Transferee ........................................................................................................14

(d)  No Facts Are Alleged to Set Aside the Exhibit A Transfers in 2016 Under an Actual
Fraudulent Transfer Claim ..............................................................................15

(e)  No Facts Are Alleged to Set Aside the Exhibit A Transfers in 2016 Under a
Constructive Fraudulent Transfer Claim ..........................................................19

7.  Claims C and D Do Not Identify the Creditor Whose Rights the
Trustee is Asserting ........................................................................................20

C.  Fraudulent Transfer Claims E, F, G, and H Cannot State a Claim ....................................20
1.  Overview of Claims ........................................................................................20
2.  Claims E, F, G, and H Do Not State a Claim ....................................................21
3.  Claims E and F Raise Transfers that Are Time Barred .......................................21
4.  Claims G and H Do Not Identify the Creditor whose Rights the
Trustee Is Asserting ........................................................................................21

D.  The Trustee Cannot State a Claim for Unjust Enrichment Against the Blue
Wolf Entities ........................................................................................................21
1.  Unjust Enrichment Is Not a Cause of Action Under California Law ....................22
2.  CTG Is Foreclosed from Pleading an Unjust Enrichment Theory on
the Same Facts as Its Fraudulent Transfer Claims ............................................22
3.  The Bankruptcy Code Preempts the Trustee's Unjust Enrichment
Claim ................................................................................................................23
4.  The Trustee Is Foreclosed from Pursuing Claims Arising from the
Prepetition Credit Agreement ..........................................................................24

E.  The Trustee Cannot State a Claim for Conversion Against The Blue Wolf
Entities ................................................................................................................25
1.  CTG's Claim Does Not Allege That it Owned or Had a Right to
Possess AM's Assets ........................................................................................25
2.  CTG's Claim Is Conclusory and Fails to Satisfy Federal Pleading
Standards ........................................................................................................26
3.  CTG's Claim for Conversion Must Be Dismissed Because It is
Time-Barred ....................................................................................................27

F.  The Trustee Cannot State a Claim for Breach of Fiduciary Duty Against
The Blue Wolf Entities ........................................................................................27

V.  CONCLUSION ................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahcom v. Smeding,*
   623 F.3d 1228 (9th Cir. 2010) ................................................................. 7, 9, 10

*AmerUS Life Ins. Co. v. Bank of Am., N.A.,*
   143 Cal. App. 4th 631 (2006) ................................................................. 27

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................. 1, 6, 7, 12

*Astiana v. Hain Celestial Grp., Inc.,*
   783 F.3d 753 (9th Cir. 2015) ................................................................. 22

*Attebury Grain LLC v. Grayn Co.,*
   721 Fed. Appx. 669 (9th Cir. 2018) .................................................. 17, 22, 23

*In re Automated Finance Corp.,*
   2011 WL 10502417 (Bankr. C.D. Cal. 2011) ......................................... 6

*In re AVI, Inc.,*
   389 B.R. 721 (B.A.P. 9th Cir. 2008) ...................................................... 12

*Begier v. I.R.S.,*
   469 U.S. 53, 110 S.Ct. 2258 (1990) ...................................................... 15

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................................. *passim*

*In re Bernard L. Madoff Investment Securities LLC,*
   548 B.R. 13 (Bankr. S.D.N.Y. 2016) ..................................................... 12

*In re Blanchard,*
   547 B.R. 347 (Bankr. C.D. Cal. 2016) ................................................... 18

*CBS, Inc. v. Folks (In re Folks),*
   211 B.R. 378 ( B.A.P. 9th Cir.1997) ...................................................... 10

*Communist Party v. 522 Valencia, Inc.,*
   35 Cal.App.4th 980 (1995) ..................................................................... 8

*Contemporary Indus. Corp. v. Frost,*
   564 F.3d 981 (8th Cir. 2009) .................................................................. 24

*In re Davey Roofing, Inc.,*
   167 B.R. 604 (Bankr. C.D. Cal. 1994) ................................................... 10

*Disenos Artisticos E Industriales, S.A., v. Costco Wholesale Corp.*,
   97 F. 3d 377 (9th Cir. 1996) ................................................................................. 8

*Doney v. TRW, Inc.*,
   33 Cal. App 4th 245 (1995) ............................................................................... 7

*In re Elrod Holdings Corp.*,
   421 B.R. 700 (Bankr. D. Del. 2010) ................................................................. 19

*Gerritsen v. Warner Bros. Entertainment Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ........................................................... 11

*Hechinger Inv. Co. of Delaware Inc. v. Fleet Retail Fin. Group (In the Hechinger Inv. Co. of Delaware)*,
   274 B.R. 71 (D. Del. 2002) ............................................................................... 24

*Hernandez v. Lopez*,
   180 Cal. App. 4th 932 (2009) ........................................................................... 25

*Hines v. Davidowitz*,
   312 U.S. 52 (1941) ..................................................................................... 23, 24

*International Shoe Co. v. Pinkus*,
   278 U.S. 261, 49 S.Ct. 108 (1929) ................................................................... 24

*Lachappelle v. Kim*,
   2015 WL 5461542 ....................................................................................... 6, 15

*Leek v. Cooper*,
   194 Cal. App. 4th 399 (2011) ............................................................................. 7

*In re M. Fabrikant & Sons, Inc.*,
   394 B.R. 721 (Bankr. S.D.N.Y. 2008) ............................................................. 20

*Madrigal v. Hint, Inc.*,
   2017 U.S. Dist. LEXIS 221801 (C.D. Cal. Dec. 14, 2017) .............................. 22

*Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) ........................................................................... 22

*In re Mervyn's Holdings, Inc.*,
   426 B.R. 96 (Bankr. D. Del. 2010) ................................................................... 12

*Messler v. Bragg Management Co.*,
   39 Cal. 3d 290 (1985) ...................................................................................... 17

*In re Mihranian*,
   2017 WL 2775043 ........................................................................... 6, 15, 16, 17

*In re Mortgage Fund '08 LLC,*
   527 B.R. 351 (N.D. Cal. 2015) ............................................................................................ 8

*Neilson v. Union Bank of California, N.A.,*
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................................................... 10, 20

*Nguyen v. Bank of America National Association,*
   2011 WL 5574917 (N.D. Cal. 2011) .................................................................................. 11

*Nishibun v. Prepress Solutions, Inc.,*
   111 F.3d 138 (9th Cir. 1997) ........................................................................................ 6, 13

*Oasis West Realty, LLC v. Goldman,*
   51 Cal. 4th 811 (2011) ...................................................................................................... 27

*Ott v. Home Savings & Loan Association,*
   265 F. 2d 643 (9th Cir. 1958) ........................................................................................... 11

*In re Petters Company, Inc.,*
   562 B.R. 391 (Bankr. D. Minn. 2016) .............................................................................. 12

*Reidhead v. Meyers,*
   490 Fed. Appx. 884 (9th Cir. 2012) .................................................................................. 26

*Rutherford Holdings, LLC v. Plaza Del Ray,*
   223 Cal. App. 4th 221 (2014) ........................................................................................... 22

*Screen Capital International Corp. v. Library Asset Acquisition Co., Ltd.,*
   510 B.R. 266 (C.D. Cal. 2014) ..................................................................................... 6, 15

*Shaw v. Delta Air Lines, Inc.,*
   463 U.S. 85 (1983) ............................................................................................................ 23

*Sheley v. Harrop,*
   9 Cal. App. 5th 1147, 1171 (2017) ................................................................................... 28

*Spear v. Wells Fargo Bank, N.A.,*
   130 F.3d 857 (9th Cir, 1997) ............................................................................................ 25

*Stevenson v J.C. Bradford & Co. (In re Cannon),*
   277 F.3d 838 (6th Cir. 2002) ............................................................................................ 15

*Stodd v. Goldberger,*
   73 Cal. App. 3d 827 (1977) .......................................................................................... 9, 10

*Strasberg v. Odyssey Grp., Inc.,*
   51 Cal. App. 4th 906 (1996) ............................................................................................. 27

*In re Texas Rangers Baseball Partners,*
   498 B.R. 679 (Bankr. N.D. Tex. 2013) ............................................................................. 11

*In re The Brown School*,
  368 B.R. 394 (Bankr. D. Del. 2007) .................................................................................. 12

*In re Tracht Gut, LLC*,
  503 B.R. 804 (B.A.P. 9th Cir. 2014) ................................................................................. 15

*In re Tribune Company Fraudulent Conveyance Litigation*,
  2017 WL 82391 (S.D.N.Y. 2017) ................................................................................. 18, 19

*In re Trinsum Group, Inc.*,
  443 B.R. 628 (Bankr. S.D.N.Y. 2011) ................................................................................ 20

*U.S. Fid. & Guar. Co. v. Lee Investments, LLC*,
  2008 WL 5157712 (E.D. Cal. 2008) ................................................................................... 8

*United Continental Tuna Corp. v. U.S.*,
  550 F. 2d 569 (9th Cir. 1977) ............................................................................................. 8

*In re United Energy Corp.*,
  944 F. 2d 589 (9th Cir. 1991) ........................................................................................... 12

*Webber v. Inland Empire Investments*,
  74 Cal. App 4th 884 (1999) ................................................................................................. 9

*Wynder v McHahon*,
  360 F.3d 73 (2d Cir. 2004) ................................................................................................ 19

**Statutes**

11 U.S.C. § 548(a)(1)(A)-(B) ............................................................................................... 15

11 U.S.C. § 1123(b)(3)(B) ..................................................................................................... 8

Bankruptcy Act of 1898 ........................................................................................................ 24

Cal. Civ. Proc. Code § 338 .................................................................................................... 27

Cal. Corp. Code § 17704.09(f)(3) ......................................................................................... 27

California Civil Code § 3439.04(b) ................................................................................... 17, 18

**Other Authorities**

Bankruptcy Rule 7008 ............................................................................................................ 6

Bankruptcy Rule 7012 ............................................................................................................ 6

Bankruptcy Rules 2002, 4001 and 9014: (1) ....................................................................... 25

Federal Rule of Civil Procedure 8(a) ............................................................................... 6, 26

Federal Rule of Civil Procedure 9(b)................................................................................6, 19

Federal Rule of Civil Procedure 12(b)(6)..............................................................................6

Final Order Pursuant to Sections 105, 361, 362, 363 and 364..............................................25

U.S. Const. Art. I, § 8, cl. 4....................................................................................................24

U.S. Const. Art. VI, § 2..........................................................................................................23

United States Constitution Article I.......................................................................................24

United States Constitution Supremacy Clause ......................................................................23

# I.    **INTRODUCTION**

This suit involves claims made by the Liquidating Trustee ("Trustee") of the debtor, Channel Technologies Group, LLC ("CTG"), arising out of the acquisition and subsequent sale of a non-debtor sister entity, CTG Advanced Materials ("AM").  The equity interests in CTG and AM were at all times held by BW Piezo Holdings, LLC ("BWP").  There is no dispute that the neither the equity interests in AM nor AM's assets were ever held in the name of CTG.  In order to bring a fraudulent transfer claim, there must have been a transfer of an interest of the debtor in property yet CTG's property was never transferred.

In an attempt to plead around this fatal flaw in its claims, the Trustee alleges CTG, AM, BW and other entities bearing the name "Blue Wolf" are all alter egos.  The Trustee fails to allege facts to support these conclusions, but even if it did, the Trustee ignores binding Ninth Circuit precedent and California law which precludes a corporation from piercing its own veil.  Given that the assertion of an alter ego remedy lies at the core of 7 of the 11 claims asserted in the First Amended Complaint ("Complaint"), these 7 claims must be dismissed with prejudice.  Even if an alter ego remedy were available—which it is not—the claims asserted under § 548 and the state law claims are time barred as the assets in which CTG allegedly had an interest were transferred to AM in 2013.  The Trustee simply ignores the fact of the initial transfer and focuses on the subsequent transfer of AM and its assets which took place in 2016 notwithstanding the fact that a transfer to an initial transferee must be avoidable as a precondition of avoiding a transfer to a subsequent transferee.

The 4 other claims are caste in the alternative as fraudulent transfer claims that expressly do not rely on the imposition of an alter ego remedy.  These claims are predicated upon the underlying property being owned by CTG but provide no information concerning the underlying transfers other than to provide date ranges which, on their face, are barred or at least partially barred, by the statute of limitations.

Separate and apart from these deficiencies, all claims fail to allege facts sufficient to state a claim, and do not remotely satisfy *Twombly* and *Iqbal* standards.  While the Trustee's depiction of what transpired is a gross distortion of the truth, even as alleged it does not support a claim against the Blue Wolf Entities.

## II.    STATEMENT OF FACTS

A.    BW Piezo Holdings, LLC  Is Formed in December 2011 for the Purpose of Acquiring Channel Technologies Group, LLC from Alta Properties, Inc

In the First Amended Complaint (Doc. No. 9) ("Complaint"),[1] the Trustee acknowledges that in December 2011, BWP was formed for the purpose of acquiring Channel Technologies Group, LLC ("CTG") from Alta Properties, Inc. and that under its Operating Agreement, BWP is the sole member of the CTG limited liability company.  BWP is owned by Blue Wolf Capital Fund II, L.P. ("BWCF").  Complaint, ¶ 26.

B.    BW Piezo Holdings, LLC Forms CTG Advanced Materials, LLC and Assets of Channel Technologies Group, LLC Are Used to Acquire the Assets of H.C. Materials in October 2013

In or about October 2013, the assets of a company owned by H.C. Materials were purchased for $48 million and the assets were held by CTG Advanced Materials, LLC ("AM").  AM is owned by BWP and is a sister company to CTG.  Complaint, ¶ ¶  31, 32.  In connection with the acquisition of these assets, the purchase price was funded, at least in part, by proceeds of a "significant" loan that CTG guaranteed from some unnamed bank and by CTG's cash.  Some of CTG's assets were also mortgaged. Complaint, ¶  31.  No information is provided as to the amount of the loan, the identity of the borrower, the assets which were pledged by CTG, or cash received from CTG.

C.    The Blue Wolf Entities and CTG Technologies Group, LLC Are Alleged to be Alter Egos

On information and belief, the Blue Wolf Entities and CTG are said to be alter egos and it would be "an abuse of the corporate privilege" and "sanction fraud, and promote injustice" if they were treated as having a separate existence." Complaint, ¶  21.  There are also statements that the Blue Wolf Entities dominated the affairs of CTG and AM (Complaint, ¶ 46), that BWP, CTG, and AM were formed and organized to evade government regulations and debt obligations (Complaint, ¶ 47), and that the Blue Wolf Entities inadequately capitalized the entities and siphoned their assets (Complaint, ¶ 48). Other than these conclusory statements, there are no facts set forth in the Complaint that support these allegations or

---

[1] Solely for purposes of this Motion, the Blue Wolf Entities assume as true all well-pled facts in the Complaint.

that detail any acts by Blue Wolf Capital Partners, LLC, BWCF, or Blue Wolf Capital Advisors with respect to the control of the operations of CTG, AM, or BWP.

    D.    <u>The Segregation Between CTG and AM Is Alleged to be Fictional</u>

The segregation between CTG and AM is said to be fictional because "Blue Wolf" (which is defined as the Blue Wolf Entities, Adam Blumenthal, Haranjeet Narulla, and Charles Miller—Complaint, ¶ 28) directed the CEO of CTG to run AM as a division of CTG; because CTG paid for some of AM's liabilities and vice versa; CTG guaranteed AM's loans; and the companies used the same business locations and employees and "shared" the same control group and corporate records. Complaint, ¶ 33.

No information is provided as to who at Blue Wolf directed CTG to run AM as a division, no details are provided as to the amount of obligations that each company paid for the other, and no information is provided as to the amount of loans that were guaranteed. There are also general allegations that Blue Wolf used CTG and AM as a sham to perpetrate a fraud by segregating the assets in separate entities. Complaint, ¶ 43

    E.    <u>The Segregation Between CTG, AM, and BWP Is Alleged to be Fictional</u>

CTG, AM, and BWP are alleged to have been "organized and operated as a single business enterprise." Complaint, ¶ 44. This same paragraph states that they were listed as separate entities in organizational charts and prior paragraphs of the Complaint are incorporated by reference in the section which state that they were all organized separately. Blue Wolf is said to have "commingled funds and assets between the two to cover company liabilities" (Complaint, ¶ 44) but it is unclear if the Trustee is referring to CTG and AM or CTG and BWP. Examples of same are set forth by referring to attached exhibits which do not support the allegations in the Complaint.

•    CTG is said to have used its funds to pay for liabilities of AM, including payroll, and there are references to Exhibits 13 and 14 to the Complaint. Both exhibits discuss potentially paying a bill but neither say that the bills were actually paid by CTG. No financial records from CTG are provided evidencing payment of the bills in question. There is also a reference to Exhibit 8, which discusses a $35,000 payment to AM.

•    CTG is said to have used funds from AM to pay some liabilities, and there is a reference to Exhibit 15 to the Complaint. The exhibit says that CTG will be allowed to borrow some funds from

AM. There are no allegations about whether CTG borrowed less money from AM than it received or how CTG's borrowing funds from AM could harm the creditors of CTG.

• AM's revenues are said to have been accounted for as part of CTG's overall revenues, and there is a reference to Exhibit 16 to the Complaint. This exhibit says nothing about that and only discusses a payment being made to a lender.

• The liabilities of all BWP's subsidiaries (which are not identified) are said to have been paid through CTG's operating account. Again, there is a reference to Exhibit 16 which does not say that.

• CTG expenses are said to have been accrued between CTG and BWP and there is a reference to Exhibit 17 to the Complaint. This "fact" cannot be discerned from that exhibit.

• BWP is said to have paid for certain CTG-related expenses and then sought reimbursement from CTG, and there is a reference to Exhibit 18. The exhibit does not support this statement.

• CTG is said to have incurred BWP's legal expenses, and there is a reference to Exhibit 19 to the Complaint. The exhibit refers to a single payment to a law firm in an unspecified dollar amount with no explanation as to the type of services rendered.

• Legal expenses incurred in relation to CTG were said to be charged to BWP's general liabilities, and there is a reference to Exhibit 20 to the Complaint. The exhibit does not support the statement and makes reference to BWP being responsible for payment of the $14,000 in legal fees.

• AM is said to be referred to as a division or subsidiary of CTG.

No explanation is provided as to how these facts support a conclusion that BWP is the alter ego of CTG and/or AM. There are also conclusory allegations that BWP and CTG commingled funds and operated as alter egos. Complaint, ¶ 46.

F.    CTG Is Alleged to Have Financial Struggles

Throughout 2014 and 2015, CTG "struggled to balance its finances" and in late 2015, CTG discovered that it had material liabilities that threatened its status as a going concern. Complaint, ¶¶ 34, 35. No facts are provided concerning CTG's assets and liabilities from the time of its formation through and including the date it filed for bankruptcy.

Examples of alleged financial problems are set forth by paraphrasing from exhibits that are attached to the Complaint. Complaint, ¶ 37. As noted below, the description in the Complaint is at odds with what is stated in the exhibit which is specifically referenced in the Complaint.

• CTG is said to be walking a "tightrope" but the sentence which is referenced in Exhibit 4 of the document, Minutes from a Board meeting, says: "Q2 and Q3 was a tightrope, and the team made a lot of sacrifices to make the covenants. There is a lot happening but the time for certain decisions and business won 2 years ago is starting to pay off." This languages states that there was compliance with loan covenants and appears to be optimistic about future prospects.

• CTG is said to be instructing AM to "stretch your payments out to suppliers as much as possible," yet the balance of the sentence in Exhibit 5 which is omitted from the Complaint says "at least a week out from your current payment stream." This example references issues at AM, not CTG.

• Vendors were allegedly complaining about not being paid in January 2016, yet Exhibit 6 references a single vendor who was owed less than $21,000.

• In February 2016, CTG is said to be lamenting its cash flow, yet Exhibit 7 says there is "plenty of liquidity" through March 31 and attributes any problems to a delay in shipment.

• In February 2016, it is alleged that there was not enough money for AM (not CTG) to make payroll yet Exhibit 8 says that AM only needed $35,000.

G.    AM Is Sold in March 2016 and the Proceeds Are Allegedly Used to Pay the Blue Wolf Entities, Various Lenders, and Insiders

In March 2016, AM is sold for approximately $73 million and the proceeds are alleged to have been paid to the Blue Wolf Entities, various lenders, and insiders as bonus payments. Complaint, ¶ 39. The transfers are identified on Exhibit A to the Complaint.

On Exhibit A, there is reference to a payment of $16,612,424.11 to Blue Wolf Fund II, L.P. (which is presumably a reference to BWCP) and a payment of $633,872 to Blue Wolf Capital Partners, LLC. There is no reference to any payments to Blue Wolf Capital Advisors L.P. or to BWP. There is also no reference to any payments to insiders of the Blue Wolf Entities as bonus payments or otherwise. There are no facts which indicate whether the lenders who were paid were creditors of CTG or AM, nor is there any information as to whether the lenders held claims against any of the Blue Wolf Entities. The

1    Trustee simply states that the transfers on Exhibit A "related to the sale" of AM.

2         H.    <u>BWCF Loans Money to CTG</u>

3         In April 2016, BWCF made a loan to CTG in an unspecified amount which was secured by the

4    assets of CTG. Complaint, ¶ 40. There are no facts set forth concerning the terms of the loan

5         I.    <u>CTG's Subsidiary Is Sold at a Cut Rate Price</u>

6         In June 2016, a subsidiary of CTG, Electro-Optical Industries was sold at a "cut-rate" price. No

7    details concerning the terms of the sale are set forth, nor are any facts alleged about the value of the

8    subsidiary. No explanation is provided as to why CTG would want to sell the subsidiary at a cut rate

9    price.

10    **III.    <u>LEGAL STANDARD</u>**

11         The Complaint sets forth claims for actual fraudulent transfers that trigger the pleading

12    requirements under Federal Rule of Civil Procedure 9(b), made applicable by Federal Rule of Bankruptcy

13    Procedure ("Bankruptcy Rule") 7009, that requires that the party "must state with particularity the

14    circumstances constituting fraud or mistake." *See, e.g., Nishibun v. Prepress Solutions, Inc.,* 111 F.3d

15    138 at *1 (9th Cir. 1997); *Screen Capital International Corp. v. Library Asset Acquisition Co., Ltd.,* 510

16    B.R. 266, 274 (C.D. Cal. 2014); *In re Automated Finance Corp.,* 2011 WL 10502417 at *4 (Bankr. C.D.

17    Cal. 2011); *Lachappelle v. Kim,* 2015 WL 5461542 at *4. Thus, as to the actual fraudulent transfer

18    claims, the Complaint must include " 'the who, what, when, where, and how of the misconduct charged.'

19    " *In re Mihranian,* 2017 WL 2775043 at *7. The Complaint does not even remotely satisfy this standard.

20         There are also alleged constructive fraudulent transfer claims and other state law claims that are

21    not based upon fraud. The sufficiency of these claims is governed by Bankruptcy Rule 7008. Federal

22    Rule of Civil Procedure 8(a), made applicable herein by Bankruptcy Rule 7008, provides that a "pleading

23    that states a claim for relief must contain…a short and plan statement of the claim showing that the

24    pleader is entitled to relief." Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008. A motion to dismiss a

25    complaint for failure to state a claim is governed by Federal Rule of Civil Procedure 12(b)(6), which is

26    made applicable herein by Bankruptcy Rule 7012.

27         Under *Twombly* and *Iqbal,* the pleading standard in Rule 8 "demands more than an unadorned,

28    the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937,

1    1949 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

2    of a cause of action will not do." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

3    "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

4    *Id.* (quoting *Twombly*, 550 U.S. at 557).

5         "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

6    draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis

7    added). The plausibility standard "asks for more than a sheer possibility that a defendant has acted

8    unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

9    it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting

10   *Twombly*, 550 U.S. at 557).

11        A court is not required to accept legal conclusions as true. *Id.* ("[T]he tenant that a court must

12   accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Nor

13   is the court "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550

14   U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide

15   the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679, 129

16   S.Ct. at 1950. The hallmark of this Complaint is its failure to support its legal conclusions with factual

17   allegations.

18   **IV.    ARGUMENT**

19        A.    The Trustee Cannot Obtain an Alter Ego Remedy Against the Blue Wolf Entities

20             1.    Alter Ego is a Procedural Device, Not a Claim or Cause of Action

21        The imposition of alter ego liability is a procedural device, not a claim for substantive relief. *Leek*

22   *v. Cooper*, 194 Cal. App. 4th 399, 418-19 (2011); *Ahcom v. Smeding*, 623 F.3d 1228, 1251-1252 (9th Cir.

23   2010). Accordingly, there must be an underlying claim on which alter ego liability is based, such as a

24   breach of contract, before liability can be imposed given that it is an equitable doctrine. *Doney v. TRW,*

25   *Inc.*, 33 Cal. App 4th 245, 251 (1995). There are 8 fraudulent transfer claims and 3 state law claims

26   (unjust enrichment, conversion, and breach of fiduciary duty) that are alleged in the Complaint. As will

27   be discussed, all the claims are deficient as a matter of law.

28             2.    Under California Law, an Entity Cannot Pierce Its Own Corporate Veil

The Trustee is bringing this suit as a representative of the estate. 11 U.S.C. § 1123(b)(3)(B). As such, the Trustee has no greater rights in the claims than those held by the debtor. *In re Mortgage Fund '08 LLC,* 527 B.R. 351, 366-67 (N.D. Cal. 2015).

Under California law, an entity cannot use the alter ego remedy as a sword to pursue the assets of its equity holders and affiliates.  As explained in *Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 995 (1995):

> 'Alter ego is a limited doctrine, invoked only where recognition of the
> corporate form would work an injustice to a third person ...' ... Alter ego is
> utilized to prevent two parties with the same interest from inequitably using
> the corporate form to thwart a third party's rights; it is not designed to unite
> two separate entities with opposing interests for the benefit of the one
> claiming to control the other... Respondents have cited no case authority,
> and we have found none, in which rather than being used to reach behind
> the corporate form to attach liability to another individual or entity, the
> alter ego doctrine has been employed to establish a relationship of identity
> between the defendant corporation and the plaintiff itself, in order to allow
> the plaintiff to obtain for itself the assets of the corporation.

This principle has been followed by the Ninth Circuit and courts in the Ninth Circuit where an entity has tried to pierce its own corporate veil. *See, e.g., Disenos Artisticos E Industriales, S.A., v. Costco Wholesale Corp.,* 97 F. 3d 377, 380 (9th Cir. 1996)("Generally, the corporate veil can be pierced only by an adversary of the corporation, not by the corporation itself for its own benefit."); *United Continental Tuna Corp. v. U.S.*, 550 F. 2d 569, 573 (9th Cir. 1977)("First, appellant is seeking to pierce its own veil for its own benefit.  Appellant has cited no authority and we have found none which allows such a procedure."); *U.S. Fid. & Guar. Co. v. Lee Investments, LLC,* 2008 WL 5157712, at *6 (E.D. Cal. 2008) (alter ego cannot be used as an affirmative claim "to establish a relationship of identity between the defendant corporation and the plaintiff itself, in order to allow the plaintiff to obtain the assets of the corporation.").

        3.    <u>A Trustee Cannot Assert an Alter Ego Claim Against Equity Holders on Behalf of</u>

<u>Creditors</u>

The Ninth Circuit ruled in *Ahcom v. Smeding*, 623 F.3d 1228, 1252 (9th Cir. 2010), that under California law there is no claim or cause of action that would allow a corporation or trustee to assert an alter ego claim against shareholders on behalf of all creditors, noting:

> California law does not recognize an alter ego claim or cause of action that will allow a corporation and its shareholders to be treated as alter egos for purposes of all of the corporation's debts.

Rather, the doctrine provides a remedy to third party creditors who have been victimized by insiders. *Webber v. Inland Empire Investments*, 74 Cal. App 4th 884, 901 (1999) ("Alter ego is a limited doctrine, involved only where recognition of the corporate form would work an injustice to a third person."). As such, it is properly pursued by creditors, not the trustee, as *Ahcom* squarely held. *Ahcom*, 623 F. 3d at 1252 ("Just because NFI's trustee could not bring such a claim [viz., an alter ego claim] against the *Smedings* under California law, there is no reason why *Ahcom's* claims against the *Smedings* [on an alter ego theory] cannot proceed.").

In *Ahcom*, the question posed was whether a creditor of a debtor corporation had standing to assert claims against the corporation's sole shareholders on an alter ego theory or whether such claims belonged exclusively to the corporation's bankruptcy trustee. The Ninth Circuit reversed the district court's ruling that the claims belonged to the trustee and held that the plaintiff had the right to pursue these claims independently. *Id.* at 1251-52 . In reaching its determination, the Ninth Circuit not only reversed the district court, but overturned a line of cases, including a published Ninth Circuit BAP opinion, which the Court held had misapplied California law. The confusion, the Court explained, began with dicta in the California Court of Appeal's decision in *Stodd v. Goldberger*, 73 Cal. App. 3d 827 (1977). See *Ahcom*, 623 F.3d at 1251 (discussing *Stodd*). While *Stodd* held that a trustee did not have standing to bring alter ego claims against a debtor's shareholders, in its opinion the court of appeal remarked that a trustee "cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants." *Id.* (quoting *Stodd*, 73 Cal. App. 3d at 833) (emphasis in *Ahcom*). Relying on this dicta from *Stodd*, a bankruptcy court and the Ninth Circuit BAP went on to hold that a trustee could in fact bring an alter ego claim on

NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1   behalf of the estate so long as there is "some allegation of injury to the corporation." *See CBS, Inc. v.*

2   *Folks (In re Folks)*, 211 B.R. 378 ( B.A.P. 9th Cir.1997) (holding trustee, not creditor, had standing to

3   bring alter ego claim); *In re Davey Roofing, Inc.*, 167 B.R. 604 (Bankr. C.D. Cal. 1994) (holding that

4   alter ego claims belonged to estate, not creditor); *see also Ahcom*, at 1251-52 (discussing *Folks* and

5   *Davey Roofing*).

6       In *Ahcom*, the Ninth Circuit held that *Folks* and *Davey Roofing* were wrongly decided, and that

7   both cases had "misread *Stodd*" to imply that a trustee can bring alter ego claims against former

8   shareholders so long as there are allegations of injury to the debtor company resulting from the

9   shareholders' abuse of the corporate form. *Id.* at 1252. To the contrary, the Ninth Circuit observed "no

10  California court has recognized a freestanding general alter ego claim that would require a shareholder to

11  be liable for all of a company's debts and, in fact, the California Supreme Court stated that such a cause

12  of action does not exist." *Id.* (citations omitted). Thus, *Folks* and *Davey Roofing* wrongly permitted "the

13  trustee to bring a claim for a made-up cause of action 'because all creditors are affected.'" *Id.* (quoting

14  *Folks*, 211 B.R. at 387).

15      While a trustee may pursue certain "established 'right[s] of action'" – specifically, "fraudulent

16  conveyance, conversion, and theft" claims seeking the return of property to the estate from the specific

17  entities that received it – a trustee may not pursue a general alter ego claim on behalf of the estate against

18  the former shareholders of the company seeking to hold the shareholders liable for the company's debts.

19  *Id.* at 1251. Thus, under *Ahcom* a trustee can pursue fraudulent transfer and conversion claims if the

20  debtor's assets have been transferred but cannot do so under an alter ego theory where the assets of

21  equity holders are transferred.

22          4.    The Alter Ego Allegations Do Not State Grounds for a Remedy

23      Even if the Trustee could seek a remedy on alter ego grounds, which he clearly cannot, there are

24  no facts set forth in the Complaint that would support the conclusion that any of the Blue Wolf Entities

25  are alter egos of each other, AM, or CTG. As observed in *Neilson v. Union Bank of California, N.A.*, 290

26  F. Supp. 2d 1101, 1116 (C.D. Cal. 2003):

27          Conclusory allegations of 'alter ego' status are insufficient to state a claim.

28          Rather, a plaintiff must allege specifically both of the elements of alter ego

1    liability, as well as facts supporting each.

2    *See, also, Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1044 (C.D. Cal.

3    2015)(specific facts must be pleaded).

4        While the Trustee alleges that the separation between CTG, AM, and BWP is fictional, virtually

5    all of the allegations speak only to dealings between CTG and AM and do not remotely satisfy standards

6    for an alter ego remedy against BWP.  Further, virtually all of the exhibits referenced in the Complaint

7    are inconsistent with and do not support the allegations in the Complaint.  Where an exhibit is

8    inconsistent with the allegations in a complaint, the exhibit controls and the inconsistent allegations

9    should be disregarded. *Ott v. Home Savings & Loan Association*, 265 F. 2d 643, 646 n. 1 (9th Cir. 1958);

10    *Nguyen v. Bank of America National Association*, 2011 WL 5574917 at *3 (N.D. Cal. 2011).

11        B.    <u>Fraudulent Transfer Claims A, B, C, and D Cannot State a Claim</u>

12            1.    <u>Overview of Claims A, B, C, and D</u>

13        Claims A and C are actual fraudulent transfer claims, with Claim A based on § 548 and Claim C

14    based on California fraudulent conveyance law.  Claims B and D are constructive fraudulent transfer

15    claims, with Claim B based on § 548 and Claim D based on California fraudulent conveyance law.

16    While not referenced by the Trustee, it presumably relies upon § 544(b) to bring Claims C and D.

17        The transfers sought to be avoided in claims A, B, C, and D are those specified on Exhibit A to

18    the Complaint (the "Exhibit A Transfers").  In each count, the property transferred was "the proceeds

19    from the sale of CTG Advanced Materials." Complaint, ¶¶ 50, 60, 70, and 79.  All of the transfers are

20    alleged to have been made after October 14, 2014, which is within 2 years of the filing of CTG's

21    bankruptcy case. Complaint, ¶¶ 52, 62, 72, and 81.  Exhibit A provides that all of the transfers took place

22    on or about March 2016.

23            2.    <u>The Elements of a Fraudulent Transfer Claim Involving Actual Intent to Hinder,</u>

24                <u>Delay, or Defraud</u>

25        In order to properly plead a claim under § 548(a)(1)(A), the following elements must be set forth:

26    (1) a transfer, (2) of an interest of the debtor in property or any obligation incurred by the debtor, (3)

27    made or incurred within two years of the filing of the petition, that was (4) either voluntary or

28    involuntary, and (5) the transfer was made with the actual intent to hinder delay or defraud a creditor. *In*

1    *re Texas Rangers Baseball Partners*, 498 B.R. 679, 709 (Bankr. N.D. Tex. 2013).

2        Of course, under *Iqbal* and *Twombly*, there must be facts set forth to support these elements and

3    not mere conclusory allegations reciting the elements.

4          3.     <u>The Elements of a Constructive Fraudulent Transfer Claim</u>

5        In order to properly plead a claim under § 548(a)(1)(B) the following elements must be set forth:

6    (1) the transfer must have involved property of the debtor; (2) the transfer must have been made within

7    two year of the filing of the petition; (3) the debtor must not have received reasonably equivalent value in

8    exchange for the property transferred; and (4) the debtor must have been insolvent, been made insolvent

9    by the transaction, be operating or about to operate without property constituting reasonable sufficient

10    capital, or be unable to pay debts as they become due. *In re United Energy Corp.,* 944 F. 2d 589, 594

11    (9th Cir. 1991). California's fraudulent conveyance statutes are similar in form and substance to the

12    Bankruptcy Code's fraudulent transfer provisions. *In re United Energy Corp.*, 944 F. 2d at 594. As noted

13    above, facts to support these elements must be alleged.

14          4.     <u>The Exhibit A Transfers Are Subsequent Transfers and Cannot be Set Aside</u>

15               <u>Unless the Initial Transfer in 2013 is Avoidable</u>

16          **(a)**     <u>A Claim Against the Initial Transferee Must be Stated</u>

17        In pleading Claims A-D, the Trustee ignores the fact that the assets that were ultimately sold were

18    transferred to AM in an acquisition in October 2013. Complaint, ¶ 31. Neither CTG nor the Blue Wolf

19    Entities acquired those assets at that time.

20        The Exhibit A Transfers are a subsequent transfer of assets in which CTG claims an interest. If

21    the transfer of assets to AM in 2013 is not avoidable, there is no basis to avoid the transfers to the Exhibit

22    A transferees. In order to plead a claim against a subsequent transferee, the complaint must allege that

23    the initial transfer is voidable and that the defendant is a subsequent transferee of the initial transferee. *In*

24    *re Bernard L. Madoff Investment Securities LLC*, 548 B.R. 13, 35-36 (Bankr. S.D.N.Y. 2016); *In re*

25    *Petters Company, Inc.*, 562 B.R. 391, 401 (Bankr. D. Minn. 2016); *In re Mervyn's Holdings, Inc.*, 426

26    B.R. 96, 102 (Bankr. D. Del. 2010). If a claim against the initial transferee cannot be stated, then the

27    claim against the subsequent transferee must fail. *In re AVI, Inc.*, 389 B.R. 721, 734 (B.A.P. 9th Cir.

28    2008); *In re The Brown School*, 368 B.R. 394, 407 (Bankr. D. Del. 2007).

**(b)**      <u>No Facts or even Elements of a Claim Are Alleged to Set Aside the</u>
<u>Initial Transfer in 2013 under an Actual Fraudulent Transfer Claim</u>

Four of the five elements required to be included in an actual fraudulent transfer claim are absent from the Complaint.  The transfer sought to be avoided is not set forth; the property transferred, the assets acquired by AM, was not owned by the debtor; the transfer was not within two years of the filing of the petition; and no explanation is set forth as to how the transfer was made with actual intent to hinder, delay, or defraud creditors. The only property even referenced pertaining to CTG and the initial transfer is the payment of an unspecified amount of cash and a pledge of assets which the Trustee does not identify as an Exhibit A transfer. No facts are set forth indicating that any assets pledged were used to satisfy obligations incurred in connection with AM's acquisition of the assets. The conclusion reached in *Nishibun v. Prepress Solutions, Inc.*, 111 F. 3d 138, at *1 (9th Cir. 1997), is equally applicable here:

> Plaintiffs' second amended complaint fails to allege what assets were transferred, how the assets were transferred, what the value of the assets was, what consideration was given for the assets, and why that consideration was insufficient. The complaint fails to identify any details of the conveyance by which the assets were transferred and why this transfer was allegedly fraudulent. The second amended complaint does not list "particularized allegations of the circumstances constituting fraud."

**(c)**      <u>No Facts or even Elements of a Claim Are Alleged to Set Aside the</u>
<u>Initial Transfer in 2013 under a Constructive Fraudulent Transfer</u>
<u>Claim</u>

All four elements required to be included in a constructive fraudulent transfer claim are absent from the Complaint.  The transfer sought to be avoided did not involve property of the debtor; the transfer was not within two years of the filing of the petition; there is no issue of reasonably equivalent value since the transfer did not involve the debtor's property; and there are no allegations that the debtor was insolvent or suffering from any other financial maladies in 2013.

5.      <u>Claims A and B are Time Barred</u>

Claims A and B are both asserted under § 548.  Section 548(a)(1) only allows avoidance of

NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

transfers within 2 years of the date of the filing. The bankruptcy case was commenced on October 14, 2016. Given that the initial transfers took place in October 2013 and must be avoidable in order for the Exhibit A Transfers to be avoidable, the claims are time barred.

      6.    <u>Claims A, B, C and D Do Not State a Claim against the Blue Wolf Entities With Respect to the 2016 Transfers</u>

      **(a)**    <u>No Transfers to Blue Wolf Capital Partners, LLC or BWP are Identified</u>

Even if the initial transfers to AM were ignored and the starting point for fraudulent transfer analysis is in 2016, the claims are likewise deficient. None of the transfers identified on Exhibit A are to Blue Wolf Capital Partners, LLC or BWP so, absent the imposition of an alter ego remedy, which as discussed above cannot be utilized, the claims against them are meritless.

      **(b)**    <u>No Facts Are Set Forth Explaining Why the Blue Wolf Entities Should be Liable for Transfers to Unrelated Entities</u>

Other than a chart on Exhibit A that says "Received Transfer/Beneficiary", there is no information concerning the transfers. There are 19 entities identified on Exhibit A as having received a transfer, only 2 of which are Blue Wolf Entities. There is not even a remote explanation why Blue Wolf Entities should be liable for transfers to the 17 other transferees identified on Exhibit A as there is no factual recitation how they have any connection to any of the Blue Wolf Entities. These other entities are not identified as creditors of any of the Blue Wolf Entities nor are they even identified as creditors of CTG. In short, there are no facts explaining why they were paid or why the payment of those claims prejudiced CTG or benefited any of the Blue Wolf Entities.

      **(c)**    <u>No Facts Are Set Forth Explaining Why BWCP Should Be Liable as a Subsequent Transferee</u>

With respect to the sole transfer to BWCP of $633,872 identified on Exhibit A, it is referred to as a subsequent transfer. No explanation is provided as to who the initial transferee was and it also suffers from the same pleading deficiencies discussed in section B(4) pertaining to claims against subsequent transferees.

1

        **(d)**      No Facts Are Alleged to Set Aside the Exhibit A Transfers in 2016

2

                 Under an Actual Fraudulent Transfer Claim

3

      The Trustee has failed to plead any facts to support an actual fraudulent transfer theory. The facts

4

that are generally alleged are conclusory and do not state a claim. They fail to satisfy *Iqbal* and *Twombly*

5

and the claims should be dismissed. *See, In re Tracht Gut, LLC*, 503 B.R. 804, 810-11 (B.A.P. 9th Cir.

6

2014)(conclusory allegations in fraudulent transfer complaint results in dismissal); *Screen Capital*

7

*International Corp. v. Library Asset Acquisitions Co., Ltd.*, 510 B.R. 266, 275-76 (C.D. Cal. 2014)

8

(same); *Lachappelle v. Kim*, 2015 WL 5461542 at * 6-7 (N.D. Cal. 2015) (same).

9

              **i.**   **Claims A-D Do Not Implicate a Transfer of an Interest**

10

                   **of the Debtor in Property**

11

      Even assuming the transfers at issue are solely those arising from the sale of AM in 2016, absent

12

an alter ego remedy, which is not available, the Trustee has no answer how this can be a transfer of

13

CTG's property. The Bankruptcy Code provides that a trustee may only avoid a "transfer . . . of an

14

interest of the debtor in property." 11 U.S.C. § 548(a)(1)(A)-(B) (emphasis added); accord *Id.*,

15

§ 544(b)(1). Thus, if the transfer in question was not of the debtor's property, the trustee may not seek to

16

avoid and recover the transfer. See *Begier v. I.R.S.*, 469 U.S. 53, 59, 110 S.Ct. 2258, 2263 (1990)

17

(holding that "[B]ecause the debtor does not own an equitable interest in property he holds in trust for

18

another, that interest is not . . . 'property of the debtor' for purposes of § 547(b)."); *Stevenson v J.C.*

19

*Bradford & Co. (In re Cannon)*, 277 F.3d 838, 851 (6th Cir. 2002)(dismissing chapter 7 trustee's

20

fraudulent transfer claim to recover funds held in trust by the debtor, because the funds were not part of

21

the bankruptcy estate and thus not subject to the trustee's avoidance powers).

22

      In *In re Mihranian*, 2017 WL 2775043 (B.A.P. 9th Cir. 2017), a trustee likewise sought to set

23

aside a transfer to an insider of the debtor based on transfer made by a non-debtor entity. The court

24

noted:

25

          One of the fraudulent transfer elements Leslie needed to allege was that

26

          property of the debtor was transferred to the defendants. A transfer of the

27

          debtor's property that otherwise would have been property of the estate is a

28

          prerequisite for a fraudulent transfer action under either § 544 or § 548. See

NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1   *Geltzer v. Barish (In re Starr)*, 502 B.R. 760, 767–68 (Bankr. S.D.N.Y.

2   2013) (holding that trustee sufficiently alleged debtor's property interest);

3   *Serra v. Salven*, 2011 WL 4627576, at *12 (E.D. Cal. Oct. 3, 2011)

4   (holding that trustee failed to prove for summary judgment purposes that

5   debtor had an interest in the property transferred); see also *Gaughan v.*

6   *Edward Dittlof Revocable Tr. (In re Costas)*, 555 F.3d 790, 792–93 (9th

7   Cir. 2009) (generally stating property interest requirement); *Wyle v. Rider*

8   *(In re United Energy Corp.)*, 944 F.2d 589, 593–94 (9th Cir. 1991) (same);

9   *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger*

10  *& Harrison LLP)*, 408 B.R. 318, 337 (Bankr. N.D. Cal. 2009) ("both the

11  'property' and 'transfer' elements apply whether the claim is one for actual

12  or constructive fraudulent transfer").

13  *In re Mihranian*, 2017 WL 2775043 at *5.

14      In rejecting the imposition of an alter ego remedy and upholding dismissal of the complaint, the

15  court said:

16          Ordinarily, the alter ego doctrine only is invoked to enable a plaintiff to

17          impose corporate liability upon the corporation's principal(s). See *Sonora*

18          *Diamond Corp.*, 83 Cal. App. 4th at 538. In fact, at least one California

19          Court of Appeal has held that California law does not permit "outside

20          reverse piercing of the corporate veil"—piercing in order to make the

21          corporation's assets liable for the debts of the individual shareholder(s).

22          *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1522

23          (2008). That is precisely what Leslie is attempting to do here: claim the

24          assets of MCSSG as if they belonged to *Mihranian* individually and his

25          bankruptcy estate.

26          *Postal Instant Press* is carefully reasoned and persuasive. Moreover, we

27          must follow the law of California's intermediate appellate courts on this

28          point unless we are convinced that the California Supreme Court would

decide the issue differently. *Goodrich v. Briones (In re Schwarzkopf)*, 626

F.3d 1032, 1038 (9th Cir. 2010). We are not persuaded that the California

Supreme Court would decide this issue differently. Thus, allegations of

alter ego do not aid Leslie; he cannot establish plausibility through such

allegations. Consistent with this fact, Leslie did not adequately plead alter

ego.

*In re Mihrnian*, 2017 WL 2775043 at *6.

While the Trustee cannot seek an alter ego remedy against the Blue Wolf Entities or AM, even if

it could, it would not allow the Trustee to ignore the October 2013 transfer.  Alleging that AM is an alter

ego of CTG does not make them one and the same entity such that CTG would acquire ownership of

AM's assets.  Alter ego merely allows a claim to be asserted against the target entity.  As explained in

*Messler v. Bragg Management Co.*, 39 Cal. 3d 290, 301 (1985):

It is not that a corporation will be held liable for the acts of another

corporation because there is really only one corporation. Rather, it is that

under certain circumstances a hole will be drilled in the wall of limited

liability erected by the corporate form; for all purposes other than that for

which the hole was drilled, the wall still stands. When it is claimed that a

parent corporation should be liable because it is the alter ego of its

subsidiary, equity commands that the corporate wall be breached. Yet the

wall remains: the parent is liable through the acts of the subsidiary, but as a

separate entity. A judgment obtained against a corporation and its alter ego

is enforceable against both separately.

### ii.  No Facts Are Alleged to Demonstrate an Intent to Hinder, Delay or Defraud Creditors

Given that a party does not readily admit to fraudulent intent, courts have relied upon

circumstantial evidence to infer fraudulent intent.  Factors to be considered when determining fraudulent

intent are set forth in California Civil Code § 3439.04(b) and these same factors are considered by courts

when evaluating fraudulent intent under § 548. *Attebury Grain LLC v. Grayn Co.*, 721 Fed. Appx. 669,

671 (9th Cir. 2018). There are 11 badges of fraud identified in § 3439.04(b):

1. Whether the transfer or obligation was to an insider.

2. Whether the debtor retained possession or control of the property after the transfer.

3. Whether the transfer or obligation was disclosed or concealed.

4. Whether the debtor was sued or threatened with suit before the transfer was made or obligation incurred.

5. Whether the transfer was of substantially all of the debtor's assets.

6. Whether the debtor absconded.

7. Whether the debtor removed or concealed assets.

8. Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or obligation incurred.

9. Whether the debtor was insolvent or became insolvent shortly after the transfer was made or obligation incurred.

10. Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

11. Whether the debtor transferred essential assets of the business to a lienholder who then transferred the assets to an insider of the debtor.

Virtually none of these factors are identified as being present in the Complaint. Given that AM and CTG are both owned by BWP, the transaction in which AM acquired assets from H.C. Materials may be viewed as a transfer to an insider but the transfer was not of CTG's assets. Even so, if a transfer benefits an insider it is of no moment if no showing is made of a scheme to defraud the debtor's creditors, and the Trustee sets forth no facts demonstrating such a scheme. *In re Blanchard*, 547 B.R. 347, 359 (Bankr. C.D. Cal. 2016). The only other factor arguably present is whether the debtor received reasonably equivalent value, but no facts are set forth in the Complaint that any of CTG's assets were transferred in connection with the 2016 asset sale.

Even if an adequate showing of badges of fraud is present, which clearly has not been done, the Trustee must specify the "who, what, where, and how" of the misconduct. Because the relevant debtor-transferor CTG is an entity, its intent is found in the state of mind of the individuals who "effectuated the transaction on behalf of the corporation[s]." *See, In re Tribune Company Fraudulent Conveyance*

1  *Litigation,* 2017 WL 82391, at *5 (S.D.N.Y. 2017); *In re Elrod Holdings Corp.,* 421 B.R. 700, 709

2  (Bankr. D. Del. 2010) (applying intent imputation doctrine in fraudulent transfer case).

3    While 4 Blue Wolf Entities are identified as having received a transfer that the Trustee is seeking

4  to avoid, only 2 are set forth on Exhibit A. The Trustee has lumped the entities together without

5  explaining the alleged wrongful acts of any of them. This is improper. *See Wynder v McHahon,* 360

6  F.3d 73, 80 (2d Cir. 2004) (When "the complaint accuses all of the defendants of having violated . . . [a]

7  statutory provision[] . . . a series of 12(b)(6) motions to dismiss would lie to permit each particular

8  defendant to eliminate those causes of action as to which no set of facts has been identified that support a

9  claim against him.") (emphasis added); *Burke,* 522 F. Supp. 2d at 517 ("Rule 9(b) does not allow a

10  complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their

11  allegations when suing more than one defendant . . . and inform each defendant separately of the

12  allegations surrounding his alleged participation in the fraud.") (internal citation and quotation omitted).

13    Imputation of an individual's intent to a corporation requires not just functional control of the

14  corporation, but "formal, legal control" of the transfer itself. *Elrod,* 421 B.R. at 712. Rule 9(b) requires

15  that the Trustee identify the individuals at each of the Blue Wolf Entities who legally and functionally

16  authorized the transfers, and allege that they had the requisite fraudulent intent. See *Tribune,* 2017 WL

17  82391, at *L-11 (dismissing fraudulent transfer claims against officer defendants where complaint

18  contained insufficient allegations regarding their control of the corporation).   This has not been done.

19    **(e)**    No Facts Are Alleged to Set Aside the Exhibit A Transfers in 2016

20    Under a Constructive Fraudulent Transfer Claim

21    Three of the four required elements to plead a constructive fraudulent transfer claim are absent

22  from Claims A-D. The Trustee does not and cannot allege facts to support a constructive fraudulent

23  transfer claim.

24    •    The transfer must involve property of the debtor. It does not, as the 2016 transfers were

25  the proceeds of the sale of AM's assets.

26    •    The issue of lack of reasonably equivalent value does not apply since there are no

27  allegations that CTG transferred any assets at the time of the 2016 sale.

28    •    There are insufficient allegations with respect to insolvency. Allegations to the effect that

1 a debtor is insolvent are not sufficient, and the Trustee never states when CTG became insolvent.  To

2 properly plead insolvency, there must be financial data or analysis provided to allow the court to at least

3 be able to infer that the debtor's liabilities exceeded its assets.  *In re Trinsum Group, Inc.*, 443 B.R. 628,

4 636 (Bankr. S.D.N.Y. 2011).  This has not been done.  Further, there is no explanation why a sale of

5 AM's assets would render CTG insolvent or otherwise affect it financially.

6    7. <u>Claims C and D Do Not Identify the Creditor Whose Rights the Trustee is</u>

7     <u>Asserting</u>

8    Claims C and D are presumably based upon § 544(b) as they rely on California state law avoiding

9 action claims.  In order to state a claim under § 544(b), a trustee is required to identify the creditor or

10 creditors whose rights he is asserting who at the time the transfer occurred could have attacked and set

11 aside the transfer under California law.  *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101,

12 1147-48 (C.D. Cal. 2003).  The Trustee failed to do so.  Unless the Trustee can identify at least one such

13 creditor who held claims at the time to the AM transaction in 2013, the claims must fail.

14   C. <u>Fraudulent Transfer Claims E, F, G, and H Cannot State a Claim</u>

15    1. <u>Overview of Claims</u>

16    Claims E, F, G, and H  state that they are predicated upon  there being no alter ego determination

17 being made. Complaint, ¶¶ 87, 97, 107, 116.  As such they are presumably not proceeds of the sale of

18 AM.  The transfers are identified on Exhibit B to the Complaint (the "Exhibit B Transfers").The only

19 information provided about the Exhibit B Transfers in the body of the Complaint is that they were made

20 or entered into after October 14, 2014 with respect to Claims E, F, and G, and after October 12, 2014[2]

21 with respect to Claim H.  Complaint, ¶¶ 90, 100, 110, 119.  However, on Exhibit B, 7 of the 11 transfers

22 identified on Exhibit B took place in whole or in part prior to October 12, 2014.  The specific transfers

23 are not identified.  Further, 9 of the 11 transfers merely provide a date range and do not identify the

24 specific transfers that are at issue.  This is impermissible.  The specific transfer and date of the transfer

25 must be alleged.  *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008).

26

27

---

28 [2] This latter date is probably just another example of the Trustee's shoddy pleading as the date is more than 2 years from the filing date

Of the 11 Exhibit B Transfers, the recipient of 10 of the transfers is an entity other than a Blue Wolf Entity. No information is provided about any of the transferees or the circumstances surrounding any of the transfers. In every instance, Exhibit B says the beneficiary of each of the transfers are the Blue Wolf Entities and AM. No information is provided explaining how or why the Blue Wolf Entities and AM are the beneficiaries of the transfers.

2.    Claims E, F, G, and H Do Not State a Claim

Claims E, F, G, and H are so bereft of facts and skeletal in nature that the Blue Wolf Entities cannot ascertain what transfers are even at issue or why they would be liable for transfers to third parties. There are no facts to support either an actual or constructive fraudulent transfer claim. The authorities set forth in Section B (6) are incorporated herein. The *Twombly* and *Iqbal* standards are not remotely satisfied.

3.    Claims E and F Raise Transfers that Are Time Barred

While the specific transfers cannot be identified due to the Trustee's failure to properly plead them, Exhibit B indicates that 7 of the 11 transfers involve, at least in part, transfers that took place prior to October 14, 2014. Claims E and F rely upon § 548(a)(1) as authority to avoid the transfers. Given the 2 year reach back period in that section, only transfers that took place on or after October 14, 2014, are avoidable. The authorities cited in Section B (5) are incorporated herein.

4.    Claims G and H Do Not Identify the Creditor whose Rights the Trustee Is Asserting

Claims G and H are presumably based upon § 544(b) as they rely on California state law avoiding action claims. The Trustee has failed to identify any such creditor in the Complaint. Thus, the claims fail. The authorities cited in Section B (7) are incorporated herein.

D.    The Trustee Cannot State a Claim for Unjust Enrichment Against the Blue Wolf Entities

In Claim I, CTG seeks recovery for "unjust enrichment," alleging that the Blue Wolf Entities unjustly received several benefits, including "[p]roceeds of the sale of [AM]" and "CTG's capital . . . in connection with the Prepetition Credit Agreement." Complaint, ¶ 126. This claim must be dismissed because (1) unjust enrichment is not a standalone cause of action under California law, (2) CTG is

foreclosed from pleading an unjust enrichment theory where it also alleges fraudulent transfer, and (3) the Bankruptcy Code preempts CTG's unjust enrichment claims.

### 1.    Unjust Enrichment Is Not a Cause of Action Under California Law

Unjust enrichment is not a standalone cause of action in California. *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). Rather, the term "unjust enrichment" describes an "effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Id.* (quoting *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992)). Accordingly, CTG cannot simply plead "unjust enrichment" on its own.[3]

### 2.    CTG Is Foreclosed from Pleading an Unjust Enrichment Theory on the Same Facts as Its Fraudulent Transfer Claims

CTG cannot plead both fraudulent transfer and unjust enrichment theories on the same set of facts. *See Madrigal v. Hint, Inc.*, 2017 U.S. Dist. LEXIS 221801, at *11–*14 (C.D. Cal. Dec. 14, 2017) (dismissing plaintiff's unjust enrichment claim because it "rel[ied] on the same factual predicates" as plaintiff's claims for damages). This is the case when a plaintiff seeks to assert unjust enrichment on top of its claims for fraudulent transfer. *See Attebury Grain LLC v. Grayn Co.*, 721 Fed. Appx. 669, 672 (9th Cir. 2018) (dismissing an unjust enrichment claim where the remedy sought was covered by plaintiff's fraudulent transfer claim). In *Attebury*, the plaintiff sought to hold the defendants liable as alter egos regarding a fraudulent asset transfer, and sought to assert unjust enrichment claims as well. *Id.* The Ninth Circuit ordered that the unjust enrichment claims must be dismissed, noting that unjust enrichment is "a valuable basis for a claim to 'fill in the cracks' where other causes of action fail to achieve justice," and therefore is not appropriate where "there [are] no cracks to be filled." *Id.* Thus, where a plaintiff alleges a fraudulent transfer and then relies on the same underlying facts to plead unjust enrichment, there are no "cracks" for the unjust enrichment claim to fill and it must be dismissed.

---

[3] Some California courts have permitted plaintiffs to plead standalone unjust enrichment claims seeking restitution under a quasi-contract theory. *See, e.g., Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (applying California law and interpreting a claim for unjust enrichment under a quasi-contract theory); *Rutherford Holdings, LLC v. Plaza Del Ray*, 223 Cal. App. 4th 221, 231 (2014) (taking a similar approach). However, CTG has not made any quasi-contract allegations in its Complaint. Thus, Claim I must be dismissed. *See Melchior*, 106 Cal. App. 4th at 793 (affirming grant of summary judgment on unjust enrichment claim because plaintiff did not plead a quasi-contract theory of recovery).

1    CTG's unjust enrichment claim is based on the same alleged facts as CTG's earlier claims for

2    fraudulent transfers. CTG's complaint contains eight fraudulent transfer claims related to transfers dating

3    back to December 2012. Complaint, Exhibits A–B. Like the plaintiff in *Attebury*, CTG seeks to

4    supplement those fraudulent transfer claims with a claim for unjust enrichment, alleging that it would be

5    unjust for the Blue Wolf Entities to retain the benefits of those same transactions. Complaint, ¶¶ 126–

6    128. *Attebury* makes it clear that it is duplicative for CTG to argue that it is unjust for the Blue Wolf

7    Entities to retain the benefits of certain transactions that CTG also alleges were fraudulent.

8            3.      The Bankruptcy Code Preempts the Trustee's Unjust Enrichment Claim

9            Because the Trustee pleads avoidance claims under the Bankruptcy Code, the Trustee's

10   additional, state-law unjust enrichment claim is preempted. Avoidance claims, like those here, that fail to

11   satisfy the requisite standards set forth in the Bankruptcy Code cannot simply be repled under the state

12   law of unjust enrichment. Here, the Trustee's unjust enrichment claim attempts to accomplish this very

13   feat - it re-labels its avoidance claims based on the same alleged conduct as unjust enrichment. The

14   Trustee's attempt to circumvent the Bankruptcy Code is improper because the transfers on which it bases

15   its state law claim are expressly governed by, and inextricably linked with, federal law.

16           Under the Supremacy Clause of the United States Constitution, state laws that interfere with or

17   are contrary to federal law are preempted. U.S. Const. Art. VI, § 2. "[F]ederal law trumps state law

18   'where state law stands as an obstacle to the accomplishment and execution of the full purposes and

19   objectives of Congress.'"

20           Congress may preempt state law either explicitly, by including a statement in the language of a

21   statute expressly displacing state law, *see, e.g., Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), or

22   implicitly, by establishing a scheme of federal regulation that is "so pervasive as to make reasonable the

23   inference that Congress left no room for the States to supplement it." *Gade v. National Solid Wastes*

24   *Mgmt Ass 'n* , 505 U.S. 88, 98 (1992) (plurality) (internal citations omitted). "[W]here the federal

25   government, in the exercise of its superior authority in [a particular] field, has enacted a complete scheme

26   of regulation  and has therein  provided  a standard for [that field], states cannot, inconsistently with the

27   purposes of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce

28   additional or auxiliary regulations." *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941). Preemption is

NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1    especially likely in areas that traditionally are of national interest and for which there is a need for

2    nationwide uniformity. *See, e.g., id.* at 67-68, 72.

3        The federal character and need for national uniformity of the bankruptcy laws is clear. Article I of

4    the United States Constitution provides that "The Congress shall have Power ...To establish ... uniform

5    Laws on the subject of Bankruptcies throughout the United States." U.S. Const. Art. I, § 8, cl. 4. Thirty

6    years after Congress passed the first modern national bankruptcy legislation, the Bankruptcy Act of 1898,

7    the Supreme Court in *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 110 (1929),

8    explained the preemptive effect of that statute:

9            In respect of bankruptcies the intention of Congress is plain. The national

10           purpose to establish uniformity necessarily excludes state regulation. . . .

11           Intolerable inconsistencies and confusion would result if [state] law be

12           given effect while the national [A]ct is in force.... States may not pass or

13           enforce laws to interfere with or complement the Bankruptcy Act or to

14               provide additional or auxiliary regulations.

15       The Bankruptcy Code's remedial scheme is intricate and comprehensive, particularly with respect

16   to fraudulent transfers.  Courts have held that a claim for unjust enrichment is preempted by the

17   Bankruptcy Code where it seeks to recover the same payments that are avoidable as fraudulent transfers

18   under the Code.  *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009); *Hechinger Inv.*

19   *Co. of Delaware Inc. v. Fleet Retail Fin. Group (In the Hechinger Inv. Co. of Delaware)*, 274 B.R. 71,

20   98-98 (D. Del. 2002). As these courts have recognized, the Bankruptcy Code already contains both

21   substantive standards for fraudulent transfer claims as well as remedies available to debtors in those cases

22   in which these standards are satisfied.

23           4.      The Trustee Is Foreclosed from Pursuing Claims Arising from the Prepetition

24               Credit Agreement

25       Due to the inadequacy of the pleading, it is not clear if the Trustee is claiming that an unjust

26   enrichment remedy should be imposed with respect to transfers separate and apart from those referenced

27   on Exhibits A and B to the Complaint.  Paragraph 126 makes reference to "the Prepetition Credit

28   Agreement," a term which the Trustee does not define. Presumably, this is in reference to the $2.86

NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1  million Loan and Security Agreement referenced in ¶ 51 of the Complaint. If such is the case, the

2  Trustee is foreclosed from asserting a damage claim arising from this transaction.

3  On November 9, 2016, the Court entered a Final Order Pursuant to Sections 105, 361, 362, 363

4  and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (1) Authorizing

5  Postpetition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Priority,

6  (3) Authorizing Use of Cash Collateral and Providing For Adequate Protection, and (4) Modifying the

7  Automatic Stay (the "Order") (Docket No. 110). The Order foreclosed CTG from bringing suit against

8  the lender "in connection with or related to the Prepetition Debt, or the actions or inactions of the

9  Prepetition Lender arising out of or related to the Prepetition Debt" and provided a limited Challenge

10  Period for the Creditors' Committee or other parties in interest to assert claims, which time period has

11  long since expired. Order, ¶¶ 23, 24. The Trustee is not free to ignore the Order.

12  E.    The Trustee Cannot State a Claim for Conversion Against The Blue Wolf Entities

13  In Claim E (sic), CTG alleges that it "owned, possessed, or had the rights to immediate possession

14  of the proceeds from the sale of . . . [AM]," and that the Blue Wolf Entities committed conversion by

15  "wrongfully exercis[ing] dominion or control over" those proceeds. Complaint, ¶ 129–130. To state a

16  claim for conversion, CTG must allege facts demonstrating (1) its ownership of or right to possess

17  property, (2) the Blue Wolf Entities' wrongful interference with CTG's rights, and (3) damages.

18  *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939 (2009) (citing *Burlesci v. Petersen*, 68 Cal. App. 4th

19  1062, 1066 (1998)). This claim must be dismissed because (1) CTG did not own or have a right to

20  possess AM or its assets, (2) CTG relies on conclusory and unsupported statements to support its

21  conversion claim, and (3) any claim CTG may have is barred by California's statute of limitations.

22  1.    CTG's Claim Does Not Allege That it Owned or Had a Right to Possess AM's

23  Assets

24  CTG has not alleged that it ever owned or had a right to possess AM, its assets, or the proceeds

25  thereof. A defendant cannot convert something that was not the plaintiff's to begin with. *See Spear v.*

26  *Wells Fargo Bank, N.A.*, 130 F.3d 857, 860 (9th Cir, 1997) ("Because Bartoni-corsi did not own the

27  checks, it cannot maintain a conversion action with respect to them.").

28  CTG's conversion claim must fail because CTG never owned or had a right to possess any of the

1  H.C. Materials assets. Instead of alleging any ownership interest or right to possess those assets, CTG

2  states instead that they were placed under the ownership and control of AM, its "sister company."

3  Complaint, ¶ 32. Unable to claim a direct ownership or possessory interest, CTG is left to hang its

4  conversion claims upon its alter ego claims. In other words, CTG claims it was entitled to assets held by

5  AM because it and AM were one and the same. Complaint, ¶¶ 32–33. However, as detailed above,

6  CTG's attempt to pierce its own veil must fail, see supra Point IV.A, and with it so must its conversion

7  claim.

8              2.    <u>CTG's Claim Is Conclusory and Fails to Satisfy Federal Pleading Standards</u>

9          CTG's allegations of conversion are conclusory and therefore fail to meet the pleading

10  requirements of Fed. R. Civ. P. 8(a). *See Reidhead v. Meyers*, 490 Fed. Appx. 884, 886 (9th Cir. 2012)

11  (reversing the district court's entry of default judgment on a conversion claim because plaintiff's

12  allegations of conversion were "merely a legal conclusion" and therefore legally insufficient). Two

13  examples from CTG's Complaint are illustrative of its insufficiencies.

14          CTG alleges that it "owned, possessed, or had the rights to immediate possession of the proceeds

15  from the sale of its assets, including CTG Advanced Materials." Complaint, ¶ 130. However, CTG

16  provides no explanation as to how it came to own, possess, or obtain the right to immediately possess

17  those proceeds. CTG cannot allege that it owned these assets because it and the Blue Wolf Entities were

18  alter egos. See supra Point A. The only other support in the Complaint for CTG's statement appears to be

19  four identical assertions that "the proceeds from the sale of CTG Advanced Materials belonged to CTG."

20  Complaint, ¶¶ 50, 60, 70, 79. These statements are conclusory and insufficient to state a claim for

21  conversion.

22          CTG includes in its Complaint a list of eleven transfers that it claims were made with CTG

23  property to benefit other entities. (Complaint, Ex. B). However, according to CTG's own exhibit, only

24  one of those transfers was made to a Blue Wolf Entity. (Id.). CTG alleges that the Blue Wolf Entities

25  were beneficiaries of these transactions, but provides no explanation for this conclusion. These assertions

26  are also conclusory and do not support an allegation that the Blue Wolf Entities converted property that

27  belonged to CTG.

28

3.    <u>CTG's Claim for Conversion Must Be Dismissed Because It is Time-Barred</u>

Even if CTG had adequately pled a cause of action for conversion against the Blue Wolf Entities, the claim is barred by California's three-year statute of limitations. Cal. Civ. Proc. Code § 338; see also *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 638 (2006) (noting California's three-year statute applies to conversion claims). For conversion claims, the statute begins to run from the date the alleged conversion occurred, even if the plaintiff is unaware that its rights have been invaded. *Strasberg v. Odyssey Grp., Inc.*, 51 Cal. App. 4th 906, 916 (1996).

CTG's claim for conversion is barred by California's statute of limitations because the alleged conversion occurred in October 2013, five years before CTG filed its Complaint. In its Complaint, CTG claims that the Blue Wolf entities unlawfully converted its property by withholding the proceeds from the sale of AM after AM was sold in 2016. Complaint, ¶ 130. However, any alleged conversion occurred three years prior, when, instead of transferring the H.C. Materials' assets to CTG's control as was allegedly represented to the public and CTG's creditors, the Blue Wolf Entities created an entirely separate entity, AM, to hold the assets. Complaint, ¶¶ 29–32. If CTG had the right to own or possess the assets held by AM, as it claims in its Complaint, that right was interfered with in October 2013.

F.    <u>The Trustee Cannot State a Claim for Breach of Fiduciary Duty Against The Blue Wolf Entities</u>

In Claim D (sic), CTG alleges the Blue Wolf Entities breached a fiduciary duty arising from "the relationship that existed between BW Piezo and CTG." Complaint, ¶¶ 133–136. To state a claim of breach of fiduciary duty, CTG must allege facts sufficient to show (1) "the existence of a fiduciary relationship," (2) "[a] breach of fiduciary duty," and (3) damages. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011). CTG's claim must be dismissed as a matter of law because BWP, as the sole member of the manager-managed CTG, did not owe CTG any fiduciary duties.

Under California law, the members of a manager-managed LLC do not owe fiduciary duties to the LLC or to other members. Cal. Corp. Code § 17704.09(f)(3) ("Except as otherwise provided, a member [of a manager-managed LLC] does not have any fiduciary duty to the limited liability company or to any other member solely by reason of being a member."). CTG's Complaint indicates that BWP was the sole member of CTG, a manager-managed LLC. Complaint, ¶¶ 26–27. These assertions are

1  supported by CTG's operating agreement from December 2011, attached to CTG's Complaint. (See

2  Exhibit 1 to Complaint, at 2). Elsewhere in its Complaint, CTG refers to BWP as "the controlling

3  shareholder" of CTG, a term applicable in the context of corporations to refer to the obligations owed by

4  majority shareholders to minority shareholders. Complaint, ¶ 134; *see also Sheley v. Harrop*, 9 Cal. App.

5  5th 1147, 1171 (2017) (discussing the role of majority shareholders in the corporate context). This

6  characterization is insufficient to impose fiduciary duties on BWP because (1) CTG is a limited liability

7  company and not a corporation, and (2) BWP is the sole member of CTG, meaning there were no

8  minority members to whom duties may have been owed. Thus, BWP did not owe CTG any fiduciary

9  duties.

10  **V.    CONCLUSION**

11      For the foregoing reasons, it is respectfully requested that the Complaint be dismissed.  Given

12  fundamental flaws that are incurable, Fraudulent Transfer Claims A, B, C, and D and the state law claims

13  should be dismissed with prejudice.

14  DATED: January 7, 2019              GREENBERG TRAURIG, LLP

16                By /s/ Howard J. Steinberg

17                Howard J. Steinberg
              Attorneys for Defendants

18                BLUE WOLF CAPITAL PARTNERS, LLC
              BLUE WOLF CAPITAL FUND II, L.P.

19                BLUE WOLF CAPITAL ADVISORS L.P.
              BW PIEZO HOLDINGS, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Greenberg Traurig, LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled (*specify*): _____
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 01/07/2019_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 01/07/2019_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
VIA MESSENGER
Honorable Deborah J. Saltzman
United States Bankruptcy Court
255 E. Temple Street, Suite 1334, Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/07/2019 | Terrine Pearsall | /s/ Terrine Pearsall |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

PROOF OF SERVICE ATTACHMENT

TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING:

- Peter J Benvenutti     pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- Jonathan Boustani     jboustani@btlaw.com
- Cheryl S Chang     Chang@Blankrome.com, Hno@BlankRome.com
- Brian L Davidoff     bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com
- Tobias S Keller     tkeller@kellerbenvenutti.com
- Ian Landsberg     ian@landsberg-law.com, casey@landsberg-law.com;lisa@landsberg-
  law.com;diana@landsberg-law.com;yesi@landsberg-
  law.com;ilandsberg@ecf.inforuptcy.com
- Andrew B Levin     alevin@wcghlaw.com,
  Meir@virtualparalegalservices.com;pj@wcghlaw.com;jmartinez@wcghlaw.com
- Christian A Orozco     , thooker@lynnllp.com
- Christopher O Rivas     crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Howard Steinberg     steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- United States Trustee (ND)     ustpregion16.nd.ecf@usdoj.gov