FILED & ENTERED

MAY 31 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY handy    DEPUTY CLERK

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

|  |  |
|---|---|
| In re:<br><br>CHANNEL TECHNOLOGIES GROUP, LLC,<br><br>          Debtor.<br>_____<br>CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, L.P., GLADSTONE INVESTMENT CORPORATION, BLUE WOLF CAPITAL ADVISORS, L.P., BW PIEZO HOLDINGS, LLC, FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE PARTNERS II, INC., PENGDI HAN, DHAN, LLC, GRANT THORNTON, LLP, CTG ADVANCED MATERIALS, LLC, CTS CORPORATION, ELECTRO OPTICAL INDUSTRIES, DUFF & PHELPS, AND CIT BANK, N.A.,<br><br>          Defendants.<br>_____ | Case No. 9:16-bk-11912-DS<br><br>Chapter 11<br><br>Adversary No. 9:18-ap-01058-DS<br><br><br>**MEMORANDUM DECISION RE DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br><br><br><br><br>Date:  March 18, 2019<br>Time:  3:00 p.m.<br>Place:  United States Bankruptcy Court<br>       Courtroom 201<br>       1415 State Street<br>       Santa Barbara, CA 93101 |

1        This matter comes before the court on the following motions to dismiss the First

2  Amended Complaint (the "Complaint") of the plaintiff, Corporate Recovery Associates, LLC, as

3  Trustee for the Liquidating Trust of Channel Technologies Group, LLC (the "Liquidating

4  Trustee"), pursuant to Fed. R. Civ .P. 12(b)(6):[1]  (1) Amended Notice of Motion and Motion to

5  Dismiss Claims Against Grant Thornton LLP in the First Amended Complaint for (1) Avoidance

6  of Actual Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A), 550(a); (2) Avoidance of

7  Constructive Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(B); (3) Actual Fraud; (4)

8  Constructive Fraud; (5) Unjust Enrichment; and (6) Conversion; Memorandum of Points and

9  Authorities in Support Thereof (the "Grant Thornton Motion," Docket No. 34) filed December

10  12, 2018; (2) Motion of Defendants Fidus Investment Corporation, Fidus Mezzanine Capital II,

11  L.P., Avante Mezzanine Partners SBIC, LP, Avante Mezzanine Partners II, Inc. to Dismiss the

12  First Amended Complaint (the "Mezzanine Defendants' Motion," Docket No. 49) filed

13  December 21, 2018; (3) Notice of Motion and Motion to Dismiss Claims Against Defendants

14  CTG Advanced Materials, LLC and CTS Corporation in the First Amended Complaint;

15  Memorandum of Points and Authorities (the "CTGAM & CTS Motion," Docket No. 63) filed

16  January 7, 2019; and (4) Notice of Motion and Motion to Dismiss the First Amended Complaint

17  by Defendants, Blue Wolf Capital Partners, LLC, Blue Wolf Capital Fund II, L.P., Blue Wolf

18  Capital Advisors L.P., and BW Piezo Holdings, LLC (the "Blue Wolf Entities Motion," Docket

19  No. 69) filed January 8, 2019.  The Liquidating Trustee opposes each of the motions.

20  Appearances were noted on the record.

21        The court, having considered the pleadings and arguments of counsel, will grant each of

22  the motions with leave to amend based upon the following findings of fact and conclusions of

23

24  [1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
    Bankruptcy Code, 11 U.S.C. §§ 101-1532.  "Rule" references are to the Federal Rules of

25  Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil
    Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United

26  States Bankruptcy Court for the Central District of California ("LBR").

27

law made pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to adversary proceedings in bankruptcy cases.

## I.  STATEMENT OF FACTS

Channel Technologies Group, LLC ("CTG") is a privately-owned California limited liability company founded in 1959.  Prior to bankruptcy, CTG's business operations were based in Santa Barbara, California.  It also possessed a manufacturing site in Littleton, Massachusetts. CTG designed, manufactured and sold piezoelectric ceramics, transducers, sonar equipment and related products.  Its customers included United States defense contractors such as Northrop Grumman, Lockheed Martin, and Raytheon.  The United States Navy was the primary user of CTG's sonar technology.

In December 2011, BW Piezo Holdings, LLC ("BWP"), a Delaware limited liability company, acquired 100% of CTG's member interests from Alta Properties, Inc., f/k/a Channel Technologies, Inc.  Blue Wolf Capital Fund II, L.P. ("BWCF"), an investment fund managed by Blue Wolf Capital Advisors, L.P., is the majority owner of BWP.

Due to the financial impact of certain onerous long-term supply contracts, CTG began experiencing severe cash flow problems in 2016.  CTG made changes to its management team, and in April 2016, CTG executed a Loan and Security Agreement with BWCF, as lender and secured party, dated April 20, 2016, under the terms of which CTG received cash infusions from BWCF to fund operations and capital expenditures.  In consideration therefor, CTG granted BWCF a security interest and lien on substantially all its personal property.  When it became apparent that its net losses would continue unabated, CTG elected to seek bankruptcy protection.

On October 14, 2016, CTG filed its voluntary petition under chapter 11 of the Code "to expeditiously pursue a sale of its business and assets and an orderly wind down of the remaining business."[2]  According to CTG's Schedule D filed on November 16, 2016, CTG owed BWCF

---

[2] Disclosure Statement in Support of Debtor's Proposed Chapter 11 Liquidating Plan, dated Nov. 7, 2017 (Docket No. 411) filed Nov. 7, 2017, at 18:25-26.

3

under the Loan and Security Agreement on the petition date the principal sum of $2,860,000,

plus accrued interest, attorneys' fees and costs, secured by collateral having a value of

$14,993,218.

On December 6, 2017, CTG filed Debtor's Proposed Chapter 11 Liquidating Plan which,

in pertinent part, provided for (1) the establishment of a liquidating trust, the vesting of all of

CTG's assets, including potential causes of action held by the estate, in the liquidating trust on

the effective date of the plan, and (2) the appointment of a trustee to liquidate the assets for

payment of allowed claims in the case. An Order Confirming Chapter 11 Liquidating Plan was

entered on March 2, 2018.

On October 12, 2018, the Liquidating Trustee commenced this adversary proceeding

against Blue Wolf Capital Partners, LLC, BWCF, Blue Wolf Capital Advisors, L.P., and BWP

(collectively, the "Blue Wolf Entities"), Fidus Investment Corporation, Fidus Mezzanine Capital

II, L.P., Avante Mezzanine Partners SBIC, LP, Avante Mezzanine Partners II, Inc. (the

"Mezzanine Defendants"), Gladstone Investment Corporation, Pengdi Han, Dhan, LLC, Grant

Thornton, LLP ("Grant Thornton"), CTG Advanced Materials, LLC ("CTGAM"), CTS

Corporation ("CTS"), Electro Optical Industries, Duff & Phelps, and CIT Bank, N.A., seeking

the avoidance and recovery of alleged actual and constructive fraudulent transfers under state

and federal law, and the award of an unspecified amount of actual damages for alleged unjust

enrichment, conversion, and breach of fiduciary duty, together with reasonable attorneys' fees

and costs. Seven of the Liquidating Trustee's 11 causes of action are predicated on an alter ego

theory of recovery. The Grant Thornton Motion, Mezzanine Defendants' Motion, CTGAM &

CTS Motion, and the Blue Wolf Entities Motion were timely filed pursuant to Rule 12(b)(6) and

seek dismissal of the Liquidating Trustee's Complaint. After a hearing on March 18, 2019, the

matters were taken under submission.

4

1

## II. DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157(b) and 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(B), (H) and (O).  To the extent that the claims made the basis of the Liquidating Trustee's

Complaint constitute "Stern claims,"[3]  Grant Thornton, the Mezzanine Defendants, CTGAM &

CTS, and the Blue Wolf Entities do not consent to entry of a final order or judgment by the

bankruptcy court.[4]  Venue is appropriate in this court.  28 U.S.C. § 1409(a).

A.  Standards for Pleading Under Rules 8(a) & 9(b) and for Dismissal Under Rule 12(b)(6)

1.  Rules 8(a) and 12(b)(6).

Rule 12(b)(6) authorizes the court, upon motion of the defendant, to dismiss a complaint

for failure to state a claim upon which relief can be granted.[5]  F.R.Civ.P. 12(b)(6).  "The purpose

of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints

without subjecting themselves to discovery."  Rutman Wine Co. v. E.&J. Gallo Winery, 829

F.2d 729, 738 (9th Cir. 1987); see Limestone Dev. Corp. v. Vill. of Lemont, Ill., 520 F.3d 797,

802-03 (7th Cir. 2008) ("[A] defendant should not be forced to undergo costly discovery unless

the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a

substantial case.").

---

[3] "These claims are called 'Stern claims,' so named after the Supreme Court's decision in Stern
v. Marshall, 564 U.S. 462 (2011).  Stern claims are claims 'designated for final adjudication in
the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a
constitutional matter.'"  Mastro v. Rigby, 764 F.3d 1090, 1093 (9th Cir. 2014) (citation omitted).

[4] Absent consent or waiver, this court lacks jurisdiction to enter a final order or judgment on a
fraudulent transfer claim against a person or entity that has not filed a proof of claim against the
bankruptcy estate.  See Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins.
Agency, Inc.), 702 F.3d 553, 565-66 (9th Cir. 2012).  Dismissal with leave to amend, however,
does not implicate Stern v. Marshall because it does not end the litigation on the merits.  See
Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.), 491 B.R. 747, 791 (Bankr.
W.D.La. 2013).

[5] Rule 12(b)(6) is applicable to adversary proceedings by FRBP 7012(b).

5

Under Rule 8(a) a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] F.R.Civ.P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The trial court need not accept as true conclusory allegations in a complaint, or legal characterizations cast in the form of factual allegations. See Twombly, 550 U.S. at 555-56.

> In evaluating a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must determine whether the complaint states a plausible claim for relief.

Screen Capital Int'l Corp. v. Library Asset Acquisition Co., Ltd. (In re ThinkFilm, LLC), 510 B.R. 266, 272 (C.D. Cal. 2014) (citations omitted). "While the facts alleged in a complaint may turn out to be 'self-serving and untrue,' a court at this stage of [a] proceeding is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." Arnold v. First Citizens Nat'l Bank (In re

---

[6] Rule 8(a) is applicable to adversary proceedings by FRBP 7008(a).

1  Cornerstone Homes, Inc.), 567 B.R. 37, 46 (Bankr. W.D.N.Y. 2017) (quoting Doe v. Columbia

2  Univ., 831 F.3d 46, 48 (2d Cir. 2016)).

3          "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory,'

4  or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v.

5  Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008).  A claim cannot be plausible

6  when it has no legal basis.

7          2.  Applicability of Rule 9(b).

8          Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity

9  the circumstances constituting fraud or mistake."  F.R.Civ.P. 9(b).[7]  Rule 9(b)'s heightened

10  pleading standard applies not only to allegations of fraud, but to claims grounded in fraud.  See

11  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (The pleading of a

12  "claim . . . said to be 'grounded in fraud' or to 'sound in fraud' . . . must satisfy the particularity

13  requirement of Rule 9(b).");  Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141

14  (C.D. Cal. 2003) ("[I]n the Ninth Circuit . . . both claims for fraud and negligent

15  misrepresentation must meet Rule 9(b)'s particularity requirements.").

16              Rule 9(b) demands that, when averments of fraud are made, the circumstances
            constituting the alleged fraud "be 'specific enough to give defendants notice of
17              the particular misconduct . . . so that they can defend against the charge and not
            just deny that they have done anything wrong.'"  Averments of fraud must be
18              accompanied by "the who, what, when, where, and how" of the misconduct
            charged.  "[A] plaintiff must set forth more than the neutral facts necessary to
19              identify the transaction.  The plaintiff must set forth what is false or misleading
20              about a statement, and why it is false.

21  Vess, 317 F.3d at 1106 (citations omitted) (emphasis in original).  Allegations under Rule 9(b)

22  must be stated with "specificity including an account of the 'time, place, and specific content of

23  the false representations as well as the identities of the parties to the misrepresentations.'"

24  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).  "Conclusory

25  allegations are insufficient."  Neilson, 290 F. Supp. 2d at 1141.

26

27  _____

[7] Rule 9(b) is applicable to adversary proceedings by FRBP 7009.

1      To satisfy the specificity requirement of Rule 9(b), "a plaintiff who makes allegations on

2  information and belief must state the factual basis for the belief." <u>Neubronner v. Milken</u>, 6 F.3d

3  666, 672 (9th Cir. 1993); <u>see</u> <u>Zatkin v. Primuth</u>, 551 F. Supp. 39, 42 (S.D. Cal. 1982)

4  ("Allegations of fraud based on information and belief usually do not satisfy the degree of

5  particularity required under Rule 9(b).  However, an exception exists where, as in cases of

6  corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts

7  constituting the wrongdoing.  In such cases, a complaint based on information and belief is

8  sufficient if it includes a statement of the facts upon which the belief is based.").  Moreover,

9  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but

10  'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and

11  inform each defendant separately of the allegations surrounding his alleged participation in the

12  fraud.'" <u>Swartz</u>, 476 F.3d at 764-65; <u>see</u> <u>In re Silicon Graphics, Inc. Sec. Litig.</u>, 970 F. Supp.

13  746, 752 (N.D. Cal. 1997) ("Rule 9(b) also requires that a plaintiff plead with sufficient

14  particularity attribution of the alleged misrepresentations or omissions to each defendant.").

15      3. <u>Court's Inquiry is Not Limited to the Allegations of the Complaint</u>.

16      "In deciding Rule 12(b)(6) motions, courts are not strictly limited to the four corners of

17  complaints." <u>Outdoor Cent., Inc. v. GreatLodge.com, Inc.</u>, 643 F.3d 1115, 1120 (8th Cir. 2011).

18  Courts may consider

> 19,20,21  matters incorporated by reference or integral to the claim, items subject to judicial
> notice, matters of public record, orders, items appearing in the record of the case,
> and exhibits attached to the complaint whose authenticity is unquestioned; these
> items may be considered by the [court] without converting the motion into one for
> summary judgment.

22,23  5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure: Civil</u> § 1357 (3rd

ed. 2004). <u>See, e.g.</u>, <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003) ("A court

24,25  may . . . consider certain materials—documents attached to the complaint, documents

incorporated by reference in the complaint, or matters of judicial notice—without converting the

26  motion to dismiss into a motion for summary judgment."); <u>Sears, Roebuck & Co. v.</u>

27

_Metropolitan Engravers, Ltd._, 245 F.2d 67, 70 (9th Cir. 1956) ("[J]udicial notice may be taken of a fact to show that a complaint does not state a cause of action."); _Branch v. Tunnell_, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), _cert. denied_, 512 U.S. 1219 (1994); _Barapind v. Reno_, 72 F. Supp. 2d 1132, 1141 (E.D. Cal. 1999) ("Matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies."); _Roe v. Unocal Corp._, 70 F. Supp. 2d 1073, 1075 (C.D. Cal. 1999) ("[E]ven if a document is neither submitted with the complaint nor explicitly referred to in the complaint, the . . . court may consider the document in ruling on a motion to dismiss so long as the complaint necessarily relies on the document and the document's authenticity is not contested.").

B.  _Fraudulent Transfers & Obligations_

    1.  _Elements of the Liquidating Trustee's § 548(a)(1) Claims._

    Section 548(a)(1) authorizes a trustee to avoid any transfer of the debtor's interest in property if the transfer was the result of actual or constructive fraud.  _See_ 11 U.S.C. § 548(a)(1) (2012).  Section 548(a)(1)(A) focuses on actual fraud and permits a trustee to avoid any transfer or obligation made or incurred "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted."  _Id._ § 548(a)(1)(A).  Section 548(a)(1)(B), on the other hand, governs constructive fraud.  _See id._ § 548(a)(1)(B).  To state a claim under § 548(a)(1)(B), the Liquidating Trustee must allege three elements: (1) that a transfer was made within two years of the petition date; (2) that the debtor received less than reasonably equivalent value in exchange for the transfer; and (3) that either the debtor (a) was insolvent on the date of the transfer or became insolvent as a result of the transfer; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (c) intended to incur, or believed

9

1   would incur, debts beyond the debtor's ability to pay as such debts matured.  Id.; see Emerald

2   Capital Advisors, Corp. v. Bayerische Moteren Werke Aktiengesellschaft (In re FAH

3   Liquidating Corp.), 572 B.R. 117, 126 (Bankr. D. Del. 2017).  Whether the transfer or obligation

4   resulted from actual and constructive fraud, a trustee cannot challenge transfers that occurred

5   more than two years before the filing of the bankruptcy petition even if all of the other elements

6   of a fraudulent transfer claim are satisfied.  See 11 U.S.C. § 548(a)(1).  Section 550(a) provides

7   that a trustee "may recover, for the benefit of the estate, the property transferred, or, if the court

8   so orders, the value of such property, from (1) the initial transferee of such transfer or the entity

9   for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such

10  initial transferee."  Id. § 550(a).

11

12          2.  Elements of the Liquidating Trustee's Section 544(b) Claims.

13          Under § 544(b) a trustee succeeds to the rights of an unsecured creditor to avoid a

14  transaction under non-bankruptcy law.  See 11 U.S.C. § 544(b).  "If an actual, unsecured creditor

15  can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party,

16  the trustee may use § 544(b) to step into the shoes of that creditor and 'avoid' the debtor's

17  transfer."  Cadle Co. v. Moore (In re Moore), 608 F.3d 253, 260 (5th Cir. 2010).  The

18  Liquidating Trustee's rights under § 544(b) arise under federal law, but the scope of those rights

19  is defined by non-bankruptcy law.  Id.

20          Under California law, a transfer made "[w]ith the actual intent to hinder, delay, or

21  defraud any creditor of the debtor" violates California's Uniform Fraudulent Transfer Act

22  ("CUFTA").  Cal. Civ. Code § 3439.04(a)(1); see Mejia v. Reed, 31 Cal. 4th 657, 664 (2003).

23  To prevail under section 3439.04(a)(1), the Liquidating Trustee must establish by a

24  preponderance of the evidence that CTG made each of the targeted transfers with the actual

25  intent to hinder, delay or defraud a creditor.  See Wolkowitz v. Beverly (In re Beverly), 374 B.R.

26  221, 235 (B.A.P. 9th Cir.  2007) ("Whether there is actual intent to hinder, delay, or defraud

27

10

under UFTA is a question of fact to be determined by a preponderance of evidence."). "Since direct evidence of intent to hinder, delay or defraud is uncommon, the determination typically is made inferentially from circumstances consistent with the requisite intent." Beverly, 374 B.R. at 235. The CUFTA identifies 11 non-exclusive factors, or "badges of fraud," that may be applied by a court to divine fraudulent intent:

1.      Whether the transfer or obligation was to an insider.

2.      Whether the debtor retained possession or control of the property after the transfer.

3.      Whether the transfer or obligation was disclosed or concealed.

4.      Whether the debtor was sued or threatened with suit before the transfer was made or obligation incurred.

5.      Whether the transfer was of substantially all of the debtor's assets.

6.      Whether the debtor absconded.

7.      Whether the debtor removed or concealed assets.

8.      Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or obligation incurred.

9.      Whether the debtor was insolvent or became insolvent shortly after the transfer was made or obligation incurred.

10.     Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

11.     Whether the debtor transferred essential assets of the business to a lienholder who then transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b). The CUFTA factors are intended "to provide guidance to the trial court, not compel a finding one way or another." Filip v. Bucurenciu, 129 Cal. App. 4th 825, 834 (2005).

11

The elements of a constructive fraud under CUFTA are nearly identical to the elements

required to state a claim for constructive fraud under § 548(a)(1)B), except that CUFTA extends

the lookback period such that a cause of action must be brought within four years after the

transfer was made.  See Cal. Civ. Code § 3439.04(a)(2)(A).  Constructive fraud may be found

under California law as to any present or future creditor when a debtor does not receive a

reasonably equivalent value in exchange for a transfer, and either

> (A) Was engaged or was about to engage in a business or a transaction for which
> the remaining assets of the debtor were unreasonably small in relation to the
> business or transaction, [or]
>
> (B) Intended to incur, or believed or reasonably should have believed that the
> debtor would incur, debts beyond the debtor's ability to pay as they became due.

Cal. Civ. Code § 3439.04(a)(2).  Similarly, constructive fraud can be found under California

Civil Code section 3439.05, "as to an existing creditor if the debtor does not receive reasonably

equivalent value and 'was insolvent at that time or . . . became insolvent as a result of the

transfer.'"  Mejia, 31 Cal. 4th at 670, (quoting Cal. Civ. Code § 3439.05).

C.  Elements of the Liquidating Trustee's Alter Ego Theory.

The Liquidating Trustee may assert an alter ego claim in conjunction with an action to

recover assets of the estate, including an action for conversion or to set aside a fraudulent

transfer.  See Ahcom, Ltd. v. Smedling, 623 F.3d 1248, 1252 (9th Cir. 2010).  "'The alter ego

doctrine arises when a plaintiff comes into court claiming that an opposing party is using the

corporate form unjustly and in derogation of the plaintiff's interests.  In certain circumstances,

the court will disregard the corporate entity and will hold the individual shareholders liable for

the actions of the corporation.'"  Neilson, 290 F. Supp. 2d at 1115 (quoting Mesler v. Bragg

Mgm't Co., 39 Cal. 3d 290, 300 (1985)).  "Before the doctrine may be invoked, two elements

must be alleged: 'First, there must be such a unity of interest and ownership between the

corporation and its equitable owner that the separate personalities of the corporation and the

shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in

1  question are treated as those of the corporation alone.'"  Neilson, 290 F. Supp. 2d at 1115

2  (quoting Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 526 (2000)).  "Alter

3  ego has been described as 'an extreme remedy, sparingly used.'"  Leslie v. Bartamian (In re

4  Mihranian), 2017 WL 2775043, *6 (B.A.P. 9th Cir. 2017) (quoting Sonora Diamond Corp., 83

5  Cal. App. 4th at 539).

6  D.  The Complaint Fails to State a Plausible Alter Ego Claim.

7         In the first paragraph of the Complaint, the Liquidating Trustee lumps together Blue Wolf

8  Capital Partners, LLC, BWCF, Gladstone Investment Corporation, Blue Wolf Capital Advisors

9  L.P., and BW Piezo as the "Blue Wolf Entities."[8]  The Liquidating Trustee goes on to claim that

10 CTG, CTGAM, and each of the Blue Wolf Entities are alter egos of one other.  The facts alleged

11 in the Complaint, however, focus primarily on the operations of BW Piezo, CTG and CTGAM.

12 For example, the Liquidating Trustee alleges:

> 32.  Blue Wolf surreptitiously decided to segregate the companies on paper.  Blue
> Wolf created a new entity named CTG Advanced Materials to hold the H.C.
> Materials assets, and Blue Wolf structured CTG Advanced Materials to be a sister
> company to CTG under the ownership of BW Piezo instead of as a wholly-owned
> subsidiary of CTG as it represented to the public and CTG's creditors.
>
> 33.  The segregation was fictional.  Blue Wolf directed Mr. Phillips to run CTG
> Advanced Materials as a division of CTG, and the companies, along with BW
> Piezo, were operated as a single enterprise.  As detailed below, BW Piezo, CTG,
> and CTG Advanced Materials commingled assets and assets of the companies.
> Blue Wolf indiscriminately directed CTG to transfer funds to pay for CTG
> Advanced Materials liabilities, including payroll, professional services, and legal
> bills, and vice versa.  CTG also guaranteed loans for CTG Advanced Materials's
> benefit and the assets of each company were treated as one in the same.  Further,
> all entities used the same business locations and employees, shared the same
> control group, and shared corporate records.  Moreover, CTG and CTG Advanced
> Materials were held out publicly to be the same entity, and CTG even represented
> to the federal government that CTG had acquired H.C. Materials and was its
> successor legal entity.
>
> . . .

---

[8]  Complaint, at 2:3-5.

13

43.  Blue Wolf's use of CTG and CTG Advanced Materials was a sham to perpetrate a fraud.  Blue Wolf used BW Piezo, CTG, and CTG Advanced Materials to manipulate the assets and liabilities between the entities.  Blue Wolf abused the corporate form by segregating the shared assets and liabilities in the separate entities with the intent to avoid performance by relying on the corporate form as a shield.

44.  In addition, and in the alternative, BW Piezo, CTG, and CTG Advanced Materials were organized and operated as a single business enterprise.  Although Blue Wolf identified CTG and CTG Advanced Materials as separate entities in company organizational charts, in practice, there was no corporate separateness of the two (or BW Piezo).  Blue Wolf – utilizing its "shell company" BW Piezo – routinely commingled funds and assets between the two to cover company liabilities . . . .[9]

The Liquidating Trustee fails to allege facts to show that any of the Blue Wolf Entities are alter egos of each other.  While the allegations of paragraphs 32, 33, 43 and 44 when read in conjunction with other facts alleged in the Complaint might satisfy the first element of an alter ego claim against BW Piezo, CTG and CTGAM, they fail to satisfy the first element of a plausible alter ego claim against Blue Wolf Capital Partners, LLC, BWCF, Blue Wolf Capital Advisors, L.P. and Gladstone Investment Corporation.

The Liquidating Trustee's allegations with respect to the second element of its alter ego claim suffer from the same infirmities.  Without further facts to show that the failure to treat CTG, CTGAM, and each of the Blue Wolf Entities as alter egos of one other would lead to an inequitable result, there is insufficient factual content in the Complaint to support the Liquidating Trustee's conclusory statement in paragraph 21 that "[a]dherence to the fiction of the separate existence of the Blue Wolf Entities and CTG from one another would permit an abuse of the corporate privilege, would sanction fraud, and promote injustice."[10]  Paragraph 21 does not even mention CTGAM.

"Conclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts

---

[9] Id. at 8:21-9:12; 12:12-24.

[10] Id. at 6:4-6.

14

supporting each." <u>Neilson</u>, 290 F. Supp. 2d at 1116; <u>see</u> <u>Mihranian</u>, 2017 WL 2775043, *6

("There is no single set of underlying facts that always must be alleged to plausibly demonstrate

these two criteria; instead, a variety of case-specific facts must be considered to establish the

principal's domination and control over the corporation and to show that immunizing the

principal from the corporation's liability would work an injustice."). "California courts have

rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an

inequitable result that warrants application of the alter ego doctrine." <u>Neilson</u>, 290 F. Supp. 2d at

1117. "Rather, California courts generally require some evidence of bad faith conduct on the

part of the defendants before concluding that an inequitable result justifies an alter ego finding."

<u>Id.</u>

In sum, the allegations of the Complaint fail to state a plausible alter ego claim against

any of the Blue Wolf Entities, CTG or CTGAM.

E. <u>Part VI. A & C of the Complaint Fail to State a Plausible Claim for Avoidance and Recovery</u>
<u>of an Actual Fraudulent Transfer.</u>

In its first claim for relief, the Liquidating Trustee seeks avoidance of certain transfers

allegedly fraudulent under § 548(a)(1)(A) and recoverable under § 550.  The Liquidating Trustee

alleges, in pertinent part:

> 30.  After hiring Mr. Philips, Blue Wolf continued to negotiate with Mr. Han
> regarding the acquisition of H.C. Materials.  To obtain a loan to purchase H.C.
> Materials, Blue Wolf represented to lenders that CTG was purchasing H.C.
> Materials as a wholly-owned subsidiary.  Blue Wolf mortgaged CTG's assets,
> forced CTG to guarantee the significant loan, and directed CTG to contribute its
> own cash assets for the purchase of H.C. Materials.  Blue Wolf's actions left CTG
> saddled with significant debt and limited CTG's business.
>
> 31.  On or about October 2013, Blue Wolf used the loan proceeds and CTG's cash
> to acquire H.C. Material's assets for $48 million . . . .
>
> 39.  On or about March 2016, Blue Wolf sold CTG Advanced Materials for
> approximately $73 million.  Instead of returning to CTG the proceeds from the
> sale of assets of CTG Advanced Materials, Blue Wolf structured the transaction to
> have the purchaser, CTS Corporation, transfer the proceeds to the Blue Wolf
> Entities, CIT Bank, N.A., the Mezzanine Lenders, Pengdi Han, and to the Blue

15

Wolf Entities' insiders as bonus payments. The transfers related to the sale of CTG Advanced Materials are described in further detail in the attached **Exhibit A**.

. . .

50. <u>Upon information and belief</u>, each of the transfers specified in **Exhibit A** were made with property of CTG. Specifically, the proceeds from the sale of CTG Advanced Materials belonged to CTG.

51. In addition, the Blue Wolf Entities forced CTG to enter into a Loan and Security Agreement, dated April 20, 2016, with Blue Wolf Capital Fund II, L.P. As part of the Loan and Security Agreement, CTG became liable for a line of credit of $2.86 million in exchange for security interests and liens over substantially all of CTG's personal property.

52. <u>Upon information and belief</u>, each of the transfers or obligations were made or entered into after October 14, 2014.

53. Blue Wolf, through its officers, employees, and agents made the transfers and incurred the obligations specified in **Exhibit A** with the actual intent to hinder, delay, and defraud CTG's creditors.

54. Each transfer or obligation incurred was made, or entered into, in furtherance of the scheme perpetrated by the Blue Wolf Entities. By causing such transfers to be made, the Blue Wolf Entities hoped to distribute to themselves the proceeds from a sale of CTG Advanced Materials.

55. At the time the transfers and obligations incurred were made, or entered into, the Blue Wolf Entities understood that causing those transfers and incurring those obligations would inevitably harm CTG's creditors. The Blue Wolf Entities knew CTG would be left insolvent and the transfers would reduce the amount of funds available to repay creditors.

56. The Blue Wolf Entities held an ownership interest in CTG and exercised complete control over CTG and CTG Advanced Materials. The Blue Wolf Entities controlled the transfer of funds, the ability for CTG to incur obligations, and the ability to direct those purchasing CTG's assets to transfer the proceeds from their sale.

57. The transfers were received by the beneficiaries as specified in **Exhibit A**.

58. Plaintiff may avoid each of the transfers and obligations under 11 U.S.C. §§ 548(a)(1)(A) and 550.[11]

---

[11] <u>Id.</u> at 8:10-18; 11:14-20; 15:1-16:11 (emphasis added).

1  The Liquidating Trustee makes nearly identical allegations in its third claim for relief seeking

2  avoidance of the transfers listed in Exhibit A on the grounds of actual fraud pursuant to 11

3  U.S.C. § 544 and CUFTA.[12]

4          First, to state a plausible claim for avoidance of a transfer based on actual fraud, the

5  debtor must have possessed an interest in the property transferred.  11 U.S.C. § 548(a)(1).  The

6  Liquidating Trustee's first and third claims hinge on an alter ego theory of recovery.  Absent

7  such a finding, CTG had no interest in the subject property allegedly transferred to the entities

8  identified in Exhibit A.  As previously stated, the Complaint fails to state a plausible alter ego

9  claim against CTG, CTGAM or any of the Blue Wolf Entities.  Consequently, the Liquidating

10  Trustee's fraudulent transfer claims under an alter ego theory of liability must fail as well.

11          Second, Exhibit A contains a <u>summary</u> of dates, amounts and entities who purportedly

12  received such amounts.  Neither the Complaint nor Exhibit A reveal the specific date, amount,

13  source, and transferee of each transfer sought to be avoided, other than to claim that "[t]he

14  transfers related to the sale of CTG Advanced Materials."[13]  The statements in paragraphs 50, 52,

15  70 and 72 are made "[u]pon information and belief," but there are few facts alleged in

16  paragraphs 50, 52, 70 or 72 to establish the basis for such belief to meet the particularity

17  requirement of Rule 9(b).  Paragraphs 30 and 31 of the Complaint are devoid of facts regarding

18  the purchase of H.C. Materials in October 2013, the specific parties to the transaction, and the

19  role of CIT Bank, N.A. and the Mezzanine Defendants in financing the transaction.  Nowhere in

20  paragraph 39 or Exhibit A does the Liquidating Trustee disclose that the alleged transfers

21  summarized in Exhibit A allegedly associated with the sale of CTGAM involved, at least in part,

22  payments on loans by CIT Bank, N.A. and the Mezzanine Defendants secured by liens on the

23  assets of CTGAM.

24

25  _____

26  [12] <u>Id.</u> at 17:15-18:22.
   [13] <u>Id.</u> at 11:19-20.

27

1       Rule 9(b) demands specificity regarding the date, amount, source and transferee of each

2 transfer currently summarized in Exhibit A.  Only then will each of the defendants alleged to

3 have received the transfers summarized in Exhibit A receive proper notice of the specific transfer

4 or transfers sought to be avoided and be in a position to evaluate whether one or more of the

5 claims asserted by the Liquidating Trustee are barred by limitations.

6       Finally, the Liquidating Trustee asserts that the transfers listed in Exhibit A were made

7 pursuant to a scheme hatched by the Blue Wolf Entities "with the actual intent to hinder, delay,

8 and defraud CTG's creditors."[14]  The Liquidating Trustee charges that the Blue Wolf Entities

9 authorized the transfers and had the requisite fraudulent intent, but the fails to allege any facts

10 regarding the particular wrongful conduct of any one of the five entities.  "Rule 9(b) does not

11 allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to

12 differentiate their allegations when suing more than one defendant . . . and inform each defendant

13 separately of the allegations surrounding his alleged participation in the fraud.'"  Swartz, 476

14 F.3d at 764-65 (quoting Haskin v. R.J. Reynolds Tobacco Co., 995 F. Supp. 1437, 1439 (M.D.

15 Fla. 1998)).  The Liquidating Trustee "must, at a minimum, 'identif[y] the role of [each]

16 defendant[] in the alleged fraudulent scheme.'"  Id. at 765 (alteration in original) (quoting Moore

17 v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989)).  Without stating any

18 factual basis with respect to the alleged participation of each of the Blue Wolf Entities in the

19 scheme, the Liquidating Trustee's allegation of a scheme perpetrated by the Blue Wolf Entities

20 involving the transfers and obligations summarized in Exhibit A as having been made or incurred

21 "with the actual intent to hinder, delay, and defraud CTG's creditors" is conclusory and

22 insufficient as a matter of law.[15]

23

24 [14]  Id. at 15:20-21.

25 [15]  The Mezzanine Defendants argue that "[r]epayment of fully secured obligations – where a transfer results in a dollar for dollar reduction of the debtor's liability – do not hinder, delay, or

26 defraud creditors because the transfers do not put assets otherwise available in a bankruptcy distribution out of their reach."  Mezzanine Defendants' Motion, at 6:19-23 (citing In re First

27 Alliance Mortg. Co., 471 F.3d 977, 1008 (9th Cir. 2006)).  The Liquidating Trustee challenges

F. Part VI. B & D of the Complaint Fail to State a Plausible Claim for Avoidance and Recovery of a Constructively Fraudulent Transfer.

In its second and fourth claims for relief, the Liquidating Trustee points again to Exhibit A and asserts that the transfers summarized therein are avoidable under § 548(a)(1)(B), or alternatively, § 544(b) and CUFTA, as constructively fraudulent. With respect to its second claim for relief under § 548(a)(1)(B), the Liquidating Trustee asserts, in pertinent part, that:

> 63. CTG did not receive reasonably equivalent value in exchange for the property transferred.
>
> 64. As a result of the transfers or obligations, CTG became insolvent and undercapitalized.
>
> 65. Additionally, and in the alternative, the Blue Wolf Entities intended and knew that the obligations CTG incurred were beyond its ability to pay as the debts matured.
>
> 66. The Blue Wolf Entities held an ownership interest in CTG and exercised complete control over CTG and CTG Advanced Materials. The Blue Wolf Entities controlled the transfer of funds, the ability of CTG to incur obligations, and the ability to direct those purchasing CTG's assets to transfer the proceeds from their sale.
>
> 67. The transfers were received by the beneficiaries specified in **Exhibit A**.[16]

Similar allegations are made by the Liquidating Trustee with respect to its constructive fraudulent transfer claim under § 544 and CUFTA.[17]

---

the Mezzanine Defendants' loan transaction, claiming that "CTG did not receive any value from making loan payments to the Mezzanine [Defendants] for the benefit of CTG Advanced Materials." Plaintiff's Response in Opposition to Defendants Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, Avante Mezzanine Partners II, Inc.'s Motion to Dismiss First Amended Complaint [Docket No. 123] filed Mar. 4, 2019, at 20:12-13. The court notes that First Alliance Mortgage involved an appeal following a jury trial of a liquidating trustee's claims, including the avoidance of alleged fraudulent transfers. First Alliance Mortg., 471 F.3d at 983-84. While repayment of a fully secured loan pursuant to a valid financing agreement, of and by itself, may not be fraudulent, the court is reluctant to dismiss as to the Mezzanine Defendants on such ground at this early point in the pleading stage.

[16] Id. at 17:1-12.

[17] Id. at 19:13-25.

19

The Liquidating Trustee's second and fourth claims hinge on an alter ego theory of recovery. As previously stated, the Complaint fails to state a plausible alter ego claim against CTG, CTGAM or any of the Blue Wolf Entities. Because the Liquidating Trustee cannot establish the transfer of an interest in property of the debtor absent a properly pled alter ego theory, the Liquidating Trustee's constructive fraudulent transfer claims under an alter ego theory of liability must fail. Furthermore, to state a claim under § 544(b)(1), the complaint must specifically allege the identity of an actual unsecured creditor who would have standing to challenge the transfer. See Neilson, 290 F. Supp. 2d at 1147-48 ("[T]he court grants Imperial's motion to dismiss Neilson's fraudulent transfer claim to the extent it relies on the existence of unidentified unsecured creditors who could avoid the transfers under state law in the absence of the bankruptcy proceeding."). The Complaint does not identify such a creditor. For these reasons alone, the Liquidating Trustee's second and fourth claims for relief fail to satisfy Rule 12(b)(6).

G.  Part VI. E & G of the Complaint Fail to State a Plausible Claim for Avoidance and Recovery of an Actual Fraudulent Transfer.

In its fifth claim for relief, the Liquidating Trustee seeks avoidance of certain transfers allegedly fraudulent under § 548(a)(1)(A) and recoverable under § 550. The Liquidating Trustee alleges, in pertinent part:

> 89.  Upon information and belief, each of the transfers specified in **Exhibit B** were made with property of CTG.

> 90.  Upon information and belief, each of the transfers or obligations were made or entered into after October 14, 2014.

> 91.  CTG, through its officers, employees, and agents made the transfers and incurred the obligations specified in Exhibit B with the actual intent to hinder, delay, and defraud CTG's creditors.

> 92.  Each transfer or obligation incurred was made, or entered into, in furtherance of a scheme perpetrated by CTG's management and controlling shareholder. By

causing such transfers to be made, CTG's management and controlling shareholder hoped to enrich themselves from the eventual sale or dissolution of CTG, CTG Advanced Materials, LLC, and Electro Optical Industries.

93. At the time the transfers and obligations incurred were made, or entered into, CTG's management and controlling shareholder understood that causing those transfers and incurring those obligations would inevitably harm CTG's creditors. CTG's management and controlling shareholder knew CTG would be left insolvent and the transfers would reduce the amount of funds available to repay creditors.

94. CTG's management and controlling shareholder held an ownership interest in CTG and/or exercised complete control over CTG. CTG's management and controlling shareholder controlled the transfer of funds, the ability of CTG to incur obligations, and the ability to direct those purchasing CTG's assets to transfer the proceeds from their sale.

95. The transfers were received by the beneficiaries as specified in **Exhibit B**.[18]

The Liquidating Trustee makes nearly identical allegations in its seventh claim for relief, asserting that the transfers or obligations listed in **Exhibit B** "were made or entered into after October 12, 2014, or within one year of Plaintiff's discovery of the same" and are avoidable pursuant to § 544(b) on the grounds of actual fraud under CUFTA.[19]

The Liquidating Trustee's allegation that the transfers, as a whole, were part of a scheme by CTG's management and controlling shareholder to hinder, delay, and defraud CTG's creditors falls short of stating a plausible claim for relief under either § 548(a)(1)(A) or § 544(b) and CUFTA. "[T]he who, what, when, where and how" of the Liquidating Trustee's fifth and seventh claims for relief are tucked in Exhibit B which falls woefully short of satisfying Rule 9's particularity requirement for allegations of actual fraud. Exhibit B merely identifies the alleged recipient of a total amount of funds over a period of years and the alleged recipient or recipients of one or more of the transfers. For example, Grant Thornton is alleged in Exhibit B to have

---

[18] Id. at 20:1-21:5 (emphasis added).
[19] Id. at 22:9-23:14. The only difference in the factual allegations between the two causes of action is the date of the alleged transfers or obligations sought to be avoided.

received $1,105,115.85 in transfers between January 25, 2013 and March 15, 2017, the beneficiary of which is alleged to be "Blue Wolf Entities; CTG Advanced Materials, LLC." Neither the Complaint or Exhibit B identify specific date, amount, source, and transferee of each transfer sought to be avoided.

Rule 9(b) demands specificity regarding the date, amount, source and transferee of each transfer currently summarized in Exhibit B. Only then will each of the defendants alleged to have received one or more of the transfers summarized in Exhibit B receive proper notice of the specific transfer or transfers sought to be avoided and be in a position to evaluate whether one or more of the claims are barred by limitations. Without such material information, there are few facts regarding the targeted transfers from which an inference of an actual intent to hinder, delay or defraud can be drawn. Because the date and amount of each transfer forming the total is not disclosed, the court cannot determine which, if any, of the alleged transfers in Exhibit B precede the operative dates contained in paragraphs 90 and 110 of the Complaint, respectively, the avoidance and recovery of which may be barred by limitations. The statements in paragraphs 89, 90, 109 and 110 are made "[u]pon information and belief," but there are few facts alleged in paragraphs 89, 90, 109 or 110 to establish the basis for such belief to satisfy the particularity requirement of Rule 9(b). The allegations of paragraph 91, when read in conjunction with paragraphs 92-94 and other facts disclosed in the Complaint, amount to a legal conclusion that does not survive a Rule 12(b)(6) motion. Likewise, the allegations of paragraph 111, coupled with the reasoning contained in paragraphs 112-114, falls short of containing sufficient factual content to permit the court to draw the reasonable conclusion that the defendants are liable for the misconduct alleged.

For these reasons, the Liquidating Trustee's fifth and seventh causes of action to avoid and recover actual fraudulent transfers must be dismissed for failure to state a claim upon which relief can be granted.

H.   Part VI. F & N of the Complaint Fail to State a Plausible Claim for Avoidance and Recovery
of a Constructively Fraudulent Transfer.

Courts do not generally apply the heightened pleading standard of Rule 9(b) to
constructive fraud claims.  1849 Condominiums Assoc., Inc. v. Bruner, 2010 WL 2557711, *3
(E.D. Cal. 2010), citing Cendant Corp. v. Shelton, 474 F. Supp. 2d 377, 380 (D. Conn. 2007).
Rule 9(b) is inapplicable because constructive fraud claims "are not based on actual fraud but
instead rely on the debtor's financial condition and the sufficiency of the consideration provided
by the transferee." Angell v. Ber Care, Inc., et al. (In re Careamerica, Inc.), 409 B.R. 737, 755
(Bankr. E.D.N.C. 2009).  Still, a constructive fraud claim must satisfy Rule 8(a) and contain
sufficient facts to establish that the claim is plausible.

 "The Trustee must do more than simply recite statutory elements, but he need only state
facts with sufficient particularity to provide the defendant fair notice of the charges against him."
Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC), 582 B.R.
846, 856 (Bankr. D. Del. 2018).  "[C]omplaints simply identifying the dates, amounts, source,
and the transferee of each of the alleged transfers successfully support claims for constructive
fraudulent transfer under the pleading standard of Rule 8(a)(2)." Id.  "Determining 'reasonably
equivalent value' and 'insolvency,' with respect to the second and third elements of constructive
fraud, requires factual determinations discouraging a motion to dismiss while encouraging
testing in the discovery process." Id. at 857.  "Disputes as to the actual value given in exchange
for the transfer do not need to be decided on a motion to dismiss, so long as 'the Trustee has
identified the transfer by date and face amount and has alleged that it was for no consideration.'"
Id. (quoting In re FAH Liquidating Corp., 572 B.R. 117, 127 (Bankr. D. Del. 2017)).

In its sixth and eighth claims for relief, the Liquidating Trustee points again to Exhibit B
and asserts that the transfers summarized therein are avoidable under § 548(a)(1)(B), or
alternatively, § 544(b) and CUFTA, as constructively fraudulent.  The Liquidating Trustee's
constructive fraud claims are insufficiently stated and must be dismissed.  The Liquidating

1   Trustee asserts that "CTG did not receive reasonably equivalent value in exchange for the

2   property transferred," "became insolvent and undercapitalized" by virtue of the transfers, and

3   "knew that the obligations CTG incurred were beyond its ability to pay as the debts matured."[20]

4   However, the Complaint and Exhibit B lack material information regarding the specific date,

5   amount, source, and transferee of each of the transfers sought to be avoided. Without such facts

6   the Liquidating Trustee's recitation of the statutory elements falls short of stating a plausible

7   claim. Moreover, the court is unable to determine whether the targeted transfers were made

8   within the applicable limitations period. Finally, the Liquidating Trustee's claim under

9   § 544(b)(1) fails to specifically identify an actual unsecured creditor who would have standing to

10  challenge the transfer. See Neilson, 290 F. Supp. 2d at 1147-48. As previously stated, the

11  Complaint does not identify such a creditor.

12      Accordingly, the Liquidating Trustee's sixth and eighth causes of action to avoid and

13  recover constructive fraudulent transfers must be dismissed for failure to state a claim upon

14  which relief can be granted.

15  I. Part VI. I of the Complaint Fails to State a Plausible Claim for Unjust Enrichment.

16      California courts differ on the issue of whether there is an independent cause of action in

17  California for unjust enrichment. Compare Melchior v. New Line Prods., Inc., 106 Cal. App. 4th

18  779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment.") with

19  Prakashpalan v. Engstrom, Lipscomb & Lack, 223 Cal. App. 4th 1105, 1132 (2014) ("The

20  elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention of the

21  benefit at the expense of another.'" (citation omitted)). "While California case law appears

22  unsettled on the availability of such a cause of action, [the Ninth] Circuit has construed the

23  common law to allow an unjust enrichment cause of action through quasi-contract." ESG

24  Capital Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016). Unjust enrichment and

25  restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a

26  _____

27  [20] Id. at 21:21-22:1.

24

benefit 'through mistake, fraud, coercion, or request.'" <u>Astiana v. Hain Celestial Grp., Inc.</u>, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" <u>Id.</u> (citation omitted).

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." <u>Capital Partners</u>, 828 F.3d at 1038. With respect to unjust enrichment, the Complaint states:

126. Defendants received the following benefits:

- Proceeds of sale of Electro-Optical Industries, Inc.;

- Proceeds of sale of CTG Advanced Material to BW Piezo, and, subsequently to other Blue Wolf Entities; and

- CTG's capital to Blue Wolf Entities, including Blue Wolf Capital Fund II, L.P. in connection with the Prepetition Credit Agreement.

- In the alternative, in the event an alter ego determination is not made, Defendants Grant Thornton, LLP, CTG Advanced Materials, LLC, CTS Corporation, Electro Optical Industries received transfers from CTG or benefits from CTG paying its liabilities.

127. Defendants' continued retention of these benefits is unjust.

128. Defendants acquired these benefits by coercion and abuse of control.[21]

The Liquidating Trustee's unjust enrichment claim must be dismissed. First, the Liquidating Trustee claims in response to the Grant Thornton Motion and the Blue Wolf Entities Motion that its unjust enrichment claim is pled as an alternative claim for relief.[22] However, the Liquidating Trustee's assertion is belied by the allegations of the Complaint. Nowhere in the Complaint does the Liquidating Trustee state that its unjust enrichment claim is pled in the

---

[21] <u>Id.</u> at 24:19-25:5.
[22] Response to Grant Thornton LLP's Amended Motion to Dismiss (Docket No. 62) filed Jan. 2, 2019, at 9:14-18; Response to Defendants Blue Wolf Capital Partners, LLC, Blue Wolf Capital Fund II, LP, Blue Wolf Capital Advisors LP, and BW Piezo Holdings, LLC's Motion to Dismiss First Amended Complaint (Docket No. 122) filed Mar. 4, 2019, at 24:3-6.

alternative in the event the Liquidating Trustee is unsuccessful on its claims to avoid alleged

fraudulent transfers.  Second, because the Complaint fails to state a plausible alter ego claim

against any of the Defendants, the Liquidating Trustee's unjust enrichment claim based upon an

alter ego theory of liability must also fail.  Third, Rule 9(b) requires that the circumstances of an

alleged fraud be stated with particularity.  See, e.g., Vess, 317 F.3d at 1103-04 (Where "the

claim is said to be 'grounded in fraud' or to 'sound in fraud,' . . . the pleading of that claim as a

whole must satisfy the particularity requirement of Rule 9(b)."); Maksoud v. Guelton, 2017 WL

2505887, at *6 (S.D. Cal. 2017) ("Plaintiff's restitution claim is grounded in fraud and he has

failed to plead the facts with sufficient particularity.").  To the extent that the Liquidating

Trustee's unjust enrichment claim is grounded in fraud, the Liquidating Trustee has failed to

state with particularity the circumstances of the alleged fraud.  To the extent that the Liquidating

Trustee's unjust enrichment claim is not grounded in fraud, the Liquidating Trustee has failed to

plead sufficient facts to show that any of the Defendants received a transfer of CTG's property,

i.e., the specific date, amount, source and transferee of each of the "benefits" discussed in

paragraph 126 of the Complaint.  Nor has the Liquidating Trustee alleged sufficient factual

content to show that any of the Defendants acquired one or more of the alleged benefits by fraud,

coercion, or an abuse of control.  Under the circumstances, the allegations of paragraphs 127 and

128 are simply legal conclusions devoid of any specific facts to state a plausible claim for relief.

Finally, the Blue Wolf Entities argue persuasively that the Liquidating Trustee cannot

maintain an unjust enrichment claim as a matter of law because such a cause of action is

displaced by the Liquidating Trustee's fraudulent transfer claims, citing Attebury Grain LLC v.

Grayn Co., 721 F. App'x. 669 (9th Cir. 2018).  In Attebury Grain the Ninth Circuit affirmed the

district court's order granting summary judgment on the plaintiff's claims of intentional and

constructive fraudulent transfers.[23]  In so holding the court stated that "the district court erred by

---

[23]  Attebury Grain, 721 F. App'x. at 671.

granting summary judgment for Attebury on its <u>legally deficient</u> unjust enrichment claim[,]" stating:

> Attebury [cannot] bring an unjust enrichment claim against Cortez or Grayn for their receipt of Superior's assets without having given adequate payment. This theory describes a viable fraudulent transfer claim, which displaces an unjust enrichment cause of action. Unjust enrichment is a valuable basis for a claim to "fill in the cracks" where other causes of action fail to achieve justice, but because the fraudulent transfer claim could be presented here, and was presented successfully, there were no cracks to be filled by this unjust enrichment claim.[24]

<u>See</u> <u>Madrigal v. Hint, Inc.</u>, 2017 WL 6940534, * 5 (C.D. Cal. 2017) ("[L]egal and equitable claims [including unjust enrichment] based on the same factual predicates are not true alternative theories of recovery but rather duplicative."). Even if pled with sufficient facts in the alternative, the Liquidating Trustee's unjust enrichment claim would fail as duplicative of its fraudulent transfer claims.

For these reasons, the Liquidating Trustee's ninth cause of action for unjust enrichment must be dismissed for failure to state a claim upon which relief can be granted.

J.  <u>Part VI. E [sic] of the Complaint Fails to State a Plausible Claim for Conversion</u>.

"To allege conversion, a plaintiff must show: (1) it possessed property, (2) the defendant disposed of the property in a manner inconsistent with the plaintiff's property rights, and (3) damages."  <u>Capital Partners</u>, 828 F.3d at 1038.  With respect to conversion, the Complaint alleges:

> 130.  CTG owned, possessed, or had the rights to immediate possession of the proceeds from the sale of its assets, including CTG Advanced Materials.

> 131.  Defendants wrongfully exercised dominion or control over the property.

> 132.  CTG suffered injury as a result including but not limited to actual damages, exemplary damages, pre- and post-judgment interest, and court costs.[25]

---

[24]  <u>Id.</u> at 672 (citations omitted) (emphasis added).
[25]  Complaint, 25:8-15.

The Liquidating Trustee claims that its conversion claim is pled as an alternative claim for relief.[26]  Nowhere in the Complaint does the Liquidating Trustee state that its conversion claim is pled in the alternative in the event the Liquidating Trustee is unsuccessful on its claims to avoid alleged fraudulent transfers.  The Liquidating Trustee incorporates by reference in paragraph 129 the Complaint's prior allegations and predicates its conversion claim upon the same facts that both fail to state a plausible claim for avoidance of alleged fraudulent transfers and fail to support a plausible alter ego theory of liability.  Without such facts the Liquidating Trustee's assertion that all of the "Defendants wrongfully exercised dominion and control over the property" is a legal conclusion.  Furthermore, the Liquidating Trustee has not alleged facts to show that CTG ever owned, possessed, or was entitled to receive proceeds from the sale of CTGAM.  See Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1530 (9th Cir. 1995) ("As to the conversion claims, the general allegation of ¶ 34 that this conduct involved unspecified acts of mail and wire fraud fails to meet the particularity requirement of Rule 9(b).").  Hence, the Liquidating Trustee's tenth cause of action for conversion must be dismissed for failure to state a claim upon which relief can be granted.

K.  Part VI. D [sic] of the Complaint Fails to State a Plausible Claim for Breach of Fiduciary Duty.

In its eleventh claim for relief, the Liquidating Trustee asserts that the Blue Wolf Entities breached one or more fiduciary duties owed to CTG, alleging:

134.  A fiduciary relationship existed between BW Piezo and CTG.  BW Piezo was the controlling shareholder of CTG and owed CTG certain fiduciary duties including but not limited to the duty of loyalty and utmost good faith, the duty of candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair, honest dealing, and the duty of full disclosure.

135.  BW Piezo breached their fiduciary duties owed to CTG by engaging in the following conduct, which includes but is not limited to:

---

[26] Response to Grant Thornton LLP's Amended Motion to Dismiss (Docket No. 62) filed January 2, 2019, at 9:14-18.

- Self-dealing, including but not limited to,

    º     Pursuing their self-interests at the expense of CTG and
          their obligations as fiduciaries;

    º     Misdirecting CTG funds to pay for undue benefits and
          distributions for themselves; and

    º     Using the advantage of their position to misappropriate
          CTG's assets and proceeds from the sale of the same to
          themselves; and

- Engaging in transactions on behalf of themselves that were not fair and
  equitable to CTG and violated their fiduciary duties to CTG.

- Diverting funds that would have been retained by CTG, thereby
  rendering CTG insolvent and unable to pay its debts to its creditors.

- Making improper corporate distributions in violation of California
  Corporate Code sections 17704.05-.06.[27]

"To state a claim for breach of fiduciary duty, a complaint must allege the existence of a

fiduciary duty, its breach, and damages resulting therefrom." Neilson, 290 F. Supp. 2d at 1137;

see 1849 Condominiums Assoc., 2010 WL 2557711, *4 ("The elements of a cause of action for

breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary

duty; and 3) resulting damage."). Section 17704.09 of the California Corporations Code, upon

which the Liquidating Trustee relies to establish a fiduciary relationship between the Blue Wolf

Entities and CTG, states:

(a) The fiduciary duties that a member owes to a member-managed limited liability
    company and other members of the limited liability company are the duties of
    loyalty and care under subdivisions (b) and (c).

(b) A member's duty of loyalty to the limited liability company and other members is
    limited to the following:

    (1) To account to the limited liability company and hold as trustee for it any
        property, profit, or benefit derived by the member in the conduct and winding
        up of the activities of a limited liability company or derived from a use by the

---

[27] Complaint, 25:21-26:12.

member of a limited liability company property, including the appropriation
of a limited liability company opportunity.

(2) To refrain from dealing with the limited liability company in the conduct or
winding up of the activities of the limited liability company as or on behalf of
a person having an interest adverse to the limited liability company.

(3) To refrain from competing with the limited liability company in the conduct
or winding up of the activities of the limited liability company.

(c) A member's duty of care to a limited liability company and the other members in
the conduct or winding up of the activities of the limited liability company is
limited to refraining from engaging in gross negligent or reckless conduct,
intentional misconduct, or a knowing violation of law.

(d) A member shall discharge the duties of a limited liability company and the other
members under this title or under the operating agreement and exercise any rights
consistent with the obligations of good faith and fair dealing.

(e) A member does not violate a duty or obligation under this title or under the
operating agreement merely because the member's conduct furthers the member's
own interest.

(f) In manager-managed limited liability company, all the following rules apply:

(1) Subdivisions (a), (b), (c), and (e) apply to the manager or managers and not
the members.

(2) Subdivision (d) applies to the members and managers.

(3) Except as otherwise provided, a member does not have any fiduciary duty to
the limited liability company or to any other member solely by reason of
being a member.

Cal. Corp. Code § 17704.09.

First, because the Complaint fails to state a plausible alter ego claim against the Blue

Wolf Entities, the Liquidating Trustee's breach of fiduciary duty claim based upon an alter ego

theory of recovery is defective. Second, the Liquidating Trustee admits that CTG is a California

limited liability company,[28] and that BW Piezo is the sole member of CTG.[29] The Liquidating

---

[28] Id. at 3:5-6.

Trustee further admits that CTG is managed under the terms of an Operating Agreement dated

December 28, 2011, a copy of which is attached to the Complaint as Exhibit 1.[30]  Because CTG

is a "manager-managed limited liability company," section 17704.09(a), (b), (c) and (e) do not

apply to BW Piezo as the sole member of CTG.  Cal. Corp. Code § 17704.09(f)(1).  Except as

provided by subsections (d), BW Piezo does not have any duty to CTG by reason of being a

member.  Id. at § 17704.09(f)(3).  Given that the express language of subsection (a) limits

fiduciary duties applicable to a "member-managed limited liability company" to those set forth

in subsections (b) and (c), BW Piezo's "obligation of good faith and fair dealing" under

subsection (d), as the sole member of a "manager-managed limited liability company," when

read in conjunction with subsection (f)(1) does not appear to rise to the level of a fiduciary duty

under the terms of the statute.  See Id. at § 17704.09(a), (d), (f)(1).  Accordingly, the Liquidating

Trustee's eleventh claim for an alleged breach of fiduciary duty by the Blue Wolf Entities must

be dismissed.

K.  Leave to Amend.

     Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely

give leave [to amend] when justice so requires."  F.R.Civ.P. 15(a)(2).[31]  "Factors justifying a

denial of leave to amend include undue delay, bad faith, futility, unwarranted burdens on the

court, and the unfair burden on the opposing party."  Stanziale, 582 B.R. at 867.  If a complaint

lacks facial plausibility, a court must grant leave to amend unless it is clear that the complaint's

deficiencies cannot be cured by amendment.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th

Cir. 2002).

---

[29] Id. at 7:9.

[30] Id. at 7:4-11.

[31] Rule 15(a)(2) is applicable to adversary proceedings by virtue of FRBP 7015.

31

Nothing in the record suggests that the Liquidating Trustee has acted in bad faith or with improper motive.  Nor does the record establish undue delay.  The Liquidating Trustee filed its original complaint on October 12, 2018 and amended its complaint shortly thereafter on November 5, 2018.  The adversary proceeding has been pending only seven months.  While skeptical that the Liquidating Trustee can demonstrate a plausible claim for unjust enrichment and breach of fiduciary duty, the court at this juncture is not convinced that the major deficiencies in the Complaint cannot be cured by amendment.  Therefore, leave to amend will be granted.

CONCLUSION

As the Liquidating Trustee fails to state a claim upon which relief can be granted with respect to each of the counts in the Complaint, the motions to dismiss under F.R.Civ.P. 12(b)(6) will be granted with leave to amend.  The Liquidating Trustee must file and serve his Second Amended Complaint not later than June 28, 2019, to cure the deficiencies identified in this memorandum.  Defendants must file and serve a response to the Liquidating Trustee's Second Amended Complaint not later than August 2, 2019.

A separate order will be entered consistent with this opinion.

###

Date: May 31, 2019



Peter H. Carroll
United States Bankruptcy Judge