BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
chang@blankrome.com
Craig N. Haring (SBN 314100)
charing@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:    424.239.3400
Facsimile:    424.239.3434

Jeffrey Rhodes (Admitted *Pro Hac Vice*)
jrhodes@blankrome.com
1825 Eye Street NW
Washington, DC 20006
Telephone:    202.420.2200
Facsimile:    202.420.2201

Attorneys for
GLADSTONE INVESTMENT CORPORATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>CHANNEL TECHNOLOGIES GROUP, LLC,<br><br>       Debtor. | Case No.  9:16-bk-11912-DS<br><br>Chapter:  11 |
| CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC,<br><br>       Plaintiff,<br><br>    vs.<br><br>BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, L.P., GLADSTONE INVESTMENT CORPORATION, BLUE WOLF CAPITAL ADVISORS, L.P., BW PIEZO HOLDINGS, LLC, FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL, II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE PARTNERS II, INC., PENGDI HAN, DHAN, LLC, GRANT THORNTON, LLP, CTG ADVANCED MATERIALS, LLC, CTS CORPORATION, AND ELECTRO OPTICAL INDUSTRIES,<br><br>       Defendants. | Adv. Case No. 9:18-ap-01058-DS<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br><br>Date:     September 10, 2019<br>Time:    1:00 p.m.<br>Place:   Courtroom 1639<br>         United States Bankruptcy Court<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES

BANKRUPTCY JUDGE AND TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 10, 2019 at 1:00 p.m., or as soon thereafter as the matter may be heard, a hearing will be conducted before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in Courtroom 1639 of the United States Bankruptcy Court located at 255 E. Temple Street, Los Angeles, California 90012, to consider the Motion of defendant Gladstone Investment Corporation ("Defendant") to dismiss the Second Amended Complaint (Docket No. 156) ("Complaint") filed by plaintiff Corporate Recovery Associates, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC ("Trustee"), pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As further set forth in the Motion, the Complaint fails to adequately plead facts sufficient to state a plausible claim against Defendant.

Appearance at the hearing must be made in Judge Saltzman's courtroom in Los Angeles. Appearance may be made in Santa Barbara only with permission from Chambers.

The Motion is based on this Notice, Memorandum, Request for Judicial Notice, all pleadings in this adversary proceeding and the underlying bankruptcy case, and such other and further evidence and argument as may be presented at the time of any hearing on this matter.

PLEASE TAKE FURTHER NOTICE that pursuant to *Stern v. Marshall*, 131 S.Ct. 2594 (2011), and *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012), Defendant does not consent to entry of final orders or judgment by the bankruptcy judge in this adversary proceeding, and hereby reserves the right to move for withdrawal of the reference of this proceeding.

PLEASE TAKE FURTHER NOTICE that Local Bankruptcy Rule 9013-1(c)(2) requires that any response to the Motion be filed with the Bankruptcy Court and served upon counsel for Defendant at the addresses appearing in the upper-left hand corner of the caption page to this Notice at least fourteen (14) days before the hearing.  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve a written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1

2

DATED:  August 2, 2019            BLANK ROME LLP

3

4                                           By:  /s/ Craig N. Haring

5                                                Cheryl S. Chang
                                                 Jeffrey Rhodes
                                                 Craig N. Haring
6

7                                           Attorneys for
                                            GLADSTONE INVESTMENT CORPORATION
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND – CLAIMS ASSERTED AGAINST GLADSTONE..........................................2

    I.       Counts A Through D of the Second Amended Complaint – "Alter Ego"
           Claims ...................................................................................................................2

    II.      Counts E Through H of the Second Amended Complaint – "Non-Alter
           Ego" Claims ...........................................................................................................3

    III.     The Second Amended Complaint Fails to Allege Key Facts Regarding
           Secured Financing Provided by Gladstone .................................................4

ARGUMENT ........................................................................................................................8

    I.       Legal Standard .......................................................................................................8

    II.      Counts A through D of the Second Amended Complaint Fail to State
           Plausible Claims for the Avoidance and Recovery of Fraudulent Transfer
           Claims Against Gladstone.....................................................................................9

         a.      The Proceeds of the Sale of CTGAM Do Not Involve Property of
                CTG................................................................................................................9

         b.      The New Claims Asserted Against Gladstone in Counts A Through
                D of the Second Amended Complaint Are Time Barred and
                Unsupported by Fact or Law.....................................................................11

    III.     Counts E through H of the Second Amended Complaint Fail to State
           Plausible Claims for the Avoidance and Recovery of Fraudulent Transfer
           Claims Against Gladstone...................................................................................13

JOINDER ...........................................................................................................................15

CONCLUSION ....................................................................................................................15

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. First Citizens Nat'l Bank (In re Cornerstone Home, Inc.)*,
    567 B.R. 37 (Bankr. W.D.N.Y. 2017) ........................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................8, 9

*Branch v. Tunnell*,
    14 F.3d 449, 454 (9th Cir. 1994) .............................................................................6

*Buchwald Capital Advisors, LLC v. JP Morgan Chase Bank, N.A. (In re M.
    Fabrikant & Sons, Inc.)*,
    447 B.R. 170 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012)...................12, 14

*Burtch v. Opus, LLC (In re Opus E., LLC)*,
    Adv. No. 11-52423 (MFW), 2013 WL 4478914 (Bankr. D. Del. Aug. 6, 2013) ...............12, 14

*Communist Party v. 522 Valencia, Inc.*,
    35 Cal.App.4th 980 (1995) .....................................................................................10

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ...................................................................................8

*Danning v. Miller (In re Bullion Reserve of North America)*,
    922 F.2d 544 (9th Cir. 1991) ..................................................................................12

*Disenos Artisticos E Industriales, S.A., v. Costco Wholesale Corp.*,
    97 F.3d 377 (9th Cir. 1996) ...................................................................................10

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016) .....................................................................................9

*Galbraith v. County of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002)..................................................................................6

*Gaughan v. Edward Dittlof Revocable Trust (In re Costas)*,
    555 F.3d 790 (9th Cir. 2009) ...................................................................................9

*Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phelger &
    Harrison LLP)*,
    408 B.R. 318 (Bankr. N.D. Cal. 2009) .......................................................................9

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006)..................................................................................14

*In re Inter. Mgmt Assoc.*,
    399 F.3d 1288 (11th Cir. 2005)..............................................................................12

*In re Metzeler*,
    66 B.R. 977 (Bankr. S.D.N.Y. 1986) ................................................................12, 14

*In re Nat. Century Financial Enterprises, Inc.*,
    783 F. Supp. 2d 1003 (S.D. Ohio 2011) .................................................................14

*In re Walters*,
    163 B.R. 575 (Bankr. C.D. Cal. 1994).....................................................................14

*Johnson v. Riverside Healthcare Sys., L.P.*,
    534 F.3d 1116 (9th Cir. 2008)................................................................................11

*Melamed v. Lake Cnty. Nat. Bank*,
    727 F.2d 1399 (6th Cir. 1984)................................................................................14

*Mesler v. Bragg Mgmt. Co.*,
    39 Cal.3d 290 (1985) .............................................................................................10

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .....................................................................8

*Official Comm. of Unsecured Creditors v. Fountainhead Grp., Inc. (In re
    Bridgeview Aerosol, LLC)*,
    538 B.R. 477 (Bankr. N.D. Ill. 2015).......................................................................12

*Outdoor Cent., Inc. v. GreatLodge.com, Inc.*,
    643 F.3d 1115 (8th Cir. 2011)...................................................................................6

*Screen Capital Int'l Corp. v. Library Asset Acquisition Co., Ltd. (In re ThinkFilm,
    LLC)*,
    510 B.R. 266 (C.D. Cal. 2014)...................................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................6

*U.S. Fid. & Guar. Co. v. Lee Investments, LLC*,
    No. CV-F-99-5583, 2008 WL 5157712 (E.D. Cal. Dec. 8, 2008)............................10

*United Continental Tuna Corp. v. U.S.*,
    550 F.2d 569 (9th Cir. 1977)..................................................................................10

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011)....................................................................................6

NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)...................................................................................................8

**Statutes**

11 U.S.C. § 544(b)(1).................................................................................................................9

11 U.S.C. § 546(a)(1)(a).....................................................................................................12, 14

11 U.S.C. § 548(a) ....................................................................................................................2

11 U.S.C. § 548(a)(1)(A).....................................................................................................9, 14

11 U.S.C. § 548(a)(1)(B).....................................................................................................9, 14

11 U.S.C. § 548(d)(2)(A)..........................................................................................................15

11 U.S.C. § 550(a) ....................................................................................................................2

11 U.S.C. § 550(a)(1).........................................................................................................12, 13

**Other Authorities**

Fed. R. Bankr. P. 7008(a)..........................................................................................................8

Fed. R. Bankr. P. 7009 .............................................................................................................8

Fed. R. Bankr. P. 7012(b).........................................................................................................8

Fed. R. Civ. P. 8(a)(2)...............................................................................................................8

Fed. R. Civ. P. 9(b)...................................................................................................................8

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 6, 8, 11

## INTRODUCTION

1

2          This action concerns claims asserted by the Liquidating Trustee ("Trustee" or "Plaintiff")

3   of debtor Channel Technologies Group, LLC ("CTG") for the avoidance and recovery of alleged

4   fraudulent transfers, and other claims against various defendants, including Gladstone Investment

5   Corporation ("Gladstone").  The Trustee's claims are based primarily on the October 2013

6   acquisition and March 2016 sale of a non-debtor sister company, CTG Advanced Materials, LLC

7   ("CTGAM"), and the subsequent distributions of the sale proceeds of CTGAM.  The equity

8   interests in both CTG and CTGAM were held by BW Piezo Holdings, LLC ("BW Piezo").

9   Because the March 2016 sale of CTGAM did not involve a transfer of the debtor CTG's property

10  – a necessary element to the Trustee's fraudulent transfer claims arising from the sale of CTGAM

11  - the Trustee further alleges certain "alter ego" claims and concludes, without the necessary legal

12  or factual support, that CTGAM's property should be deemed the property of CTG. The Trustee

13  asserted these "alter ego" fraudulent transfer claims as well as others in both an original

14  complaint and in a First Amended Complaint that barely mentioned Gladstone at all, and that

15  sought to avoid and recover from Gladstone certain transfers specified in Exhibits A and B

16  thereto in a total amount of $3,483,913.24.  Gladstone filed an answer and defenses to the First

17  Amended Complaint, and other defendants also answered or filed motions to dismiss.

18          On May 31, 2019, the Court entered a memorandum decision and order dismissing the

19  Trustee's First Amended Complaint in its entirety.  *See Order Granting Defendants' Motions to*

20  *Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* [Docket No.

21  147] and corresponding *Memorandum Decision Re Defendants' Motions to Dismiss Plaintiff's*

22  *First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* [Docket No. 146] ("Memorandum

23  Decision").  The Court determined, among other things, that the Trustee failed to allege facts

24  sufficient to state plausible claims for relief on the Trustee's alter ego theory as well as the

25  fraudulent transfer and other causes of action asserted in the complaint.  Nonetheless, the Court

26  granted the Trustee leave to file a further amended complaint and an opportunity for the Trustee

27  to cure the "major deficiencies" in the First Amended Complaint.  *See* Memorandum Decision at

28  32.

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1   The Trustee has now filed a Second Amended Complaint, but the major deficiencies noted

2   by the Court remain.  Like its predecessors, the Second Amended Complaint fails to assert

3   plausible claims for relief against Gladstone.  The Second Amended Complaint also includes

4   entirely new claims against Gladstone, including claims in which the Trustee now seeks to

5   recover from Gladstone more than $34,000,000 in transfers made to other parties, based solely on

6   the allegation that Gladstone owned equity in BW Piezo and/or CTGAM.  As further explained

7   below, these claims are unsupported by facts that state any plausible claims against Gladstone and

8   are barred under applicable statutes of limitation.  As it is evident that the Trustee is unable to

9   state plausible claims for relief, the Second Amended Complaint should be dismissed with

10   prejudice.

## BACKGROUND – CLAIMS ASSERTED AGAINST GLADSTONE

12   The allegations in the Second Amended Complaint as to Gladstone are sparse, and the

13   references to Gladstone in the Second Amended Complaint[1] are limited to the following:

14   (1) Gladstone is named in Section II, which identifies the parties to the action, and is identified as

15   a Delaware corporation, *see* Second Amended Complaint, ¶ 6; (2) Gladstone is identified as a

16   party receiving the benefit of certain transfers made to other entities based solely on the allegation

17   that Gladstone owned equity in BW Piezo and CTGAM, *see, e.g.,* Second Amended Complaint,

18   ¶¶ 79, 143; and (3) Gladstone is identified as the recipient of certain other specific transfers that

19   are unrelated to the Trustee's alter ego claims, *see, e.g.,* Second Amended Complaint, ¶¶ 76 and

20   Exhibit B.  No other facts are alleged as to Gladstone.

**I.     Counts A Through D of the Second Amended Complaint – "Alter Ego" Claims**

22   The Second Amended Complaint asserts two categories of fraudulent transfer causes of

23   action against Gladstone and other defendants, under sections 548(a) and 550(a) of the

24   Bankruptcy Code and under California fraudulent transfer law, based on alternative theories.

25   Counts A through D of the Second Amended Complaint set forth "alter ego" claims arising from

26   the sale of CTGAM in March 2016.  In or about March 2016, CTGAM was sold for

27

28   ────────────────

[1] Solely for the purposes of this Motion to Dismiss, all well pleaded, non-conclusory facts alleged in the Complaint are assumed to be true.  *See Screen Capital Int'l Corp. v. Library Asset Acquisition Co., Ltd. (In re ThinkFilm, LLC),* 510 B.R. 266, 272 (C.D. Cal. 2014).

1   approximately $73 million, and the proceeds are alleged to have been paid to the Blue Wolf

2   Entities (as defined in the Second Amended Complaint), certain lenders and other insiders.

3   Second Amended Complaint, ¶ 46.  Because the March 2016 transfers were the proceeds of the

4   sale of CTGAM and not any property owned by CTG, these claims are dependent on the

5   Trustee's alter ego theory that CTGAM's assets should be considered property of CTG.  The total

6   amount of the CTGAM sale proceeds transferred to various parties identified in Counts A through

7   D exceeds $34,000,000.  *See, e.g.,* Second Amended Complaint, ¶¶ 65 – 79.

8          In its First Amended Complaint, the Trustee identified a single payment to Gladstone

9   from the proceeds of the CTGAM sale that the Trustee alleged was subject to avoidance and

10   recovery as a subsequent transfer.  Specifically, in Exhibit A to the First Amended Complaint, the

11   Trustee identified a transfer in the amount of $752,245.09, alleged to have been made "[o]n or

12   about March 2016," in a list of "Subsequent Transfers Related to Sale of CTG Advanced

13   Materials (Blue Wolf Fund II, L.P.)."  *See* First Amended Complaint [Docket No. 9] at p. 28.

14   This transfer is also identified in paragraphs 76, 101, 124 and 148 of the Second Amended

15   Complaint.  Now, in addition to this transfer, the Trustee alleges for the first time in the Second

16   Amended Complaint that the transfers of the proceeds of the CTGAM sale to various other

17   entities were made for the benefit of Gladstone merely because Gladstone owned equity in BW

18   Piezo and/or CTGAM.  *See* Second Amended Complaint, ¶¶ 65, 67, 68, 69, 71, 72, 77, 78, 79.  In

19   so doing, the Trustee now seeks to assert entirely new claims against Gladstone for the avoidance

20   and recovery of additional transfers in an amount exceeding $34,000,000, without providing any

21   facts in support of the conclusory statement that Gladstone somehow benefitted from these

22   transfers.  As further explained below, these causes of action against Gladstone are time barred,

23   unsupported by law or facts, and fail to state plausible claims against Gladstone.

24   **II.     Counts E Through H of the Second Amended Complaint – "Non-Alter Ego" Claims**

25          Counts E through H of the Second Amended Complaint also assert fraudulent transfer

26   claims under the Bankruptcy Code and under California law, in the alternative and "in the event

27   the alter ego determination is not made."  *See, e.g.*, Second Amended Complaint, ¶ 157.  In

28   connection with these "non-alter ego" claims, the Trustee seeks the avoidance and recovery of

transfers in the total amount of $7,576,027.49 that are alleged to have been paid by CTG directly to Gladstone during the period from February 2012 to June 2016. *See, e.g.,* Second Amended Complaint, ¶ 166. The specific transfers that the Trustee seeks to recover from Gladstone under these alternative claims are itemized in Schedule B attached to the Second Amended Complaint.

The transfers to Gladstone specified in Schedule B to the Second Amended Complaint are new transfers that were never identified in the prior versions of the Trustee's complaint. In the First Amended Complaint, the Trustee set forth a list of "CTG Transfers for the Benefit of Affiliates and Subsidiaries" allegedly made to various entities, and included in that list transfers allegedly received by Gladstone during the period December 3, 2012 through June 10, 2016 in the total amount of $2,731,668.15. *See* First Amended Complaint at p. 29. No other transfers to Gladstone were identified, and the First Amended Complaint did not seek the avoidance and recovery of any other transfers, unidentified or otherwise, from Gladstone, or reserve the right to assert additional claims or recover additional transfers not specified in the First Amended Complaint.

The allegations in Counts E through H against are based solely on conclusory statements and are unsupported by any well pleaded facts. For example, the Trustee alleges in conclusory fashion that "CTG received no reasonably equivalent value for making these transfers," but offers no facts in support of this statement. *See, e.g.*, Second Amended Complaint, ¶ 166. The allegations in support of these claims are also nonsensical and internally inconsistent. The Trustee contends that the Schedule B transfers were made "to maximize CTG Advanced Material's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials," *see* Second Amended Complaint, ¶ 166, yet the vast majority of the transfers to Gladstone itemized in Schedule B to the Second Amended Complaint are alleged to have been made <u>before</u> CTGAM was even acquired by BW Piezo in October 2013. *See* Second Amended Complaint, ¶ 35 & Schedule B at pp. 110-116.

### III. The Second Amended Complaint Fails to Allege Key Facts Regarding Secured Financing Provided by Gladstone

Although the Second Amended Complaint fails to set forth well pleaded facts sufficient to

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1    state plausible claims for recovery of the transfers to Gladstone itemized in Schedule B, there are

2    additional facts, of which the Trustee either is or should be well aware through ordinary diligence,

3    that confirm the legal and factual insufficiency of these claims.  As further explained below,

4    Gladstone provided secured financing in connection with the acquisition of CTG in 2011, and the

5    payments received by Gladstone from that date through October 2013 - at which time the secured

6    obligations were paid in full in connection with the CTGAM acquisition - were made in

7    satisfaction of such secured debt.

8           It bears emphasizing that this is not the first instance in which key facts have been omitted

9    from the complaints filed in this action.  In fact, the omission of facts relating to the transactions

10   at issue in this proceeding is among the pleading deficiencies on which the dismissal of the First

11   Amended Complaint was based.  As the Court recognized in its Memorandum Decision, the

12   Trustee failed to disclose in that pleading facts regarding the purchase of CTGAM in October

13   2013 and the financing of that transaction, or that the transfers made to certain parties in March

14   2016 from the proceeds of the sale of CTGAM were, in part, payments made on loans used to

15   acquire CTGAM and that were secured by liens on CTGAM's assets:

16              Paragraphs 30 and 31 of the Complaint are devoid of facts
                regarding the purchase of H.C. Materials in October 2013, the
17              specific parties to that transaction, and the role of CIT Bank, N.A.
                and the Mezzanine Defendants in financing the transaction.
18              Nowhere in paragraph 39 or Exhibit A does the Liquidating Trustee
                disclose that the alleged transfers summarized in Exhibit A
19              allegedly associated with the sale of CTGAM involved, at least in
                part, payments on loans by CIT Bank, N.A. and the Mezzanine
20              Defendants secured by liens on the assets of CTGAM.

21   *See* Memorandum Decision at 17:17-23.  In its Second Amended Complaint, the omission of key

22   facts continues, including the facts regarding Gladstone's role as a secured lender to CTG prior to

23   the acquisition of CTGAM in October 2013.  These undisclosed facts confirm what is already

24   evident from the absence of factual support for the claims set forth in the Second Amended

25   Complaint: the insufficiency, as a matter of fact and of law, of the Trustee's claims against

26   Gladstone, including in particular the claims for avoidance and recovery of transfers made before

27   CTGAM was acquired in October 2013.

28

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1  In the Second Amended Complaint, the Trustee describes in vague and general terms the

2  transaction (the "CTG Acquisition") pursuant to which BW Piezo was formed and funded "for

3  the sole purpose of acquiring CTG" in December 2011.  *See* Second Amended Complaint, ¶ 24.

4  The Trustee fails, however, to provide any facts relating to the sources for funding that

5  transaction, including in particular facts relating to Gladstone, the secured acquisition financing

6  that Gladstone provided in connection with the CTG Acquisition, and the relationship to the

7  causes of action the Trustee alleges against Gladstone in the Second Amended Complaint.  As set

8  forth in the *Request for Judicial Notice* ("RJN") filed contemporaneously herewith, because the

9  Second Amended Complaint references the December 2011 CTG Acquisition, and because the

10 underlying facts of that transaction are essential to the allegations in the Second Amended

11 Complaint relating to the claims asserted against Gladstone in Counts F through H, Gladstone

12 requests that the Court take judicial notice of documents relevant to the secured financing that

13 Gladstone provided in connection with the acquisition of CTG in December 2011 and which was

14 paid off in October 2013 at the time of the CTGAM acquisition transaction.[2]

15 As is set forth in more detail in the RJN, pursuant to a Note Purchase Agreement entered

16 into with BW Piezo as of December 29, 2011, Gladstone provided secured financing in

17 connection with the CTG Acquisition.  *See* RJN, Exhibit 1.  CTG and its wholly owned

18 subsidiary, Electro-Optical Industries, LLC ("EOI") executed and delivered acknowledgments

19 and joinders to the Note Purchase Agreement, and thereby became parties to the Note Purchase

20 Agreement, *see* RJN at Exhibits 2 and 3.[3]  Pursuant to the terms of the Note Purchase Agreement,

21

22 [2] As the Court recognized in its Memorandum Decision dismissing Plaintiff's First Amended Complaint, "[i]n
deciding Rule 12(b)(6) motions, courts are not strictly limited to the four corners of the complaints," *see*

23 Memorandum Decision at 8:15-17 (*quoting Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th
Cir. 2011)), and "[c]ourts may consider 'matters incorporated by reference or integral to the claim, items subject to

24 judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the
complaint whose authenticity is unquestioned; these items may be considered by the [court] without converting the

25 motion into one for summary judgment.'"  *Memorandum Decision* at 8:19-21 (quoting Wright & Miller); *see also
Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *United States v. Corinthian Colleges*, 655

26 F.3d 984, 999 (9th Cir. 2011); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds by
*Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).  Whether or not the Court decides to take

27 judicial notice of the Gladstone secured financing documents submitted with the RJN, Gladstone submits that the
absence of any well pleaded facts in support of the causes of action asserted against Gladstone requires the dismissal
of such claims pursuant to Rule 12(b)(6).

28
[3] In connection with the CTG Acquisition, a Gladstone affiliate, GAIN CTG Holdings, Inc., acquired an equity
interest in BW Piezo.  *See* Note Purchase Agreement, RJN Exhibit 1, p. 4, 8.

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1   Gladstone agreed to advance funds to CTG, EOI and BW Piezo (collectively, the "Borrowers") in

2   the principal amount of $18,000,000.00 in exchange for, among other things, a security interest in

3   substantially all of the assets of the Borrowers.  The Borrowers made and delivered to Gladstone

4   (1) an Amended and Restated Term Note A in the original principal amount of $6,000,000.00,

5   (2) an Amended and Restated Term Note B in the original principal amount of $10,750,000.00

6   and (3) an Amended and Restated Revolving Promissory Note in the maximum principal amount

7   of $1,250,000.00, each dated December 29, 2011. *See* RJN at Exhibits 4, 5 and 6.  Pursuant to the

8   Note Purchase Agreement and the corresponding amended and restated notes, the Borrowers were

9   obligated to make scheduled payments of principal and interest, as applicable, to Gladstone.  *See*

10  Note Purchase Agreement, RJN Exhibit 1, at §§ 2.3.1 and 2.3.2; Amended and Restated Term

11  Note A, RJN Exhibit 4, § 3; Amended and Restated Term Note B, RJN Exhibit 5, § 3.1;

12  Amended and Restated Revolving Promissory Note, RJN Exhibit 6, § 3.1.

13         The Borrowers also executed a Security Agreement and related counterparts, granting

14  Gladstone a continuing security interest in and to substantially all of the Borrowers' assets.  *See*

15  RJN at Exhibits 7, 8 and 9.  Pursuant to the Note Purchase Agreement and related agreements and

16  instruments, Gladstone was granted a first priority security interest, subordinate only to applicable

17  Permitted Encumbrances (as specified in the Note Purchase Agreement).  *See* Note Purchase

18  Agreement, RJN Exhibit 1, § 2.7.  Corresponding UCC-1 financing statements were filed with the

19  California and Delaware Secretaries of State.  *See* RJN at Exhibits 10, 11, and 12.  The payoff of

20  all indebtedness under the Note Purchase Agreement and related documents occurred in October

21  2013, at the time of the CTGAM acquisition transactions described in paragraphs 32 through 35

22  of the Second Amended Complaint.

23         The underlying facts relating to the CTG Acquisition and the secured financing provided

24  by Gladstone are not mentioned anywhere in the Second Amended Complaint, notwithstanding

25  the direct relationship between Gladstone's secured financing and the Schedule B transfers to

26  Gladstone itemized in the Second Amended Complaint that pre-date the CTGAM acquisition in

27  October 2013.  These omitted facts confirm what is readily apparent from the incomplete and

28

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1   conclusory allegations relating to Gladstone – the Second Amended Complaint fails to establish

2   plausible causes of action against Gladstone for the recovery of the alleged fraudulent transfers.

3                                              **ARGUMENT**

4   **I.     Legal Standard**

5            Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this

6   adversary proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, the

7   Court is authorized to grant a motion to dismiss for failure to state a claim upon which relief can

8   be granted.  Pursuant to Fed. R. Civ. P. 8(a)(2), made applicable to this adversary proceeding

9   pursuant to Fed.R. Bankr. P. 7008(a), a complaint must contain a "short and plain statement of the

10  claim showing that the pleader is entitled to relief."  This standard "demands more than an

11  unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

12  678 (2009).  A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the

13  elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

14  544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

15  'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

16           Moreover, "[i]n alleging fraud or mistake, a party must state with particularity the

17  circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.  The

18  heightened pleading requirements under Rule 9(b) applies both to allegations of fraud as well as

19  claims grounded in fraud.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.

20  2003).  "Averments of fraud must be accompanied by 'the who, what, when, where and how' of

21  the misconduct charged." *Id*. at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

22  1997)).  "Conclusory allegations are insufficient." *Neilson v. Union Bank of Cal., N.A.,* 290

23  F.Supp.2d 1101, 1141 (C.D. Cal. 2003).

24           Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if the

25  alleged facts do not entitle the plaintiff to relief.  *Twombly*, 550 U.S. at 560-61.  The factual

26  allegations that appear in the complaint must be detailed enough "to raise a right to relief above

27  the speculative level" such that, if true, recovery on the allegations would be plausible. *Twombly*,

28  550 U.S. at 545.  "A claim has facial plausibility when the plaintiff pleads factual content that

1    allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2    alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).  While the Court may accept as true well-

3    pleaded factual allegations in a complaint, "the tenet that a court must accept as true all of the

4    allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

5    "While legal conclusions can provide the framework of a complaint, they must be supported by

6    factual allegations." *Id*. at 679.  "Threadbare recitals of the elements of a cause of action,

7    supported by mere conclusory statements, do not suffice." *Id*. at 678.  "Factual allegations must

8    be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and

9    "plausibly sufficient to state a legal claim." *Arnold v. First Citizens Nat'l Bank (In re Cornerstone*

10   *Home, Inc.*), 567 B.R. 37, 46 (Bankr. W.D.N.Y. 2017) (quoting *Doe v. Columbia Univ.*, 831 F.3d

11   46, 48 (2d Cir. 2016)).

12   **II.    Counts A through D of the Second Amended Complaint Fail to State Plausible
         Claims for the Avoidance and Recovery of Fraudulent Transfer Claims Against**

13       **Gladstone**

14       a.    The Proceeds of the Sale of CTGAM Do Not Involve Property of CTG

15       In Counts A through D of the Second Amended Complaint, the Trustee asserts causes of

16   action for the avoidance and recovery of actual and constructive fraudulent transfers under the

17   Bankruptcy Code and California law based on the March 2016 sale of CTG's sister company,

18   CTGAM, and the distribution of the proceeds of that sale to various parties.  It is axiomatic that to

19   state a claim under each of these causes of action, a plaintiff must allege, at a minimum, that a

20   transfer involves an interest of the debtor in property.  *See* 11 U.S.C. § 544(b)(1) ("[T]he trustee

21   may avoid any transfer of an interest of the debtor in property . . ."); 11 U.S.C. § 548(a)(1)(A)-(B)

22   (same); *see also Gaughan v. Edward Dittlof Revocable Trust (In re Costas)*, 555 F.3d 790, 792-

23   93 (9th Cir. 2009); *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phelger &*

24   *Harrison LLP)*, 408 B.R. 318, 337 (Bankr. N.D. Cal. 2009).  The Trustee's claims in Counts A

25   through D necessarily fail because the distribution of the proceeds of the sale of CTGAM did not

26   involve a transfer of CTG's property.

27       The Trustee bases its claims under Counts A through D on a flawed "alter ego" theory that

28   CTGAM and the proceeds of that sale should be somehow be considered as CTG's property.  An

1   alter ego remedy is not available under the facts presented, because under California law an entity

2   such as the Trustee here, as a representative of the CTG estate, cannot invoke the doctrine in an

3   attempt to recover the assets of the debtor's equity holders and affiliates.  *See Communist Party v.*

4   *522 Valencia, Inc*., 35 Cal.App.4th 980, 995 (1995) ("Alter ego is utilized to prevent two parties

5   with the same interest from inequitably using the corporate form to thwart a third party's rights; it

6   is not designed to unite two separate entities with opposing interests for the benefit of the one

7   claiming to control the other.").  Other courts, including the Ninth Circuit, have denied attempts

8   by an entity to pierce its own corporate veil. *See*, *e.g*., *Disenos Artisticos E Industriales, S.A., v.*

9   *Costco Wholesale Corp.*, 97 F.3d 377, 380 (9th Cir. 1996) ("Generally, the corporate veil can be

10   pierced only by an adversary of the corporation, not by the corporation itself for its own

11   benefit."); *United Continental Tuna Corp. v. U.S*., 550 F.2d 569, 573 (9th Cir. 1977) ("First,

12   appellant is seeking to pierce its own veil for its own benefit.  Appellant has cited no authority

13   and we have found none which allows such a procedure."); *U.S. Fid. & Guar. Co. v. Lee*

14   *Investments, LLC,* No. CV-F-99-5583, 2008 WL 5157712, at *6 (E.D. Cal. Dec. 8, 2008) (alter

15   ego cannot be used as an affirmative claim "to establish a relationship of identity between the

16   defendant corporation and the plaintiff itself, in order to allow the plaintiff to obtain for itself the

17   assets of the corporation.") (quoting *522 Valencia, Inc*., 35 Cal.App.4th at 995).

18        More fundamentally, even if the alter ego remedy were available under the circumstances

19   of this case, it would not afford the relief the Trustee is seeking here – the combination of the

20   assets of CTG and CTGAM or the treatment of the two entities as a single consolidated entity.  At

21   best, the alter ego remedy would allow the Trustee to assert claims against the assets of CTGAM

22   or any other party subject to alter ego liability, but it would not result in CTG and CTGAM

23   becoming a single corporation, or allow CTG to acquire ownership of CTGAM's assets.  *See*

24   *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 301 (1985) (recognizing that alter ego remedy affords

25   opportunity to obtain judgment against corporation and its alter ego as separate entities).

26        Accordingly, even if the Trustee were entitled to an alter ego remedy, this would not cause

27   CTGAM, its assets or the proceeds of the March 2016 sale of CTGAM to become the property of

28   CTG.  The transfers at issue in Counts A through D of the Second Amended Complaint thus do

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1   not involve a transfer of any interest of CTG in property subject to recovery as a fraudulent

2   transfer. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory,'

3   or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside*

4   *Healthcare Sys., L.P.*, 534 F.3d 1116, 1121 (9th Cir. 2008). As the Court recognized in the

5   Memorandum Decision, "[a] claim cannot be plausible when it has no legal basis." *Memorandum*

6   *Decision* at 7:5-6. The fraudulent transfer claims alleged in Counts A through D are deficient as a

7   matter of fact and law because they fail to state a cognizable claim arising from the transfer of

8   CTG's property, and such claims should therefore be dismissed with prejudice.

9          b.      The New Claims Asserted Against Gladstone in Counts A Through D of the
                   <u>Second Amended Complaint Are Time Barred and Unsupported by Fact or Law</u>
10

11         In its First Amended Complaint, the Trustee identified a single payment to Gladstone

12   from the proceeds of the CTGAM sale that the Trustee alleged was subject to avoidance and

13   recovery as a fraudulent transfer. This transfer, in the amount of $752,245.09, was listed in

14   Exhibit A to the First Amended Complaint and designated as a subsequent transfer related to the

15   sale of CTGAM. *See* First Amended Complaint [Docket No. 9] at p. 28. The Trustee gave no

16   indication whatsoever in its First Amended Complaint that it intended to seek recovery from

17   Gladstone with respect to any transfers other than those specifically identified in that pleading.

18   Instead, the Trustee limited the requested relief to transfers "***specified***" in Exhibit A to the First

19   Amended Complaint. *See* First Amended Complaint [Docket No. 9], ¶¶ 53, 57, 60, 67, 70, 73,

20   77, 79, 86. The Trustee did not reserve the right to seek the avoidance and recovery of any

21   additional unknown or unidentified transfers, beyond those itemized in the First Amended

22   Complaint.

23         The Trustee now seeks in Counts A through D of the Second Amended Complaint to

24   recover from Gladstone additional transfers, made to other parties, in an amount exceeding

25   $34,000,000. The only justification offered in support of these new claims is that the additional

26   transfers were made "for the benefit of" Gladstone because it owned equity in BW Piezo and/or

27   CTGAM. *See* Second Amended Complaint, ¶¶ 65, 67, 68, 69, 71, 72, 77, 78, 79. These new

28   claims against Gladstone should be dismissed with prejudice.

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1    As an initial matter, the new claims asserted against Gladstone in Counts A through D are

2    time barred.  Pursuant to section 546(a)(1)(a) of the Bankruptcy Code, the Trustee was required to

3    assert these claims no later than two years after the date CTG filed its petition for relief under

4    chapter 11 on October 14, 2016.  The statutory deadline has passed, and because the claims seek

5    to avoid and recover new transfers based on new facts as to Gladstone, they do not relate back.

6    *See Burtch v. Opus, LLC (In re Opus E., LLC)*, Adv. No. 11-52423 (MFW), 2013 WL 4478914,

7    at \*4 (Bankr. D. Del. Aug. 6, 2013); *Buchwald Capital Advisors, LLC v. JP Morgan Chase Bank,*

8    *N.A. (In re M. Fabrikant & Sons, Inc.)*, 447 B.R. 170, 182 (Bankr. S.D.N.Y. 2011), *aff'd*, 480

9    B.R. 480 (S.D.N.Y. 2012); *In re Metzeler*, 66 B.R. 977, 984 (Bankr. S.D.N.Y. 1986).

10    The new claims in Counts A through D against Gladstone should also be dismissed

11    because the Trustee has failed to allege facts to state a plausible cause of action for recovery from

12    Gladstone as "an entity for whose benefit" the subject transfers were made.  As an initial matter,

13    an indirect benefit is not sufficient to establish liability under section 550(a)(1) of the Bankruptcy

14    Code; rather, the benefit received must be "direct, ascertainable and quantifiable" and bear a

15    "necessary correspondence to the value of the property transferred."  *In re Inter. Mgmt Assoc.*,

16    399 F.3d 1288, 1293 (11th Cir. 2005).  The Trustee alleges no facts that even remotely satisfy this

17    standard of beneficiary liability.

18    Moreover, beneficiary liability under section 550(a)(1) requires that "the debtor must have

19    been motivated by an intent to benefit the individual or entity from whom the trustee seeks to

20    recover."  *Danning v. Miller (In re Bullion Reserve of North America)*, 922 F.2d 544, 547 (9th Cir.

21    1991) ("It is not enough that an entity benefit from the transfer; the transfer must have been made

22    for his benefit.").  The Second Amended Complaint contains no such allegations.  Furthermore,

23    "[t]he paradigm example of a transfer beneficiary is a guarantor.  When the guaranteed debt is

24    paid, the guarantor has not received the money, but it did receive a benefit – release from its

25    guarantee."  *Official Comm. of Unsecured Creditors v. Fountainhead Grp., Inc. (In re Bridgeview*

26    *Aerosol, LLC)*, 538 B.R. 477, 512 (Bankr. N.D. Ill. 2015); *see also* 5 Collier on Bankruptcy ¶

27    550.02[4] ("Two frequently cited examples of an entity for whose benefit the transfer was made

28    are (1) a third-party guarantor of the debtor whose liability is reduced by the debtor's payment of

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1   the guaranteed debt and (2) a third party whose debt is paid by the debtor (with payment going to

2   the third party's creditor as the initial transferee)." There is nothing in the Second Amended

3   Complaint to suggest that the transfers alleged to have been made in March 2016 were in

4   satisfaction of any obligations guaranteed by Gladstone (nor could there be).

5        The Trustee has failed to allege facts to support its claims against Gladstone as a

6   beneficiary of the transfers set forth in Counts A through D. There is no allegation that any

7   obligation of Gladstone was satisfied or that its liability was reduced by the transfers identified

8   and at issue in the Second Amended Complaint. The mere allegation that Gladstone held equity

9   in BW Piezo and/or CTGAM is insufficient to establish that it was an intended beneficiary under

10   section 550(a)(1), and no other facts are alleged to support such a claim.[4] The beneficiary claims

11   against Gladstone are simply not plausible and must be dismissed.

12   **III.**    **Counts E through H of the Second Amended Complaint Fail to State Plausible**
               **Claims for the Avoidance and Recovery of Fraudulent Transfer Claims Against**
13               **Gladstone**

14        In Counts E through H, the Trustee seeks to avoid and recover specific transfers itemized

15   in Schedule B to the Second Amended Complaint, and includes new transfers to Gladstone that

16   were never identified in the prior versions of the Trustee's complaint. These claims against

17   Gladstone should also be dismissed because they are barred under the applicable statutes of

18   limitation and because they are unsupported by facts sufficient to state plausible causes of action.

19        In Exhibit B to the First Amended Complaint, which summarized "CTG Transfers for the

20   Benefit of Affiliates and Subsidiaries," the Trustee listed transfers allegedly made to Gladstone

21   during the period December 3, 2012 through June 10, 2016 in the total amount of $2,731,668.15.

22   The Trustee sought only the recovery of transfers "specified" in Exhibit B to the First Amended

23   Complaint, and the First Amended Complaint did not seek the avoidance and recovery of any

24   other transfers from Gladstone. In Schedule B to the Second Amended Complaint, however, the

25

26

27

28

---

[4] The Trustee does not – and as a matter of fact cannot - allege that Gladstone held a controlling interest in BW Piezo. The Trustee's acknowledgment of this point is evidenced by revisions to the complaint that removed Gladstone from the definition of "Blue Wolf Entities" in the Second Amended Complaint. *Compare* First Amended Complaint at 2:3-5 *with* Second Amended Complaint at 2:3-8.

1    Trustee now identifies transfers in the total amount of $7,576,027.49 that are alleged to have been

2    made directly to Gladstone during the period from February 2012 to June 2016.

3        These new claims are barred under section 546(a)(1)(A) of the Bankruptcy Code because

4    they were asserted for the first time more than two years after the date of CTG's bankruptcy filing

5    on October 14, 2016.  These claims seek the recovery of new transfers and are based on new facts

6    and transactions that are unrelated to core allegations in the First Amended Complaint regarding

7    the sale of CTGAM, and therefore do not relate back.  *See Opus, LLC,* 2013 WL 4478914, at *4;

8    *In re M. Fabrikant & Sons, Inc.*, 447 B.R. at 182, *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012); *In re*

9    *Metzeler*, 66 B.R. at 984.  Moreover, except for the three transfers dated in 2015 and 2016, all of

10   the transfers to Gladstone identified in Schedule B to the Second Amended Complaint are alleged

11   to have been made more than two years prior to CTG's October 14, 2016 petition date.

12   Accordingly, the Trustee's claims under sections 548(a)(1)(A) and (a)(1)(B) of the Bankruptcy

13   Code for the avoidance and recovery of all transfers alleged to have been made before October

14   14, 2014 are also time barred.

15       The claims in Counts E through H against Gladstone also fail because they are based

16   solely on conclusory statements and are unsupported by any well pleaded facts.  Furthermore, and

17   as explained above, the Second Amended Complaint also omits key facts regarding Gladstone's

18   role as a secured lender that confirm the futility of the Trustee's claims against Gladstone.

19   Regardless of the reasons for the failure to disclose, the facts regarding the secured acquisition

20   financing that Gladstone provided pursuant to the December 2011 Note Purchase Agreement and

21   related documents confirm that the fraudulent transfer claims alleged in Counts E through H

22   against Gladstone are patently implausible (and indeed groundless).  "[R]epayments of fully

23   secured obligations—where a transfer results in a dollar for dollar reduction in the debtor's

24   liability—do not hinder, delay, or defraud creditors because the transfers do no put assets

25   otherwise available in a bankruptcy distribution out of their reach."  *In re First Alliance Mortg.*

26   *Co.*, 471 F.3d 977, 1008 (9th Cir. 2006); *see also Melamed v. Lake Cnty. Nat. Bank*, 727 F.2d

27   1399, 1402 (6th Cir. 1984) (finding payment subject to bank's security interest was not fraudulent

28   transfer); *In re Nat. Century Financial Enterprises, Inc.*, 783 F.Supp.2d 1003, 1029-30 (S.D.

1   Ohio 2011) (finding payment on secured debt not fraudulent transfer); *In re Walters*, 163 B.R.

2   575, 581 (Bankr. C.D. Cal. 1994) (no constructive fraudulent transfer claim where antecedent

3   obligation paid); 11 U.S.C. § 548(d)(2)(A) (satisfaction of antecedent debt of the debtor

4   constitutes value).

5                                    **JOINDER**

6        Gladstone hereby joins in the motions to dismiss filed by other defendants to the extent

7   that such motions are not inconsistent with the relief sought herein.

8                                  **CONCLUSION**

9        WHEREFORE, Gladstone Investment Corporation hereby requests that the Second

10  Amended Complaint be dismissed with prejudice, and that it be granted such other or further

11  relief as is just and appropriate.

12

13  DATED:  August 2, 2019                    BLANK ROME LLP

14

15                                  By:  /s/ Craig N. Haring

16                                         Cheryl S. Chang
                                           Jeffrey Rhodes
17                                         Craig N. Haring

18                                  Attorneys for
                                    GLADSTONE INVESTMENT CORPORATION
19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1925 Century Park East, 19th Floor, Los Angeles, CA  90067.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 2, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) August 2, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 2, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/2/19 | Michelle Grams | /s/ Michelle Grams |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
200729.00057/121593254v.1

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

## ATTACHMENT PAGE

1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

- Keith Patrick Banner    kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Peter J Benvenutti    pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- Jonathan Boustani    jboustani@btlaw.com
- Cheryl S Chang    Chang@Blankrome.com, Hno@BlankRome.com
- Brian L Davidoff    bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com
- Edward J Dennis    , eburch@lynnllp.com
- Tobias S Keller    tkeller@kellerbenvenutti.com
- Ian Landsberg    ilandsberg@sklarkirsh.com,
  lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptc
  y.com
- Andrew B Levin    alevin@wcghlaw.com,
  Meir@virtualparalegalservices.com;pj@wcghlaw.com;jmartinez@wcghlaw.com
- Christian A Orozco    corozco@lynnllp.com, thooker@lynnllp.com;ejohnson@lynnllp.com
- Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- David A Taylor    david@taylorstrategic.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

2. SERVED BY UNITED STATES MAIL:

DHAN, LLC
3236 Justamere Road
Woodridge, IL 60517

Adrian Garcia
2100 Ross Avenue, Ste 2700
Dallas, TX 75201

Sam Butler Hardy IV
2100 Ross Avenue, Ste. 2700
Dallas, TX 75201

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
200729.00057/121593254v.1

**F 9013-3.1.PROOF.SERVICE**

3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:

Honorable Deborah J. Saltzman - VIA PERSONAL DELIVERY
United States Bankruptcy Court
Central District of California
255 E. Temple Street, Suite 1634
Los Angeles, CA 90012

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
200729.00057/121593254v.1

**F 9013-3.1.PROOF.SERVICE**