1  BRIAN L. DAVIDOFF (SBN 102654)
   bdavidoff@greenbergglusker.com
2  KEITH PATRICK BANNER (SBN 259502)
   kbanner@greenbergglusker.com
3  GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
   1900 Avenue of the Stars, 21st Floor
4  Los Angeles, CA 90067
   (310) 553 3610
5
   DOUGLAS R. GOODING (BBO#: 558976)
6  *Admitted Pro Hac Vice*
   dgooding@choate.com
7  JONATHAN D. MARSHALL (BBO#: 680723)
   *Admitted Pro Hac Vice*
8  jmarshall@choate.com
   CHOATE, HALL & STEWART LLP
9  Two International Place
   Boston, MA  02110
10 (617) 248-5000

11 Attorneys For: Defendants
   FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE
12 CAPITAL II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP,
   AND AVANTE MEZZANINE PARTNERS II, INC.
13

14              **UNITED STATES BANKRUPTCY COURT**

15      **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

16

17 | In re | CASE NO. 9:16-bk-11912-DS |

18 | CHANNEL TECHNOLOGIES GROUP, LLC, | CHAPTER 11 |

19 |          Debtor. | CASE NO. 9:18-ap-01058-DS |

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| CORPORATE RECOVERY ASSOCIATES, LLC, As Trustee For The Liquidating Trust Of Channel Technologies Group, LLC, | **MOTION OF DEFENDANTS FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE PARTNERS II, INC. TO DISMISS THE SECOND AMENDED COMPLAINT** |

1
2
3
4       Plaintiff,
5    vs
6  BLUE WOLF CAPITAL PARTNERS, LLC,
   BLUE WOLF CAPITAL FUND II, L.P.,
7  GLADSTONE INVESTMENT
   CORPORATION, BLUE WOLF CAPITAL
8  ADVISORS L.P., BW PIEZO HOLDINGS,
   LLC, FIDUS INVESTMENT
9  CORPORATION, FIDUS MEZZANINE
   CAPITAL II, L.P., AVANTE MEZZANINE
10 PARTNERS SBIC, LP, AVANTE
   MEZZANINE PARTNERS II, INC., PENGDI
11 HAN, DHAN, LLC, GRANT THORNTON,
12 LLP, CTG ADVANCED MATERIALS, LLC,
   CTS CORPORATION, ELECTRO OPTICAL
13 INDUSTRIES,
14       Defendants.
15

**MOTION OF DEFENDANTS FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE PARTNERS II, INC. TO DISMISS THE SECOND AMENDED COMPLAINT**

**HEARING**
DATE:    September 10, 2019
TIME:    1:00 P.M.
PLACE:   Courtroom 1639
         255 E. Temple Street
         Los Angeles, CA 90012

2

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...........................................................................1

II.   RELEVANT BACKGROUND ........................................................................3

    A.    The Secured Loan ...............................................................................3

    B.    Relevant Procedural History ..............................................................5

III.  ARGUMENT .................................................................................................6

    A.    The Trustee Fails to Assert Viable Claims Against the Second Lien Lenders
Under the Bankruptcy Code for Repayment of the Secured Loan Because
Repayment was Made With the Proceeds of the Sale of a Non-Debtor Entity,
and the Trustee has Asserted Only a Legal Conclusion as to the Debtor's
Entitlement to Such Proceeds .............................................................7

    B.    The Trustee Fails to Plead an Actual Fraudulent Transfer Claim Against the
Second Lien Lenders...........................................................................8

        1.    Repayment of a Secured Loan Does Not Constitute an Intentional
Fraudulent Transfer..................................................................9

        2.    The Trustee Fails to Satisfy the Requirements of Rule 9(b)...............11

        3.    The Trustee Fails to Allege Any "Badges of Fraud."..........................13

        4.    The Trustee's Claims for Actual Fraudulent Transfer are Barred by
Section 548(c)'s Good Faith Defense ....................................17

    C.    The Trustee Fails to Plead a Constructive Fraudulent Transfer Claim Against
the Second Lien Lenders...................................................................19

        1.    The Trustee Fails to Allege Sufficient Facts to Substantiate That the
Debtor was Insolvent at the Time of the Transfers.............................20

        2.    The Trustee Fails to Allege a Lack of Reasonably Equivalent Value .20

        3.    The Trustee Has Not Pled Sufficient Facts to Recover From the
Second Lien Lenders as Subsequent Transferees of the Distributions 24

    D.    Count L of the Amended Complaint Must Be Dismissed Because It is Time-
Barred and It Fails to Plead Facts to Support a Preferential Transfer Claim
Against the Second Lien Lenders .....................................................26

        1.    The Preferential Transfer Claim Must be Dismissed Because the Claim
is Barred by the Applicable Statute of Limitations.............................26

            a.    The Preferential Transfer Claim is Time Barred by the
Applicable Limitations Period Under Bankruptcy Code Section
546.......................................................................27

            b.    The Trustee's Preferential Transfer Claim Does Not "Relate
Back" to the Time of Filing the Complaint ............................27

i

**TABLE OF CONTENTS**
(continued)

Page

1
2
      c.    The Trustee did not Obtain Leave to Amend to Add a New Claim Under Bankruptcy Code Section 547............................28

3
   2.   The Second Lien Lenders are Not "Insiders." ....................................29

4
   3.   To the Extent the Transfers Occurred More Than 90 Days Prior to the Petition Date, the Trustee Has Failed to Adequately Plead that the Debtor was Insolvent at the Time of the Alleged Transfers ...............32

5
6
   4.   The Trustee Fails to Allege that the Second Lien Lenders Received More than They Would Have Received Under a Hypothetical Liquidation ...........................................................................................33

7
8
E.   The Trustee Should Not Be Granted Leave to Further Amend Its Amended Complaint Because Its Claims Would Still Not Survive a Motion to Dismiss ........................................................................................................34

9
IV.   CONCLUSION...........................................................................................35

ii

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Acequia, Inc. v. Clinton (In re Acequia, Inc.),*
    34 F.3d 800 (9th Cir. 1994) ...........................................................16

*AFI Holdings, Inc. v. Mackenzie,*
    525 F.3d 700 (9th Cir. 2008) ..........................................................25

*AmerisourceBergen Corp. v. Dialysist West, Inc.,*
    465 F.3d 946 (9th Cir. 2006) ..........................................................34

*Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.,*
    583 F.2d 426 (9th Cir. 1978) ............................................................7

*Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.),*
    531 F.3d 1272 (10th Cir. 2008) ......................................................30

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................6

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.),*
    256 B.R. 664 (Bankr. S.D.N.Y. 2000)..............................................9

*Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.),*
    187 B.R. 315 (Bankr. C.D. Cal. 1995)............................................14

*Boyd v. Keyboard,*
    Case No. 99-04430, 2000 U.S. Dist. LEXIS 2904 (C.D. Cal. Mar. 1, 2000)........34

*Chodos v. W. Publ'g Co.,*
    292 F.3d 992 (9th Cir. 2002) ..........................................................34

*Davila v. Magna Holding Co.,*
    Case No. 97 C 1909, 2000 U.S. Dist. LEXIS 2684 (N.D. Ill. Feb. 28, 2000).......16

*Donell v. Kowell,*
    533 F.3d 762 (9th Cir. 2008) ............................................................9

*Elder v. Greer (In re Sand Hill Capital Partners III, LLC),*
    Case No. 08-30989, 2010 Bankr. LEXIS 3785 (Bankr. N.D. Cal. Oct. 25, 2010)31

*Feldman v. Chase Home Finance (In re Image Masters, Inc.),*
    421 B.R. 164 (Bankr. E.D. Penn. 2009) ..........................................20

*Flemmer v. Weiner (In re Vill. Concepts, Inc.),*
    Case No. EC-15-1186, 2015 Bankr. LEXIS 4100 (B.A.P. 9th Cir. 2015) ...........20

iii

*Forsyth v. Eli Lilly & Co.*,
   904 F. Supp. 1153 (D. Haw. 1995) ........................................................................ 17

*Freeland v. Enodis Corp.*,
   540 F.3d 721 (7th Cir. 2008) ............................................................................... 22

*Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*,
   126 B.R. 63 (B.A.P. 9th Cir. 1991) ..................................................................... 30

*Gil v. Maddalena (In re Maddalena)*,
   176 B.R. 551 (Bankr. D. Cal. 1995) .................................................................... 18

*Global Money Mgmt, L.P. v. McDonnold*,
   Case No. 06CV34, 2008 U.S. Dist. LEXIS 128733 (S.D. Cal. Feb. 27, 2008) ..4, 9,
   10

*Gottlieb v. Boyadzhyan (In re Boyadzhyan)*,
   Case No. 03-19614, 2005 Bankr. LEXIS 2117 (Bankr. C.D. Cal. Nov. 1, 2005) .14

*Grochocinski v. Knippen (In re Knippen)*,
   355 B.R. 710 (Bankr. N.D. Ill. 2016) ................................................................. 25

*GSM Wireless, Inc. v. Honarkar (In re GSM Wireless, Inc.)*,
   Case No. 2:12-bk-16456, 2013 Bankr. LEXIS 3298 (Bankr. C.D. Cal. April 5,
   2013) ................................................................................................................... 14

*Hackeling v. Charter Fin., Inc. (In re Luis Elec. Contracting Corp.)*,
   149 B.R 751 (Bankr. E.D.N.Y. 1992) ................................................................. 23

*Henry v. Lehman Commer. Paper, Inc. (In re First Alliance Mortg. Co.)*,
   471 F.3d 977 (9th Cir. 2006) ................................................................................. 9

*Henry v. Official Committee of Unsecured Creditors of Walldesign, Inc. (In re
   Walldesign, Inc.)*,
   872 F.3d 954 (9th Cir. 2017) ............................................................................... 24

*Hoffman v. Adelman (In re SCI Real Estate Invs., LLC)*,
   Case No. 2:11-BK-1575, 2013 Bankr. LEXIS 1780 (Bankr. C.D. Cal. May 1,
   2013) ................................................................................................................... 20

*In re Agric. Research and Tech. Grp.*,
   916 F.2d 528 (9th Cir. 1990) ............................................................................... 18

*In re Blanchard*,
   547 B.R. 347 (Bankr. C.D. Cal. 2016) .................................................................. 8

*In re Camacho*,
   18 B.R. 967 (Bankr. D. Neb. 1982) ..................................................................... 29

*In re Caremerica, Inc.*,
   415 B.R. 200 (Bankr. E.D.N.C. 2009) ................................................................ 31

iv

*In re Cavalier Homes of Georgia, Inc.*,
   102 B.R. 878 (Bankr. M.D. Ga. 1989)..................................................................23

*In re Computer Universe, Inc.*,
   58 B.R. 28 (Bankr. M.D. Fla. 1986) ...................................................................22

*In re Curry & Sorensen, Inc.*,
   112 B.R. 324 (9th Cir. BAP 1990)......................................................................21

*In re Farmer's Mkt.*,
   22 B.R. 71 (B.A.P. 9th Cir. 1982) ......................................................................25

*In re Gerdes*,
   246 B.R. 311 (Bankr. S.D. Ohio 2000)...............................................................23

*In re Musurlian*,
   97 B.R. 985 (Bankr. W.D. Wis. 1989).................................................................25

*In re Riverwood Gas & Oil v. Bureau of Land Mgmt.*,
   601 B.R. 685 (Bankr. C.D. Cal. 2019).................................................................8

*In re Sierra Steel, Inc.*,
   96 B.R. 275 (B.A.P. 9th Cir. 1989).....................................................................32

*In re Unified Commercial Capital, Inc.*,
   260 B.R. 343 (Bankr. W.D.N.Y. 2001) ...............................................................22

*Kelleher v. Kelleher*,
   Case. No. 13-cv-05450, 2014 U.S. Dist. LEXIS 2773 (N.D. Cal. Jan. 9, 2014)...11

*Kupetz v. Wolf*,
   845 F.2d 842 (9th Cir. 1988) ..............................................................................13

*Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*,
   139 F.3d 574 (7th Cir. 1998) ..............................................................................22

*Lustig v. Weisz & Assocs. (In re Unified Commer. Capital)*,
   Case No. 01-MBK-6604L, 2002 U.S. Dist. LEXIS 28721 (Bankr. W.D.N.Y. June 21, 2002) ..........................................................................................................10

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs., Co.*,
   910 F. Supp. 913 (S.D.N.Y. 1995)......................................................................16

*Miller v. American Heavy Lift Shipping*,
   231 F.3d 242 (6th Cir. 2000) ..............................................................................28

*Miller v. Rykoff-Sexton*,
   845 F.2d 209 (9th Cir. 1988) ..............................................................................34

*Miller v. Schuman (In re Schuman)*,
   81 B.R. 583 (B.A.P. 9th Cir. 1987).....................................................................30

v

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531 (9th Cir. 1989) ....................................................................34

*O'Toole v. Karnani (In re Trinsum Group, Inc.),*
    460 B.R. 379 (Bankr. S.D.N.Y. 2011) ........................................................14

*Off. Comm. of Unsecured Creditors v. Hancock Park Capital II, L.P. (In re Fitness*
    *Holdings Int'l, Inc.),*
    714 F.3d 1141 (9th Cir. 2013) ....................................................................22

*Rose v. Beverly Health & Rehab Servs.,*
    356 B.R. 18 (E.D. Cal. 2006), *aff'd* 295 Fed. Appx. 142 (9th Cir. 2008)
    (unpublished) ..............................................................................................6

*Rubin v. Manufacturers Hanover Trust Co.,*
    661 F.2d 979 (2d Cir. 1981)........................................................................23

*Runaj v. Wells Fargo Bank,*
    667 F. Supp. 2d 1199 (S.D. Cal. 2009)........................................................6

*Scouler & Co., LLC v. Schwartz,*
    Case No. 11-cv-06377, 2012 U.S. Dist. LEXIS 62252 (N.D. Cal. April 23, 2012)
    ....................................................................................................................21

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),*
    403 F.3d 43 (2d Cir. 2005)...........................................................................9

*Shipwash v. Knox County,*
    Case No. 3:08-cv-186, 2009 U.S. Dist. LEXIS 16918 (E.D. Tenn. Mar. 5, 2009)
    ....................................................................................................................30

*Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.),*
    990 F.2d 551 (10th Cir. 1993) ....................................................................33

*Spear v. Global Forest Prods. (In re Heddings Lumber & Bldg. Supply),*
    228 B.R. 727 (B.A.P. 9th Cir. 1998)............................................................8

*Spencer v. DHI Mortg. Co., Ltd.,*
    642 F. Supp. 2d 1153 (E.D. Cal. 2009).......................................................12

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ......................................................................12

*Thompson v. Jonovich (In re Food & Fibre Protection),*
    168 B.R. 408 (Bankr. D. Ariz. 1994)...........................................................32

*Turbinator, Inc. v. Superior Court,*
    33 Cal. App. 4th 443 (1995) .......................................................................11

*United States ex rel. Mathews v. HealthSouth Corp.,*
    332 F.3d 293 (5th Cir. 2003) ......................................................................28

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................11

*Yack v. Washington Mutual Inc.*,
    389 B.R. 91 (N.D. Cal. 2008) ................................................................6

**STATUTES**

11 U.S.C. § 101(32)(A) ................................................................14

11 U.S.C. § 101(31)(B) ................................................................29

11 U.S.C. § 544 ................................................................11

11 U.S.C. §544(a) ................................................................7

11 U.S.C. § 546 ................................................................27

11 U.S.C. § 546(a) ................................................................27

11 U.S.C. §547 ................................................................7

11 U.S.C. §547(b) ................................................................7

11 U.S.C. § 547(b)(4) ................................................................29

11 U.S.C. § 547(b)(5) ................................................................33

11 U.S.C. § 547(c)(4) ................................................................31

11 U.S.C. § 547(f) ................................................................32

11 U.S.C. § 548 ................................................................7

11 U.S.C. § 548(a)(1) ................................................................7

11 U.S.C. § 548(a)(1)(A) ................................................................8

11 U.S.C. § 548(a)(1)(B) ................................................................19, 20, 28

11 U.S.C. § 548(a)(1)(B)(i) ................................................................20

11 U.S.C. § 548(c) ................................................................17, 19, 25

11 U.S.C. § 548(d)(2)(A) ................................................................21

California Code of  Civil Procedure § 3439 ................................................................8, 9

California Code of Civil Procedure § 3439.02(b) ................................................................14

California Code of Civil Procedure § 3439.04(b) ................................................................14

California Code of Civil Procedure § 3439.05 ................................................................20

UCC § 9-312 ...........................................................................................................33

**OTHER AUTHORITIES**

5 COLLIER ON BANKRUPTCY ¶ 548.03[5] (16th ed.)...................................................21

5 COLLIER ON BANKRUPTCY ¶ 548.04[1][b] (16th ed.) .............................................16

5 COLLIER ON BANKRUPTCY ¶ 548.05 (16th ed.) .......................................................20

Fed. R. Bankr. P. 12(b)(6).....................................................................5, 6, 28, 34

Fed. R. Bankr. P. 15(a)(2) ....................................................................................28

Fed. R. Bankr. P. 1015 .........................................................................................28

Fed. R. Bankr. P. 7012 .......................................................................................1, 6

Fed. R. Civ. P. 9(b) .....................................................................11, 12, 16, 34

Fed. R. Civ. P. 15(a)..............................................................................................28

Fed. R. Civ. P. 15(c)..............................................................................................27

Pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, and Avante Mezzanine Partners II, Inc., (collectively, the "**Second Lien Lenders**") respectfully submit this Motion to Dismiss (the "**Motion to Dismiss**") the Second Amended Complaint [Ad. Pro. Docket No. 156] ("**Amended Complaint**") filed by Plaintiff Corporate Recovery Associates, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC ("**Plaintiff**" or the "**Trustee**").  In support of the Motion to Dismiss, the Second Lien Lenders respectfully state as follows:

## I.    PRELIMINARY STATEMENT

The Amended Complaint represents the Trustee's latest attempt to ensnare the Second Lien Lenders in a lawsuit that seeks the disgorgement of sale proceeds used, among other things, to repay a fully-secured loan made by the Second Lien Lenders in an arm's-length transaction with BW Piezo Holdings, LLC, CTG Advanced Materials, LLC, Electro-Optical Industries, LLC, and the above-captioned Debtor (collectively, the "**Loan Parties**").  As the Court is aware, the Trustee's original attempt to bring an action failed when the Court granted motions to dismiss filed by the Second Lien Lenders' and their co-defendants.  The Court, however, also granted the Trustee leave to amend the original complaint "to cure the deficiencies set forth in the Memorandum Decision." Memorandum Decision (as defined below), at 32.  As set forth herein, the Amended Complaint fails to "cure the deficiencies" in the original complaint.  The Amended Complaint, like the two versions that preceded it, is based on a hollow recitation of the elements of various causes of action, contains a number of conclusory allegations which this Court is not required to accept as true, and lacks information sufficient to substantiate each of the claims made against the Second Lien Lenders.  As a result, the Amended Complaint fails to assert a claim upon which relief can be granted. Consequently, the Amended Complaint should be dismissed with prejudice.

In March 2013, the Debtor and certain of its related entities entered into a secured financing (the "**Secured Loan**") with the Second Lien Lenders for the acquisition of a target.  In exchange for a $14,000,000 principal loan, the Second Lien Lenders received a security interest in substantially all of the assets of the Loan Parties.  The Second Lien Lenders recorded their security interest when they closed the Secured Loan.  Approximately two years after making the Secured Loan, the Loan Parties sold the target for over one and one-half times (1.5x) the original purchase price.  The Trustee recognizes that, pursuant to the terms of the loan documents governing the Secured Loan, the Loan Parties were legally required to – and did in fact – repay in full the principal, interest, and fees due to the Second Lien Lenders.  Having received payment in full on the Secured Loan, the Second Lien Lenders filed termination statements releasing their liens on the Loan Parties' property.

Under these facts, as a matter of law, the Second Lien Lenders are not liable under theories of actual or constructive fraudulent transfer law or preference law (a new claim that the Trustee has added to the Amended Complaint without obtaining leave to do so) on account of receiving payments they were owed pursuant to the terms of the loan agreement.  Even if there were some facts that would show it is plausible (not just possible) that the Second Lien Lenders could be liable under the theories asserted, the Trustee has failed to allege facts sufficient to substantiate his claims.  Instead, the Trustee has relied on "threadbare recitals" and conclusory statements in its attempt to substantiate the alleged acts that could give rise to a claim for actual fraudulent transfer claims; that the Debtor did not receive value for the transfers made; that the Debtor was insolvent at the time of *each* of the transfers; and that the Second Lien Lenders are "insiders" and thus subject to an extended lookback period under the preference statute.

The Second Lien Lenders provided secured financing for the acquisition of a target, received interest payments according to the terms of the Secured Loan, and then, when the target was sold,

2

were repaid what they were owed under the Secured Loan.  In exchange, the Second Lien Lenders released their security interests in the Loan Parties' property and extinguished the Loan Parties' antecedent secured debt.  In short, they provided the Debtor reasonably equivalent value for all payments that they received.

Furthermore, the Amended Complaint fails to allege facts that show it is possible, let alone *plausible*, that the transactions between the Loan Parties (including the Debtor) and the Second Lien Lenders were anything but ordinary course, arm's-length, commercial transactions.  However, for the first time, the Trustee has raised a time-barred preference claim against the Second Lien Lenders. Even if the claim were not barred by the applicable statute of limitations, the Trustee has asserted the legal conclusion (with no factual allegations supporting it) that the Second Lien Lenders were "insiders" of the Debtor.  The Second Lien Lenders do not qualify as statutory insiders, and the Trustee has failed to allege any facts supporting that they are non-statutory insiders.  As such, even if the Trustee had pled sufficient facts to substantiate the other elements of a preference claim, the lookback period for any preference liability is limited to the ninety (90) day period preceding the date the Debtor filed for bankruptcy.  None of the transfers received by the Second Lien Lenders occurred during this time.  Given the failure to allege facts substantiating any of the Trustee's claims, the Amended Complaint should be dismissed as to all counts against the Second Lien Lenders.

## II.    RELEVANT BACKGROUND

### A.    The Secured Loan.

In March 2013, the Second Lien Lenders entered into that certain Investment Agreement (the "**Agreement**"), a copy of which is attached as Exhibit 6 to the Amended Complaint, dated as of October 11, 2013, by and among the Loan Parties , Avante Mezzanine Partners SBIC, LP, as a Lender, and Fidus Mezzanine Capital II, L.P., as a Lender and Collateral Agent, for the acquisition

of the assets of a company owned by H.C. Materials, Inc. (the "**Target**").  In or around October 2013, the Target was purchased for $48 million.  Amended Complaint, ¶ 35.

Pursuant to the terms of the Agreement, in exchange for making the Secured Loan, the Second Lien Lenders received a security interest in substantially all of the assets of the Loan Parties. *See* Amended Complaint, Exhibit 7 (the "**Pledge and Security Agreement**").  Through the Pledge and Security Agreement, the Pledgors (which included each of the Loan Parties) acknowledged that they "will obtain benefits as a result of the extension of credit to the Loan Parties under the Investment Agreement[.]"  Pledge and Security Agreement, Recital D.

The Loan Parties agreed to be jointly and severally liable for the Secured Loan under the Agreement.  Agreement, § 10.14(a).  Each of the Loan Parties (including the Debtor) further agreed that "all indebtedness and other obligations, whether now or hereafter existing, of any Credit Party to such Borrower . . . shall be, and hereby are, subordinated and made junior in right of payment to the Obligations." *Id*., § 10.14(c). The Loan Parties agreed that "[c]oncurrently with (i) any Asset Disposition consisting of all or substantially all of the assets of the Parent or any of the other [Loan Parties]…the [Loan Parties] shall prepay the Loans in full, together with all accrued but unpaid interest and fees thereon." *Id.*, § 2.4(c).  To the extent the proceeds of any sale were insufficient to repay the Secured Loan, the Pledgors (including the Loan Parties) would have been jointly and severally liable to the Second Lien Lenders for such deficiency.  Pledge and Security Agreement, § 6.2(b).

In March 2016, the Target sold for approximately $73 million, netting sufficient proceeds to repay the Secured Loan.  Amended Complaint, ¶ 46.  On or about March 9, 2016, the Loan Parties and the Second Lien Lenders, among others, executed a letter (the "**Payoff Letter**")[1] providing that

---

[1]     A copy of the Payoff Letter is attached as **Exhibit C** to the *Request for Judicial Notice in Support of Motion of Defendants Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners*

4

the proceeds of the sale would be used to repay the Secured Loan in full, including any interest and

fees due thereunder.  The Second Lien Lenders received $14,529,374.68 in full and final satisfaction

of the Secured Loan.

On October 14, 2016 (the "**Petition Date**"), CTG filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code.

### B.    Relevant Procedural History.

On October 12, 2018, the Trustee initiated the instant adversary proceeding seeking, among

other things, recovery of all payments the Second Lien Lenders received from the Loan Parties over

the course of the parties' commercial relationship (the "**Transfers**").  The Trustee amended its

original complaint on November 5, 2018 (the "**Complaint**").

On December 21, 2018, the Second Lien Lenders responded to the Complaint with a motion

to dismiss, alleging that the Complaint was devoid of factual allegations relating to the Second Lien

Lenders, [Ad. Pro. Docket No. 49] (the "**Original Motion to Dismiss**"), and the Original RJN in

support thereof.

After a hearing on the Original Motion to Dismiss, as well as several other motions to

dismiss filed by certain other defendants to this action, on May 31, 2019, this Court entered its

*Memorandum Decision Re Defendants' Motions to Dismiss Plaintiff's First Amended Complaint*

*Pursuant to Fed. R. Civ. P. 12(b)(6)* [Ad. Pro. Docket No. 146] (the "**Memorandum Decision**").

The Court concluded that the Trustee failed to state a claim upon which relief can be granted with

respect to each of the counts in the Complaint.  However, the Court granted the Trustee leave to

amend the Complaint to, specifically, "cure the deficiencies identified in this memorandum."

---

*SBIC, LP, Avante Mezzanine Partners II, Inc. to Dismiss the First Amended Complaint* [Ad. Pro. Docket No.
50] the ("**Original RJN**").

Memorandum Decision, at 32.  The Memorandum Decision specifically did not grant the Trustee

leave to add any new claims against the Second Lien Lenders or any of the other defendants.

On June 28, 2019, the Trustee amended its complaint for the second time and filed the

Amended Complaint.

## III.  ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) ("**Rule 12(b)(6)**"), made applicable to this

bankruptcy case by Federal Rule of Bankruptcy Procedure 7012, provides that a defendant may

bring a motion to dismiss based on a "failure to state a claim upon which relief can be granted[.]"

In evaluating a motion to dismiss, allegations of material fact are taken as true and construed in the

light most favorable to the nonmoving party.  *Yack v. Washington Mutual Inc.*, 389 B.R. 91, 95

(N.D. Cal. 2008) (citations omitted).  In order to survive a motion to dismiss, "a plaintiff must allege

facts that are enough to raise his/her relief 'above the speculative level.'"  *Id.* (citing *Bell Atl. Corp.*

*v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)).  A plaintiff must allege "enough facts to state a claim

that is plausible on its face," not just conceivable.  *Id.* (citing *Twombly*, 127 S. Ct. at 1974).  The

plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Runaj v. Wells Fargo Bank*, 667 F. Supp. 2d

1199, 1205 (S.D. Cal. 2009) (internal quotations omitted).  Moreover, although the Court must

accept as true the plaintiff's factual allegations, the plaintiff is not afforded this presumption with

respect to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.").

In considering a Rule 12(b)(6) motion, the Court may also consider documents that are

submitted as part of the complaint and materials "that are not part of the pleadings but that are

'matters of public record' of which the court may take judicial notice."  *Rose v. Beverly Health &*

6

*Rehab Servs.*, 356 B.R. 18, 22 (E.D. Cal. 2006), *aff'd* 295 Fed. Appx. 142 (9th Cir. 2008)

(unpublished) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see also*

*Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 429-30 (9th Cir. 1978).

> **A.    The Trustee Fails to Assert Viable Claims Against the Second Lien Lenders Under the Bankruptcy Code for Repayment of the Secured Loan Because Repayment was Made With the Proceeds of the Sale of a Non-Debtor Entity, and the Trustee has Asserted Only a Legal Conclusion as to the Debtor's Entitlement to Such Proceeds.**

As discussed further herein, the Trustee has asserted claims against the Second Lien Lenders

under Bankruptcy Code Sections 544, 547, and 548.  As a threshold issue, at least with respect to

the Transfers used to repay the Secured Loan, the Trustee's claims fail on their face because each

of these Bankruptcy Code provisions requires that the Transfers be of an "interest of the debtor in

property."[2]

The Trustee admits that in March 2016, "Blue Wolf Capital Partners . . . sold CTG Advanced

Materials for approximately $73 million to CTS Corporation."  Amended Complaint, ¶ 46.  The

Trustee does not allege that the proceeds of the sale of non-debtor CTG Advanced Materials were

ever transferred to the Debtor.  On the contrary, the Trustee admits that, "because BW Piezo did not

have its own bank account, Blue Wolf Capital Partners directed CTS Corporation to transfer the

proceeds from the sale of CTG Advanced Materials to Blue Wolf Capital Fund."  *Id.*

In an effort to carry its burden to establish *prima facie* avoidance claims, the Trustee alleges

throughout the Amended Complaint that the Debtor was entitled to the sale proceeds that were

transferred to, among other things, repay the Secured Loan.  *See, e.g.*, Amended Complaint, at ¶¶

64, 90, 112, & 137.  These statements are not factual allegations but, instead, legal conclusions as

to the Debtor's purported property interests in the proceeds of the sale of non-debtor entity CTG

---

[2]    *See* 11 U.S.C. §§ 544(a), 547(b), 548(a)(1).

7

Advanced Materials.  The Court is not required to accept such statements as true for purposes of

evaluating this Motion to Dismiss.  *See, e.g.*, *In re Riverwood Gas & Oil v. Bureau of Land Mgmt.*,

601 B.R. 685, 696 (Bankr. C.D. Cal. 2019) ("Debtor's assertions about . . . obtaining a 'property'

interest are not factual allegations.  They are legal conclusions.  This Court is not bound to accept

as true a legal conclusion couched as a factual allegation.") (citation and internal quotations

omitted).  The Trustee has therefore failed to plead facts establishing that the Debtor had an interest

in the proceeds transferred to repay the Secured Loan.  *See Spear v. Global Forest Prods. (In re*

*Heddings Lumber & Bldg. Supply)*, 228 B.R. 727, 730 (B.A.P. 9th Cir. 1998) (upholding dismissal

of claim to avoid transfer because "it was not established that the Debtor owned the funds" being

transferred).[3]

> **B.**     **The Trustee Fails to Plead an Actual Fraudulent Transfer Claim Against the
> Second Lien Lenders.**

Counts A, C, E, and G of the Amended Complaint seek to avoid the transfers made to the

Second Lien Lenders under the "actual fraud" provisions of the federal and state fraudulent transfer

statutes, Bankruptcy Code Section 548(a)(1)(A) and the California Uniform Fraudulent Transfer

Act, which require an "actual intent to hinder, delay, or defraud."[4]  11 U.S.C. § 548(a)(1)(A); Cal.

Civ. Code § 3439; *see Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008); *Henry v. Lehman*

---

[3]     As discussed in greater detail *infra* in footnote 10, the Trustee seeks to plead in the alternative that the Loan Parties existed as alter egos of one another, and that even if the Debtor never received or transferred the proceeds of the sale of CTG Advanced Materials, it had a property interest in those proceeds because the Loan Parties commingled their assets.  Amended Complaint, ¶ 39.  Even if this theory were true (and the Second Lien Lenders have no reason to believe it is), it would mean that alter ego entities who commingled their assets likewise commingled their liabilities.  As set forth *infra* at Section III(B)(1), the repayment of secured loan obligations does not constitute a fraudulent transfer.  Nor are transfers made to a fully-secured creditor subject to avoidance under Bankruptcy Code Section 547, since the creditor will not receive more than it otherwise would in a chapter 7 liquidation.  *See infra* Section III(D)(4).

[4]     The California Uniform Fraudulent Transfer Act has been renamed the California Voidable Transactions Act (the "CVTA") as of January 1, 2016.  *See* Cal. Civ. Code § 3439; *In re Blanchard*, 547 B.R. 347, 351 n.4 (Bankr. C.D. Cal. 2016).

*Commer. Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977, 1008 (9th Cir. 2006); *Global Money Mgmt, L.P. v. McDonnold*, Case No. 06CV34, 2008 U.S. Dist. LEXIS 128733, *10 (S.D. Cal. Feb. 27, 2008).   The Second Lien Lenders submit that, for the reasons set forth below, the Amended Complaint does not state a claim for intentional fraudulent transfer, and Counts A, C, E, and G of the Amended Complaint should be dismissed.

          **1.**      **Repayment of a Secured Loan Does Not Constitute an Intentional Fraudulent Transfer.**

"Repayments of fully secured obligations – where a transfer results in a dollar for dollar reduction in the debtor's liability – do not hinder, delay, or defraud creditors because the transfers do not put assets otherwise available in a bankruptcy distribution out of their reach." *First Alliance Mortg. Co.*, 471 F.3d at 1008 (internal quotations omitted);  *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54 (2d Cir. 2005) ("[A] conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another.") (citation and quotations omitted).   While the Trustee has alleged that CTG's loan repayments to the Second Lien Lenders allowed for the "liquidation of CTG Advanced Material's assets to be siphoned to Blue Wolf Capital Advisors through BW Piezo and away from CTG's creditors," the Trustee asserts no facts (as opposed these conclusory statements) that the alleged Transfers caused any diminution in CTG's estate. *See, e.g.,* Amended Complaint, ¶ 65.   This is because repayments on an antecedent debt do not result in a diminution of estate value. *See Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 679 (Bankr. S.D.N.Y. 2000).   The Trustee concedes that the repayments of the loan obligations were made on account of an antecedent debt owed by the Debtors to the Second Lien Lenders. *See* Amended Complaint, ¶¶ 65, 67, 286.   Therefore, the Transfers could not have caused diminution in the value of CTG's estate. *See Lustig v. Weisz & Assocs. (In re Unified*

*Commer. Capital*), Case No. 01-MBK-6604L, 2002 U.S. Dist. LEXIS 28721, *16 (Bankr. W.D.N.Y. June 21, 2002) ("The simple fact is that the use of funds for a period of time has value.").[5]

In alleging that "Plaintiff's research and receipt of public records do not reflect any perfected lien" by the Second Lien Lenders, the Trustee attempts to downplay the fact that its efforts to recover a secured debt repayment fail as a matter of law. Amended Complaint, ¶ 114. Relying on this new allegation, the Amended Complaint reaches the remarkable conclusion that "at best, [the Second Lien Lenders] would be another unsecured creditor of CTG and should have shared the loan repayments with the other secured creditors." *Id.*; *See also* Amended Complaint, ¶ 281. This conclusion relies on an incorrect interpretation of law.

First, as discussed below, the Second Lien Lenders perfected their security interests by filing financing statements on October 11, 2013. *See* **Exhibit A** to the concurrently filed *Request for Judicial Notice in Support of Motion of Defendants Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, Avante Mezzanine Partners II, Inc., to Dismiss the Second Amended Complaint* (the "**RJN**").

Even assuming *arguendo* that was not the case, the Trustee confuses the perfection of a lien with its validity.

> The failure to perfect a security interest does not nullify that interest. … [An] unperfected interest is not null and void. For example, an unperfected security interest will defeat the interest of an unsecured general creditor. The only requirements for validity are those set out in [UCC] section 9203: a signed agreement, value given, and the debtor's rights in the collateral. Once these are met, an enforceable security interest exists.

---

[5]  This Court observed in its Memorandum Decision that "While repayment of a fully secured loan pursuant to a valid financing agreement, of and by itself, may not be fraudulent, the court is reluctant to dismiss as to the Mezzanine Defendants on such ground at this early point in the pleading stage," Memorandum Decision, at 18 n.15. Even though the Second Lien Lenders maintain that repayment of the Secured Loan cannot, as a matter of law, be an intentional fraudulent transfer, the Trustee's intentional fraudulent transfer claims fail for the additional reasons stated in Section III(B) hereof.

10

*Turbinator, Inc. v. Superior Court*, 33 Cal. App. 4th 443, 450-51 (1995).

Certainly, the priority of unperfected liens becomes particularly relevant upon the filing of a bankruptcy due to a trustee's "strong arm" power found under Section 544 of the Bankruptcy Code.  The Amended Complaint, however, does not seek to avoid any alleged unperfected security interest that existed at the time of the bankruptcy filing.  Rather, the Amended Complaint alleges that the Second Lien Lenders were paid on the Secured Loan prior to the Petition Date during a period of approximately December 2013 through March 2016.  Amended Complaint, ¶¶ 38, 65-67.  As such, the Second Lien Lenders had no obligation at the time of repayment to "share loan repayments" with unsecured creditors, as their security interest, perfected or not, would have priority over them.

### 2.     The Trustee Fails to Satisfy the Requirements of Rule 9(b).

Because claims for intentional fraudulent transfer under Section 548 and the CVTA sound in fraud, the Trustee is required to plead the circumstances constituting fraud with particularity in order to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b).   Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances surrounding fraud or mistake."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (internal quotations omitted); *see also Kelleher v. Kelleher*, Case. No. 13-cv-05450, 2014 U.S. Dist. LEXIS 2773, *16 (N.D. Cal. Jan. 9, 2014) ("Because a claim for actual fraudulent transfer involves an allegation of fraud or mistake, it is subject to [Rule] 9(b), which requires a party to state with particularity the circumstance constituting fraud or mistake and is applied by a federal court to both federal and state law claims.") (internal quotations omitted).

11

Moreover, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotations omitted). The *Swartz* court found that "at a minimum," plaintiffs must identify the role of each defendant in the alleged fraudulent scheme by pleading specific (not general) misconduct. *Id.* at 765.

As this Court recognized in its Memorandum Decision, the Trustee failed to state a factual basis with respect to the alleged participation of the Second Lien Lenders in the alleged scheme to "hinder, delay, and defraud" CTG customers in its Complaint. Memorandum Decision, at 18. This deficiency persists as the Amended Complaint lacks sufficient factual allegations regarding the Debtor's fraudulent intent in making the Transfers to the Second Lien Lenders. At most, the Trustee makes conclusory allegations that the Transfers were made to "hinder, delay, and defraud CTG's creditors," which fall far short of the specificity required by Rule 9(b). *See, e.g.,* Amended Complaint, ¶ 85. Where, as here, fraud-based claims are being asserted against multiple defendants, the Trustee "must provide each and every defendant with enough information to enable them to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with." *Spencer v. DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1164 (E.D. Cal. 2009) (internal quotations omitted). The Trustee relies on broad allegations of a fraudulent scheme and asserts allegations against the Second Lien Lenders that are, similarly, hopelessly vague. Not only is it impossible to discern with any precision which defendants engaged in the alleged "scheme" to defraud CTG creditors, it is not clear from the Trustee's allegations how the repayments due on the Secured Loan were intended to "hinder, delay, or defraud creditors." Nor does the Trustee's statement that the Debtor was "forced" to "enter into separate loan and investment agreements" with

the Second Lien Lenders withstand scrutiny.  Amended Complaint, ¶ 33.  There is no allegation, let alone explanation, as to how the Second Lien Lenders "forced" the Debtor to enter into the loan transaction.  Even if there were, the Trustee is time barred from attacking the transactions that gave rise to the Secured Loan in October 2013.

Despite having received leave to amend its complaint yet again, the Trustee has failed to show how the Second Lien Lenders received the Transfers "with actual intent to defraud" creditors, let alone had knowledge of any alleged scheme.  It follows that Counts A, C, E, and G of the Amended Complaint must be dismissed as to the Second Lien Lenders.

### 3.    The Trustee Fails to Allege Any "Badges of Fraud."

In the absence of direct evidence of intent, courts will examine whether the plaintiff has pleaded certain "badges of fraud."  *Kupetz v. Wolf*, 845 F.2d 842, 846 (9th Cir. 1988).  The following badges of fraud, when sufficiently alleged and considered on the whole, may create an inference of fraudulent intent: (1) whether the transfer or obligations was to an insider; (2) whether the debtor retained possession or control of the property transferred after the transfer; (3) whether the transfer or obligation was disclosed or concealed; (4) whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) whether the transfer was of substantially all the debtor's assets; (6) whether the debtor absconded; (7) whether the debtor removed or concealed assets; (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.  Cal. Civ. Code § 3439.04(b); *Gottlieb v. Boyadzhyan (In re Boyadzhyan)*, Case No. 03-19614, 2005 Bankr. LEXIS

13

2117, *11 (Bankr. C.D. Cal. Nov. 1, 2005).    The Amended Complaint does not allege, in any instance with respect to the Transfers, "badges of fraud" numbers (2), (3), (4), (5), (6), (7), (10), or (11).

The remaining "badges of fraud" can easily be dismissed.  As set forth *infra* at Section III(D)(2), the Second Lien Lenders were not "insiders" of the Debtor, and as set forth *infra* at Section III(C)(2), payment of a preexisting debt, *i.e.* the Secured Loan, constitutes "reasonably equivalent value."

The only "badge" left is insolvency.[6]  The insolvency "badge of fraud" is not present as it relates to the Transfers received by the Second Lien Lenders because the Trustee has failed to temporally link CTG's alleged insolvency to the particular Transfers.  *See, e.g., GSM Wireless, Inc. v. Honarkar (In re GSM Wireless, Inc.)*, Case No. 2:12-bk-16456, 2013 Bankr. LEXIS 3298, *118 (Bankr. C.D. Cal. April 5, 2013) (applying CVTA and dismissing insolvency "badge of fraud" because Trustee failed to allege insolvency at the time of the transaction); *O'Toole v. Karnani (In re Trinsum Group, Inc.)*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011) ("The operative reference point for determining insolvency is the time ***at which the transfer took place***.") (emphasis supplied).

All but one of the Transfers to the Second Lien Lenders occurred in 2015 or earlier.[7]  In the Amended Complaint, the Trustee alleges that "[f]rom December 20, 2013 to December 31, 2015,

---

[6]    The CVTA defines "insolvency" under California Civil Code § 3439.02(a) using two different tests: "balance sheet test" and the "equity" or "cash flow test."  Cal. Civ. Code § 3439.02(a).  Under the "balance sheet test," "a debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets."  Cal. Civ. Code § 3439.02(a); 11 U.S.C. § 101(32)(A); *Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*, 187 B.R. 315, 328 n.22 (Bankr. C.D. Cal. 1995).  The Trustee offers no evidence that the Debtor was balance sheet insolvent—at no point does the Trustee allege facts setting forth the amount of the Debtors' assets and/or liabilities.  Under the alternative "equity" or "cash flow test," "a debtor who is generally not paying his or her debts as they become due is presumed to be insolvent."  Cal. Civ. Code § 3439.02(b).

[7]    The Trustee alleges that "by January 2016, CTG was insolvent and not making timely payments to its vendors," Amended Complaint, ¶ 44.  However, as support, the Trustee cites to only one exhibit referencing only one

14

CTG made regular payments to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. totaling $1,959,987.31.    From December 19, 2013 to February 18, 2016, CTG made regular payments to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc., totaling $1,957,300.44." Amended Complaint, ¶ 38.  Although the Amended Complaint fails to so allege, such payments were made on account of interest and fees owing to the Second Lien Lenders pursuant to the terms of the Agreement (such payments collectively being referred to herein as the "**Interest and Fee Payments**").

To support the allegation that payments made to the Second Lien Lenders, including the Interest and Fee Payments, were made at a time when the Debtor was insolvent, the Amended Complaint relies on the conclusory allegation that "[t]hroughout 2014 and 2015 . . . CTG was unable to pay its debts as they came due." Amended Complaint, ¶ 40.  To support that assertion, the Trustee cites broadly to a complaint filed in the California Superior Court for the County of Santa Barbara (the "**Phillips Complaint**") against CTG and two *non-debtor entities*, BW Piezo, and Piezo Investment Holdings, LLC ("**Piezo Investment**").  The Philips Complaint does not suggest with any specificity that CTG was "unable to pay its debts as they came due" at any particular time. Although it asserts that "CTC LLC [*sic*]" had a heavy debt load that was hindering its growth (which does not evidence balance sheet or cash flow insolvency), it combines all three defendants (BW Piezo and Piezo Investment being non-debtors in this case) to allege that "*Defendants'* operating profits were insufficient to meet their debt obligations."  Amended Complaint, Exhibit 8, ¶ 18 (emphasis supplied).  This imprecision is a far cry from the heightened pleading standard of Rule 9(b).  Similarly, the Amended Complaint alleges no facts setting forth the amount of the Debtor's assets and liabilities.  Because the Trustee has failed to provide minimal factual support, if any,

---

vendor complaining about late payments in the amount of less than $21,000.  *See id.* at Exhibit 12.  The Amended Complaint fails to allege any other facts evidencing a failure to pay debts as they become due.

15

establishing CTG's insolvency at the point of the Transfers to the Second Lien Lenders, this "badge of fraud" is not present here.

Regardless, assuming *arguendo* that the Debtor's insolvency has been sufficiently alleged (although the Second Lien Lenders do not believe it has) the presence of this single "badge of fraud" alone is insufficient to draw an inference that CTG acted with actual fraudulent intent when it fulfilled its obligations to repay the Secured Loan. *See, e.g.*, *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 806 (9th Cir. 1994) ("The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent significantly clear evidence of a legitimate supervening purpose.") (citations omitted); *see also Davila v. Magna Holding Co.*, Case No. 97 C 1909, 2000 U.S. Dist. LEXIS 2684, *41 (N.D. Ill. Feb. 28, 2000) (granting summary judgment where plaintiff had produced evidence falling into only three of the eleven "badges of fraud" categories enumerated in the Uniform Fraudulent Transfers Act); *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs., Co.*, 910 F. Supp. 913, 935-36 (S.D.N.Y. 1995) (entering judgment for defendants where only one badge of fraud was established); 5 COLLIER ON BANKRUPTCY ¶ 548.04[1][b] (16th ed.) ("Although insolvency and indicia of an unequal exchange can be badges of fraud, they have no special weight compared with other badges, and indeed may be irrelevant if there is no other evidence, or contrary evidence, of intent.").

**4.    The Trustee's Claims for Actual Fraudulent Transfer are Barred by Section 548(c)'s Good Faith Defense.**

As set forth herein, the Amended Complaint fails to allege a *prima facie* claim for actual fraudulent transfer.  What it succeeds in doing, however, is establishing the Second Lien Lenders' defense under Section 548(c), which shields from avoidance transfers that were received for value

and in good faith.[8]  Defenses that appear on the face of a complaint may be raised by a motion to dismiss.  *See, e.g., Forsyth v. Eli Lilly & Co.*, 904 F. Supp. 1153, 1156 (D. Haw. 1995) (motion to dismiss based on affirmative defense may be appropriate where affirmative defense apparent from face of complaint).

First, the Amended Complaint establishes that the Second Lien Lenders gave value in exchange for the Transfers.  The Amended Complaint admits that the purpose of the Secured Loan was, at least in part, to acquire the Target.  Amended Complaint, ¶¶ 31, 33.  The Amended Complaint further admits that the $14 million Secured Loan, in addition to other financing, permitted the Loan Parties to acquire the Target for $48 million.  *Id.* at ¶ 35.  Furthermore, the Amended Complaint provides that the Target was subsequently sold for $73 million, representing a profit of one and one-half times the original purchase price.  *Id.* at ¶ 46.  Pursuant to the terms of the loan documents governing the Secured Loan, the Loan Parties were required to – and did in fact – repay in full the principal, interest, and fees due the Second Lien Lenders.[9]  As set forth *infra* at Section III(C)(2), payment of a preexisting debt is "value" as a matter of law, especially where, as was the case here, the preexisting debt allowed for the debtor to generate value.[10]

---

[8]    Section 548(c) of the Bankruptcy Code provides:

Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligation gave value to the debtor in exchange for such transfer or obligation.

[9]    In bringing its claim for avoidance of the loan repayments as preferential transfers, which, for the reasons set forth *infra* in Section III(D), should be dismissed, the Trustee admits that such transfers "were made on account of a debt obligation for which CTG was legally bound to pay to the [Second Lien Lenders] pursuant to the terms of a loan and investment agreement." Amended Complaint, ¶ 286.  The Trustee cannot have it both ways. Repayment of the Secured Loan cannot be a fraudulent transfer because there was no value for such payments while, at the same time, be a preferential transfer because it was made on account of a preexisting debt obligation.

[10]    Throughout the Amended Complaint, the Trustee weaves allegations that BW Piezo, CTG, and CTG Advanced Materials (as each entity is defined in the Amended Complaint and referred to herein as the "**Alleged Alter Ego Entities**") "operated as alter egos of each other" by commingling funds and assets of the various entities.

17

Second, "good faith" is not defined in the Bankruptcy Code, but courts define the "good faith"

requirement to mean that, viewed objectively, the transferee either knew or should have known of

the fraudulent nature of the transfer.  *See In re Agric. Research and Tech. Grp.*, 916 F.2d 528, 535-

36 (9th Cir. 1990); *Gil v. Maddalena (In re Maddalena)*, 176 B.R. 551, 555 (Bankr. D. Cal.

1995).  Aside from unsubstantiated claims that the Debtor was "forced" to enter into the Secured

Loan, Amended Complaint, ¶ 33, the Trustee makes no claim or allegation that the Second Lien

Lenders knew of any alleged fraudulent scheme in connection with the Transfers, nor does the

Trustee allege any "red flags" that could be construed as sufficient to put the Second Lien Lenders

on inquiry notice of any fraudulent scheme in connection with the Transfers.  In fact, as part of its

pleadings, the Trustee cites to and includes as exhibits: (1) a trade article announcing the acquisition

of the Target that explains "[p]rior to the acquisition, CTG's key customers were from the military

and navy industries. With the addition of H.C. Materials, CTG will be poised to expand its customer

base to markets such as medical ultrasound imaging, ocean mining and sonar systems" (Amended

Complaint, Exhibit 8); and (2) a press release issued shortly after closing the Secured Loan, stating:

> Proceeds from the transaction were used to refinance Channel Technologies'
> existing credit facility and partially fund the acquisition of the assets of [H.C.
> Materials], the leading producer of piezoelectric crystals.  Together, Channel
> Technologies and H.C. Materials are the leading developers and manufacturers of
> mission critical imaging components using piezoelectric ceramics and crystals,
> primarily used in defense, healthcare and energy applications.

Amended Complaint, Exhibit 4.

---

Amended Complaint, ¶ 39.  The Second Lien Lenders are not aware of any facts concerning any purported commingling that would support the Trustee's statements.  Likewise, and as set forth in greater detail in the *Motion to Dismiss the Second Amended Complaint* filed by the Blue Wolf entities [Ad. Pro. Docket No. 165], the Amended Complaint fails to adequately allege such facts.  Regardless, even if the Alleged Alter Ego Entities "commingled funds and assets of the companies," Amended Complaint, ¶ 39, it follows that they likewise commingled liabilities.  Thus, the Interest and Fee Payments and the repayment of the Secured Loan, whether strictly by the Debtor, or by and on behalf of the Alleged Alter Ego Entities, constitute payment of preexisting obligations of whomever made those payments.

18

The documents positioning CTG as a "leading developer and manufacturer" in its industry "poised to expand its customer base" following the acquisition of the Target supports "good faith," a belief that the extension of credit to the Loan Parties would help catalyze the Loan Parties' growth, which is further evidenced by the fact that two years after making the Secured Loan, the Loan Parties sold the target for over one and one-half times the original purchase price.

Because the Amended Complaint establishes that the Second Lien Lenders received the Transfers for value and in good faith, the Trustee's claims for intentional fraudulent transfer are barred by Section 548(c) of the Bankruptcy Code. Accordingly, for the reasons set forth in this Section III(B), Counts A, C, E, and G must be dismissed.

**C.** **The Trustee Fails to Plead a Constructive Fraudulent Transfer Claim Against the Second Lien Lenders.**

Counts B, D, F, and H of the Amended Complaint assert constructive fraudulent transfers pursuant to Bankruptcy Code Section 548(a)(1)(B) and its counter-part in the CVTA. At its core, a constructive fraudulent transfer claim has two elements: the Trustee must show that the Debtor (1) "received less than a reasonably equivalent value in exchange for such transfer" and (2) at the time was (i) insolvent, (ii) possessing unreasonably small capital or (iii) believing that the debtor would incur debts beyond its ability to repay after the transaction, or became so as a result of the transfer. 11 U.S.C. § 548(a)(1)(B); Cal. Civ. Code § 3439.05; *Hoffman v. Adelman (In re SCI Real Estate Invs., LLC)*, Case No. 2:11-BK-1575, 2013 Bankr. LEXIS 1780, *20 (Bankr. C.D. Cal. May 1, 2013); 5 COLLIER ON BANKRUPTCY ¶ 548.05 (16th ed.).

**1.** **The Trustee Fails to Allege Sufficient Facts to Substantiate That the Debtor was Insolvent at the Time of the Transfers.**

The Trustee does not allege sufficient facts to support its assertion that the Debtor was insolvent at the time the Transfers were made to the Second Lien Lenders, a crucial element of a constructive fraudulent transfer claim. *Flemmer v. Weiner (In re Vill. Concepts, Inc.)*, Case No.

19

EC-15-1186, 2015 Bankr. LEXIS 4100, *31 (B.A.P. 9th Cir. 2015) (upholding bankruptcy court dismissal of constructive fraudulent transfer claim because plaintiff failed to sufficiently plead insolvency).  As discussed *supra* in Section III(B)(3), the Trustee does not make any allegations to support its assertion that CTG was insolvent at the various times CTG made the Transfers to the Second Lien Lenders.  Nor is there any allegation from the Trustee as to when CTG became insolvent.  The Trustee, accordingly, has no basis to plead or conclude that CTG was insolvent at the time of the Transfers to the Second Lien Lenders.  *See id.*

2.    **The Trustee Fails to Allege a Lack of Reasonably Equivalent Value.**

In order to adequately state a claim that the Transfers may be avoided as constructively fraudulent, the Amended Complaint must allege sufficient facts demonstrating that CTG "received less than a reasonably equivalent value" in exchange for such Transfers. 11 U.S.C. § 548(a)(1)(B)(i); Cal Civ. Code § 3439.05.  In the Amended Complaint, the Trustee does not allege any facts indicating that the Debtor received less than reasonably equivalent value for the Transfers at issue.  *See Feldman v. Chase Home Finance (In re Image Masters, Inc.)*, 421 B.R. 164, 179 (Bankr. E.D. Penn. 2009) (dismissing constructive fraudulent transfer claim, holding that the statement in the complaint that "Image Masters received no value whatsoever in exchange for the Transfers alleged in this case—let alone reasonably equivalent value" was a "bald legal conclusion" and a "threadbare, formulaic recitation of the elements of a cause of action for avoidance of a transfer based on constructive fraud"); *see also Scouler & Co., LLC v. Schwartz*, Case No. 11-cv-06377, 2012 U.S. Dist. LEXIS 62252, *17 (N.D. Cal. April 23, 2012) (dismissing constructive fraudulent transfer claim because allegation that "Asyst failed to receive reasonably equivalent value for this ill-advised bonus, which came at a time when Schwartz had failed to preserve the Company's financial position and was essentially overseeing the dissipation of its assets" was conclusory and insufficient to state a claim).  Here, similarly, the Amended Complaint states that

20

"CTG did not receive any reasonably equivalent value for the above-listed transfers." Amended Complaint at ¶¶ 84, 105, 132. This allegation offers no factual support for the statement whatsoever, and is nothing more than a "threadbare, formulaic recitation." *See id.* Indeed, in seeking to bring a new time-barred claim that the Second Lien Lenders were the recipients of preferential transfers, the Trustee directly contradicts himself insofar as he alleges that the payments received by the Second Lien Lenders "were made [by the Debtor] on account of a debt obligation for which CTG was legally bound to pay to the [Second Lien Lenders] pursuant to the terms of a loan and investment agreement." Amended Complaint, ¶ 286.

Even assuming, *arguendo*, that the Trustee pled some facts to support its argument, there can still be no reasonable dispute that CTG received reasonably equivalent value in exchange for the Transfers made to the Second Lien Lenders. Although "reasonably equivalent value" is not defined in the Bankruptcy Code, "value" includes the "satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A); *see also In re Curry & Sorensen, Inc.*, 112 B.R. 324, 326 n.2 (9th Cir. BAP 1990) (holding that value includes satisfaction of an antecedent debt). Under this definition, "[p]ayment of a preexisting debt is value, and if the payment is dollar-for-dollar, full value is given." 5 COLLIER ON BANKRUPTCY ¶ 548.03[5] (16th ed.).

Therefore, to the extent the Transfers constitute repayment of the Debtor's antecedent or existing debt, which they do, the Transfers cannot be constructively fraudulent. *See Off. Comm. of Unsecured Creditors v. Hancock Park Capital II, L.P. (In re Fitness Holdings Int'l, Inc.)*, 714 F.3d 1141, 1145-46 (9th Cir. 2013) ("[T]o the extent a transfer constitutes a repayment of the debtor's antecedent or present debt, the transfer is not constructively fraudulent."); *Freeland v. Enodis Corp.*, 540 F.3d 721, 735 (7th Cir. 2008) (holding that there is "reasonably equivalent value" where "payment of the accrued interest constituted 'dollar-for-dollar forgiveness of a contractual debt'") (quoting *In re Carrozzella & Richardson*, 286 B.R. 480, 491 (D. Conn. 2002)); *In re Unified*

21

*Commercial Capital, Inc.*, 260 B.R. 343, 351 (Bankr. W.D.N.Y. 2001) (acknowledging the "universally accepted fundamental commercial principal that, when you loan an entity money for a period of time in good faith, you have given value and you are entitled to a reasonable return"); *In re Computer Universe, Inc.,* 58 B.R. 28, 31 (Bankr. M.D. Fla. 1986) (holding that Bankruptcy Code's definition of value shows that repayment of a debt will insulate a transferee from fraudulent transfer liability).

Moreover, the Trustee provides baseless allegations that the Transfers were "for the benefit" of third parties, including Blue Wolf Capital Partners and BW Piezo, among others. However, whether the Transfers indirectly benefitted a third party, and thus lacked reasonably equivalent value, requires the indirect benefit to be reasonably certain and quantifiable. *See Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 578 (7th Cir. 1998) ("Generally, a court will not recognize an indirect benefit unless it is fairly concrete.") (citations omitted). The Trustee fails to allege facts that, even if taken as true, support that the Transfers were "for the benefit" of the other third parties listed in the Amended Complaint. Even if the Transfers did benefit a third party (which they did not), the fact that the Transfers may have benefitted a third party does not negate their value to CTG. Where, for instance, a party is liable for loans to a third party, repayment of the loans is a transfer made in satisfaction of an antecedent debt and does not constitute an avoidable transfer. *See Hackeling v. Charter Fin., Inc. (In re Luis Elec. Contracting Corp.)*, 149 B.R 751, 759 (Bankr. E.D.N.Y. 1992) ("[A] loan made to a borrower is no less a loan if it is remitted to a third party at the borrower's direction and on the borrower's behalf."). Moreover, transfers are for reasonably equivalent value when the debtor receives an indirect benefit. *See Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991-92 (2d Cir. 1981) ("[F]air consideration has been found for an individual debtor's repayment of loans made to a corporation, where the corporation had served merely as a conduit for transferring the loan

22

proceeds to him."); *In re Gerdes*, 246 B.R. 311, 315 (Bankr. S.D. Ohio 2000) (debtor's avoidance of liability met reasonably equivalent value requirement); *In re Cavalier Homes of Georgia, Inc.*, 102 B.R. 878, 886 (Bankr. M.D. Ga. 1989) (reduction of debtor's contingent liability on a guaranty found to have constituted transfer on account of an antecedent debt and additionally to have been reasonably equivalent value). Again, if the Trustee's alternative theory is that the assets of the Debtor were commingled with the other Alleged Alter Ego Entities, so, too, were the Debtor's liabilities such that transfers made on behalf of any of the Alleged Alter Ego Entities to reduce a preexisting obligation would benefit the other Alleged Alter Ego Entities.

In short, because the payments made to the Second Lien Lenders were in satisfaction of a debt owed to the Second Lien Lenders by the Debtor (a fact that the Trustee concedes)[11], reasonably equivalent value was in fact exchanged.

### 3.    The Trustee Has Not Pled Sufficient Facts to Recover From the Second Lien Lenders as Subsequent Transferees of the Distributions.

In addition to repayment of the Secured Loan, the Second Lien Lenders received distributions on account of their equity interests (the "**Distributions**") in BW Piezo Holdings, LLC ("**BW Piezo**"), who was the Debtor's equity sponsor and one of the Loan Parties under the Secured Loan. Importantly, though, BW Piezo is not a debtor in the pending bankruptcy case. *See* Amended Complaint, ¶ 46. As for the Debtor, the Payoff Letter specifically stated that "CTG shall have no obligation or liability with respect to any Equity Investment Documents or Contingent Obligations nor otherwise to the Collateral Agent and/or Lenders following the delivery of the Payoff Deliveries." Payoff Letter, at 2. Indeed, payments made pursuant to the Payoff Letter do not include the Distributions. Instead, such Distributions were made by BW Piezo to the Second Lien Lenders on account of their equity investments. Therefore, the Distributions cannot qualify as fraudulent

---

[11]    *See, e.g.*, Amended Complaint, ¶¶ 37, 286.

MOTION TO DISMISS SECOND
AMENDED COMPLAINT

transfers, because there is no transfer of the "interest *of the debtor* in property" of the estate. 11

U.S.C. § 548(a)(1) (emphasis supplied).

Even if the Trustee could plead facts establishing a *prima facie* claim on account of the

Distributions, the Trustee has failed to plead facts that show the Second Lien Lenders are liable on

account of the Distributions.  As the Ninth Circuit explained in *Henry v. Official Committee of*

*Unsecured Creditors of Walldesign, Inc. (In re Walldesign, Inc.*), 872 F.3d 954, 962 (9th Cir. 2017):

> This distinction between initial and subsequent transferees is "critical." *Schafer v.*
> *Las Vegas Hilton Corp. (In re Video Depot, Ltd.)*, 127 F.3d 1195, 1197 (9th Cir.
> 1997).  Trustees have an absolute right of recovery against the "initial transferee"
> and any "entity for whose benefit such transfer was made." *Danning v. Miller (In*
> *re Bullion Reserve of N. Am.)*, 922 F.2d 544, 547 (9th Cir. 1991). While trustees
> "[t]heoretically" can recover from subsequent transferees as well, subsequent
> transferees who accepted the property "for value, in good faith, and without
> knowledge" of the voidability of the transfer may avail themselves of the "'good
> faith' defense of section 550(b)."

The Trustee has not alleged that the Second Lien Lenders received the Distributions in bad

faith or with knowledge of the voidability of the initial transfer.  *See In re Farmer's Mkt.*, 22 B.R.

71, 76 (B.A.P. 9th Cir. 1982) (party seeking to undo allegedly fraudulent transfer to bona fide

purchaser bears burden of proof); *In re Musurlian*, 97 B.R. 985, 987 (Bankr. W.D. Wis. 1989)

(citing *Farmer's Market* for the proposition that "in the absence of any other provision [of the

Bankruptcy Code], the trustee has the burden of proving each element for recovery" under

Bankruptcy Code Section 550).  Furthermore, the Second Lien Lenders provided $2,000,000 in

value *to BW Piezo* (not the Debtor) on account of their initial investment in BW Piezo.  The Second

Lien Lenders are therefore shielded from liability up to that amount. *See Grochocinski v. Knippen*

*(In re Knippen)*, 355 B.R. 710, 729 (Bankr. N.D. Ill. 2016) ("Value for purposes of the § 550(b)

defense includes value given the transferee's transferor, and is not limited to value given to the

debtor.").  Finally, as discussed *supra*, the Trustee has not alleged facts showing the plausibility (or

even possibility) that the Second Lien Lenders knew or should have known about any purportedly fraudulent scheme involving BW Piezo and its affiliates and subsidiaries.

Even if the Second Lien Lenders were not subsequent transferees, or even if the Court were to find that the Debtor was one of the Alleged Alter Ego Entities, the Distributions would still be shielded from disgorgement under Section 548(c) of the Bankruptcy Code. *See AFI Holdings, Inc. v. Mackenzie*, 525 F.3d 700 (9th Cir. 2008) (an equity investor who invests in a company accused of running a fraudulent scheme can rely on Section 548(c) to protect the amount of its initial investment). Here, the Distributions totaled less than $400,000, far less than the $2,000,000 that the Second Lien Lenders provided BW Piezo through their initial investments.

As such, for the reasons set forth in this Section III(C), the Trustee has not adequately stated a claim that the Transfers were "constructively fraudulent" and thus, Counts B, D, F, and H of the Amended Complaint should be dismissed with respect to the Second Lien Lenders.

### D.    Count L of the Amended Complaint Must Be Dismissed Because It is Time-Barred and It Fails to Plead Facts to Support a Preferential Transfer Claim Against the Second Lien Lenders.

In the Amended Complaint, the Trustee – for the first time and without obtaining leave to do so – now alleges that the transfers received by the Second Lien Lenders in the one (1) year period preceding the filing of the Debtor's bankruptcy petition are voidable as preferential transfers (such transfers being referred to herein as the "**Alleged Preferential Transfers**").[12] Not only is this claim inappropriate because it is time-barred, as discussed *infra*, but, given the timing of the Transfers, the Trustee is forced to allege that the Second Lien Lenders were "insiders" of the Debtor. The

---

[12]    To state a claim under Bankruptcy Code Section 547, the Trustee must show the Alleged Preferential Transfers were (1) of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) made while the debtor was insolvent; (5) made on or within ninety (90) days before the date of the filing of the petition; and (6) the transfer enabled such creditor to receive more than such creditor would receive in a chapter 7 distribution if the transfer had not been made. 11 U.S.C. § 547(b).

Trustee provides no factual basis on which to substantiate such an allegation.  The Trustee also fails

to allege any facts to support certain of the other elements of a preference claim, including alleging

facts sufficient to show that the Debtor was insolvent when the Second Lien Lenders received the

Alleged Preferential Transfers, or that the Second Lien Lenders received more than they otherwise

would be entitled to receive in a liquidation on account of the Alleged Preferential Transfers.  Any

one of these failures renders the Trustee's preference claim fatal.

**1.    The Preferential Transfer Claim Must be Dismissed Because
the Claim is Barred by the Applicable Statute of Limitations.**

The Amended Complaint seeks to avoid the Alleged Preferential Transfers based on theories

and specific transactions that were not alleged in the Complaint.  The limitations period within

which claims for avoidance of these Alleged Preferential Transfers could be asserted has long ago

lapsed.  Further, the claim in Count L seeking avoidance of the Alleged Preferential Transfers does

not "relate back" to the date of the Complaint, as the Complaint was so deficient, the Alleged

Preferential Transfers were not identified in the Complaint and are effectively being asserted for the

first time.  *See* Memorandum Decision, at 17 ("[E]xhibit A contains a <u>summary</u> of dates, amounts

and entities who purportedly received such amounts.  Neither the Complaint nor Exhibit A reveal

the specific date, amount, source, and transferee of each transfer sought to be avoided, other than to

claim that '[t]he transfers related to the sale of CTG Advanced Materials.'") (emphasis supplied).

**a.    *The Preferential Transfer Claim is Time Barred by the Applicable
Limitations Period Under Bankruptcy Code Section 546.***

The preference claim asserted in the Amended Complaint must be dismissed because the

Trustee asserts a new cause of action that is barred by the applicable limitations period under

Bankruptcy Code Section 546, which provides:

> Any action or proceeding under section 544, 545, 547, 548, or 552 of this
> title may not be commenced after the earlier of – (1) the later of - (A) 2
> years after the entry of the order for relief; or (B) 1 year after the
> appointment or election of the first trustee under section 702, 1104, 1163,

26

1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A) . . . .

11 U.S.C. § 546(a).

The Petition Date was October 14, 2016, and no trustee has been appointed. As such, October 14, 2018 was the last date that the Trustee could permissibly seek to avoid the Alleged Preferential Transfers. The Amended Complaint, however, was not filed until June 28, 2019, nearly eight months after the statutory deadline. Because Count L asserts a time-barred claim that did not appear in the Complaint, it must be dismissed.

          **b.**      ***The Trustee's Preferential Transfer Claim Does Not "Relate Back" to the Time of Filing the Complaint.***

Moreover, "relation back" under Federal Rule of Civil Procedure 15(c) ("**Federal Rule 15(c)**") is not permitted because the Amended Complaint seeks to avoid new Alleged Preferential Transfers not noticed by the Complaint. The Alleged Preferential Transfers sought to be avoided in the Amended Complaint are precluded by the expiration of the limitations period unless they arise out of the same "conduct, transaction, or occurrence as that set forth . . ." in the Complaint. *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000). Because of the Complaint's utter lack of detail or specificity regarding what, if any, transfers would form the bases of a preference claim, there is no way for the Second Lien Lenders to determine whether the Alleged Preferential Transfers arose from the same conduct, transaction, or occurrence. The Trustee's claim, therefore, does not relate back under Federal Rule 15(c). Dismissal of Count L is warranted.

          **c.**      ***The Trustee did not Obtain Leave to Amend to Add a New Claim Under Bankruptcy Code Section 547.***

The Court's *Order Granting Defendants' Motions to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* [Ad. Pro. Docket No. 147] granted the Second Lien Lenders' Original Motion to Dismiss and dismissed the Trustee's original Complaint – *First*

*Amended Complaint for (1) Avoidance of Actual Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A) and 550(a); (2) Avoidance of Constructive Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(B); (3) Actual Fraud; (4) Constructive Fraud; (5) Unjust Enrichment; and (6) Conversion* [Ad. Pro. Docket No. 7]. Nowhere in the four corners of the dismissed Complaint did the Trustee allege any cause of action under Section 547 of the Bankruptcy Code. Nor does the Court's order dismissing the Complaint provide that the Trustee may add new causes of action in an amended complaint.

Rule 15(a)(2) of the Federal Rules of Civil Procedure, as incorporated by Rule 1015 of the Federal Rules of Bankruptcy Procedure, provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 295-96 (5th Cir. 2003) (holding that an amended complaint has no legal effect until the court grants leave to file it). On this basis alone, the Court should dismiss the Trustee's claims under Bankruptcy Code Section 547 as procedurally deficient.

## 2. The Second Lien Lenders are Not "Insiders."

Bankruptcy Code Section 547(b)(4) provides that, to the extent a transfer satisfies each of the other elements of a preference, a trustee may avoid such transfer if it was made: (A) on or within 90 days before the date of filing the petition; or (B) between 90 days and one year before the date of the filing of the petition, ***if such creditor at the time of such transfer was an insider***. 11 U.S.C. § 547(b)(4) (emphasis supplied). Bankruptcy Code Section 101(31)(B) defines the term "insider" with respect to corporations as: (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor. 11 U.S.C. § 101(31)(B). Accordingly, the term "insider" is a defined term of art under the

Bankruptcy Code.  *See, e.g.*, *In re Camacho*, 18 B.R. 967, 968 (Bankr. D. Neb. 1982) ("insider" is a "term of art").

Because the Trustee has failed to plead facts showing that the Second Lien Lenders were "statutory insiders" of the Debtor, the Trustee instead must show that the Second Lien Lenders constitute "non-statutory insiders" in order to extend the lookback period from 90-days to one year.  "Non-statutory insiders" include those individuals or entities whose relationship is so close to the debtor that their conduct should be subject to greater scrutiny to ensure that their dealings were at arm's length.  2 COLLIER ON BANKRUPTCY, ¶ 101.31 (16th ed.).  The Ninth Circuit has recognized that:

> [I]nsider status may be based on a professional or business relationship with the debtor, . . . where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties.

*Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 70 (B.A.P. 9th Cir. 1991));
*see also Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*, 531 F.3d 1272, 1280 (10th Cir. 2008) (in order to find a creditor was a non-statutory insider of a debtor, the court would need evidence of both a close relationship or affinity between the parties, and that a less-than-arm's-length transfer or transaction had occurred); *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 (B.A.P. 9th Cir. 1987) (quoting *In re Lemanski*, 56 B.R. 981, 983 (Bankr. W.D. Wis. 1986)) (When determining who qualifies as a non-statutory insider, courts "focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor. . . . [A] transferee 'is an insider if, as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arms-length.'")).  In sum, courts look at the closeness of the parties and the degree to which the creditor is able to exert control or influence over the debtor.  *See In re Schuman*, 81 B.R. at 586.

In order to make such a showing, the Trustee must allege sufficient facts showing it is plausible (not just possible) that the Second Lien Lenders exercised such control over the Debtor as to render their transaction something other than arm's-length.  However, the Trustee has not alleged any facts to support such an assertion.  Rather, the Trustee makes the bald assertion that the Second Lien Lenders are "insiders of CTG," a spurious legal conclusion at best.  *See* Amended Complaint, ¶ 283.   The Trustee also states that the Debtor was "forced" to "enter into separate loan and investment agreements" with the Second Lien Lenders.  Amended Complaint, ¶ 33.  However, there is no allegation, let alone explanation, as to how the Second Lien Lenders "forced" the Debtor to enter into the loan transaction.  Such conclusory statement regarding this legal term of art does not constitute an adequate averment to survive a motion to dismiss.  *See Shipwash v. Knox County*, Case No. 3:08-cv-186, 2009 U.S. Dist. LEXIS 16918, at *10 (E.D. Tenn. Mar. 5, 2009) ("[O]ne cannot simply use legal terms of art in a complaint in an effort to survive a motion to dismiss.").  One court has explained:

> [T]he trustee's complaint provides few details regarding the relationship between the defendants and the debtors. Importantly, the complaint fails to address in what capacity the defendants are insiders of the debtors. . . . The court finds that ***a § 547 preference claim alleging insider status must include the basis for asserting that a defendant qualifies as an insider under § 101(31) and facts showing that the alleged relationship is plausible.***

*In re Caremerica, Inc.*, 415 B.R. 200, 206 (Bankr. E.D.N.C. 2009) (emphasis supplied); *see also Elder v. Greer (In re Sand Hill Capital Partners III, LLC)*, Case No. 08-30989, 2010 Bankr. LEXIS 3785, *3-4 (Bankr. N.D. Cal. Oct. 25, 2010) (complaint containing only bald allegations that defendants were "insiders" insufficient to state a claim upon which relief can be granted, because they are too conclusory).

Here, similarly, the Trustee has stated no facts in support of his allegation that the Second Lien Lenders constitute insiders of the Debtor.  Accordingly, the Trustee has failed to state a plausible claim for relief with respect to the Second Lien Lenders' alleged insider status.  As a result,

30

the Trustee is entitled pursuant to Bankruptcy Code Section 547(c)(4) to avoid, at most, only

payments made on or within 90 days before the Petition Date.  *See* 11 U.S.C. § 547(c)(4).  *None* of

the payments at issue, however, were made on or within 90 days prior to the Petition Date.  *See*

Amended Complaint, Schedule B.  Specifically, the 90th day before the Petition Date was July 16,

2016.  The most recent Alleged Preferential Transfer listed in Schedule B to the Amended

Complaint is dated February 18, 2016.  *See id.*  Accordingly, Count L of the Amended Complaint

must be dismissed as well.

> **3.      To the Extent the Transfers Occurred More Than 90 Days Prior to the Petition Date, the Trustee Has Failed to Adequately Plead that the Debtor was Insolvent at the Time of the Alleged Transfers.**

In the alternative, even if, in spite of the Trustee's having alleged no facts with respect to

the Second Lien Lenders' insider status, this Court were to determine that the Trustee adequately

alleged such insider status, Count L of the Amended Complaint still fails to state a plausible claim

on which relief can be granted.  Specifically, the Trustee alleges that when the Alleged Preferential

Transfers were made "CTG was insolvent."  Amended Complaint, ¶ 288.  The statutory presumption

of insolvency in Bankruptcy Code Section 547 is, however, applicable only to the 90 days

immediately preceding the Petition Date.  11 U.S.C. § 547(f).  Accordingly, the Trustee must allege

facts sufficient to show that insolvency is plausible to the Transfers made outside of the 90-day

period.  As discussed in Section III(B)(3), *supra*, the Trustee's conclusory assertion of insolvency

here cannot alone satisfy the requirement that, in order for the Transfers to be avoided, such

Transfers must be "made while the debtor was insolvent."  For preference actions under Section

547, a "balance sheet" test determines insolvency; a debtor is insolvent when its liabilities exceed

the fair value of its nonexempt assets.  *See, e.g., In re Sierra Steel, Inc.*, 96 B.R. 275, 277 (B.A.P.

9th Cir. 1989) (in discussing a Section 547 preference action "a debtor is insolvent when its

liabilities exceed its assets"); *Thompson v. Jonovich (In re Food & Fibre Protection)*, 168 B.R. 408,

417 (Bankr. D. Ariz. 1994) ("Insolvency in a preference setting is determined by a balance sheet test, comparing the fair value of the Debtor's assets at the time of the transaction with the Debtor's liabilities of the same date.").  The Trustee has made no allegations that CTG was balance sheet insolvent at all, let alone on the specific date of each of the Transfers the Trustee seeks to avoid. Because none of the Alleged Preferential Transfers at issue fall within the 90-day statutory presumption of insolvency, the Trustee has failed to adequately plead the requisite elements of an avoidable preference with respect to any transfer.

  **4.** **The Trustee Fails to Allege that the Second Lien Lenders Received More than They Would Have Received Under a Hypothetical Liquidation.**

  Bankruptcy Code Section 547(b)(5) requires the Trustee to demonstrate that the Second Lien Lenders would have received more than they would have received if (1) the case were a case under chapter 7; (2) the Alleged Preferential Transfers had not been made; and (3) the Second Lien Lenders received payment to the extent provided under Title 11.  It is well-established that there cannot be a preferential payment on a fully secured claim because the creditor will not receive more than it would have received in a hypothetical chapter 7 liquidation.  *See Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.)*, 990 F.2d 551, 554 (10th Cir. 1993) ("[P]ayments to a fully secured creditor will not be considered preferential because the creditor would not receive more than in a chapter 7 liquidation.").

  The Trustee attempts to bypass this flaw by categorizing the Second Lien Lenders as unsecured creditors because "Plaintiff's research and receipt of public records do not reflect any perfected lien by the [Second Lien Lenders] as to CTG."  Amended Complaint, ¶¶ 66, 114, 281. The Trustee, however, is incorrect: the Second Lien Lenders perfected their security interests by filing financing statements, attached as **Exhibit A** to the RJN, on October 11, 2013.  *See* UCC § 9-312.  Moreover, this new allegation is belied by the Trustee's own admission that the Secured Loan

was made by the Second Lien Lenders in exchange for, among other things, "a security interest in all [of] CTG's and Electro-Optical Industries, LLC's assets (a CTG subsidiary)[.]"  Amended Complaint, ¶ 34.  The Trustee has not sought – and indeed, is time-barred from seeking – to challenge transactions that gave rise to the Secured Loan in October 2013.  To the extent the Trustee seeks any remedy based on the legal conclusion that Second Lien Lenders are unsecured creditors, such relief cannot be granted.

**E.**      **The Trustee Should Not Be Granted Leave to Further Amend Its Amended Complaint Because Its Claims Would Still Not Survive a Motion to Dismiss.**

The Amended Complaint is the Trustee's third attempt to assert colorable claims against the Second Lien Lenders.  Yet, as demonstrated by this Motion to Dismiss, the Trustee's Amended Complaint still falls far short of meeting the Rule 12(b)(6) pleading standards.

In deciding requests for leave to amend after already granting such leave, court have "particularly broad" discretion to determine the propriety of any subsequent request.  *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).  A court need not grant leave to amend when, among other things, amending the complaint would be futile.  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Futility alone is sufficient to deny leave to amend.  *See Boyd v. Keyboard*, Case No. 99-04430, 2000 U.S. Dist. LEXIS 2904, *6 (C.D. Cal. Mar. 1, 2000) ("The liberality with which amendments to pleadings are granted . . . is qualified in that a proposed amendment cannot be futile.") (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)).  Courts in the Ninth Circuit recognize that "the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the legal sufficiency of a pleading challenged under Rule 12(b)(6)."  *Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988).  Leave to amend will not be granted "if a complaint, as amended, is subject to dismissal."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

Allowing the Trustee to further amend the Amended Complaint and reassert claims against the Second Lien Lenders would be futile for a number of reasons.  The Trustee has failed yet again to state viable claims for actual and constructive fraudulent transfer and has not pled fraud with particularity as required under Rule 9(b).  Furthermore, the Trustee's preference claim as it relates to the Second Lien Lenders is barred by the applicable statute of limitations.  Even if it were not time barred, the only way to plead a *prima facie* preference claim would be for the Trustee to assert facts that simply do not exist – namely, that the Second Lien Lenders exercised such dominion and control over the Debtor that they are deemed "insiders" of the Debtor, or that the Second Lien Lenders, who were fully-secured creditors at the time they received each of the Transfers, received more on account of the Transfers than they would have received in a hypothetical chapter 7 liquidation.  In short, the Second Lien Lenders do not believe that there are any sets of facts that could be pled to sustain a plausible claim against them under theories of fraudulent transfer and preference law, and the time for asserting claims under any alternative theory has lapsed. Consequently, any subsequent complaint, as amended, would be "subject to dismissal." *Id.*

## IV.    CONCLUSION

For the reasons set forth herein, Second Lien Lenders respectfully request that the Motion to Dismiss be granted and that the Plaintiff not be granted leave to amend the Amended Complaint with respect to the Second Lien Lenders.

34

DATED: August 2, 2019

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP

By:_____
     BRIAN L. DAVIDOFF
     KEITH PATRICK BANNER

CHOATE, HALL & STEWART LLP

By:_____
     DOUGLAS R. GOODING
     JONATHAN D. MARSHALL

Attorneys for Defendants Fidus Investment
Corporation, Fidus Mezzanine Capital II,
L.P., Avante Mezzanine Partners SBIC,
LP, and Avante Mezzanine Partners

35

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1900 Avenue of the Stars, 21st Floor, Los Angeles, CA 90067
A true and correct copy of the foregoing document entitled (*specify*): **MOTION OF DEFENDANTS FIDUS
INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL II, L.P., AVANTE MEZZANINE PARTNERS SBIC,
LP, AVANTE MEZZANINE PARTNERS II, INC. TO DISMISS THE SECOND AMENDED COMPLAINT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and
**(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling
General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the
document. On (*date*) August 2, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary
proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF
transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) August 2, 2019, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the
United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a
declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state
method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 2,
2019 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who
consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge
here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later
than 24 hours after the document is filed.

Via Messenger
The Honorable Deborah J. Saltzman
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Ste. 1634
Los Angeles, CA 90012

☐ Service information continued on attached page
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 2, 2019 | Julie King | /s/ Julie King |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
14012-00002/3217074.1                                                                 **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Keith Patrick Banner    kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Peter J Benvenutti    pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- Jonathan Boustani    jboustani@btlaw.com
- Cheryl S Chang    Chang@Blankrome.com, Hno@BlankRome.com
- Brian L Davidoff    bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com
- Edward J Dennis    , eburch@lynnllp.com
- Craig N Haring    charing@blankrome.com, arc@blankrome.com
- Tobias S Keller    tkeller@kellerbenvenutti.com
- Ian Landsberg    ilandsberg@sklarkirsh.com,
  lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com
- Andrew B Levin    alevin@wcghlaw.com,
  Meir@virtualparalegalservices.com;pj@wcghlaw.com;jmartinez@wcghlaw.com
- Christian A Orozco    corozco@lynnllp.com, thooker@lynnllp.com;ejohnson@lynnllp.com
- Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- David A Taylor    david@taylorstrategic.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
14012-00002/3217074.1

**F 9013-3.1.PROOF.SERVICE**