Edward Jason Dennis
jdennis@lynnllp.com
Samuel B. Hardy
shardy@lynnllp.com
Adrian Garcia
agarcia@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile
Special Litigation Counsel for
Plaintiff

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
NORTHERN DIVISION

| | |
|---|---|
| In re | § CASE NO. 9:16-BK-11912-DS |
| | § |
| CHANNEL TECHNOLOGIES GROUP, LLC, | § Chapter 11 |
| *Debtor*. | § |
| | § ADV NO. 9:18-AP-01058-DS |
| CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC, | § |
| | § **PLAINTIFF'S RESPONSE TO** |
| | § **DEFENDANTS FIDUS** |
| | § **INVESTMENT CORPORATION,** |
| *Plaintiff,* | § **FIDUS MEZZANINE CAPITAL II,** |
| | § **L.P., AVANTE MEZZANINE** |
| v. | § **PARTNERS SBIC, LP, AVANTE** |
| | § **MEZZANINE PARTNERS II, INC.'S** |
| BLUE WOLF CAPITAL PARTNERS, LLC, et al., | § **MOTION TO DISMISS SECOND** |
| | § **AMENDED COMPLAINT** |
| *Defendants.* | § |
| | § <u>Hearing</u> |
| | § Date:    September 10, 2019 |
| | § |
| | § Time:    1:00 p.m. |
| | § |
| | § Place:   Courtroom 1639 |
| | §          United States |
| | §          Bankruptcy Court |
| | §          255 E. Temple Street |
| | §          Los Angeles, CA 90012 |

1

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   RELEVANT FACTUAL BACKGROUND .........................................2

III.  LEGAL STANDARD ........................................................................5

IV.   ARGUMENT.......................................................................................7

    A.    Alter Ego Transfers ................................................................7

        1.    The Trustee may maintain fraudulent transfer claims under an alter ego theory of liability ..........................................................7

        2.    The Trustee sufficiently states claim for the avoidance of actual and constructive fraudulent transfers pursuant to the Bankruptcy Code ................................................................10

        3.    The Trustee sufficiently states claim for the avoidance of actual and constructive fraudulent transfers pursuant to California law ......15

    B.    No Benefit Transfers.................................................................16

        1.    The Trustee did not receive any value in exchange for transfers made to the Mezzanine Lenders ..............................................................16

        2.    The Trustee sufficiently states claim for the avoidance of actual and constructive fraudulent transfers pursuant to the Bankruptcy Code and California law ...................................................................18

        3.    The Trustee Sufficiently States Claims for Avoidance and Recovery of Preferential Transfers ...............................................................20

V.    CONCLUSION....................................................................................25

PROOF OF SERVICE ...............................................................................27

## TABLE OF AUTHORITIES

**Cases**

*ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999 (9th Cir. 2014) ........ 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................. 6

*Attebury Grain LLC v. Grayn Co.*, 721 F. App'x 669 (9th Cir. 2018) ...... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).................................... 5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................... 5

*Burbank Generators, Inc. v. Gill,* 48 B.R. 205, 206 (C.D. Cal 1985) ....... 16

*Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544 (9th
    Cir. 1991) ......................................................................... 11

*Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 547
    (9th Cir. 1991) ................................................................. 11

*Erickson v. Pardus*, 551 U.S. 89 (2007) ....................................... 6

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ................................. 6

*Gladstone v. Schaefer (In re UC Lofts on 4th, LLC)*, 2015 WL 5209252
    (9th Cir. BAP Sep. 4, 2015)............................................... 25

*Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re
    Walldesign, Inc.)*, 872 F.3d 954 (9th Cir. 2017) ............................. 11

*Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re
    Walldesign, Inc.)*, 872 F.3d 954, 959 (9th Cir. 2017) ..................... 11

*Henry v. Weiss*, 138 S. Ct. 2575 (2018) ....................................... 9

*Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275 (C.D. Cal. 2016)
    ......................................................................................... 24

*In re Acequia, Inc.*, 34 F.3d 800 (9th Cir. 1994) ............................... 13, 14

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994).................... 6

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994)...... 6

*In re Lucas Dallas, Inc.*, 185 B.R. 801, 807 (B.A.P. 9th Cir. 1995) ......... 17

*In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 578 (Bankr. N.D. Cal. 1994)........................................................ 16

*In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. at 578........................ 17

*In re Schuman*, 81 B.R. 583 (B.A.P. 9th Cir. 1987) ................................ 22

*In re Stern*, 345 F.3d 1036 (9th Cir. 2003)............................................. 13

*In re Walldesign, Inc.*, 872 F.3d 954, 964 (9th Cir. 2017)........................ 9

*Klein v. King & King & Jones*, 571 Fed. App'x. 702 (10th Cir. 2014) ..... 17

*Klein v. King & King & Jones, P.C.*, 2:12-CV-00051, 2013 WL 4498831, at *3 (D. Utah Aug. 19, 2013) ........................................................ 17

*LaChapelle v. Dong Kwan Kim*, 2015 U.S. Dist. LEXIS 161801 (N.D. Cal. Dec. 1, 2015) ................................................................ 14

*LaChapelle v. Dong Kwan Kim*, 2015 U.S. Dist. LEXIS 161801 *20, 2015 WL 7753235 (N.D. Cal. Dec. 1, 2015).............................................. 14

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249–50 (1991) ...................................................................... 8

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001) ............................... 23, 24

*opez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ................................ 26

*Shaoxing Cty. Huayue Imp. & Exp. v. Bhaumik*, 191 Cal. App. 4th 1189, 1197 (2011) ........................................................................... 8

*Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053 (9th Cir. 2019)............. 24

*Twombly*, 550 U.S. at 556 ........................................................................ 6

*TwoRivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999) ............................. 7, 24

*TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)...................... 7, 24

*United States v. Hempfling*, 431 F. Supp. 2d 1069 (E.D. Cal. 2006)......... 6

*United States v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (E.D. Cal. 2006)6

*Van Buskirk v. CNN, Inc.*, 284 F.3d 977 (9th Cir. 2002) .......................... 7

*Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ................... 7

**Statutes**

11 U.S.C. § 544(b)(1) ..................................................................... 11

11 U.S.C. § 548(a)(1)(A) ................................................................ 11

11 U.S.C. § 548(a)(1)(B) ........................................................... 11, 14

11 U.S.C. § 548(c) .................................................................. 9, 10, 25

11 U.S.C. § 550(a) ........................................................................ 11

11 U.S.C. §§ 544(b)(1), 548(a)(1)(B) ........................................... 11

2 Moore's Fed. Practice – Civ. § 9.03 .............................................. 6

2 Moore's Fed. Practice Civ. § 8.04 ................................................. 5

60 F.3d 591 (9th Cir. 1995) ............................................................. 6

Cal. Civ. Code § 3439.03(2) ........................................................... 15

Cal. Civ. Code § 3439.04(1) ........................................................... 15

Cal. Civ. Code § 3439.04(a)(1) ....................................................... 13

Cal. Civ. Code § 3439.09(1) ........................................................... 15

Cal. Civ. Code §§ 3439.04(1) ........................................................ 15

Fed R. Civ. P. 9(b) .......................................................................... 6

Plaintiff Corporate Recovery Associates, LLC, solely in its capacity as Trustee for the Liquidating Trust of Debtor Channel Technologies Group, LLC (the "Trustee"), by and through its undersigned counsel, hereby responds to Defendants Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, Avante Mezzanine Partners II, Inc.'s (collectively, "Defendants" or the "Mezzanine Lenders") Motion to Dismiss and, in support hereof, hereby shows as follows:

## I.    INTRODUCTION

The Trustee's Second Amended Complaint contains sufficient factual detail to establish the plausibility of its claims that (1) Channel Technologies Group, LLC's (the "Debtor") management and the Blue Wolf Entities directed the Debtor to make actual and constructive fraudulent transfers in violation of the Bankruptcy Code and California Law to the Mezzanine Lenders; (2) that the Trustee has the right to seek the avoidance of those transfers to the Mezzanine Lenders; and (3) that the Trustee may avoid preferential transfers to the Mezzanine Lenders.  The Mezzanine Lenders do not meet their burden to prove that the Trustee's well-pled claims are implausible.  While the Mezzanine Lenders improperly request that the Court take judicial notice of unauthenticated and challenged evidence, the Court should deny this request.

The Trustee alleges detailed facts demonstrating how the Debtor's management and the Blue Wolf Entities took advantage of their control of the Debtor to exhaust and transfer the entirety of the Debtor's assets to themselves and

for the benefit of other separate entities absent the Debtor receiving any reasonably equivalent value.    Faced with the Trustee's well-pled factual allegations, the Mezzanine Lenders misstate the Trustee's pleading burden and improperly asks the Court to decide complex factual issues ***at the pleading stage (when the Trustee's allegations must be accepted as true)***—and without the benefit of discovery. Thus, the Mezzanine Lenders' motion must be denied.

## II.  RELEVANT FACTUAL BACKGROUND

On or about December 2011, Blue Wolf Capital Partners, LLC, acting through its executive management team of Adam Blumenthal, Haranjeet Narulla, and Charles Miller among others, reached an agreement to purchase the Debtor.  Blue Wolf Capital Partners directed one of its wholly owned and controlled subsidiaries— Blue Wolf Capital Advisors—to direct another subsidiary owned and controlled by Blue Wolf Capital Partners—Blue Wolf Capital Fund—to form and fund BW Piezo Holdings, LLC ("BW Piezo") (collectively, the "Blue Wolf Entities") for the sole purpose of acquiring the Debtor, a California-based manufacturer of piezoelectric equipment.  Second Am. Compl. ¶ 24, June 28, 2019, ECF No. 156 [hereinafter "SAC"].  After acquiring the Debtor, Blue Wolf Capital Partners, through the Blue Wolf Entities, operated BW Piezo and the Debtor as alter egos of each other and as a single business enterprise, routinely commingling funds and assets between the different companies.  SAC ¶¶ 24–26, 29–32, 37–39.

Sometime in 2013, the Debtor's management, under Blue Wolf Capital Partners' control, decided to expand the Debtor's business and acquire H.C. Materials, Inc., a crystal manufacturer.  *Id*. ¶ 28.    In October 2013, Blue Wolf

Capital Partners, acting through BW Piezo, forced the Debtor and its subsidiary to join BW Piezo and AM as borrowers in the Amended and Restated Credit Agreement with OneWest Bank. *Id*. ¶ 32. At the same time, Blue Wolf Capital partners acting through BW Piezo, forced the Debtor to enter into separate loan and investment agreements (the "the Debtor AM Loans") with Fidus Investment Corporation; Fidus Mezzanine Capital II, L.P.; Avante Mezzanine Partners SBIC, LP; Avante Mezzanine Partners II, Inc. (the "Mezzanine Lenders"). *Id*. ¶¶, 30, 33. In addition, CIT Bank loaned BW Piezo, CTG Advanced Materials ("AM"), and the Debtor over $31,000,000, along with a $8,000,000 revolving loan facility, to help purchase H.C. Materials. *Id*. ¶ 32.

After securing the financing, Blue Wolf Capital Partners, acting through BW Piezo, the Debtor, and AM, used the loan proceeds and the Debtor's cash to acquire H.C. Materials' assets for $48 million. *Id*. ¶ 35. Immediately, the Blue Wolf Entities, Blumenthal, and Narulla issued press releases and represented to the public that the Debtor had acquired H.C. Materials. *Id*. Blue Wolf Capital Partners' actions left the Debtor saddled with significant debt and limited the Debtor's business. *Id*.

Despite these public representations, Blue Wolf Capital Partners, acting through its executive management team and BW Piezo, surreptitiously decided to segregate the companies on paper. *Id*. ¶ 36. The new entity named AM purchased H.C. Materials' assets; however, Blue Wolf structured AM to be a sister company to the Debtor under the ownership of BW Piezo, instead of as a wholly-owned subsidiary of the Debtor. *Id*.

The paper segregation was fictional. Despite surreptitiously structuring AM as a sister company, Blue Wolf Capital Partners, acting through its executive management team and the Debtor's alter ego BW Piezo, forced the Debtor to use its assets to make payments to the Mezzanine Lenders and to CIT Bank, N.A. pursuant to the loan agreements. *Id.* ¶ 37. The companies, along with BW Piezo, were then operated as a single-business enterprise by the Debtor's management. *Id.*

From December 20, 2013 to December 31, 2015, the Debtor made regular payments to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. totaling $1,959,987.31. *Id.* ¶ 38. From December 19, 2013 to February 18, 2016, the Debtor made regular payments to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc. totaling $1,957,300.44. *Id.*

After years of commingling assets and depleting the Debtor's resources for the benefit of AM and Blue Wolf Capital Partners, Blue Wolf Capital Partners learned that the Debtor was insolvent. *Id.* ¶¶ 40–41. In late 2015, Blue Wolf Capital Partners, realizing that it needed to create separation between BW Piezo, the Debtor, and AM prior to the Debtor's bankruptcy, decided to sell AM. *Id.* ¶ 42.

On or about March 2016, Blue Wolf Capital Partners, through its executive management team and the Debtor's alter ego BW Piezo, sold AM for approximately $73 million to CTS Corporation. *Id.* ¶ 46. Instead of returning to the Debtor the proceeds from the sale of assets of AM, Blue Wolf Capital Partners, acting through the Debtor's alter ego BW Piezo, structured the transaction to have CTS Corporation transfer the proceeds to Blue Wolf Capital Partners and its shell companies, CIT

Bank, N.A., the Mezzanine Lenders, Pengdi Han, and to Blue Wolf Capital Partners insiders as bonus payments. *Id.* In fact, because BW Piezo did not even have its own bank account, Blue Wolf Capital Partners directed CTS Corporation to transfer the proceeds from the sale of AM to Blue Wolf Capital Fund. *Id.* Specifically, as part of the AM sale, the Debtor transferred (1) $7,264,770.39 to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P.[1]; (2) $7,263,263.90 to Avante Mezzanine Partners SBIC, LP; and (3) the Debtor transferred $1,340.39 to Avante Mezzanine Partners II, Inc.

In addition to these transfers, Blue Wolf Capital Partners, through its executive management team and the Debtor's alter ego BW Piezo, transferred more than $400,000 to the Mezzanine Lenders as equity distributions (the "Equity Distributions"). Second Am. Complaint, Schedule B.

Shortly thereafter, the Blue Wolf Entities directed the Debtor to file for bankruptcy in October 2016, leaving the Debtor's unsecured creditors "holding the bag." *Id.* ¶ 48.

### III.  LEGAL STANDARD

All pleadings setting forth claims for relief must include a short and plain statement of the claim showing that the pleader is entitled to relief. 2 Moore's Fed. Practice Civ. § 8.04. A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] The transfer was made to Fidus Investment Corporation's bank account; however, a "For Further Credit" designation was included to route the transfer to Fidus Mezzanine Capital II, L.P. SAC ¶ 65.

1
2
3
4
5
6
7
8

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The federal pleading standard "does not require 'detailed factual allegations,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), although the Complaint must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

If a plaintiff alleges fraud as a cause of action, the plaintiff must plead with particularity the circumstances constituting fraud.  Fed R. Civ. P. 9(b).  "A complaint alleging fraud meets the Rule 9(b) standard if it alleges the time, place, and content of the fraudulent statements, including reasons why the statements are false. *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (E.D. Cal. 2006) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *rev'd on other grounds*, 60 F.3d 591 (9th Cir. 1995)).  "Where fraud allegedly occurred over a period of time, however, Rule 9(b)'s requirement that the circumstances of fraud to be stated with particularity are less stringently applied."  *Id.*  Further, "plaintiffs are not absolutely required to plead the specific date, place, or time of each of the fraudulent acts, provided they use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  2 Moore's Fed. Practice Civ. § 9.03.

25
26
27

Motions to dismiss for failure to state a claim are disfavored and rarely granted.  *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (E.D. Cal. 2006).

28

"A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  Moreover, in deciding a motion to dismiss, a court "must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

## IV.  ARGUMENT

The Trustee seeks the avoidance of two general categories of fraudulent transfers made in violation of both state and federal law.  The first category of transfers are fraudulent transfers made by the Debtor, AM, and the BW Piezo as alter egos of each other—or transfers made by the Debtor operated as a single enterprise by Blue Wolf Capital Partners—(the "Alter Ego Transfers").  These transfers were made in March 2016. The second category of transfers is pled in the alternative—in the event the Court does not make an alter ego determination— includes transfers made by the Debtor to the Blue Wolf Entities, AM, and to third parties not for the benefit of the Debtor (the "No Benefit Transfers") prior to March 2016.

## A.    Alter Ego Transfers

1.    *The Trustee may maintain fraudulent transfer claims under an alter ego theory of liability*

The Alter Ego Transfers center around the sale of AM and the subsequent disbursement of the proceeds to the exclusion of the Debtor on or about March 2016.

The Alter Ego Transfers the Trustee may avoid concerning the Mezzanine Lenders include the Payoff and Equity Distributions.  The Trustee pleads and contends that the Debtor, AM, and the Blue Wolf Entities operated as alter egos of each other or as a single enterprise, and that justice and equity require that their separate corporate forms be disregarded in relation to the Alter Ego Transfers.  This is appropriate because "the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted." *Shaoxing Cty. Huayue Imp. & Exp. v. Bhaumik*, 191 Cal. App. 4th 1189, 1197 (2011).  When this privilege is abused, as the Trustee has pled here, the separate personality of the corporation is disregarded.  *See id.*  Similarly,

> under the single-enterprise rule, liability can be found between sister companies. . . . In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it. The court thus has constructed for purposes of imposing liability an entity unknown to any secretary of state comprising assets and liabilities of two or more legal personalities; endowed that entity with the assets of both, and charged it with the liabilities of one or both.

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249–50 (1991).

The Mezzanine Lenders challenge the Trustee's ability to avoid the Payoff and Equity Distributions by arguing (1) there was no transfer of an interest in the Debtor's property; (2) the Mezzanine Lenders are subsequent transferees and accepted the Payoff and Equity Distributions for value, in good faith, and without

1  knowledge; and (3) the Equity Distributions are shielded from disgorgement under

2  Section 548(c) of the Bankruptcy Code.  These arguments should be rejected.

3      ***First***, as explained above, the Trustee pleads that the Debtor, AM, and the

4  BW Piezo operated as alter egos of each other or as a single enterprise, and that

5  justice and equity require that their separate corporate forms be disregarded.  SAC

6  ¶¶ 49–62.  During this time, the Debtor owned the assets, including through its alter

7  egos.  Thus, the transfer of the Payoff and Equity Distributions was comprised of

8  the Debtor's assets.

9      ***Second***, based on the same alter ego allegations, the Mezzanine Lenders are

10 not subsequent transferees.  Any transfer of assets between the entities operating

11 as one is not an "initial transfer": "The mere power of a principal to direct the

12 allocation of corporate resources does not amount to legal dominion and control,

13 which is required for initial-transferee status."  *In re Walldesign, Inc.*, 872 F.3d 954,

14 964 (9th Cir. 2017), *cert. denied sub nom. Henry v. Weiss*, 138 S. Ct. 2575 (2018).

15 Moreover, "a principal does not become an initial transferee simply by using his or

16 her control over corporate assets to effect a fraudulent transfer."  *Id.*  Here, because

17 the entities were alter egos or a single enterprise, legal dominion and control of the

18 assets underlying the Alter Ego Transfers, including the Payoff and Equity

19 Distributions, did not transfer until March 2016 when they were sold to a third-

20 party and the proceeds were distributed to the Mezzanine Lenders.  Thus, the Payoff

21 and Equity Distribution transfers are initial transfers.

***Third***, § 548(c) does not apply to transfers made to the Mezzanine Lenders because the Mezzanine Lenders did not give value to the Debtor.    Section 548(c) provides, "a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C. § 548(c).    The Mezzanine Lenders argue that under this provision, the Equity Distributions are shielded from disgorgement because the distributions total "far less than the $2,000,000 that the [Mezzanine Lenders] provided the [the Blue Wolf Entities] through their initial investment."   Defs.' Mot. to Dismiss at 9.   But the statutory language is clear; the transferee must give value to the debtor for the exception to apply.   Here, the Mezzanine Lenders gave $2,000,000 to the Blue Wolf Entities—not the Debtor—and the Debtor did not receive any value in exchange for that payment to the Blue Wolf Entities.

2. _The Trustee sufficiently states claim for the avoidance of actual and constructive fraudulent transfers pursuant to the Bankruptcy Code_

In their Motion to Dismiss, the Mezzanine Lenders do not dispute that they received the Alter Ego Transfers; instead, the Mezzanine Lenders argue that the Trustee has not sufficiently pled enough factual detail that the Mezzanine Lenders participated in the alleged scheme to hinder, delay, and defraud the Debtor creditors.   Def.'s Mot. to Dismiss 12.

This is not the applicable standard.    Under the Bankruptcy Code, a liquidating trustee has the authority to enlarge a debtor's estate by invalidating

fraudulent transfers, thereby returning the property to the debtor's estate.  *In re Walldesign, Inc.*, 872 F.3d 954, 959 (9th Cir. 2017) (citing 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B)).  "When a trustee has proven the avoidability of a fraudulent transfer, the trustee may recover the property or its value from '(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any [subsequent] transferee of such initial transferee.'"  *Id.* (quoting 11 U.S.C. § 550(a)). A liquidating trustee has an absolute right of recovery against the initial transferee and any entity for whose benefit such transfer was made.  *Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 547 (9th Cir. 1991).  Thus, the Trustee need not prove that the Mezzanine Lenders was engaged in fraud; the Trustee need only ultimately prove that (1) the transfers at issue should be avoided; and (2) that the Mezzanine Lenders were an initial or subsequent transferee.  Indeed, the Mezzanine Lenders do not dispute the Trustee's claims regarding the Blue Wolf Entities.  And the Trustee has met the applicable pleading standards at this stage of the litigation as provided below.

**First**, to prevail on its claims for the avoidance of the Debtor's actual fraudulent transfers, the Trustee must ultimately prove: (1) the transfers involved property of the debtor; (2) the transfers were made within two years of the filing of the debtor's bankruptcy petition; and (3) the debtor made the transfers or incurred the obligations with actual intent to hinder, delay, or defraud any existing or resulting creditor.  11 U.S.C. § 548(a)(1)(A).  The Trustee has met its burden of pleading facts establishing a plausible claim for relief and pleading with

particularity the circumstances constituting fraud. In its SAC, the Trustee pleads that the actual fraudulent transfers involved the Debtor's property. *See* SAC ¶ 64 ("The following transfers [were made] with property of [the Debtor]:"); ¶¶ 65–79 (listing the Debtor's property); *see also* Schedule B 81–116. The Trustee pleads that those transfers covered by the Bankruptcy Code were made or entered into after October 14, 2014, two years prior to the Debtor's bankruptcy petition. *Id*. ¶¶ 65–79. Additionally, in an exhibit specifically incorporated into the SAC, the Trustee provides greater detail regarding the transfers made to or for the benefit of the Blue Wolf Entities, including the period in which the transfers took place, the total amount the transfers amounted to, and for whose benefit the transfers were made. *See* SAC Schedule B 81–116.

These transfers were fraudulent because they were made in furtherance of a scheme perpetrated by the Debtor's management and controlling shareholder to exhaust the Debtor's assets, preserve AM's assets, and ultimately put the Debtor into bankruptcy, thereby hindering, delaying, or defrauding the Debtor's creditors from being able to collect on debts owed. *See* SAC ¶ 85. The Trustee alleges that the Blue Wolf Entities hindered, delayed, or defrauded the Debtor's creditors by saddling the Debtor with massive debt, operating the Debtor with little cash reserves, and liquidating the Debtor's assets before filing for bankruptcy. *Id*. ¶¶ 40–48.

The fraud did not stop there. "Fraudulent intent may be shown through circumstantial evidence of actual intent to defraud, or 'badges of fraud.'" *In re Stern*, 345 F.3d 1036, 1046–47 (9th Cir. 2003). Such badges of fraud include, *inter alia*:

- a purported transfer of all or substantially all of the Debtor's property;

- insolvency or other unmanageable indebtedness on the part of the Debtor;

- a special relationship between the Debtor and the transferee;

- whether the Debtor removed or concealed assets; and

- whether the value of the consideration received by the Debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

*See In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir. 1994); *see also Attebury Grain LLC v. Grayn Co.*, 721 F. App'x 669, 671 (9th Cir. 2018) (citing Cal. Civ. Code § 3439.04(a)(1)). These badges of fraud are present here. The Trustee asserts that the Blue Wolf Entities schemed by misrepresenting the relationship between the Debtor and AM as a way to conceal assets. SAC ¶¶ 35–39. Then, the Blue Wolf Entities, as part of their scheme, operated the Debtor as an alter ego of or as a single enterprise with AM and BW Piezo. SAC ¶¶ 49–62. They made the Debtor assume massive loan obligations. *Id*. ¶¶ 32–33. During their operation of the Debtor, the Blue Wolf Entities forced the Debtor "to guaranty loans, make payments on loans, and pay liabilities and debts for BW Piezo and [AM]." *Id*. ¶ 83. And the Debtor had commingled funds and assets with BW Piezo and AM. *Id*. ¶ 39. Later, the Trustee alleges that the "transfer of the sales proceeds amounted to substantially all [of the Debtor's] remaining assets." SAC ¶ 83. The result was that the Blue Wolf Entities transferred the Debtor's assets when they sold AM and distributed the proceeds to the exclusion of the Debtor. *Id*. After exhausting the Debtor's assets to pay for AM's expenses, the Debtor's controlling shareholder sold AM, distributed the sales proceeds to insiders and its own creditors; what it did not do is transfer any of the

1  sales proceeds to reimburse the Debtor.  Indeed, after denuding the Debtor of assets,

2  the Blue Wolf Entities subsequently put an insolvent the Debtor into bankruptcy

3  and left the creditors of the Debtor "holding the bag".  *Id.* ¶¶ 56–62.  Above all, the

4  Trustee meets Rule 9(b)'s demands by providing the dates, amounts, source, and

5  transferee of each transfer.  *See* SAC Schedule B 81–116.

6      Thus, the Trustee has alleged sufficient "facts [to] support an inference of

7  actual fraudulent intent."  *See In re Acequia, Inc*., 34 F.3d at 806.  Indeed, the

8  Mezzanine Lenders' own admissions provide support for the Trustee's claim that the

9  Blue Wolf Entities' scheme was fraudulent.  The Mezzanine Lenders state that the

10  Debtor directly guaranteed, mortgaged its assets, and made payments for the

11  Mezzanine Loan despite AM allegedly being a separate entity and not the Debtor

12  subsidiary.  Defs.' Mot. to Dismiss at 3–5.

13      ***Second***, to prevail on its claims for avoidance of the Debtor's constructive

14  fraudulent transfers, the Trustee must ultimately prove: (1) the transfers involved

15  property of the debtor; (2) the transfer were made within two years of the filing of

16  the debtor's bankruptcy petition; (3) the debtor did not receive reasonably equivalent

17  value in exchange for the property transferred; and (4) the debtor was insolvent on

18  the date the transfer was made or obligation incurred, became insolvent as a result

19  of the transfers made or obligations incurred, or the remaining capital was

20  unreasonably small for the debtor's business.  11 U.S.C. § 548(a)(1)(B).

21      "Unlike actual fraudulent transfer, Rule 9(b)'s particularity requirement does

22  not apply to constructive fraudulent transfer claims."  *LaChapelle v. Dong Kwan*

23  *Kim*, 2015 U.S. Dist. LEXIS 161801 *20, 2015 WL 7753235 (N.D. Cal. Dec. 1, 2015).

24  Thus, the Trustee need only plead sufficient facts to establish a plausible claim for

25  relief, a burden the Trustee meets and surpasses for the same reasons articulated

26  above in relation to the Trustee's actual fraudulent transfer claims.  In addition, the

27  Trustee has pled that the Payoff and Equity Distributions were constructively

28

fraudulent because the Debtor did not receive reasonably equivalent value, became insolvent as a result of the transfers, and was undercapitalized. *Id.* ¶ 105. The Trustee supports this claim by pleading numerous facts and incorporating by reference a litany of exhibits showing the Debtor paying for liabilities and expenses on behalf of AM and the Blue Wolf Entities without receiving reasonably equivalent value in return. SAC ¶¶ 54, 105, Exs. 14, 19–27, SAC Schedule B 81–116.

**Fourth**, the Trustee also pleads that the Debtor was left insolvent and undercapitalized as a result of these transfers. SAC ¶ 106.

3.    *The Trustee sufficiently states claim for the avoidance of actual and constructive fraudulent transfers pursuant to California law*

To prevail on a claim for actual and constructive fraudulent transfer under the California Uniform Voidable Transactions Act, a plaintiff must prove the same elements as under the Bankruptcy Code discussed above. *See* Cal. Civ. Code §§ 3439.04(1) (actual fraudulent transfer); 3439.04(2) (constructive fraudulent transfer). One major difference, however, is that pursuant to the California Uniform Voidable Transactions Act, the statute of limitations is longer. A plaintiff may seek the avoidance of an actual fraudulent transfer made "not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant." § 3439.09(1). A plaintiff may also seek the avoidance of a constructive fraudulent transfer made not later than four years after the transfers. § 3439.03(2). Accordingly, for the same reasons discussed above, the Trustee has sufficiently plead a plausible claim for the avoidance of both actual and constructive

fraudulent transfers and the Mezzanine Lenders cannot justify dismissal of this claim. SAC ¶¶ 111–156, 201–241.

## B.  No Benefit Transfers

In the alternative that an alter ego or single business enterprise determination is not made, the Trustee seeks the avoidance of the No Benefit Transfers under both the Bankruptcy Code and California law.  The No Benefit Transfers center around the transfer of the Debtor's assets for the benefit of AM and the Blue Wolf Entities, including professional services rendered by third parties and loan payments.  The Alter-Ego Transfers the Trustee may avoid concerning the Mezzanine Lenders include the Debtor Loan Payments.

### 1.  *The Trustee did not receive any value in exchange for transfers made to the Mezzanine Lenders*

The Mezzanine Lenders argue that the Debtor Loan Payments do not constitute fraudulent transfers because they were made on account of an antecedent debt—the Mezzanine Loan.  They argue that payments made on account of the Mezzanine Loan "in exchange for value" are not fraudulent transfers.  But, the Mezzanine Lenders do not appreciate that the party making the transfer must be the party receiving value in exchange.  *See In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 578 (Bankr. N.D. Cal. 1994) ("The [reasonably equivalent value] analysis is directed at comparing what the *debtor* surrendered and what the *debtor* received.").  "If a transfer solely benefits a third party, it is clear that the debtor has not received a reasonably equivalent value in exchange." *Burbank Generators, Inc. v. Gill,* 48 B.R. 205, 206 (C.D. Cal. 1985).  The focus is not on

whether the Mezzanine Lenders provided value, the focus is on whether the debtor received value. *See In re Lucas Dallas, Inc.*, 185 B.R. 801, 807 (B.A.P. 9th Cir. 1995) ("The question is not, as the [defendants] frame it, whether the [defendants] *gave* reasonably equivalent value; it is whether the debtor *received* reasonably equivalent value."). Numerous courts have grappled with this issue in relation to receiving payments from a debtor that is not receiving any value, and they have found that fraudulent transfer law places the responsibility of actively investigating and tracing the source of funds it receives on the defendants. *Klein v. King & King & Jones, P.C.*, 2:12-CV-00051, 2013 WL 4498831, at *3 (D. Utah Aug. 19, 2013), aff'd sub nom. *Klein v. King & King & Jones*, 571 Fed. App'x 702 (10th Cir. 2014); *see also In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. at 578.

Here, the Debtor did not receive any value from making loan payments to the Mezzanine Lender for the benefit of AM. The Mezzanine Lenders cannot have it both ways. If the Debtor was a separate and distinct corporate entity from the Blue Wolf Entities and AM, then it received no value when it was used as a piggy bank to pay those entities' liabilities. The Mezzanine Lenders untenable, contradictory positions are in full display when it argues in its Motion to Dismiss both that the Debtor has not established that the Debtor is entitled to the proceeds of the sale of AM and that the loan payments made by the Debtor to the Mezzanine Lenders are in satisfaction of a loan to the Debtor to acquire AM. *Compare* Defs.' Mot. to Dismiss

Part III.A at 7–8 *with* Part III.B.3 at 17.   Accordingly, the Mezzanine Lenders'
argument should be rejected.

       2.    *The Trustee sufficiently states claim for the avoidance of actual and
constructive fraudulent transfers pursuant to the Bankruptcy Code and
California law*

    ***First***, the Trustee has met its burden of pleading facts establishing a
plausible claim for relief and pleading with particularity the circumstances
constituting fraud regarding the the Debtor Loan Payments as well.  In its Second
Amended Complaint, the Trustee pleads in the alternative that the Blue Wolf
Entities directed the Debtor's management to transfer the Debtor's property to pay
for liabilities and professional services for the benefit of other separate entities such
as AM, including the Loan Payments transferred to the Mezzanine Lenders.  SAC
¶¶ 39, 207–08.  The Trustee pleads, and it is undisputed, that some of the the Debtor
Loan Payments at issue were made or entered into after October 14, 2014, two years
prior to the Debtor's bankruptcy petition.  *Id.* ¶¶ 207–08.  In addition, the Trustee
has pled that all of the the Debtor Loan Payments covered by California law were
made or entered into after October 12, 2014, or within a year of the Trustee's
discovery of the same.  *Id.*  Additionally, in an exhibit specifically incorporated into
the Second Amended Complaint, the Trustee provides greater detail regarding the
transfers made for the benefit of the Blue Wolf Entities and AM, including the
Debtor Loan Payments made to the Mezzanine Lenders.  SAC Schedule B 89–90,
108–09.  This exhibit includes the period in which the transfers took place, the total
amount the transfers amounted to, and for whose benefit the transfers were made.
*Id.*  The Trustee has pled that these transfers were fraudulent because they were
made in furtherance of a scheme perpetrated by the Debtor's management and
controlling shareholder to exhaust the Debtor's assets, preserve AM's assets, and

ultimately put the Debtor into bankruptcy, thereby hindering, delaying, or defrauding the Debtor's creditors from being able to collect on debts owed. *See supra* Part IV.B.1  And again, the Mezzanine Lenders' own admissions provide support for the Trustee's claim that the Blue Wolf Entities' scheme was fraudulent.  The Mezzanine Lenders state that the Debtor directly guaranteed, mortgaged its assets, and made payments for the Mezzanine Loan despite AM allegedly being a separate entity and not the Debtor subsidiary. Defs.' Mot. to Dismiss at 3–5.

***Second***, the Trustee has met its burden of pleading facts establishing a plausible claim for relief that the Debtor Loan Payments should be avoided as constructively fraudulent transfers. The Trustee pleads in the alternative that the Blue Wolf Entities directed the Debtor's management to transfer the Debtor's assets to pay for liabilities and professional services for the benefit of other separate entities, including AM.   Second Am. Compl. ¶¶ 39, 207–08. The Trustee pled that the transfers involved the Debtor's property. *See* SAC ¶¶ 184, 227 ("The following transfers [were made] with property of [the Debtor]:"); ¶¶ 185–195, 228–238 (listing the Debtor's property); see also Schedule B 81–116. The Trustee pled that that those transfers covered by the Bankruptcy Code were made or entered into after October 14, 2014, within a period of two years prior to the Debtor's bankruptcy petition. SAC ¶¶ 185–195, 228–238.  And again, in an exhibit specifically incorporated into the SAC, the Trustee provides greater detail regarding the transfers made for the benefit of the Blue Wolf Entities and AM, including the period in which the transfers took place, the total amount the transfers amounted to, and for whose benefit the transfers were made. *See* SAC Schedule B 81–116.

The Trustee has pled that these transfers were constructively fraudulent because the Debtor did not receive reasonably equivalent value, became insolvent as a result of the transfers, and was undercapitalized. *Id.* ¶¶ 196–97, 239–40. The

Trustee also pleads that the Debtor was left insolvent and undercapitalized as a result of these transfers.  *Id.*

      3.    *The Trustee Sufficiently States Claims for Avoidance and Recovery of Preferential Transfers*

The Mezzanine Lenders argue that the Trustee cannot bring a claim for avoidance and recovery of preferential transfers because (1) the claim is barred by the statute of limitations; and (2) the Trustee has allegedly failed to plead facts showing the Mezzanine lenders are insiders.  These arguments should be rejected for the following reasons.

*First*, the relation-back doctrine applies to the Trustee's avoidance and recovery of preferential transfers claim.

> An otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading. Under Rule 15(c)(1)(B), an amendment asserting a new or changed claim relates back to the date of the original pleading if the amendment "arose out of the conduct, transaction, or occurrence set out ... in the original pleading." An amended claim arises out of the same conduct, transaction, or occurrence if it "will likely be proved by the 'same kind of evidence' offered in support of the original pleading." To relate back, "the original and amended pleadings [must] share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." The relation back doctrine of Rule 15(c) is "liberally applied."

*ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).  Moreover, once litigation has been commenced, an opposing party is on notice that the pleading party may subsequently raise any claims forming part of the same conduct, transactions, or occurrence as the original pleading. *Id*. Thus, "even where

amendments go beyond the mere correction or factual modification of the original pleading and significantly alter the claim or defense alleged in that pleading, the search under *Rule 15(c)* is for a common core of operative facts in the two pleadings." *Id* (emphasis in original).

The preferential transfers do not merely rise from the same occurrence or transactions from those transfers alleged in the Trustee's First Amended Complaint, the transfers are identical. Nor can the Mezzanine Lenders credibly argue that they were not on notice regarding these transfers. A cursory look at the Mezzanine Lenders Motion to Dismiss the First Complaint and some simple arithmetic shows that the Mezzanine Lenders are fully aware that the Trustee is challenging these transfers. In their Motion to Dismiss the First Amended Complaint, the Mezzanine Lenders admit that they received $14,529,374.68 from the Debtor in March 2016 after the sale of AM. Defs.' Mot. to Dismiss FAC 4–5. A summation of the preferential transfers alleged results in the same total. *See* SAC ¶¶ 276–78. Moreover, the Trustee alleged in its First Amended Complaint that from December 2013 to December 2015, the Debtor made payments to the Mezzanine Lenders. FAC ¶¶ 34; FAC 29. Not only were the Mezzanine Lenders on notice of these transfers, the Mezzanine Lenders admitted these transfers took place in their Motion to Dismiss the First Amended Complaint. *See* Defs.' Mot. to Dismiss FAC 2, 7. The fact that the Court ordered the Trustee to provide more detail regarding the transfers in question does not bar this claim for the same reason that the Trustee's more detailed fraudulent transfer claims are not barred: they arise out of the

conduct, transaction, or occurrence set out in the original pleading.    Thus, the Mezzanine Lender's argument should be denied.

***Second***, the Trustee has sufficiently alleged that the Mezzanine Lenders are insiders of the Debtor.  "An insider is one who has a sufficiently close relationship with a debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor."  *In re Schuman*, 81 B.R. 583, 586 (B.A.P. 9th Cir. 1987).  The determination of whether a party is an insider is generally a question of fact that is made on a case-by-case basis in consideration of a totality of the circumstances.  *Id.*  Here, the Trustee has alleged that the Mezzanine Lenders did not deal with the Trustee as ordinary arms-length lenders; instead, the Mezzanine Lenders entered into investment agreements and owned equity in BW Piezo.  SAC ¶¶ 33–34, 65, 67–68.  Moreover, the Trustee pleads that the Mezzanine Lenders prevented the Debtor from making any investments or acquisitions during the term of the agreement.  *Id.* ¶ 34.  These facts must be accepted as true and are sufficient to establish a plausible claim for relief.

***Third***, the Trustee has sufficiently alleged that the Debtor was insolvent at the time of the alleged transfers.  The Trustee supports this claim by pleading numerous facts and incorporating by reference a litany of exhibits showing the Debtor was left insolvent and undercapitalized throughout and as a result of these transfers.  SAC ¶¶ 44–48, 106.  In an attempt to defeat this claim at this stage of the litigation, the Mezzanine Lenders argue how the Trustee must prove insolvency; but, this misses the point.  At this stage of the proceedings, without the benefit of

discovery, the Trustee need only plead sufficient facts to establish that the Debtor

was insolvent.  A hurdle that the Trustee has cleared.

## C. Whether Transfers to the Mezzanine Lenders Are Repayments of a Fully Secured Obligation Is a Fact Issue

The Mezzanine Lenders argue that transfers the Debtor made to it cannot be

fraudulent because they constitute repayments of a fully secured obligation.

However, this argument suffers from two defects: (1) it requires the Court to

improperly take judicial notice of contested evidence and the Debtor has pled that

the Mezzanine Lenders were not fully secured lenders; and (2) the Mezzanine

Lenders cannot establish a good faith defense because the Debtor did not receive

value from the Mezzanine Lenders.

*First*, the Mezzanine Lenders ask the Court to take judicial notice of the

attached documents attached to its Motion to Dismiss to establish a factual issue:

that the Mezzanine Lenders perfected their security interest and are fully secured

lenders.  Typically, parties cannot present—and courts cannot consider—evidence

outside of the complaint when deciding a motion to dismiss.  But the Court may in

appropriate circumstances consider extrinsic evidence using judicial notice.  *See Lee

v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  Under the Federal Rules of

Evidence, courts may take judicial notice of facts that are not subject to reasonable

dispute, either because they are "(1) generally known within the territorial

jurisdiction of the trial court or (2) capable of accurate and ready determination by

resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid.

201.  For instance, the Court might take judicial notice that April 4, 2019, was a

Thursday, or that a party filed a brief opposing a motion in a state court case.

Ultimately, "[j]udicial notice is an explicitly limited doctrine." *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1280 (C.D. Cal. 2016).

Here, in contrast, the Mezzanine Lenders seek to expand the doctrine's scope beyond recognition. The Mezzanine Lenders elevate unauthenticated, alleged UCC statements for the truth of the matter asserted. Therefore, the Mezzanine Lenders' arguments relying on perfected security interests have no bearing at this stage of the proceedings. *See Lee*, 250 F.3d at 688 ("[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."); *see also TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) ("[Court] must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.").

Moreover, if the Court were to take judicial notice of the Mezzanine Lenders' documents or convert the Motion to Dismiss as one for summary judgment, the Court should afford the Trustee the opportunity to take discovery, which has been stayed for the length of this case at Defendants' request. *See Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1076 (9th Cir. 2019) (noting that "a district court may not grant a motion to dismiss which has been converted into a summary judgment motion without furnishing all parties an opportunity to supplement the record").

***Second***, the Mezzanine Lenders cannot establish the good faith defense based on the pleadings because the Trustee pleads that the Mezzanine Lenders did

not provide value to the Debtor.    Section 548(c) protects a good faith initial transferee to the extent value is given to the Debtor:

> a transferee or obligee of such a transfer or obligation that takes ***for value and in good faith*** has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, ***to the extent that such transferee or obligee gave value*** to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c) (emphasis added); *see also Gladstone v. Schaefer (In re UC Lofts on 4th, LLC)*, 2015 WL 5209252, *16–17 (9th Cir. BAP Sep. 4, 2015).   the Debtor pleads that, in the alternative that an alter ego determination is not made, the Mezzanine Lenders only provided value to BW Piezo, AM, and the Blue Wolf Entities—not to the Debtor.   *See* SAC ¶¶ 33–38.   In its Motion, the Mezzanine Lenders hide this deficiency by arguing that they provided value to the "Loan Parties" to acquire the "Target"—the assets that formed AM; however, the Loan Parties are defined to include BW Piezo and AM.   Pls.' Mot. 17.   Moreover, the Mezzanine Lenders allegations regarding providing value to the Debtor contradict and defeat the Mezzanine Lenders argument that the transfer of sale proceeds are not of the Debtor's property.   Thus, based on the pleadings, the first element of the good-faith defense is unavailable to the Mezzanine Lenders.

## V.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court deny the Mezzanine Lenders' Motion to Dismiss in its entirety, and for any other and further relief, at law or in equity, to which it is justly entitled.   Further, in the event the Court grants the Mezzanine Lenders' Motion to Dismiss, the Trustee

respectfully requests further opportunity to amend and that any such dismissal be without prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (holding that when dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

Dated: August 27, 2019          Respectfully submitted,

Edward Jason Dennis
jdennis@lynnllp.com
Samuel B. Hardy
shardy@lynnllp.com
Adrian Garcia
agarcia@lynnllp.com
Christian Orozco
California State Bar No. 285723
corozco@lynnllp.com
**Lynn Pinker Cox & Hurst, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

**Special Litigation Counsel for Corporate Recovery Associates, LLC, Trustee for the Liquidating Trust of Debtor Channel Technologies Group, LLC**

# PROOF OF SERVICE

**STATE OF TEXAS, COUNTY OF DALLAS**

I am employed in the County of Dallas, State of Texas. I am over the age of 18 and not a party to the within action; my business address is 2100 Ross Avenue, Suite 2700, Dallas, Texas 75201.

On August 27, 2019, I caused the document described below as **RESPONSE TO DEFENDANTS FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE PARTNERS II, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** to be served on all interested parties in this action via email:

## SEE ATTACHED SERVICE LIST

[] **(BY MAIL)** I caused such envelope(s) fully prepaid to be placed in the United States Mail at Dallas, Texas. I am "readily familiar" with the firm's practice of collection and processing correspondence or mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Dallas, Texas in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[] **(BY OVERNIGHT-FEDERAL EXPRESS)** I caused said document(s) to be picked up by U.S. Federal Express Services for overnight delivery to the offices of the addressees listed on the Service List.

[] **(BY PERSONAL SERVICE)** I caused to be delivered such document by hand to the above-identified recipient through the use of First Legal Attorney Service whose address is: 1517 West Beverly Boulevard, Los Angeles, CA 90026, and whose telephone number is (213) 250-1111.

[] **(BY FACSIMILE)** I caused said document(s) to be telephonically transmitted to each addressee's telecopier (Fax) number as noted.

[XX] **(BY ELECTRONIC MAIL)** I caused said document(s) to be served via electronic transmission to each addressee's electronic mail address(es) as noted on the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 27, 2019, at Dallas, Texas.

_____
Emily Burch

# SERVICE LIST

**United States Bankruptcy Court – Central District of California
Northern Division
Case No. 9:18-AP-01058-DS
Our File No. 03349.801**

## Served By The Court Via Notice Of Electronic Filing ("NEF")

- **Keith Patrick Banner** kbanner@greenbergglusker.com;
  sharper@greenbergglusker.com; calendar@greenbergglusker.com
- **Peter J. Benvenutti**        pbenvenutti@kellerbenvenutti.com;
  pjbenven74@yahoo.com
- **Jonathan Boustani**          jboustani@btlaw.com
- **Cheryl S. Chang**          Chang@BlankRome.com; Hno@BlankRome.com
- **Brian L. Davidoff**          bdavidoff@greenbergglusker.com;
  calendar@greenbergglusker.com; jking@greenbergglusker.com
- **Edward J. Dennis**          eburch@lynnllp.com
- **Tobias S. Keller**          tkeller@kellerbenvenutti.com
- **Ian Landsberg**          ilandsberg@sklarkirsh.com; lskaist@sklarkirsh.com;
  yalarcon@sklarkirsh.com; **ilandsberg@ecf.inforuptcy.com**
- **Andrew B. Levin**          alevin@wcghlaw.com;
  Meir@virtualparalegalservices.com; pj@wcghlaw.com; jmartinez@wcghlaw.com
- **Christian A. Orozco**          corozco@lynnllp.com; thooker@lynnllp.com;
  ejohnson@lynnllp.com
- **Christopher O. Rivas** crivas@reedsmith.com; chris-rivas-
  8658@ecf.pacerpro.com
- **Howard Steinberg**          steinbergh@gtlaw.com; pearsallt@gtlaw.com;
  laik@gtlaw.com
- **David A. Taylor**david@tayloerstrategic.com
- **United States Trustee (ND)**  ustpregion16.nd.ecf@usdoj.gov