**BARNES & THORNBURG LLP**
PAUL J. LAURIN (SBN 136287)
paul.laurin@btlaw.com
JONATHAN J. BOUSTANI (SBN 274748)
jonathan.boustani@btlaw.com
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: 310-284-3880
Facsimile: 310-284-3894

*Attorneys for CTG Advanced Materials, LLC
and CTS Corporation*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 9:16-bk-11912-DS |
| CHANNEL TECHNOLOGIES GROUP, LLC, | Chapter 11 |
| Debtor. | Adv. No. 9:18-ap-01058-DS |
| | |
| CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC, | **DEFENDANTS CTS CORPORATION AND CTG ADVANCED MATERIALS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| Plaintiff, | |
| v. | |
| BLUE WOLF CAPITAL PARTNERS, LLC, *et al.*, | Hearing: |
| Defendants. | Date: September 10, 2019 |
| | Time: 1:00 p.m. |
| | Place: Courtroom 1639 |
| | United States Bankruptcy Court |
| | 255 E. Temple Street |
| | Los Angeles, California 90012 |

## I. INTRODUCTION

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the *Second Amended Complaint* [ECF No. 156] (the "Complaint") filed by Plaintiff Corporate Recovery Associates, LLC ("Plaintiff"), as Trustee for the Liquidating Trust of Channel Technologies Group, LLC (the "Debtor"), makes numerous allegations against the Blue Wolf Entities (as defined in the Complaint) and whereas the Blue Wolf Entities may have liability, the Complaint fails to set forth sufficient facts specific to Defendants CTG Advanced Materials, LLC ("CTGAM") or CTS Corporation ("CTS," and together with CTGAM, the "Defendants"). The limited facts alleged against the Defendants are "mere conclusory statements" that fail to give the Defendants sufficient notice of the basis for the claims against them. Accordingly, the Court must grant the Defendants' Motion to Dismiss [ECF No. 175] (the "Motion to Dismiss"), dismissing the claims asserted against the Defendants in the Complaint under Fed. R. Civ. Proc. 12(b)(6), incorporated herein by Fed. R. Bankr. Proc. 7012.

## II. THE COMPLAINT FAILS TO ASSERT MORE THAN THREADBARE RECITALS AGAINST CTS.

Dismissal under Rule 12(b)(6) is appropriate where, as here, a plaintiff failed to allege "enough facts to state a claim to relief that is plausible on its face." *Ebner* v. *Fresh*, *Inc.*, 838 F.3d 958, 962–63 (9th Cir. 2016) (quoting *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015)).

As set forth in the Complaint, CTS acquired CTGAM from Blue Wolf Capital Partners in March 2016 for $73 million. [*Compl*. ¶ 46.] The Plaintiff makes no allegation that this payment was for less than reasonably equivalent value. CTS remitted the $73 million in accordance with direction from Blue Wolf Capital Partners. [*Id.*] This is what CTS was legally obligated to do, as CTS acquired CTGAM from Blue Wolf Capital Partners and not from the Debtor.[1] As set forth in the Complaint, the Debtor did not own CTGAM; CTGAM was owned

---

[1] The Response (as defined herein) asserts that the Debtor instructed CTS to transfer the sale proceeds to Blue Wolf. [*Resp*. 12.] However, at no point in the Complaint is it alleged that the Debtor instructed CTS where to transfer the sale proceeds. Rather, the Complaint alleges that

2

by BW Piezo Holdings, LLC, a subsidiary of Blue Wolf Capital Partners. [*Compl.* ¶ 36.] The Debtor was not a parent of CTGAM. CTS would have never remitted the sale proceeds to the Debtor because the Debtor was not legally entitled to the same. Nonetheless, the Plaintiff has named CTS in the Complaint because the Plaintiff asserts that the Debtor was entitled to some or all of the sale proceeds. Any argument about the Debtor's entitlement to the sale proceeds has no bearing on CTS. CTS rightfully paid Blue Wolf Capital Partners for CTGAM. Again, the Plaintiff has not asserted that the value paid by CTS for CTGAM was less than reasonably equivalent value. CTS had no reason to take direction from any party other than Blue Wolf Capital Partners and the Complaint makes no allegations to the contrary. All claims against CTS must be dismissed.

**A. Complaint's Failure to Specify Date of Transfer Is Fatal**

In the *Response to Defendant CTG Advanced Materials, LLC and CTS Corporation's Motion to Dismiss Second Amended Complaint* [ECF No. 185] (the "Response"), the Plaintiff highlights the narrowness of its purported claim against CTS. This claim is that sometime in March 2016, CTGAM received a transfer from the Debtor for $1,515,005.70 (the "CTS Transfer"), and that the CTS Transfer was made for the benefit of CTS. [*Resp.* 8; *Compl.* ¶ 69.] Interestingly, the Plaintiff refuses to provide a specific date for the CTS Transfer. After this Court ordered the Plaintiff to provide more specificity, the Plaintiff has refused to provide any detail beyond a general identification of the month of the transfer. In the Motion to Dismiss, CTS raised this issue with the Complaint. In the Response, the Plaintiff continues refusing to provide any further detail. This response of the Plaintiffs—ignoring both this Court's order and the request for a specific date in the Motion to Dismiss—is telling.

The date is critical because CTS acquired CTGAM in March 2016, the same month as the CTS Transfer. If the CTS Transfer occurred prior to CTS's acquisition of CTGAM, CTS would have no control over CTGAM and could not be deemed a beneficiary before the

---

Blue Wolf Capital Partners structured the transaction to have CTS transfer the sale proceeds to Blue Wolf Capital Partners. [*Compl.* ¶ 46.] Based on the fact that CTGAM was a subsidiary of Blue Wolf Capital Partners, CTS's payment of sale proceeds to Blue Wolf Capital Partners was appropriate.

acquisition of CTGAM.  This is why the Federal Rules require specificity.  This is why this Court ordered specificity.  Nonetheless, the Plaintiff has failed to specify the date of the CTS Transfer.  This alone warrants dismissal of the claim against CTS.

The Response further states that the CTS Transfer was paid to CTGAM "for the sale proceeds."  [*Resp*. 18.]  This statement suggests that the CTS Transfer was made in connection with the acquisition of CTGAM.  As stated earlier, CTS paid $73 million for CTGAM.  The Plaintiff has not asserted that CTS paid too little for CTGAM.  The Plaintiff simply seems to want to collect these sale proceeds.  This is not a dispute for CTS, as CTS appropriately paid the sale proceeds as directed by Blue Wolf Capital Partners, the seller of CTGAM.  Nothing in the Complaint suggests otherwise with any specificity.

**B. Complaint's Failure to Allege Debtor's Intent to Benefit CTS Is Fatal**

Beyond the failure to specify the date of the CTS Transfer, there is another wholly independent basis for dismissing all claims against CTS in the Complaint.  In the Motion to Dismiss, CTS cited controlling case law providing that for an avoided transfer to be recoverable from an alleged beneficiary, "the debtor must have been motivated by an intent to benefit the individual or entity from whom the trustee seeks to recover." *Danning v. Miller* (*In re Bullion Reserve of North America*), 922 F.2d 544, 547 (9th Cir. 1991) (quotation marks and citation omitted).  "It is not enough that an entity benefit from the transfer; the transfer must have been *made for his benefit*." *Id.* at 547 (quotation marks and citation omitted) (emphasis in original).  A conclusory allegation that a transfer was made for the benefit of a party is not sufficient— especially under the heightened pleading standards for fraud claims.

The Response seems to misinterpret this argument, citing case law providing that a trustee need not show that a debtor intended to make the transfer to the beneficiary.  [*Resp*. 18.]  This is not what *Danning* stands for or requires.  Rather, *Danning* requires claimants to allege facts showing that a debtor specifically intended to benefit the alleged beneficiary through the transfer.  Unintended beneficiaries or subsequent beneficiaries do not have liability under 11 U.S.C. § 550(a)(1).  The Complaint fails to allege any facts showing an intent by the Debtor to specifically benefit CTS with the CTS Transfer.  The Complaint's failure to provide the date of

4

the CTS Transfer further creates issues regarding the Debtor's intent. If the CTS Transfer occurred prior to the sale of CTGAM to CTS, then any intent of the Debtor to benefit CTS would be elusive at best as the sale to CTS was not finalized.

For either the Plaintiff's failure to detail the timing of payments or the Plaintiff's failure to adequately plead the Debtor's intent to benefit CTS with the CTS Transfer, the claims against CTS must be dismissed.

### III. THE COMPLAINT FAILS TO IDENTIFY CREDITORS WITH STANDING AT THE TIME OF THE ASSERTED FRAUDULENT TRANSFER.

This Court dismissed an earlier complaint because the Plaintiff failed to identify creditors with standing to assert the fraudulent transfers raised by the Plaintiff. In response, the Complaint includes a catalogue of unsecured creditors of the Debtor. This limited effort by the Plaintiff fails to satisfy this Court's prior order and fails to satisfy applicable law.

In order to state a claim under § 544(b), a claimant is required to identify the creditor or creditors whose rights he/she is asserting who at the time the transfer occurred could have attacked and set aside the transfer under California law. *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1147-48 (C.D. Cal. 2003). They must be creditors both as of the transfer and petition dates. *In re Allou Distributors, Inc*., 392 B.R. 24, 34–35 (Bankr. E.D.N.Y. 2008); *In re Wingspread Corp.,* 178 B.R. 938, 945-46 (Bankr. S.D.N.Y. 1995).

The Complaint lists unsecured creditors of the Debtor that had claims against the Debtor as of October 14, 2016, when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Complaint makes no allegation about whether these creditors had claims against the Debtor when the alleged fraudulent transfers occurred. The Complaint seeks to avoid transfers of the Debtor dating back to February 2, 2012. If the Debtor paid all of its creditors in 2012, then it would not matter if a transfer in 2012 was fraudulent—no creditor would have standing to avoid it. The Plaintiff's failure to identify creditors with standing to challenge the allegedly fraudulent transfers dating back to February 2, 2012 is fatal.

In the Response, the Plaintiff seems to ignore this deficiency. The Plaintiff simply asserts that it need not identify creditors with standing to avoid the fraudulent transfers dating

back to 2012. This is wrong and ignores black letter law. *In re Allou Distributors, Inc.*, 392 B.R. 24, 34–35 (Bankr. E.D.N.Y. 2008); *In re Serrato*, 214 B.R. 219, 226 (Bankr. N.D. Cal. 1997); *In re Wingspread Corp.,* 178 B.R. 938, 945–46 (Bankr. S.D.N.Y. 1995); *Bass v. Youngblood*, 221 Cal. App. 2d 278, 288–289 (Cal. Ct. App. 1963). Under 11 U.S.C § 544, the Plaintiff has standing to assert the rights and claims of creditors. However, if a creditor did not have a claim against the Debtor as of the transfer date, the creditor has no standing to assert that the transfer was fraudulent.

Without further detail, there is no way to confirm whether the creditors listed in Schedule A to the Complaint were creditors as of the various transfer dates. Although the Plaintiff hopes to ignore this issue, this is a jurisdictional requirement. Without, at a minimum, an allegation that these creditors were creditors at the time of the alleged fraudulent transfers, the Plaintiff has no standing and all claims in the Complaint under § 544 and the California fraudulent transfer law must be dismissed.[2]

**IV.    THE COMPLAINT FAILS TO EVIDENCE DEBTOR'S INSOLVENCY AT THE TIME OF ALLEGEDLY FRAUDULENT TRANSFERS.**

To establish a claim for a constructively fraudulent transfer under either 11 U.S.C. § 548 or the California fraudulent transfer law, a claimant must evidence that it received less than reasonably equivalent value for the transfer and one of four additional factors. In the Complaint, Counts B, D, F, and H are each claims to avoid constructively fraudulent transfers by the Debtor. In each of these Counts, the Plaintiff alleges that as a result of the various transfers, the Debtor became insolvent and undercapitalized.[3]  [*Compl*. ¶¶ 106, 153, 197, 239.]

---

[2] If all claims under § 544 and the California fraudulent transfer law were dismissed, this would also result in a dismissal of claims related to alleged fraudulent transfers occurring more than two (2) years prior to the petition date. Under § 548, the statute of limitations is two years rather then four.

[3] The Debtor also alleges that the Debtor knew that the obligations the Debtor incurred were beyond the Debtor's ability to pay as the debts matured. [*Compl*. ¶¶ 107, 154, 198, 240.] Similar to the allegations of insolvency, these allegations are broad conclusory statements that are mere recitations of the elements supporting a claim for a constructively fraudulent transfer. The allegedly fraudulent transfers span from February 2012 to dates after the petition date. The Complaint does not say anything about when the debts matured. The Complaint does not say anything about who the Debtor owed. The Complaint does not say anything about the Debtor's ability to pay. These broad, unsupported allegations cannot, and do not, satisfy the minimum

6

The Plaintiff made these conclusory statements without further support. This was highlighted in the Motion to Dismiss. [*Mot. to Dismiss* 10.] In the Response, the Plaintiff asserts that several exhibits attached to the Complaint support a finding of insolvency. However, none of these exhibits support a finding that the Debtor was insolvent on the date each transfer was made. The exhibits that allegedly support a finding of insolvency are a series of emails dated from January 22, 2016 through June 24, 2016. These emails say nothing about the allegedly fraudulent transfers. These emails say nothing about the Debtor's inability to pay debts as they become due. Further, these emails are dated nearly four years after the date of some of the allegedly fraudulent transfers. To properly plead insolvency, there must be financial data or analysis provided to allow the court to at least be able to infer that the debtor's liabilities exceeded its assets at the time of the transfer. *In re Trinsum Group, Inc.*, 443 B.R. 628, 636 (Bankr. S.D.N.Y. 2011). This has not been done. The Response fails to address this issue and seemingly ignores this pleading requirement.

For this reason, all claims for constructively fraudulent transfers against either CTS or CTGAM must be dismissed.

## V.    CONCLUSION

As set forth above, the Defendants respectfully request that the Court grant their Motion to Dismiss with respect to all of the causes of action against them without leave to amend.

Dated: September 3, 2019            **BARNES & THORNBURG LLP**

By: */s/ Jonathan J. Boustani*
    Paul J. Laurin
    Jonathan J. Boustani

*Attorneys for CTG Advanced Materials, LLC and CTS Corporation*

pleading requirements and support dismissal.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Barnes & Thornburg, 2029 Century Park East, Suite 300, Los Angeles, CA  90067.

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANTS CTS CORPORATION AND CTG ADVANCED MATERIALS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 3, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.** **SERVED BY UNITED STATES MAIL**:
On , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 3, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**The Honorable Deborah J. Saltzman**
**United States Bankruptcy Court**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1634**
**Los Angeles, CA  90012**

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 3, 2019 | Jerod Williams | */s/  Jerod Williams* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Keith Patrick Banner**     kbanner@greenbergglusker.com, sharper@greenbergglusker.com;calendar@greenbergglusker.com
- **Peter J Benvenutti**     pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- **Jonathan Boustani**     jboustani@btlaw.com
- **Cheryl S Chang**     Chang@Blankrome.com, Hno@BlankRome.com
- **Brian L Davidoff**     bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
- **Edward J Dennis**     eburch@lynnllp.com
- **Craig N Haring**     charing@blankrome.com, arc@blankrome.com
- **Tobias S Keller**     tkeller@kellerbenvenutti.com
- **Ian Landsberg**     ilandsberg@sklarkirsh.com, lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com
- **Andrew B Levin**     alevin@wcghlaw.com, Meir@virtualparalegalservices.com;pj@wcghlaw.com;jmartinez@wcghlaw.com
- **Christian A Orozco**     corozco@lynnllp.com, thooker@lynnllp.com;ejohnson@lynnllp.com
- **Christopher O Rivas**     crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Howard Steinberg**     steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- **David A Taylor**     david@taylorstrategic.com
- **United States Trustee (ND)**     ustpregion16.nd.ecf@usdoj.gov

**2. <u>SERVED BY UNITED STATES MAIL</u>**:

| | |
|---|---|
| **DHAN, LLC**<br>3236 Justamere Road<br>Woodridge, IL 60517 | **Adrian Garcia**<br>2100 Ross Avenue, Ste 2700<br>Dallas, TX 75201 |
| **Sam Butler Hardy IV**<br>2100 Ross Avenue, Ste.2700<br>Dallas, TX 75201 | |