GREENBERG TRAURIG, LLP
Howard J. Steinberg (SBN CA 89291)
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
Email: steinbergh@gtlaw.com
Attorneys for Defendants
BLUE WOLF CAPITAL PARTNERS, LLC
BLUE WOLF CAPITAL FUND II, L.P.
BLUE WOLF CAPITAL ADVISORS L.P.
BW PIEZO HOLDINGS, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

In re:

CHANNEL TECHNOLOGIES GROUP, LLC,

Debtor,

---

CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC,

Plaintiffs.

v.

BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, L.P., GLADSTONE INVESTMENT CORPORATION, BLUE WOLF CAPITAL ADVISORS; L.P., BW PIEZO HOLDINGS, LLC, FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL, II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE II, INC., PENGDI HAN, DHAN, LLC, GRANT THORNTON, LLP, CTG ADVANCED MATERIALS, LLC, CTS CORPORATION, ELECTRO OPTICAL INDUSTRIES, DUFF & PHELPS, and CIT BANK, N.A,

Defendants.

CASE NO. 9:16-bk-11912-DS

Chapter 11

Adv. No. 9:18-ap-01058-DS

REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL ADVISORS, L.P., BLUE WOLF CAPITAL FUND II, L.P., AND BW PIEZO HOLDINGS, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DATE: September 10, 2019
TIME: 1:00 p.m.
PLACE: Courtroom 1639
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

## TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. FRAUDULENT TRANSFER CLAIMS A, B, C, AND D CANNOT STATE A CLAIM .......... 1

A. Overview .......... 1

B. The Imposition of a Conventional Alter Ego or Single Enterprise Alter Ego Remedy Does Not Result in the Debtor Acquiring a Property Interest in the Assets of the Targeted Entity .......... 2

C. The Trustee's Concession that He Is Not Seeking to Avoid the Transfer of the H.C. Material Assets Forecloses his Claims .......... 5

D. No Plausible Actual Fraud Claims Are Pleaded .......... 6

E. No Plausible Constructive Fraudulent Transfer Claim is Alleged .......... 7

F. The Trustee Fails to Adequately Allege Alter Ego Facts .......... 7

G. Claims C and D Must be Dismissed Since they Fail to Identify a Creditor who Existed as of the Transfer and Petition Dates .......... 8

III. FRAUDULENT TRANSFER CLAIMS E, F, G, AND H FAIL TO STATE A CLAIM .......... 8

A. Overview .......... 8

B. Newly Alleged Transfers Are Time Barred .......... 8

C. All Transfers More than 4 Years Prior to the Petition Must be Dismissed and Transfers More than 2 Years Prior to the Petition Must be Dismissed from Claims E and F .......... 9

D. Claims G and H Must be Dismissed Since they Fail to Identify a Creditor who Existed as of the Transfer and Petition Dates .......... 9

E. There Are No Facts Pleaded which Support Claims against the Blue Wolf Entities .......... 9

F. The Elements Necessary to Plead an Actual Fraud Claim in Claims E and G Are Lacking .......... 10

G. The Elements Necessary to Plead a Constructive Fraudulent Transfer Claim in Claims F and H Are Lacking .......... 10

IV. THE CONVERSION CLAIMS FAILS TO STATE A CLAIM .......... 11

V. THE BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING FAILS TO STATE A CLAIM .......... 11

VI. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*21st Century Financial Services, LLC v. Manchester Financial Bank*, 255 F. Supp. 3d 1012 (S.D. Cal. 2017) .......... 4

*Adams v. California Dept. of Health Services*, 487 F. 3d 684 (9th Cir. 2007), overruled on other grounds, *Taylor v. Sturgell*, 553 U.S. 880 (2008) .......... 12

*Ahcom, Ltd. v. Smedling*, 623 F. 3d 1248 (9th Cir. 2010) .......... 5

*Alkayali v. Hoed*, 2018 WL 4537596 (S.D. Cal. 2018) .......... 7

*Egan v. Mutual of Omaha Ins. Co.*, 24 Cal 3d 809 (1979) .......... 11

*In re GGW Brands, LLC*, 504 B.R. 577 (Bankr. C.D. Cal. 2013) .......... 3

*Las Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal App. 3d 1220 (1991) .......... 3

*Leek v. Cooper*, 184 Cal. App. 4th 399 (2011) .......... 2

*Messler v. Bragg Management Co.*, 39 Cal. 3d 290 (1985) .......... 2

*In re Mihranian*, 2017 WL 2775043 (B.A.P. 9th Cir. 2017) (Motion) .......... 4

*Mossimo Holdings LLC v. Haralambus*, 2015 WL 476298 (C.D. Cal. 2015) .......... 3

*Matter of Newman*, 875 F. 2d 668 (8th Cir. 1989) .......... 4

*In re Notchcliff Associates*, 139 B.R. 361 (Bankr. D. Md. 1992) .......... 4

*Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal. App. 4th 1189 (2011) .......... 5

*SOS Co., Inc. v. E-Collar Technologies, Inc.*,
2017 WL 5714716 (C.D. Cal. 2017) ... 7

*Toho–Towa Co. v. Morgan Creek Prods., Inc.*,
217 Cal. App. 4th 1096 (2013) ... 4

*United States v. Galletti*,
541 U.S. 114, 124 S.Ct. 1548, 158 L.Ed.2d 279 (2004) ... 4

*Matter of Walldesign, Inc.*,
872 F. 3d 954 (9th Cir. 2017) ... 5, 6

**Statutes**

California Civil Code § 3439.09 and § 548(a)(1) ... 9

**Other Authorities**

Federal Rule Civil Procedure 8 ... 10

Federal Rule Civil Procedure 9(b) ... 10

## I. INTRODUCTION

The Trustee's argument that the Motion to Dismiss ("Motion") filed by Blue Wolf Capital Partners, LLC, Blue Wolf Capital Fund II, L.P., Blue Wolf Capital Advisors L.P (collectively, the "Blue Wolf Entities") and BW Piezo Holdings, LLC ("BWP") should be denied because he has attached 5 more exhibits and set forth additional paragraphs in the Second Amended Complaint ("Complaint") is unavailing. A transfer of assets owned by a non-debtor entity which were not and have never been owned by the debtor cannot serve as the basis for a fraudulent transfer claim. These claims do not involve a transfer of the debtor's interest in property. Most of the new allegations relate to details about transfers that were not the subject of avoidance claims in the First Amended Complaint and are time barred. Further, setting forth more conclusory allegations does not cure pleading deficiencies. The deficiencies exist because there are simply no facts to support the conclusions. Finally, the Trustee's two state law claims remain deficient as they were in the prior complaint.

## II. FRAUDULENT TRANSFER CLAIMS A, B, C, AND D CANNOT STATE A CLAIM

### A. Overview

Claims A, B, C, and D are not viable. They are all premised on the notion that a transfer of the assets of CTG Advanced Materials ("AM") should be deemed to be a transfer of the assets of CTG. There can be no dispute that a fraudulent transfer claim cannot be asserted unless there was a transfer of the debtor's interest in property. The Trustee argues that by seeking a remedy of conventional alter ego and a single enterprise theory, which is likewise an alter ego remedy, that AM's property can be deemed to be CTG's property. In so arguing, the Trustee misconstrues the law and ignores a binding decision of the California Supreme Court. The Trustee acknowledges that he is not seeking to avoid the transfer by which AM acquired the assets of H.C. Materials in 2013, and that his claims are based solely on the sale of AM's assets in 2016. This admission forecloses the Trustee from any recovery. The Trustee has also failed to properly allege essential elements necessary to state claims of an actual intent to hinder, delay or defraud creditors or of a constructive fraudulent transfer. In addition, the Trustee fails to properly allege that the Blue Wolf Entities and BWP even received the fraudulent transfers.

**B. The Imposition of a Conventional Alter Ego or Single Enterprise Alter Ego Remedy Does Not Result in the Debtor Acquiring a Property Interest in the Assets of the Targeted Entity**

An essential component of a fraudulent transfer is that an interest of the debtor in property is transferred. See authorities cited in Notice of Motion and Motion to Dismiss the Second Amended Complaint ("Motion")(Doc. No. 165), p. 8-9. This has been and remains the law and the Trustee fails to cite any authority to the contrary. When an alter ego remedy is granted, the targeted entity against whom it is granted becomes liable for the defendant's debts. Critically, while there is liability for both the targeted entity and the defendant, they do not become one and the same entity. As such, while there is joint liability, neither company acquires the assets of the other. As noted in the Motion at p. 17, the California Supreme Court could not have been clearer on this issue when it stated in *Messler v. Bragg Management Co.*, 39 Cal. 3d 290, 301 (1985):

> Yet the wall remains: the parent is liable through the acts of the subsidiary, <u>but as a separate entity</u>. A judgment obtained against a corporation and its alter ego is enforceable against both separately. (emphasis added)

What does the Trustee say in response to the *Messler* decision in his Opposition? Absolutely nothing. The Trustee fails to cite a single case that holds that the assets of a corporation and its alter ego are jointly owned. Simply stated, that is not the law. As explained in *Leek v. Cooper*, 184 Cal. App. 4th 399, 413 (2011):

> The essence of the alter ego doctrine is not that the individual shareholder becomes the corporation, but that the individual shareholder is liable for the actions of the corporation. (*Mesler v. Bragg Management Co., supra*, 39 Cal.3d at p. 300, 216 Cal.Rptr. 443, 702 P.2d 601.) For all other purposes, the separate corporate existence remains. (Id. at p. 301, 216 Cal.Rptr. 443, 702 P.2d 601.)

The Trustee also says, without citation to any authority so holding, that "A single enterprise theory also results in the debtor's ownership of AM's assets:" Plaintiff's Response to Defendants Blue

Wolf Capital Partners, LLC, Blue Wolf Capital Advisors, L.P., Blue Wolf Capital Fund II, L.P. BW Piezo Holdings, LLC's Motion to dismiss Second Amended Complaint ("Response")(Doc. No. 187), p. 11. This is likewise not the law. When a single enterprise remedy is imposed, it merely results in joint and several liability for the entities. They do not jointly own each other's assets. The Trustee cites *Mossimo Holdings LLC v. Haralambus*, 2015 WL 476298 (C.D. Cal. 2015). In *Mossimo*, the plaintiff sought to hold a corporation and its affiliate liable for breach of an agreement. In setting forth the legal effect of the single enterprise theory, the court noted that it is a form of an alter ego remedy and said:

> Thus, if Plaintiff adequately pleads a "single enterprise" theory, it may apply the breach of contract claims to TLC and *Haralambus* as though they were, essentially, partners in a common venture. Under California law, this means that they are jointly and severally liable for the obligations of the enterprise. Cal.Corp.Code § 16306(a).

*Id.* at * 3.

The Trustee also cites *Las Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal App. 3d 1220, 1249 (1991), for the proposition that the "single-enterprise theory imposes a remedy—separate from alter ego." Response, p. 11. The *Las Palmas* case says no such thing. It concludes that the entities were a single enterprise and therefore alter egos. *Id.* at 1249-52. Finally, the Trustee cites *In re GGW Brands, LLC*, 504 B.R. 577, 621-22 (Bankr. C.D. Cal. 2013), but that court did not hold that the entities' assets became jointly owned as a result of the imposition of the remedy. Instead, it confirmed what the *Mossimo* court held, to wit, that it gave rise to a partnership type liability:

> This equitable doctrine is "applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose." Id. Specifically, this doctrine allows a court to "disregard the corporate form in order to hold one corporation liable for the debts of another affiliated corporation when the latter is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation." Id. at 479 (internal quotation marks omitted) (citing *Las*

> *Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal.App.3d 1220, 1 Cal.Rptr.2d 301, 317 (1991)).

Other courts have likewise held that the remedy only gives rise to partnership type liability. See *Toho–Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1108 (2013); *21st Century Financial Services, LLC v. Manchester Financial Bank*, 255 F. Supp. 3d 1012, 1021-22 (S.D. Cal. 2017)..

Under California law, a partnership maintains a separate identity from its general partners. *21st Century Financial Services, LLC v. Manchester Financial Bank,* 255 F. Supp. 3d 1012, 1024 (S.D. Cal. 2017); *United States v. Galletti*, 541 U.S. 114, 116, 124 S.Ct. 1548, 158 L.Ed.2d 279 (2004). This principal has been recognized in the bankruptcy context. *In re Notchcliff Associates*, 139 B.R. 361, 370 (Bankr. D. Md. 1992)(" Property of the estate of a partnership that is in bankruptcy does not include nonpartnership property separately owned by the debtor's general partners."). Thus, even if the Court were to conclude that the Trustee could seek an alter ego remedy against BWP and the Blue Wolf Entities, it would not solve the fundamental problem that the property that is the subject of the avoiding action claim was not property in which the estate had an interest. A trustee cannot bring an avoiding action with respect to property in which the estate held no interest. The right to assert claims against AM's assets, which were never vested in CTG, is not tantamount to acquiring an ownership in same. The court so held in *In re Mihranian*, 2017 WL 2775043 (B.A.P. 9th Cir. 2017) (Motion, p. 22-23). Under analogous circumstances, in rejecting a claim brought under § 549 by a trustee who sought to avoid a transfer of property by a partnership in which the debtor was a general partner, the court in *Matter of Newman*, 875 F. 2d 668, 671 (8th Cir. 1989), held:

> Applying these principles to the case at bar, we conclude that because the transfer which the trustee sought to avoid involved partnership property in which the debtor had no interest aside from his right to demand his individual partner's share, there was no transfer of the debtor's estate. Therefore, the trustee may not avoid the transaction under 11 U.S.C. § 549(a), or recover the property under 11 U.S.C. § 550(a)(1). Cf. *In re Caudy Custom Builders, Inc.*, 31 B.R. 6, 9 (Bankr.D.S.C.1983) (though

> debtor held legal title, trustee could not avoid mortgage of partnership property under 11 U.S.C. § 547(b), as there was no transfer of "property of the debtor"; trustee's only interest in partnership property was right to demand partner's share after an accounting and payment of partnership liabilities).

The only case cited by the Trustee which relates to the ability to assert an alter ego remedy is *Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal. App. 4th 1189 (2011), and it has no application to this issue. In that case, when a creditor's claim was unpaid, it was allowed to pursue claims against an insider for the debt as the obligor/corporation kept no records and had not been capitalized. The court held that the claim was not property of the estate and could be pursued by a creditor. This did not involve a fraudulent transfer claim or whether the assertion of an alter ego remedy converts the target's assets into property of the estate. The case cited in the Court's prior decision dismissing the First Amended Complaint, *Ahcom, Ltd. v. Smedling*, 623 F. 3d 1248 (9th Cir. 2010), is likewise inapplicable. In that case, the court held that alter ego is a remedy, not a claim, and that a creditor had standing to pursue the remedy against a debtor corporation's stockholder. While that court recognized that a trustee could assert an alter ego remedy in conjunction with setting aside a fraudulent transfer, it did not hold that the assets of the entity against whom the remedy could be sought became property of the estate. The fact that a trustee could pursue an alter ego remedy where the debtor's assets were fraudulently transferred has nothing to do with this issue.

### C. The Trustee's Concession that He Is Not Seeking to Avoid the Transfer of the H.C. Material Assets Forecloses his Claims

In his Response, the Trustee acknowledges that he is not seeking to avoid the transfer of the H.C. Material assets in 2013 and instead solely seeks to avoid the transfers of the proceeds of the sale of AM's assets in 2016. Response, p. 15. The only case the Trustee cites in support of the proposition that he can focus solely on the transfer of AM's assets in 2016, *Matter of Walldesign, Inc.*, 872 F. 3d 954 (9th Cir. 2017), cuts against, rather than supports his position. In *Walldesign*, a corporate officer set up a secret account in the corporation's name which he used to pay for his personal expenses. The vendors who were paid from this account argued that they were subsequent transferees who could raise a number of

good faith defenses since the establishment of the secret account was tantamount to a transfer of the account to the corporate officer. In discussing the one step transaction approach when determining whether the debtor corporation had dominion over the funds, the court rejected this argument and said the corporate officer did not have dominion over the funds, noting: "Bello (officer) misdirected those company funds directly to third parties…without ever depositing them into his own personal account or otherwise taking legal control over them." *Id.* at 967. When the officer used those funds to pay for his personal expenses, he became, for purposes of § 550(a), the person for whose benefit the debtor's property was transferred and was not a transferee. *Id.* at 967.

In this case, in 2013, the assets were placed in the name of AM which certainly had legal control of them. Having conceded that he is not seeking to avoid the 2013 transfer, the issue of initial/subsequent transferee is now not even germane. The Trustee can only rely on the alter ego remedy to argue that AM's assets are property of the CTG estate. As noted above, even if that remedy were imposed, the AM assets would not be property of the CTG estate. Further, if the Trustee's position were recognized, the statute of limitations for avoiding action claims would be rendered meaningless. A trustee could seek to avoid transfers of the debtor's property regardless of when the transfers took place by simply alleging that the non-debtor transferee was the alter ego of the debtor and seek to avoid the non-debtor's transfer of its, as opposed to the debtor's, property regardless of when the underlying transfer took place. Not surprisingly, no case has so held. The avoiding action statute is not implicated where the debtor's property is not transferred.

**D. No Plausible Actual Fraud Claims Are Pleaded**

Separate and apart from the failure to be able to properly allege that the transfers involved an interest of the debtor in property, which alone is fatal to the Trustee's claims, there is no plausible explanation set forth concerning an actual intent to hinder, delay, or defraud CTG's creditors. The Trustee contends that in 2013, some unspecified amount of CTG's funds were used along with funds from a bank credit facility in which CTG was one of several borrowers when AM acquired assets from H.C. Materials. There are no allegations that this was part of a scheme to defraud CTG's creditors at that time. The fact that AM did not give the proceeds of the sale of AM's assets to CTG when they were sold years later does not plausibly support a fraudulent transfer theory since the assets were vested in AM long

before there are any allegations of financial problems at CTG. Further, the exhibits which are attached to the Complaint demonstrate that some isolated payments of AM's liabilities were extremely small in amount and in no way support conclusory allegations that this somehow resulted in CTG being intentionally rendered insolvent.

### E. No Plausible Constructive Fraudulent Transfer Claim is Alleged

Separate and apart from the failure to properly allege that the transfers involved an interest of the debtor in property, which is fatal to the Trustee's claims, other necessary elements to plead a constructive fraudulent transfer claim are lacking. Since CTG's assets were not transferred as a consequence of the sale of AM's assets, there can be no basis to allege a lack of reasonably equivalent value being received since CTG's assets were not transferred. Further, other than setting forth conclusory allegations relating to insolvency, no specifics regarding CTG's financial condition as of the date of the AM asset sale are set forth. This is insufficient. Motion, p. 26.

### F. The Trustee Fails to Adequately Allege Alter Ego Facts

Even if an alter ego remedy could be used to somehow convert AM's assets into assets of the debtor, which it cannot, the alter ego "facts" are largely legal conclusions and are insufficient to support the remedy. The Trustee merely refers to names of individuals who had a management position at the Blue Wolf Entities without setting forth any specific wrongful actions in which they engaged. There are repeated allegations of CTG being "forced" to take actions, without any explanation as to how this force was exercised other than to say that a parent entity had the authority to replace CTG's managers. Courts have consistently rejected such conclusory allegations. See, *SOS Co., Inc. v. E-Collar Technologies, Inc.*, 2017 WL 5714716 at *6 (C.D. Cal. 2017)(insufficient conclusory allegations of failing to respect corporate formalities; sharing of officers; appointment of key officers; controlling finances; improper use of funds; serving as conduits; commingling of funds; failure to pay creditors); *Alkayali v. Hoed*, 2018 WL 4537596 at *6 (S.D. Cal. 2018)(insufficient conclusory allegations of domination; diversion of funds; inadequate capitalization; common employees, offices).

The allegations that the Blue Wolf Entities and BWP are alter egos are even vaguer than the allegations relating to AM and CTG. There are no facts, merely conclusions, alleged. Further, there is not a single transfer identified that was made to BWP or Blue Wolf Capital Advisors, L.P., and Blue

Wolf Capital Fund II, L.P. and Blue Wolf Capital Partners, LLC are alleged to only have received a single transfer yet liability is sought against them for all transfers identified in the claims.

**G. Claims C and D Must be Dismissed Since they Fail to Identify a Creditor who Existed as of the Transfer and Petition Dates**

The creditors identified in the Complaint are only alleged to have held claims as of the petition date. They must hold claims as of both the transfer and petition dates. Motion, p. 28. The Trustee fails to cite any authority to the contrary or offer an explanation why the failure to plead same is excusable.

## III. FRAUDULENT TRANSFER CLAIMS E, F, G, AND H FAIL TO STATE A CLAIM

**A. Overview**

While the Trustee has identified specific transfers in the Complaint, he includes many new transfers that were not referenced in the First Amended Complaint and such claims are time barred. He also continues to include other transfers that are outside of the avoidance period. As to transfers that are timely raised, there are simply no facts which support the underlying claims.

**B. Newly Alleged Transfers Are Time Barred**

The Trustee does not dispute that having now been required to identify the transfers at issue in response to the last motion to dismiss, that he has increased the claims against CIT Bank, N.A. from $18,752,915.42 to $33,248,711.36; and against Gladstone Investment Corp. from $2,731,668.15 to $7,576,027.49. Motion, p. 29. In the First Amended Complaint, the Trustee set forth the precise dollar amount of the transfers and gave date ranges for the transfers (as opposed to setting forth the dollar amount and date of each transfer). In the Complaint, the Trustee now sets forth the transfer amounts and dates of each of the transfers. It is clear that different transfers are now being asserted as the date range has changed in addition to the dollar amount of the transfers. The Trustee does not explain in the Response why these new claims can be asserted since they are being asserted for the first time more than 2 years after the filing of the petition. This is prohibited by § 546(a)(1)(A). As such, the claims for these amounts must be dismissed.

///

///

///

**C. All Transfers More than 4 Years Prior to the Petition Must be Dismissed and Transfers More than 2 Years Prior to the Petition Must be Dismissed from Claims E and F**

The Trustee does not deny Claims E-H all seek to avoid transfers more than 4 years from the date the petition was filed. Such claims are barred by California Civil Code § 3439.09 and § 548(a)(1). There are also numerous transfers alleged in claims E and F, which are based upon § 548, that took place more than two years prior to the petition date. Those transfers are time barred by § 548(a)(1). In response, the Trustee says the transfers were made within one year of the Trustee's discovery of same, and cites to ¶¶ 205-216 of the Complaint. Response, p. 21. Those paragraphs say nothing of the kind. There are no allegations there or anywhere else in the Complaint that discuss grounds for equitable tolling. As such, the claims for time barred transfers must be dismissed.

**D. Claims G and H Must be Dismissed Since they Fail to Identify a Creditor who Existed as of the Transfer and Petition Dates**

The creditors identified in the Complaint are only alleged to have held claims as of the petition date. They must hold claims as of both the transfer and petition dates. Motion, p. 28. The Trustee fails to cite any authority to the contrary or offer an explanation why the failure to plead same is excusable.

**E. There Are No Facts Pleaded which Support Claims against the Blue Wolf Entities**

The Trustee does not deny that there are no allegations in Claims E-H that Blue Wolf Capital Fund II, L.P. and Blue Wolf Capital Advisors L.P. even received a transfer. Further Blue Wolf Capital Partners, LLC ("BW Capital") is only alleged to have received a single transfer, yet all of these entities are allegedly liable for all of the more than 650 transfers identified in Exhibit B to the Complaint. Even the claim that BW Capital received a single transfer appears to be contradicted by allegations in the Complaint that it was BWP that actually received the distribution. Motion, p. 11.

The Trustee only sets forth the names of some individuals who work for the Blue Wolf Entities, and there are no allegations setting forth anything wrong that they did. Nor are there any allegations that specify the wrongful acts of any of the Blue Wolf Entities other than general statements with no factual details to the effect that they "forced" CTG to take acts. The only "force" identified is the fact that they indirectly can appoint who is hired to manage CTG, which is clearly insufficient. Having the legal right

to do so without setting forth facts explaining the circumstances by which CTG's management was in fact required to take acts that they otherwise would not is necessary. Motion, p. 5-7. Further, repeatedly grouping the entities without identifying specific bad acts that each engaged in is insufficient, and stating that they are alter egos is nothing more than a legal conclusion which satisfies neither Rule 9(b) or Rule 8 standards.

**F. The Elements Necessary to Plead an Actual Fraud Claim in Claims E and G Are Lacking**

Essential elements needed to plead an actual fraudulent transfer claim in Claims E and G are lacking. When identifying the transfers, the Trustee repeatedly alleges that CTG "did not receive reasonably equivalent value", but this is not an element of the claim. Complaint, ¶¶ 161-171; 205-215. There are admissions that many of the transfers were used to satisfy obligations in which CTG was a joint obligor, yet there is no explanation why the payment of these creditor claims is fraudulent. Complaint, ¶¶ 163-165; 207-209. Further, there are numerous transfers dating back to 2012, which predates the acquisition of the H.C. Material assets and there is no explanation as to how any of these transfers were part of a fraudulent scheme. There is also no explanation of how transfers subsequent to the AM acquisition in 2013 and 2014 were part of a fraudulent scheme. The "who, what, where, and how" elements are simply not there. Motion, p. 24.

**G. The Elements Necessary to Plead a Constructive Fraudulent Transfer Claim in Claims F and H Are Lacking**

Essential elements needed to plead a constructive fraudulent transfer claim are lacking. There is no explanation why CTG did not receive reasonably equivalent value for paying debts on which it was jointly liable. For example, CTG, AM, and BWP had a joint credit line, Exhibit 5, which line is for both the acquisition of the H.C. Materials assets and includes a revolving credit line and term loan. Exhibit 5 Section 2. There is no allegation that the credit line was not used for this purpose and the loan agreement says it replaced a prior line which predated the AM acquisition. It is not plausible that payments made to the creditor were not used for this purpose. There is also not even a remote suggestion that CTG was insolvent prior to the AM acquisition yet numerous transfers prior to that date are subject to these claims.

Even after the acquisition date, there are no details pertaining to the financial condition of CTG even through the time period shortly before the petition date.

## IV. THE CONVERSION CLAIMS FAILS TO STATE A CLAIM

The Trustee does not deny that an essential element of a conversion claim is that it must involve a transfer of CTG's assets. The conversion claim is limited to the proceeds of the sale of the AM assets. Complaint, ¶¶ 244-245. The only basis for claiming that those assets are CTG's property is through the alter ego claims. As noted in Section II. B, even if an alter ego remedy were granted, it would not result in those assets being CTG's property. Further, as set forth in the Motion and above, there are insufficient grounds to support an alter ego remedy. In the Response, the Trustee makes reference to the proceeds of the sale of Electro-Optical. Response, p. 23. In the Complaint, the Trustee merely alleges that Electro-Optical was sold at a "cut-rate price." Complaint, ¶ 47. There is no allegation that CTG did not receive the sales proceeds, nor is there even any information about the amount of money that was involved. As such, this cannot support a conversion claim. The Trustee also provides no authority for the proposition that reverse veil piercing based upon a state law claim is permissible. See Motion, p. 13-15.

## V. THE BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING FAILS TO STATE A CLAIM

A sole member manager of a limited liability company("LLC") owes no duties to the LLC. Motion, p. 33-34. In his Response, the Trustee cites to *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal 3d 809, 820 (1979), a case discussing fiduciary obligations owed by an insurance carrier which has nothing to do with duties owed in the LLC context. The Trustee ignores the allegations in the claim for Breach of Duty of Good Faith and Fair which say BWP owed duties as the controlling shareholder (Complaint, ¶ 248) and instead shifts his position to say that BWP breached the Operating Agreement by appointing managers who would not manage. Response, p. 25. In support of this newly minted position, the Trustee cites to ¶ 20 of the Complaint which does not say this. Further, the provision in the Operating Agreement to which the Trustee cites (Exhibit 1, section 3.1), says the responsibility for managing CTG will be delegated to two managers. The Trustee admits this was done. Complaint, ¶ 25. There are no allegations in the Complaint that BWP was in fact the manager so it could not breach duties owed as a manager. As such, no claim is stated.

Further, the Trustee has already sued the managers of CTG for breach of duty in an adversary proceeding this Court remanded to state court. See Order entered on January 22, 2019, in Adv. No. 9:18-ap-01070-DS (Doc. No. 42). To the extent the Trustee is now seeking to assert such claims against BWP (albeit not alleged in the Complaint), this constitutes claim splitting and is impermissible. *Adams v. California Dept. of Health Services*, 487 F. 3d 684, 689 (9th Cir. 2007), overruled on other grounds, *Taylor v. Sturgell*, 553 U.S. 880 (2008).

## VI. **CONCLUSION**

The claims in the Complaint should be dismissed with prejudice. The Trustee has been unable to cure the pleading deficiencies and claims pertaining to the transfer of non-debtor assets are simply not viable.

DATED: September 3, 2019

GREENBERG TRAURIG, LLP

By ______________________
Howard J. Steinberg
Attorneys for Defendants
BLUE WOLF CAPITAL PARTNERS, LLC
BLUE WOLF CAPITAL FUND II, L.P.
BLUE WOLF CAPITAL ADVISORS L.P.
BW PIEZO HOLDINGS, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Greenberg Traurig, LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL ADVISORS, L.P., BLUE WOLF CAPITAL FUND II, L.P., AND BW PIEZO HOLDINGS, LLC's MOTION TO DISMISS SECOND AMENDED COMPLAINT will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/03/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 09/03/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 09/03/2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/03/2019 | Terrine Pearsall | /s/ Terrine Pearsall |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**PROOF OF SERVICE OF DOCUMENT**

**ATTACHMENT PAGE**

1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

- Keith Patrick Banner kbanner@greenbergglusker.com, sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Peter J Benvenutti pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- Jonathan Boustani jboustani@btlaw.com
- Cheryl S Chang Chang@Blankrome.com, Hno@BlankRome.com
- Brian L Davidoff bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
- Edward J Dennis , eburch@lynnllp.com
- Craig N Haring charing@blankrome.com, arc@blankrome.com
- Tobias S Keller tkeller@kellerbenvenutti.com
- Ian Landsberg ilandsberg@sklarkirsh.com, lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com
- Andrew B Levin alevin@wcghlaw.com, Meir@virtualparalegalservices.com;pj@wcghlaw.com;jmartinez@wcghlaw.com
- Christian A Orozco corozco@lynnllp.com, thooker@lynnllp.com;ejohnson@lynnllp.com
- Christopher O Rivas crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Howard Steinberg steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- David A Taylor david@taylorstrategic.com
- United States Trustee (ND) ustpregion16.nd.ecf@usdoj.gov

2. SERVED BY UNITED STATES MAIL:

DHAN, LLC
3236 Justamere Road
Woodridge, IL 60517

Adrian Garcia
2100 Ross Avenue, Ste 2700
Dallas, TX 75201

Sam Butler Hardy IV
2100 Ross Avenue, Ste. 2700
Dallas, TX 75201

3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:

Honorable Deborah J. Saltzman - VIA PERSONAL DELIVERY
United States Bankruptcy Court
Central District of California
255 E. Temple Street, Suite 1634
Los Angeles, CA 90012