BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
chang@blankrome.com
Craig N. Haring (SBN 314100)
charing@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

Jeffrey Rhodes (Admitted *Pro Hac Vice*)
jrhodes@blankrome.com
1825 Eye Street NW
Washington, DC 20006
Telephone: 202.420.2200
Facsimile: 202.420.2201

Attorneys for
GLADSTONE INVESTMENT CORPORATION

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

In re:

CHANNEL TECHNOLOGIES GROUP, LLC,

Debtor.

Case No. 9:16-bk-11912-DS

Chapter: 11

---

CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC,

Plaintiff,

vs.

BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, L.P., GLADSTONE INVESTMENT CORPORATION, BLUE WOLF CAPITAL ADVISORS, L.P., BW PIEZO HOLDINGS, LLC, FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL, II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE PARTNERS II, INC., PENGDI HAN, DHAN, LLC, GRANT THORNTON, LLP, CTG ADVANCED MATERIALS, LLC, CTS CORPORATION, AND ELECTRO OPTICAL INDUSTRIES,

Defendants.

Adv. Case No. 9:18-ap-01058-DS

**REPLY OF GLADSTONE INVESTMENT CORPORATION IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Date: September 10, 2019
Time: 1:00 p.m.
Place: Courtroom 1639
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

## INTRODUCTION

The Second Amended Complaint fails to state plausible claims against Gladstone Investment Corporation ("Gladstone"). As explained in Gladstone's motion to dismiss [Docket No. 171], the Liquidating Trustee ("Trustee" or "Plaintiff") of debtor Channel Technologies Group, LLC ("CTG") has not only failed to allege facts sufficient to plead valid fraudulent transfer claims against Gladstone, the Trustee has also chosen to omit key facts regarding Gladstone's lending relationship with CTG that further demonstrate the implausibility of such claims. The Trustee, in its response to Gladstone's motion [Docket No. 186] ("Response"), urges the Court to look beyond the myriad deficiencies in its Second Amended Complaint, ignore critical and relevant facts that are integral to the Trustee's claims but undermine their legitimacy, and to not even consider Gladstone's arguments based on the puzzling assertion that Gladstone's motion to dismiss new claims to recover millions of dollars more than the Trustee sought in the prior versions of its pleadings is somehow "untimely." Despite the Trustee's attempts to obscure and avoid the facts, it is evident that the Trustee cannot state plausible claims for relief against Gladstone. The Court should dismiss the Second Amended Complaint with prejudice.

### I. Gladstone's Motion To Dismiss The Second Amended Complaint Is Timely

Gladstone's motion to dismiss is timely, notwithstanding that Gladstone filed an answer to the Trustee's First Amended Complaint, because the Second Amended Complaint supersedes the First Amended Complaint that the Court dismissed in its entirety pursuant to its Order and Memorandum Decision.[1] It is well established as a general rule that "an amended complaint supercedes the original complaint and renders the original complaint without legal effect." *Brain Life, LLC, v. Elekta Inc.*, No. 10cv1529-LAB (BGS), 2012 WL 48024 at *2 (S.D. Cal. Jan. 6, 2012); *see also Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, '[t]he amended complaint supercedes the original, the latter being treated thereafter as non-existent.'") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). Accordingly, as a consequence of the Court's dismissal of each and every claim

[1] *See Order Granting Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* [Docket No. 147] and *Memorandum Decision Re Defendants' Motions to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* [Docket No. 146].

asserted in the First Amended Complaint, and the Trustee's attempts in the Second Amended Complaint to assert plausible causes of action that include entirely new claims against Gladstone for the avoidance and recovery of newly identified transfers, Gladstone is permitted to move to dismiss the Trustee's amended pleading. The circumstances in which courts have denied defendants the opportunity to move to dismiss an amended complaint for failure to state a claim after answering an original complaint, as the Trustee urges the Court to do here, are simply not present in this case.

As an initial matter, the Trustee's reliance on Rule 12(g)(2) of the Federal Rules of Civil Procedure is misplaced and based on a selective and incomplete quotation of the rule. Rule 12(g)(2) provides, in its entirety, that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its *earlier motion*." Fed. R. Civ. P. 12(g)(2) (emphasis supplied). Gladstone has not previously filed a motion to dismiss, and therefore the rule does not bar Gladstone from moving to dismiss the Second Amended Complaint.

The Trustee further relies on cases where courts determined that defendants waived the right to assert available defenses by making a motion to dismiss (without waiver of the underlying defenses) where the amended complaints were not deemed to be based on new allegations and claims. *See Brain Life, LLC*, 2012 WL 48024 at *2; *Morrison v. Amway Corp. (In re Morrison)*, 421 B.R. 381, 386-89 (Bankr. S.D. Tex. 2009). But rather than support the Trustee's argument, these cases demonstrate why Gladstone's right to respond to the Second Amended Complaint by moving to dismiss has not been waived due to the filing of an answer to a superceded complaint. Here, the Second Amended Complaint asserts new claims, based on new grounds, seeking to recover from Gladstone new transfers totaling *millions* of dollars more than the Trustee sought to recover in the original or First Amended Complaint.

In Counts A through D of the Second Amended Complaint, which are based on a flawed "alter ego" theory, the Trustee asserted for the first time that Gladstone is liable as the beneficiary of more than $34,000,000 in transfers made to various other entities. *See, e.g.,* Second Amended

Complaint ¶ 65 (alleging that $7,264,770.39 transfer to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. "was made for the benefit of Gladstone Investment Corporation and the Mezzanine Lenders because they owned equity in BW Piezo and CTG Advanced Materials."); *see also* Second Amended Complaint at ¶¶ 67, 68, 69, 71, 72, 77, 78, 79. Although the Trustee has now conceded in its Response that these transfers are not recoverable from Gladstone, *see* Response at 1:18-23, 7:18-20, the fact remains that the Trustee included these claims for the first time in the Second Amended Complaint.[2]

The Trustee thus argues that it is only seeking to recover a single transfer allegedly made to Gladstone in the amount of $754,245.09 under Counts A through D of the Second Amended Complaint. Although the Trustee also identified this alleged transfer in the First Amended Complaint, in that pleading the Trustee sought to recover that amount as a subsequent transfer. *See* First Amended Complaint [Docket No. 7] at p. 28:13, 17-18 (identifying alleged transfer to Gladstone in a list of "Subsequent Transfers Related to Sale of CTG Advanced Materials (Blue Wolf Fund II, L.P.)"). In contrast, in the Second Amended Complaint, the Trustee now seeks to recover this same transfer as an initial transfer made directly by CTG to Gladstone. *See, e.g.,* Second Amended Complaint at ¶ 76 ("In March 2016, CTG transferred $752,245.09 to Gladstone Investment Corporation.").

The Trustee also seeks to recover millions of dollars more from Gladstone under the equally flawed and alternative "no benefit" theory set forth in Counts E through H, whereby the Trustee posits that transfers of CTG's property were allegedly made for the benefit of CTG's sister company, CTG Advanced Materials, LLC ("CTGAM"). In the First Amended Complaint, the Trustee alleged that transfers in the total amount of $2,731,668.15 were made to Gladstone during the time period of "12/3/2012–6/10/2016" as alleged "no-benefit" transfers. The Trustee did not include specific information about individual transfers, and failed to identify the specific

---

[2] The Trustee makes the odd assertion that Gladstone "embellishes" and "exaggerates" the claims alleged against it in the Second Amended Complaint. *See* Response at 1:18, 7:18-19. But the Second Amended Complaint says what it says, and it is the Trustee's pleading, not Gladstone's, that contains repeated allegations that millions of dollars in transfers to other parties were made for the benefit of Gladstone. In any event, the very fact that the Trustee has now confirmed in its Response that it will not pursue beneficiary liability claims against Gladstone illustrates precisely why Gladstone is entitled to move for dismissal of these new claims, none of which were ever mentioned in the prior versions of the Trustee's complaint.

dates and amounts of each transfer alleged to have been made during the stated time period. In the Second Amended Complaint, the Trustee now seeks to recover from Gladstone transfers totaling $7,576,027.49 that were allegedly made during the time period from February 2, 2012 through June 10, 2016, and for the first time provided an itemized list of the alleged transfers in a schedule attached to the further amended complaint. *See* Second Amended Complaint, Schedule B, at 110-113. As the list of the new transactions and corresponding dates provided in Schedule B now reveals, the overwhelming majority of the alleged transfers to Gladstone were made *prior* to the acquisition of CTGAM in October 2015 (and therefore could not, as a matter of fact, been made for the benefit of CTGAM) and at a time when CTG was obligated under outstanding secured loans made by its lender Gladstone. The new information contained in the Trustee's Second Amended Complaint thus confirms that the claims against Gladstone are implausible on their face.

Contrary to the Trustee's suggestion that the Second Amended Complaint merely adds "more detail" to claims asserted against Gladstone, *see* Response at 9:11-14, the Trustee has made fundamental and substantive changes to its complaint in order to assert new claims for the recovery of new transfers. These changes increase the amount of damages that the Trustee seeks to recover from Gladstone by millions of dollars. Under these circumstances, Gladstone is permitted to seek the dismissal of the Trustee's claims pursuant to a motion under Rule 12(b)(6).

Moreover, the consideration of Gladstone's motion to dismiss is also appropriate in light of the procedural posture of this case, particularly because a number of other defendants have also moved to dismiss the Second Amended Complaint. There is no question that Gladstone's arguments that the Trustee has failed to state claims upon which relief can be granted, whether presented by a Rule 12(b)(6) motion or otherwise, are fully preserved. *Trachsel v. Buchholz*, No. 08-02248 RMY, 2009 WL 86698, at *2 (N.D. Cal. Jan. 9, 2009) ("Failure to state a claim is a nonwaivable defect that can be raised at any time."); *see also Miller v. Fuhu Inc.*, No. 2:14-cv-06119-CAS(ASx) 2015 WL 2085490, at *6 (C.D. Cal. May 4, 2015) (permitting Rule 12(b)(6) motion seeking to dismiss amended complaint even though defendant had answered prior complaint); *Brain Life, LLC*, 2012 WL 48024 at *2. Under the circumstances, and even if

Gladstone's right to assert its arguments in a motion to dismiss could somehow be deemed waived as a technical matter (which Gladstone denies), the Court should adopt the efficient and practical approach followed by other courts – including the court in the *Morrison* case cited by the Trustee – and decide Gladstone's arguments in the context of its motion to dismiss the Second Amended Complaint. *In re Morrison,* 421 B.R. at 389 (finding that motion to dismiss was "ready to review despite the procedural technicalities"); *see also Miller*, 2015 WL 2085490 at *6.

**II. The "Alter Ego Claims" in Counts A through D Fail to State Plausible Claims for the Avoidance and Recovery of Fraudulent Transfers Against Gladstone**

The Trustee has failed to state plausible claims for the recovery of fraudulent transfers against Gladstone under Counts A through D of the Second Amended Complaint because a trustee may only seek to avoid a "transfer of an interest of the debtor in property," s*ee* 11 U.S.C. §§ 544(b)(1) & 548(a)(1)(A)-(B), and the proceeds of the sale of CTGAM - CTG's sister company - were indisputably not CTG's property. The Trustee seeks to plead around this fatal flaw by asserting a misguided and erroneous "alter ego" theory that, the Trustee mistakenly contends, operates to transform CTGAM's property into the property of CTG. However, as set forth in Gladstone's motion to dismiss, the Trustee's alter ego claims fail as pleaded based on applicable law that bars a company from seeking to pierce its own veil for its own benefit. *See Communist Party v. 522 Valencia, Inc*., 35 Cal.App.4th 980, 995 (1995); *see also Disenos Artisticos E Industriales, S.A., v. Costco Wholesale Corp.*, 97 F.3d 377, 380 (9th Cir. 1996); *United Continental Tuna Corp. v. U.S*., 550 F.2d 569, 573 (9th Cir. 1977); *U.S. Fid. & Guar. Co. v. Lee Investments, LLC,* No. CV-F-99-5583, 2008 WL 5157712, at *6 (E.D. Cal. Dec. 8, 2008).

In response, the Trustee cites *Shoaxing County Huayue Import & Export v. Bhaumik*, 191 Cal. App. 4th 1189, 1198-99 (2011) for the proposition that "a trustee can pursue a bankrupt entity." Response at 15:6-13. But *Shoaxing* involved claims asserted by the *creditor* of a bankrupt company – not a trustee or a debtor in possession - against an individual on the grounds that the individual and the debtor were alter egos. *Id*. at 1193-1194. The court rejected the individual's claim that the creditor's alter ego-based claims constituted a right of action that was property of the company's bankruptcy estate and therefore subject to the automatic stay. *Id*. at

1198. *Shaoxing* did not involve a claim by a trustee or debtor in possession seeking to pierce its own corporate veil and provides no support to the Trustee's alter ego claims. The Trustee has cited no authority to support the contention that it can stand in the shoes of CTG and pierce its own veil in order to claim the property of CTGAM as the property of CTG. The Trustee's claims against Gladstone under Counts A through D of the Complaint should be dismissed with prejudice.

**III. The "No Benefit" Claims Set forth in Counts E through H Fail to State Plausible Claims for the Avoidance and Recovery of Fraudulent Transfers Against Gladstone**

As explained in Gladstone's motion to dismiss, the new claims alleged in Counts E through H of the Second Amended Complaint to recover from Gladstone transfers in the total amount of $7,576,027.49 are barred under the applicable statutes of limitation, unsupported by facts sufficient to state plausible causes of action, and are alleged without inclusion of critical facts relating to the secured financing provided by Gladstone that reveal the illegitimacy of the Trustee's claims. Each of these counts should be dismissed with prejudice as to Gladstone.

First, the new "no benefit" claims are time barred under section 546(a)(1)(A) of the Bankruptcy Code because they were asserted for the first time more than two years after the date of CTG's bankruptcy filing on October 14, 2016 and do not relate back to the Trustee's prior pleadings. The claims are based on transactions that were not identified in the prior versions of the Trustee's complaints, which sought only the avoidance and recovery of specifically identified transfers, and nothing more. *See generally* First Amended Complaint at ¶¶ 53, 57, 89, 91, and Exhibits A & B. While the Trustee argues that the "liberally applied" relation-back doctrine described in the case of *ASARCO, LLC v. Union Pacific Railroad Company,* 765 F.3d 999, 1004 (9th Cir. 2014) should be applied here, that case involved claims asserted under the Comprehensive Environmental Response, Compensation, and Liability Act, and did not address claims for the recovery of specific transactions alleged to be avoidable as fraudulent transfers. "In avoidance litigation, each transfer is treated as a separate transaction for purposes of applying the 'relation back' doctrine." *In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 182 (Bankr. S.D.N.Y 2011), *aff'd*, 480 B.R. 480, 492 (S.D.N.Y. 2012) ("Moreover, the law is clear that each

preferential and fraudulent transaction is treated separately and distinctly. . . . Proof offered for one transaction does not govern as to another and, as such, relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct. . . . The "mere allegation" that all of the transactions are fraudulent does not make them part of the same conduct.") (citations omitted). Accordingly, the Trustee's new claims against Gladstone are time barred should be dismissed with prejudice on this basis.

Furthermore, the Trustee does not dispute that the claims for recovery of all transfers identified on Schedule B to the Second Amended Complaint as having been made more than two years prior to CTG's October 14, 2016 petition date are not timely under sections 548(a)(1)(A) and (a)(1)(B) of the Bankruptcy Code. Accordingly, with the exception of three transfers alleged to have been made in 2015 and 2016, all of the claims to recover the alleged "no-benefit" transfers pursuant to the Bankruptcy Code's fraudulent transfer statutes are time barred and should be dismissed with prejudice.

Moreover, the entirety of the "no benefit" claims alleged against Gladstone in Counts E through H should be dismissed because they are implausible on their face. The crux of the Trustee's claims to recover the Schedule B transfers is that the transfers were made "to maximize CTG Advanced Material's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials." *See* Second Amended Complaint, ¶ 166. In its Response, the Trustee confirmed that the theory underlying the "no benefit" claims is that CTG's property was transferred to Gladstone not for the benefit of CTG, but rather for the benefit of CTGAM and BW Piezo. *See* Response at p. 4 ("Specifically, from February 2012 to September 2016, the Debtor transferred $7,576,027.49 to Gladstone for the benefit of BW Piezo or AM."). But as Gladstone pointed out in its motion to dismiss, the vast majority of the transfers alleged to have been made to Gladstone and identified in Schedule B – consisting of 39 of the 47 alleged transfers identified - occurred *prior* to the acquisition of CTGAM on or about October 15, 2013. *See* Second Amended Complaint, ¶ 35. It is plain and a matter of common sense that any transfers of CTG's property made before the CTGAM acquisition could not possibly have been made for the benefit of CTGAM, and the Trustee's claims in Counts E through H of the Complaint are therefore

without foundation and based on an entirely flawed legal and factual premise. And, no facts are alleged to support any plausible claim that the few remaining transfers itemized in Schedule B and alleged to have been made to Gladstone during the period from November 2013 through June 2016 were made for the benefit of CTGAM and not for CTG. The Trustee's claims to recover the Schedule B transfers are patently implausible and should be dismissed with prejudice.

The Trustee's "no benefit" claims against Gladstone should also be dismissed based on the underlying facts regarding the acquisition of CTG in 2011 and the secured financing that Gladstone provided in connection with that transaction. The Trustee does not (and indeed cannot) challenge the legal principle that payments on account of fully secured obligations are not recoverable as fraudulent transfers. *See generally In re First Alliance Mortg. Co.*, 471 F.3d 977, 1008 (9th Cir. 2006); *see also Melamed v. Lake Cnty. Nat. Bank*, 727 F.2d 1399, 1402 (6th Cir. 1984); *In re Nat. Century Financial Enterprises, Inc.*, 783 F.Supp.2d 1003, 1029-30 (S.D. Ohio 2011); *In re Walters*, 163 B.R. 575, 581 (Bankr. C.D. Cal. 1994). But rather than admit that the Schedule B "no benefit" claims alleged against Gladstone lack merit, the Trustee instead attacks Gladstone's request that the Court take judicial notice of the facts relating to Gladstone's secured loans that the Trustee decided to exclude from the Second Amended Complaint. *See* Response at 24:14-25:15.

The Trustee's attempts to obscure and selectively plead facts in an effort to survive a motion to dismiss should not be countenanced by this Court. "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (quoting *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994)), *superseded by statute on other grounds as stated in Steinle v. City and County of San Francisco*, 919 F.3d 1154, 1167 n. 17 (9th Cir. 2019). Courts, including the Ninth Circuit, recognize the sound policy underlying this rule: "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino,* 146 F.3d at 706; *see also Global Network Comm., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("In most instances where this exception is

recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint. . . . The exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.") (citations omitted); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

The Trustee, as successor to CTG, is in possession of the facts relating to the secured financing provided by Gladstone. As the Trustee is most certainly aware (or should be based on the exercise of ordinary diligence that is required by a trustee or, for that matter, any plaintiff), there is no legitimate basis on which to question the authenticity of the Gladstone secured loan documents. The Trustee should not be permitted to ignore and omit from its complaint the critical and undisputable facts that demonstrate the futility of its claims. The Court should grant Gladstone's request for judicial notice, consider the Gladstone secured financing documents in ruling on Gladstone's motion, and dismiss the Trustee's Second Amended Complaint with prejudice.

**CONCLUSION**

WHEREFORE, Gladstone Investment Corporation requests that the Second Amended Complaint be dismissed with prejudice, and that it be granted such other or further relief as is just and appropriate.

DATED: September 3, 2019

BLANK ROME LLP

By: /s/ Craig N. Haring
Cheryl S. Chang
Jeffrey Rhodes
Craig N. Haring
Attorneys for
GLADSTONE INVESTMENT CORPORATION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1925 Century Park East, 19th Floor, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **REPLY OF GLADSTONE INVESTMENT CORPORATION IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 3, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

***See NEF for confirmation of electronic transmission to the U.S. Trustee and any trustee in this case, and to any attorneys who receive service by NEF.***

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) September 3, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) September, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/3/19 | Charman S. Bee | /s/ Charman S. Bee |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**PROOF OF SERVICE OF DOCUMENT**

**ATTACHMENT PAGE**

1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

- Keith Patrick Banner kbanner@greenbergglusker.com, sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Peter J Benvenutti pbenvenutti@kellerbenvenutti.com, pjbenven74@yahoo.com
- Jonathan Boustani jboustani@btlaw.com
- Cheryl S Chang Chang@Blankrome.com, Hno@BlankRome.com
- Brian L Davidoff bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
- Edward J Dennis , eburch@lynnllp.com
- Tobias S Keller tkeller@kellerbenvenutti.com
- Ian Landsberg ilandsberg@sklarkirsh.com, lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com
- Andrew B Levin alevin@wcghlaw.com, Meir@virtualparalegalservices.com;pj@wcghlaw.com;jmartinez@wcghlaw.com
- Christian A Orozco corozco@lynnllp.com, thooker@lynnllp.com;ejohnson@lynnllp.com
- Christopher O Rivas crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Howard Steinberg steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- David A Taylor david@taylorstrategic.com
- United States Trustee (ND) ustpregion16.nd.ecf@usdoj.gov

2. SERVED BY UNITED STATES MAIL:

DHAN, LLC
3236 Justamere Road
Woodridge, IL 60517

Adrian Garcia
2100 Ross Avenue, Ste 2700
Dallas, TX 75201

Sam Butler Hardy IV
2100 Ross Avenue, Ste. 2700
Dallas, TX 75201

3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:

Honorable Deborah J. Saltzman - VIA PERSONAL DELIVERY
United States Bankruptcy Court
Central District of California
255 E. Temple Street, Suite 1634
Los Angeles, CA 90012