GREENBERG TRAURIG, LLP
Howard J. Steinberg (SBN CA 89291)
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
Email:  steinbergh@gtlaw.com
Attorneys for Defendants
BLUE WOLF CAPITAL PARTNERS, LLC
BLUE WOLF CAPITAL FUND II, L.P.
BLUE WOLF CAPITAL ADVISORS L.P.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>CHANNEL TECHNOLOGIES GROUP, LLC,<br><br>    Debtor,<br>_____<br><br>CORPORATE RECOVERY ASSOCIATES,<br>LLC, as Trustee for the Liquidating Trust of<br>Channel Technologies Group, LLC,<br><br>    Plaintiffs.<br>v.<br><br>BLUE WOLF CAPITAL PARTNERS, LLC,<br>BLUE WOLF CAPITAL FUND II, L.P.,<br>GLADSTONE INVESTMENT<br>CORPORATION, BLUE WOLF CAPITAL<br>ADVISORS, L.P., FIDUS INVESTMENT<br>CORPORATION, FIDUS MEZZANINE<br>CAPITAL, II, L.P., AVANTE MEZZANINE<br>PARTNERS SBIC, LP, AVANTE<br>MEZZANINE II, INC., PENGDI HAN,<br>DHAN, LLC, GRANT THORNTON, LLP,<br>CTG ADVANCED MATERIALS, LLC, CTS<br>CORPORATION, ELECTRO OPTICAL<br>INDUSTRIES, DUFF & PHELPS, and CIT<br>BANK, N.A,<br><br>    Defendants. | CASE NO. 9:16-bk-11912-DS<br><br>Chapter 11<br><br>Adv. No. 9:18-ap-01058-DS<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, L.P., AND BLUE WOLF CAPITAL ADVISORS, L.P. TO COMPEL FURTHER RESPONSES FROM PLAINTIFF TRUSTEE TO REQUESTS FOR PRODUCTION OF DOCUMENTS; INTERROGATORIES; AND REQUESTS FOR ADMISSIONS**<br><br>DATE:    April 27, 2021<br>TIME:    11:30 a.m.<br>PLACE:  Courtroom 201 |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE AND TO THE PLAINTIFF AND ITS COUNSEL:**

PLEASE TAKE NOTICE that on  April 27, 2021 at 11:30 a.m., or as soon thereafter as the matter may be heard, a hearing will be conducted before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in Courtroom 201 of the United States Bankruptcy Court located at 1415 State Street, Santa Barbara, California, 93101, to consider the Motion of Defendants Blue Wolf Capital Partners, LLC, Blue Wolf Capital Fund II, L.P., and Blue Wolf Capital Advisors L.P., (collectively, the "Blue Wolf Entities") (the "Motion") to compel  Plaintiff Corporate Recovery Associates, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC ("Trustee"), to provide further responses to Requests for Production of Documents, Interrogatories, and Requests for Admissions (collectively, the "Discovery Requests"). As further set forth in the Motion, Trustee's responses to the discovery are wholly inadequate and do not even remotely satisfy the requirements of the underlying Bankruptcy Rules.

The parties have met and conferred in an effort to resolve their dispute concerning the sufficiency of Trustee's responses to the Discovery Requests. They were unable to reach an agreement and have entered into a Stipulation, which is attached to this Motion, which sets forth the dispute and the parties' positions with respect to the adequacy of the responses to the Discovery Requests.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-1(f), anyone who wishes to oppose this Motion must do so in a writing that complies with the rules of practice and procedure before the United States Bankruptcy Court for the Central District of California, and must

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES

*ACTIVE 55643281v3*

ensure that that such opposition is filed with the Court. The opposition must be served on GT at the following address:

Howard J. Steinberg, Esq.
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

DATED:  April 22, 2021                    GREENBERG TRAURIG, LLP

By: _____
Howard J. Steinberg
Attorneys for Defendants
BLUE WOLF CAPITAL PARTNERS, LLC
BLUE WOLF CAPITAL FUND II, L.P.
BLUE WOLF CAPITAL ADVISORS L.P.

## STIPULATION RE: DISPUTED ISSUES

Per Local Bankruptcy Rule 7026-1(c)(3), the disputed issues involve the sufficiency of Trustee's responses to the Discovery Requests. The Trustee is seeking approximately $60 million and seeks to avoid hundreds of transfers but has done little to provide information which serves as the basis for its claims. The Trustee has not identified a single document from the electronically stored information responsive to the document requests and instead points the defendants to a repository containing over 10 million pages of documents and attempts to place the burden on the defendants to determine what documents the Trustee will rely upon to support its claims. This was done notwithstanding the Court's clear ruling at the hearing to compel further responses to the Trustee's Rule 26 document disclosures that it was improper for the Trustee to make a blanket reference to all of its electronically stored information when describing the documents that support the Trustee's claims. Contention interrogatories are answered with conclusory statements such as the debtor and others "operated as alter egos", that "entities commingled funds", that the debtor was "forced" to take actions", with little to no details. Requests for admissions were not admitted even where the Trustee has acknowledged that it has no information on which to deny the underlying facts; others are not admitted as a consequence of the Trustee engaging in wordsmithing games as what words in the request mean.

By virtue of its status as a trustee, a party is not afforded the right to skirt discovery obligations. This is precisely what is occurring here. See, e.g., *In re M & L Bus. Mach. Co., Inc.*, 167 B.R. 631, 634–35 (D. Colo. 1994), 167 B.R. 631, 634–35 (D. Colo. 1994) (granting motion to compel supplementation of interrogatories and sanctions against a Bankruptcy Trustee where "despite [the defendant's] repeated requests for an identification of the allegedly avoidable transactions and a description of the legal basis underlying certain of the Trustee's claims, the Trustee continue[d] to provide evasive answers to the interrogatories which were the subject of its motion to compel"; adding that "[u]nder Rule 37(a)(3), an evasive or incomplete answer is 'treated as a failure to disclose, answer, or respond"; and, ordering that Trustee was obligated to state in detail in its interrogatory responses the specifics concerning transactions Trustee sought to avoid.); *In re Cont'l Cap. Inv. Servs., Inc.,* 2009 WL 1661918, at *5 (Bankr. N.D. Ohio Mar. 6, 2009) (Holding that Trustee must answer with a detailed narrative response interrogatories seeking "all facts" detailing alleged avoidable transfers even if so doing

NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES

narrative response interrogatories seeking "all facts" detailing alleged avoidable transfers even if so doing imposes a "substantial burden" on Trustee and ordering Trustee "to identify the factual basis for his claim with respect to each transfer he claims is recoverable [from defendant] as a fraudulent transfer.").

While neither the Court nor the defendants are fond of discovery disputes, the defendants find themselves knowing virtually no more about the Trustee's claims than they did 5 months ago when they served the extensive discovery requests. Defendants do not want to be blindsided as they proceed in preparing their defense and merely ask the Court to insure that they be apprised of the facts which support the Trustee's claims. Such stonewalling should not be countenanced and has made it impossible for the defendants to prepare their defense of the claims asserted in the Complaint.

## I.    STIPULATED FACTS AND LAW PERTAINING TO RULE 26 DISPUTE

Attached as Exhibit "A" hereto is a submission by the parties setting forth the factual and legal basis of their positions with respect to the sufficiency of the Trustee's responses to the Discovery Requests.

## II.    CONCLUSION

For the foregoing reasons, the Blue Wolf Entities respectfully request that the Court order Trustee to provide further responses to the Discovery Requests.

DATED: April 22, 2021

GREENBERG TRAURIG, LLP

By _____

Howard J. Steinberg
Attorneys for Defendants
BLUE WOLF CAPITAL PARTNERS, LLC
BLUE WOLF CAPITAL FUND II, L.P.
BLUE WOLF CAPITAL ADVISORS L.P.

55643281v3

imposes a "substantial burden" on Trustee and ordering Trustee "to identify the factual basis for his claim with respect to each transfer he claims is recoverable [from defendant] as a fraudulent transfer.").

While neither the Court nor the defendants are fond of discovery disputes, the defendants find themselves knowing virtually no more about the Trustee's claims than they did 5 months ago when they served the extensive discovery requests. Defendants do not want to be blindsided as they proceed in preparing their defense and merely ask the Court to insure that they be apprised of the facts which support the Trustee's claims. Such stonewalling should not be countenanced and has made it impossible for the defendants to prepare their defense of the claims asserted in the Complaint.

I.   **STIPULATED FACTS AND LAW PERTAINING TO RULE 26 DISPUTE**

Attached as Exhibit "A" hereto is a submission by the parties setting forth the factual and legal basis of their positions with respect to the sufficiency of the Trustee's responses to the Discovery Requests.

II.   **CONCLUSION**

For the foregoing reasons, the Blue Wolf Entities respectfully request that the Court order Trustee to provide further responses to the Discovery Requests.

DATED:  April 22, 2021                    GREENBERG TRAURIG, LLP


                              By /s/ Howard J. Steinberg
                                 Howard J. Steinberg
                                 Attorneys for Defendants
                                 BLUE WOLF CAPITAL PARTNERS, LLC
                                 BLUE WOLF CAPITAL FUND II, L.P.
                                 BLUE WOLF CAPITAL ADVISORS L.P.

**EXHIBIT A**

GREENBERG TRAURIG, LLP
Howard J. Steinberg (SBN CA 89291)
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
Email:  steinbergh@gtlaw.com
Attorneys for Defendants
BLUE WOLF CAPITAL PARTNERS, LLC
BLUE WOLF CAPITAL FUND II, L.P.
BLUE WOLF CAPITAL ADVISORS L.P.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>CHANNEL TECHNOLOGIES GROUP, LLC,<br><br>    Debtor.<br>_____<br><br>CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC,<br><br>    Plaintiffs.<br><br>v.<br><br>BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, L.P., GLADSTONE INVESTMENT CORPORATION, BLUE WOLF CAPITAL ADVISORS, L.P., FIDUS INVESTMENT CORPORATION, FIDUS MEZZANINE CAPITAL, II, L.P., AVANTE MEZZANINE PARTNERS SBIC, LP, AVANTE MEZZANINE II, INC., PENGDI HAN, DHAN, LLC, GRANT THORNTON, LLP, CTG ADVANCED MATERIALS, LLC, CTS CORPORATION, ELECTRO OPTICAL INDUSTRIES, DUFF & PHELPS, and CIT BANK, N.A.,<br><br>    Defendants. | CASE NO. 9:16-bk-11912-DS<br><br>Chapter 11<br><br>Adv. No. 9:18-ap-01058-DS<br><br>**STIPULATION OF DISPUTED ISSUES**<br><br>DATE:    April 27, 2021<br>TIME:    11:30 a.m.<br>PLACE:  Courtroom 201 |

## STIPULATION RE DISPUTED ISSUES

Per Local Bankruptcy Rule 7026-1(c)(3), the disputed issue is as to the sufficiency of Trustee's Responses to Blue Wolf Capital Partners, LLC, Blue Wolf Capital Fund II, L.P., and Blue Wolf Capital Advisors, L.P.'s ("The Blue Wolf Entities" or "Defendants") Requests for Production, Requests for Admission, and Interrogatories, per Rule 34(b)(2)(B)-(D), Rule 36(a)(6), and Rule 33(a)(1).

## I.    INTRODUCTION: BASIS FOR DEFENDANTS' MOTION

### a.    THE BLUE WOLF ENTITIES' POSITION

On November 9, 2020, the Blue Wolf Entities served the Trustee with written discovery consisting of document requests, requests for admissions, and interrogatories.  Over 200 requests were served in response to the Trustee's Second Amended Complaint ("Complaint") which, exclusive of exhibits, is 116 pages long, and seeks to set aside hundreds of transfers totaling over $60 million.   The discovery was served over 5 months ago and Trustee has had ample time to understand which facts support its allegations, particularly those that relate to specific monetary transfers; indeed, Trustee has amended its Complaint in this action three times and this proceedings was filed nearly 2 ½ years ago.  The notion that the Trustee has not had sufficient time to review documents and understand the claims it is asserting is nonsense. Thus, Trustee should be ordered to supplement its response to explain its boilerplate objections, provide facts to support the contentions and claims it has asserted,  and produce documents responsive to this Request.

The Trustee's actions pertaining to interrogatory responses underscores the improper tactics being deployed.  The Trustee responded to the interrogatories on January 28, 2021.  The Blue Wolf Entities sent the Trustee an email detailing deficiencies in the interrogatory responses and the parties then met and conferred and were unable to resolve their differences.  The Trustee was provided with a Stipulation of Disputed Issues ("Stipulation") which set forth the Blue Wolf Entities position with respect to the deficiencies with the interrogatory and other discovery responses weeks in advance of the deadline to file the document per a deadline set by the Court.  On the day before the Stipulation was due to be filed (March 4), the Trustee sent the Blue Wolf Entities its inserts to the Stipulation and served amended answers to the interrogatories which resulted in the parties moving the date of the hearing  since the sufficiency of the amended answers had to be analyzed by the Blue Wolf Entities.

The original interrogatory answers set forth virtually no information in response to the interrogatories and all of them cited to Rule 33(d) of the Federal Rules of Civil Procedure, which allows a party to specify business records which provide information responsive to the interrogatory. Courts have held that citation to Rule 33(d) is not proper when answering a contention interrogatory, and even courts that have allowed this have required the party to reasonably identify the responsive documents. However, the Trustee did not identify a single document responsive to each interrogatory and instead directed the Blue Wolf Entities to the many millions of pages of ESI which it provided to the Blue Wolf Entities. In the amended interrogatory responses, as discussed more fully below, the Trustee no longer refers to Rule 33(d) and instead largely parrots the conclusory statements in the Complaint and makes reference to the same few documents attached as exhibits to the Complaint.

At bottom, the parties' discovery dispute boils down to a fundamental difference concerning which party bears the burden of identifying the evidence on which the matter is to be tried. If Trustee is correct, a claimant can assert claims in a lawsuit and can then shift to the defense the burden of identifying the evidence that supports those claims simply by directing the defense to a massive compilation of data and saying, in essence, "our evidence is in there somewhere; you figure it out." The discovery responses constitute little more than the addition of conclusory statements that parrot the allegations of the complaint and do nothing to shed light on the question Defendants have sought in discovery from the outset: namely, what actual fact evidence does Trustee intend to rely on to prove its claims? Trustees responses do not identify specific responsive documents nor state specific facts that can be either confirmed or rebutted. With little more than a recitation of conclusions and the direction to Defendants to search through the ESI themselves, Defendants are no closer to understanding the who, what, when, where and how of Trustee's allegations than they were when these discovery requests were first served five months ago.

The need for specificity in response to written discovery is particularly acute in this case since the Trustee has no personal knowledge of the underlying actions which give rise to its claims. There is no one who the Blue Wolf Entities can depose who can identify the specific acts and transactions that the Trustee is relying upon. As such, there is no way for the Blue Wolf Entities to properly prepare for depositions since it will be unable to ask witnesses about specific acts and transactions that serve as the

STIPULATION OF DISPUTED ISSUES

basis for the claims. As a consequence of receiving incomplete responses bereft of facts, the Blue Wolf

Entities may not learn of the specific evidence upon which the Trustee relies until after discovery has

been completed and a summary judgment motion is filed, or potentially even worse, until such time as

the parties exchange trial exhibits if the Defendants do not prevail in their summary judgment motion.

Trial by ambush is a tactic inimical to the Federal and Bankruptcy Rules, and has long been frowned

upon by courts.  Defendants merely ask that the Court require the Trustee to be open and forthright with

respect to the evidence in support of its claims so that they have a fair opportunity to prepare their

defense.  There are at least 15-30 depositions that will need to be conducted and before engaging in this

lengthy and costly effort, the Defendants must be apprised of the facts that support the claims.

      The Trustee has concocted a fictious narrative that the Blue Wolf Entities stripped the debtor of

assets which resulted in its becoming insolvent when, in reality, just the opposite occurred.  Millions of

dollars was funneled into the debtor to sustain its operations which efforts only ceased after the Blue

Wolf Entities learned that the debtor entered into a series of contracts which would have had dire

economic consequences if performed.  The Trustee has distorted the truth by referring only to monies

expended by the debtor, as opposed to monies it received.  Discovery is vital so that the Defendants can

ascertain the universe of facts that the Trustee is relying on to support its alleged claims.

      Unfortunately, the Trustee's willingness to obfuscate and mislead is not confined to this adversary

proceeding.  In an effort to maintain the fiction that there is a large body of creditors who were hurt by

the Defendants' conduct, the Trustee has intentionally failed to object to inflated or unsupportable proofs

of claims.  In the Liquidating Trustee's Motion for Order Extending Deadline to Object to Claims

(Docket No. 797), after discussing the reduction of the Lockheed Martin claim from $19.5 million to $3.8

million and noting that there are $17.4 million in claims, the Trustee acknowledges that "the Liquidating

Trustee may potentially deem it worthwhile to file objections to numerous other disputed claims."(p. 6)

The Trustee falsely states that the ability to address these claims is somehow dependent upon the

outcome of this litigation. The Trustee is sitting on millions of dollars which can be used to pay creditors

but instead chooses to avoid any distributions since reduction and resolution of claims will impact the

fiction that there was a plot to leave large numbers of creditors empty handed.

At a prior hearing to compel proper document disclosures with respect to the Trustee's Initial Rule 26 disclosures, in granting the motion this Court made clear to Trustee that the law does not allow the Trustee to make blanket references to millions of documents in lieu of providing specific information to support claims. The Court's directive to Trustee fell on deaf ears and the Blue Wolf Entities find themselves in the exact same position. They renew their request of this Court to direct Trustee to provide responses that actually answer Defendants' targeted discovery requests.

**b.**     **TRUSTEE'S POSITION**

The Defendants' motion is long on rhetoric and short on substance. The Trustee is not going to waste the Court's time by engaging in a mud-slinging contest and responding Defendants' over-the-top inflammatory rhetoric and unreasonable requests for relief (such as prohibiting Trustee from amending its interrogatory responses as discovery proceeds , *see* pg. 58 of this Stipulation, and Defendants' requests for sanctions). Rather, the Trustee will briefly summarize the procedural posture and status of discovery in this case in order to highlight why the relief Defendants' seek is unreasonable and inappropriate.

- *First,* the Trustee has thoroughly investigated the facts alleged in its 616-page Second Amended Complaint, which contains 291 paragraphs of facts and affixes 29 exhibits supporting its factual contentions.

- *Second,* at the outset of this lawsuit and the related state-court lawsuit, the Trustee turned over every piece of evidence in its possession to Defendants, and has fully responded to all discovery requests as the Federal Rules require.

- *Third,* the Defendants—not Trustee—have repeatedly delayed discovery in this case. At Defendants' request, and over the objections of Trustee, the Court agreed to stay all discovery for over two years while the Defendants' motions to dismiss were pending and while the parties engaged in mediation and settlement discussions.

- *Fourth,* though the Trustee has produced every piece of evidence in its possession— which is searchable, sortable, and organized, and discussed in further detail below—and has responded fully to every discovery request it has received, the Defendants have not done the same. The Trustee served discovery requests to Defendants on February 5, 2021. Defendants have requested multiple extensions totaling 90 days to respond to Trustee's written requests—which Trustee has readily granted in the spirit of cooperation.

- *Fifth,* at Defendants' insistence, the Trustee has not been permitted to take any third-party depositions or Defendants' depositions.

In sum, without having produced any documents or responding to any of Trustee's discovery

requests, the Defendants are asking Trustee to marshal all of its evidence for trial today, with Trustee having no benefit of discovery other than its preliminary pre-suit investigations and documents left to it by the bankruptcy Chief Restructuring Officer.  Trustee is in the position of being one step removed from firsthand knowledge about the Debtor; CTG is no longer an operating and ongoing business, it has no employees, and the documents in Trustee's possession have been provided to it through the bankruptcy procedure.  However, the Trustee anticipates it will have more information responsive to Defendants' discovery requests as discovery proceeds in this litigation in the ordinary course of business.  But rather than participate in the discovery process, the Defendants seek to use discovery as both a shield and a sword: on the one hand, the Defendants contend that the Trustee's Second Amended Complaint and discovery responses are deficient and should not be permitted to amend its responses as new facts and evidence are revealed through discovery; on the other hand, Defendants—whose witnesses likely possess first-hand knowledge about the Debtor and who direct, managed, and controlled the Debtor through the Blue Wolf Entities—seek to prevent Trustee from deposing these witnesses and have yet to respond to Defendants' discovery requests.

The Trustee believes there is only one disputed issue for the Court to resolve: whether Trustee is required to go above and beyond the ESI obligations set forth in Rule 34(b)(2)(E)(ii) and produce ESI *as if they were hard-copy documents*.  As to Defendants' motion relating to its Requests for Admissions and Interrogatories, the Trustee has provided full and verified answers to each and every interrogatory, and has responded to each request for admission to the best of his ability given the early stages of discovery in this case.  That Defendants are simply unhappy or dissatisfied with Trustee's responses is not a basis to compel, and the Court should deny Defendants' motion as to the requests for admissions and interrogatories.

As to the parties' dispute regarding the Trustee's ESI production, despite having nearly ***three months*** to prepare this motion, the Blue Wolf Entities cannot cite to a ***single case*** where a court has

ordered a party that already produced ESI in searchable, sortable, and an organized format—as the Trustee has done here—to cull through its ESI and identify specific documents responsive to Defendants' requests for production.  That is because ESI discovery is governed by a different set of rules than the production of hard-copy documents. Defendants misunderstand or simply ignore that courts "have concluded that imposition of traditional production requirements on ESI was not intended by the amendments to Rule 34(b). . ." and that "the drafters of 34(b)(2)(E) contemplated that parties requesting ESI would be able to organize it themselves—in their own way, to their own satisfactory level of thoroughness, and at their own expense—through the use of text-searching technologies like filtering, grouping, and ordering." *SolarCity Corp. v Doria*, No.16cv3085-JAH-RBB, 2018 WK 467898, at *7 (S.D. Cal. Jan 18, 2018). The Trustee explains its position regarding ESI discovery in the following section.

The Defendants' claim that Trustee has attempted to obfuscate, delay, or otherwise engage in improper discovery tactics is both misleading and a misrepresentation of the status of discovery in this case thus far.  Any delay or obfuscation of the discovery process is largely due to the Defendants' own design.  The Defendants suggest that Trustee has had over two and half years to marshal its evidence.  However, the Defendants conveniently leave out the fact that ***at Defendants' requests***, and over Trustee's objections, the Court stayed all discovery in this matter while the Defendants' motions to dismiss were pending and while the parties were engaged in mediations and settlement discussions.  Discovery in this case effectively became 'unstayed' only in October of 2020, when Defendants and Trustee began to exchange initial disclosures.  Defendants then mailed hard copy discovery requests to Trustee on November 9, 2020. Due to the holidays, the Trustee obtained an extension to serve its responses by January 28, 2021.  Importantly, Trustee has also granted Defendants multiple extensions in responding to the Trustee's discovery requests, giving Defendants a total of 90 days to respond to Trustee's Requests for Admissions and Interrogatories.

After timely serving its discovery responses, Trustee and Defendants met-and-conferred multiple times to resolve the Defendants' complaints and come to an agreement regarding ESI discovery.  During these conferences, the Trustee informed Defendants' of the ESI rules, relevant case law, and practices outlined by the Sedona Conference, and informed Defendants that rather than going through the onerous

process of negotiating keyword search terms, custodians, and date ranges, the Defendants possess all of Trustee's ESI in searchable, sortable, and organized format, and may run whatever search terms Defendants wish and may run an unlimited number of these searches. Nevertheless, Defendants continued to insist, in contravention to Trustee's ESI obligations, that Trustee identify specific documents in response to Defendants' requests for production. Though Trustee need not have done so, in a good-faith effort to narrow the Defendants' disputes, the Trustee reviewed thousands of electronically saved hard-copy documents contained in the 166 boxes stored in Iron Mountain storage—which the Defendants have already had an opportunity to inspect and copy—and produced, on February 13, 2021, a subset of these documents which had been culled by Trustee and deemed responsive to the Defendants' discovery requests. This production contained 1.61 gigabytes of data, consisting of 96 files and 27 folders, and approximately 9,500 pages of documents.

Despite this production, on the night of February 16, 2021, Defendants provided Trustee with a 37-page proposed stipulation outlining each of Defendants' disputes and expected Trustee to respond to each of these disputes within two weeks (in the middle of an unprecedented snowstorm and state-wide power outage in Texas). Trustee provided Defendants' with a response on March 4, 2021, 16 days later. In addition to responding to each request, Trustee amended its interrogatory responses in a good-faith effort to potentially eliminate one-third of the disputes in this case.

The Defendants, finding Trustee's amended responses and positions "problematic," then took an additional *six weeks* to review and respond to the Trustee's positions in the joint stipulation, even though the Defendants already had an opportunity to set forth their position fully and even though Rule 7026-1(c) does not require or allow Defendants to amend their already-stipulated positions to respond to Trustee's case law and positions. Nevertheless, the Trustee did not oppose Defendants' request for a continuance in order to respond to Trustee's positions. On April 13, 2021, the Defendants provided Trustee with their revised stipulations, substantially adding 25 pages to the original draft of this stipulation, and expecting Trustee to provide a response within two days.

Unsurprisingly, despite having an additional six weeks to respond to the case law Trustee cites in support of its ESI position, the best cases Defendants are able to come up with are instances where the production of hard-copy documents were at issue. Also unsurprising, even though Trustee addressed

Defendants' complaints by removing its reference to Rule 33(d) and providing fulsome responses to each Interrogatory (though Trustee believes its initial interrogatory answers were sufficiently responsive), the Defendants now complain that Trustee's responses restate conclusory facts without identifying any documents. But the facts Trustee has identified are not conclusory—they are sworn to and verified by the Trustee and identify the relevant facts responsive to each interrogatory at this time.

That the parties now, after multiple conferences and attempts by the Trustee to narrow this dispute, submit this 80-page stipulation which consists mostly of Defendants being unhappy with the content of Trustee's responses raises the following question: **what is the practical solution to Defendants' complaints?** Trustee submits that it has fully responded to the interrogatories and will supplement them as discovery progresses. Likewise, Trustee has responded to each request for admission fully, and has represented it will amend its responses upon receipt of further discovery. The Trustee anticipates providing further evidence as it receives discovery responses and documents from Defendants and other third parties and has had an opportunity to depose Defendants' witnesses— witnesses who controlled, managed, and directed CTG and who have first-hand knowledge about the debts, transactions, payments, and operations of CTG.

The Court should, therefore, deny Defendants' motion as to the interrogatories and requests for admissions as being premature, as the parties are in the very early stages of discovery which has been impeded largely due to the unnecessary back-and-forth relating to this stipulation, and deny Defendants' unreasonable requests for sanctions or to prohibit Trustee from further amending its discovery responses as it learns of new facts and evidence from the Blue Wolf Entities' discovery. Trustee further requests that the Court set a scheduling order in this case, and allow the parties to proceed with written discovery and depositions. The Court should further deny Defendants' motion as to the requests for production because ESI rules (and not hard-copy production rules) apply in this case, and Trustee has gone above and beyond to comply with its ESI obligations.

## II.   BLUE WOLF ENTITIES' POSITION REGARDING ESI DISCOVERY

Trustee seeks to abandon its discovery obligations under the Federal Rules and instead place the burden on Defendants to attempt to decipher which few documents contained in a data dump of millions of pages of documents are responsive to this action. This is plainly improper, as the burden of

identifying and producing documents responsive to Defendants' narrowly tailored Requests for

Production lies on no one other than Trustee.  Trustee has failed to meet its burden.  Trustee posits that

when dealing with ESI, Federal Rule 34 Rule 34(b)(2)(E)(ii) provides a responding party with a blanket

pass, relieving it of any obligation to identify specific documents or the specific discovery demands to

which those documents respond.  Trustee is mistaken.  As detailed below, there are numerous authorities

that provide that it is not enough to produce every shred of electronic information and then direct the

requesting party to figure out which documents are or are not responsive to its demands.  The authorities

below are largely cases about ESI, and they demonstrate that Trustee cannot shift wholesale to

Defendants the burden of finding responsive information within the massive ESI production mostly

comprised of irrelevant data solely because it is in electronic form.

Trustee has failed to identify a single document within its ESI database in response to

Defendants' Requests for Production, instead simply referring Defendants to its massive ESI database

containing millions of documents.  In referring Defendants to the entirety of its ESI database, Trustee

improperly attempts to shift the burden of identifying responsive documents onto Defendants.

"Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain

evidence necessary to evaluate and resolve their dispute." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D.

281, 283 (C.D. Cal. 1998).  Trustee has done nothing to remove this surprise, and instead has doubled

down on its clear intention to refuse to provide substantive discovery and blindside Defendants at trial.  It

is Trustee's discovery obligation to identify the responsive documents within its database.  Indeed, Fed.

R. Civ. P. 26 sets out specific rules regarding ESI, and states that the responding party should "provide

enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery

and the likelihood of finding responsive information on the identified sources." Fed. R. Civ. P. 26

advisory committee's note to 2006 amendment; s*ee also Cheng v. Aim Sports*, No. CV 10-3814-PSG

(PLAx), 2011 U.S. Dist. LEXIS 163153, at \*24 (C.D. Cal. Mar. 30, 2011) ("principles of fairness require

that the burden of culling through 'the 108 boxes of invoices, organized by customer, to find the

approximately 26,000 invoices relating to the patented items' [] be placed on plaintiffs, rather than on

defendant AIM. While the burden of searching through plaintiffs' records may be a cumbersome task for

plaintiffs, this burden would be much greater for defendant AIM as a stranger to [plaintiff's] record

keeping."); *Williams v. Taser Intern., Inc.*, No. 1:06-CV-0051-RWS, 2006 U.S. Dist. LEXIS 47255, at

*24 (N.D. Ga. June 30, 2006) (noting that where a party is "'overly generous' in

identifying responsive documents so as to unduly burden [the party seeking discovery] in their search of

those documents," a Court may order the producing party to organize and label

those documents specifically responsive to the requests for production); *Queensridge Towers, LLC v.*

*Allianz Global Risks US Ins. Co.*, No. 2:13-cv-00197-JCM-PAL, 2014 U.S. Dist. LEXIS 14167, at *15,

18 (D. Nev. Feb. 4, 2014) (granting motion to compel and holding that a plaintiff did not meet its burden

where it produced a large volume of documents, and in response to requests for production, stated it "has

produced or will produce all reasonably responsive, relevant and non-privileged documents," making it

"impossible to tell which documents [plaintiff] claims are responsive to which request"; the court further

held that defendant was "entitled to know which documents are responsive to which responses."). Trustee

has done nothing to meet its burden, instead directing Defendants to search through millions of

documents to identify a single responsive document.  As established above, this obligation does not

belong to Defendant, but rather belongs to Trustee.

Indeed, "a party may not frustrate the spirit of discovery rules — open, forthright, and efficient

disclosure of information potentially relevant to the case — by burying relevant documents amid a sea of

irrelevant ones." *ReedHycalog v. United Diamond*, No. 6:07 CV 251, 2008 U.S. Dist. LEXIS 93177, at

*7-8 (E.D. Tex. Oct. 3, 2008) (holding that where the responding party referred to its produced database

of 750 gigabytes of information in responding to discovery requests, such tactics were improper as

"[e]lectronic discovery does not excuse [parties] from their discovery obligations, specifically to parse

out irrelevant information."); see also *Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co*, No.

2:05-CV-1318, 2006 U.S. Dist. LEXIS 36943, at *7 (D. Nev. June 5, 2006) ("This Court does not

endorse a method of document production that merely gives the requesting party access to a 'document

dump' with an instruction to 'go fish.'"); *Mancini v. Ins. Corp. of New York*, No. 07cv1750-L(NLS),

2009 U.S. Dist. LEXIS 51321, at *17 (S.D. Cal. June 18, 2009) (granting motion to compel where the

plaintiffs produced computer disks of their entire database of documents, and stating that "[w]hile it may

be burdensome for Plaintiffs to review the entire universe of documents to ascertain which documents are

responsive to the document requests, it would be even more burdensome for [defendant] to guess which

documents are responsive to which requests," and further ordering that "Plaintiffs must identify the documents, for example by bates number, such that [defendant] will have no difficulty identifying and locating the specific responsive documents."). Ample case law makes it clear that Trustee's dump of millions of documents on Defendants in purported "response" to Trustee's Requests for Production is improper and contrary to its discovery obligations. It cannot get away with skirting its obligations at the great expense and undue burden of Defendants.

Trustee cites to *In re MyKey Technology Inc. Patent Litigation* and similar authorities for the proposition that its reference to its entire database of ESI is proper under the Rules. No. CV 13-2461-AG (PLAx), 2016 U.S. Dist. LEXIS 184847 (C.D. Cal. Feb. 25, 2016). However, the Court in *Mykey* specifically held that such a reference was improper where the database "apparently contain[ed] a significant amount of material that is not responsive to any discovery request." *Id.* at *12. This is clearly the case here, where Trustee produced a database of millions of documents, when it has otherwise represented in the Joint Status Report that it only plans to rely on approximately 100 exhibits at trial. Trustee also cites to *TetraVue Inc. v. St. Paul Fire & Marine Ins. Co*., No. 14cv2021-W (BLM), 2017 U.S. Dist. LEXIS 37373, at *18 (S.D. Cal. Mar. 15, 2017) for the contention that its document dump was appropriate; however, the party in TetraVue produced a document set consisting of 10,600 documents **far fewer** than the **millions of documents** Trustee has dumped on Defendants.  Thus, this case is wholly inapposite to the situation at hand.

The Trustee cites to Rule 34(b)(2)(E)(ii) and says that the rule somehow allows for a document dump when electronically stored information is involved.  The language of the Rule does not support this interpretation.  Rule 34(b)(2)(E) deals with the production of documents and electronically stored information.  Rule 34(b)(2)(E)(i) allows a party to produce documents as they are kept in the regular course of business.  Likewise, Rule 34(b)(2)E)(ii) allows electronically stored information to be produced in a form in which it is ordinarily maintained.  The Trustee does not even attempt to argue that there is compliance with the Rule when documents are produced if millions of pages of irrelevant information is produced, yet says that this is permissible if electronically stored information is involved.  Both subsections of the Rule merely provide for production of information in the manner in which they are ordinarily kept or maintained.  They do not sanction the production of massive quantities of information

that are not responsive to the requests.

Further, Trustee also contends that because Defendants did not, on their own, propose search terms during the parties' protracted meet and confer conversations, Defendants somehow are the ones to blame for Trustee's failure to undertake any effort to review and identification of responsive documents. This argument fails. Rule 34(b)(2)(D) does not even require that a party propounding a document request propose the form in which electronic data is to be produced, let alone provide search terms.  As discussed above, the burden lies on the responding party to produce documents specifically responsive to each request for production, and if running search terms is a mechanism by which Trustee believes it can fulfill its obligations and meet its burden, Trustee should have been the one to raise this point and suggest search terms which will disclose documents that support its claims.  Indeed, throughout the meet and confer process, Defendants repeatedly informed Trustee that they seek documents specifically responsive to their Requests for Production, but Trustee never proposed search terms, never asked Defendants to propose search terms for its review, and never even mentioned "search terms" during meet and confer discussions.  This baseless argument is just another attempt by Trustee to justify its having washed its hands of its obligations by seeking to improperly shift its discovery obligations onto Defendants. Further, it does nothing to excuse the Trustee's failure to identify, let alone produce, any responsive electronically stored information.

 In an attempt to deflect attention from its blatant failure to comply with discovery obligations, the Trustee discusses documents it references in its Second Amended Initial Rule 26 Disclosures ("Disclosures").[1]  The documents referenced in the Disclosures serve only to identify documents which support the Trustee's claims and are not in any way tied into the specific document requests served by the Blue Wolf Entities.  This said, the reference to ESI documents in the Disclosures reference over a million pages of documents.  While better than the reference to all of the ESI documents, which may be more than 10 million pages of documents, it still does not come close to comporting with the requirement of the Federal Rules to identify documents responsive to discovery requests.

In sum, Trustee has skirted its discovery obligations, failed to comply with the requirements of

---

[1] While these Disclosures are likewise deficient, they are not presently before this Court and the Defendants reserve the right to seek relief pertaining to same.

both Rule 26 and Rule 34, and misstated the law concerning ESI obligations.

## III.    TRUSTEE'S POSITION REGARDING ESI DISCOVERY

Defendants repeatedly, and without any factual or legal support, refer to Trustee's ESI production as a "data dump" of "millions" of documents.  But Trustee's production is not a data dump and instead proper ESI production for several reasons: (1) the ESI was produced in an organized manner; (2) the Trustee has highlighted specific directory and files locations (up to three levels of file paths) that contain documents relevant to the issues in dispute in this case; (3) the ESI is searchable and sortable, (4) the documents were kept in the ordinary course of business; and (5) if Defendants' make a reasonable effort, they should be able to obtain the documents responsive to their requests.  These are the hallmarks of ESI production, which Trustee has established and complied with.

The Trustee presents the following overview of the relevant law and arguments relating to ESI discovery, and thereafter responds to each of the Blue Wolf Entities' complaints regarding its Requests for Production.

### A.  Relevant Law

Federal Rule of Civil Procedure 34(b)(2)(E) governs the production of documents or electronically stored information ("ESI") and states as follows:

Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i)      A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii)     *If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms*; and

(iii)    A party need not produce the same electronically stored information in more than one form.

Moore's Federal Practices, the advisory committee's notes, and experts on electronic discovery,[2] agree that Rule 34(b)(2)(E)(i) applies to the production of **hard copy documents**, and that the rule makers crafted ***alternative, mutually exclusive***, procedures in (E)(ii) that are designed to apply specifically to

---

[2] John K. Rabiej, *Rabiej on Production of ESI,* Emerging Issues 2628, at *2 (July 29, 2008) (second and third alterations in original) (quoting Fed.R.Civ.P. 34 advisory committee's notes)

ESI.[3]  California federal district courts have generally accepted this distinction.[4]  "Requesting parties are entitled to the guarantees of (E)(i) or (E)(ii), but not both."[5] *See also, Laub v. Horbaczewski*, 331 F.R.D. 516, 527 (C.D. Cal. 2019) ("Rule 34(b)(2)(E)(ii) requires the producing party to produce the material in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.") (internal quotations omitted).

## B. Status of Trustee's Production

The Blue Wolf Entities have not specified a form for producing electronically stored information. *See* Defs.' Requests for Production, Set One at 3–5.  Thus, CTG is required to produce hard-copy documents pursuant to Rule 34(b)(2)(E)(i) and ESI pursuant to (E)(ii).  The universe of documents in the Trustee's possession—which the Trustee received upon his appointment—consist of two forms of documents: (1) 166 banker's boxes ("Storage Documents") from the Chief Restructuring Officer ("CRO"), David Tiffany, which consist of hard-copies of certain CTG's physical copies of books and records; and (2) certain electronic data of CTG received from the CRO, which consists of three hard drives and a thumb drive (collectively, the "Electronic Documents").  Importantly, no ESI order is in place in this case, nor have the Blue Wolf Entities attempted to discuss or negotiate keyword search terms.

### 1.    Production of Hard-copy Storage Documents

The Storage Documents are currently located in a storage facility in San Diego.  The Storage Documents are organized with an Index, providing a box number, a date range, and a description of the documents. These documents have been kept in the regular course of businesses.  The Blue Wolf Entities have previously inspected and copied the Storage Documents in connection with a related state court lawsuit; the Blue Wolf Entities ***have not*** requested to inspect the Storage Documents again.

Despite this, in compliance with Rule 34(b)(2)(E)(i), on February 13, 2021, the Trustee produced CTG_000209 through CTG_009639, which consists of a subset of the Storage Documents that have been culled by Trustee and deemed responsive to the Blue Wolf Entities' discovery requests.  The production consists of 1.61 gigabytes of data, consisting of 96 files and 27 folders, and approximately 9,500 pages of

---

[3] *Anderson Living Trust v. WPX Energy Prod., LLC*, 298 F.R.D. 514, 527 (D.N.M. 2014).

[4] *SolarCity Corp. v Doria*, No.16cv3085-JAH-RBB, 2018 WK 467898, at *7 (S.D. Cal. Jan 18, 2018).

[5] *TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co*., Case No.: 14cv2021-W (BLM), 2017 WL 1008788, at *7 (S.D. Cal. Mar. 15, 2017)

documents.

2.      Production of ESI



In addition to producing the Storage Data, the Trustee has produced duplicates of the Electronic

Data to the Blue Wolf Entities, including PST files for CTG's employees.  As part of Trustee's Second

Amended Initial Disclosures, Trustee has highlighted specific directory and files locations that contain

documents relevant to the issues in dispute in this case.  For example, for the Data Copy drive produced,

Trustee has identified up to three levels of file paths and then highlighted relevant documents or folders

containing relevant documents.

Adv. No. 9:18-ap-01058-DS

*See* Ex. A Trustee's Second Am. Initial Disclosures at 50.  In this example, Trustee has highlighted and identified relevant folders such as "BW Citizens," "BW Equity Docs," "Employee Lists," and structure charts, while excluding as irrelevant folders such as those containing company event photographs, floor plans, plex data documents, and administrative documents.

### C. The Trustee has Complied with the Federal Rules and Relevant Case Law

The Trustee has submitted a Declaration in Support of Trustee's Position Regarding Stipulation of Disputed Issues.  The Trustee declares that both the ESI and Storage Documents have been kept and maintained in the regular, usual, and ordinary course of business. *See* Ex. B, Trustee's Declaration at ¶ 11. The ESI was produced to the Blue Wolf Defendants as duplicates of the Electronic Data as it was received from Tiffany.  *Id.* ¶ 12. The duplicates were produced without any alterations.  *Id.* No documents were removed or added to the duplicates or Electronic Data as it was produced to the Blue Wolf Defendants. *Id.* Moreover, the ESI is organized, sortable, and searchable.  *Id.* ¶ 13.  The PST files included with the ESI are also sortable and searchable. *Id.*

The Trustee's ESI production comports with both Rule 34 as well as the well-established practice in California federal district courts.  For example, in *TetraVue Inc. v. St. Paul Fire & Marine Ins. Co*., the defendant similarly complained of plaintiffs' production as being a "data dump" which lacked an index for locate responsive documents. Case No.: 14cv2021-W (BLM), 2017 WL 1008788, at *7 (S.D. Cal. Mar. 15, 2017).  The defendant complained that one subcategory of the ESI comprised of over 10,600 documents and almost 82,000 pages. *Id.* at 6. The plaintiffs similarly submitted a declaration that the produced documents at issue consisted "almost exclusively of emails and email attachments maintained as [ESI]," that the underlying case file was an electronic file, and that "the responsive production and the format of the responsive production . . .is a production of ESI." *Id*.  The court found that the plaintiffs' declaration established that the underlying litigation case file consisted of ESI and, thus, that the production was governed by Rule 34(b)(2)(E)(ii).  The court noted that the plaintiff produced ESI in the date order as it was stored in the underlying case, that the defendant could "search, filter, group, index, etc. the produced ESI, and had already started doing so." *Id*.  The court ultimately held that plaintiffs' ESI production was adequate and that no further production or labelling was required by the plaintiffs.

Similarly, in *MyKey Technology Inc. Patent Litigation*, MyKey made an electronic production of

over 600,000 documents and over 2 million pages in response to hundreds of RFPs. No. CV13-2461-AG, 2016 WL 6662720, at *1–2 (C.D. Cal. Feb. 25, 2016). MyKey admitted it copied and produced everything on its computers, whether or not responsive to defendants' request. *Id.* at *2. One of the defendants, Tefkat, complained of a "data dump," and that the documents were not stored in the ordinary course of business. *Id.* The court found that the file structure provided to Tefkat demonstrated that MyKey produced the documents as they were kept in the usual course of business, and that the "production did not simply consist of a disorganized document dump." *Id.* at *2. As to the issue of producing all documents, whether or not they were responsive to Tefkat's requests, the court noted that though the production did not consist of a "mass of undifferentiated documents …to comb through…without organizational structure," and the documents were searchable, it was concerned that the production contained a significant amount of unresponsive material. *Id.* To resolve this matter, ***the court ordered MyKey to provide Tefkat with a list of only those folders that contained documents responsive to Tefkat's request, by folder path and file name.*** *Id.* at *3 (emphasis added). The court ***did not*** order MyKey to identify all responsive documents by Bates number, as Defendants request here. Defendants' contention that the court in MyKey simply found MyKey's reference to ESI production to be improper is a reductive and incomplete reading of the case. There, the court found that the format of the production was proper, but that additional work needed to be done by MyKey. Here, the Trustee has already done that work. It has already identified by folder path and file name the documents which it contends are responsive to the Blue Wolf Entities' requests.

Likewise, in *Kwasniewski v. Sanofi-Aventis U.S., LLC*, the plaintiff complained that the defendant failed to organize ESI in a manner that allowed them to reasonably determine which documents were responsive to which requests. No. 2:12-cv-005150 GM NJK, 2013 WL 3297182, at *1 (D.Nev. June 28, 2013). The plaintiff requested that the defendant identify by Bates number which documents respond to each of the plaintiff's request. Id. at *2. The defendant contended that it produced documents as they were kept in the normal course of business, were easy to navigate, and produced in an organized manner, and that, therefore, its production was sufficient under Rule 34. *Id.* The court ruled overruled plaintiff's request, noting that defendant provided a table of contents with the documents it produced, which described the types of documents and the volume and page number where those documents may be found. *Id.* The court further noted that the defendant provided metadata, and all but 33 of the documents

were text searchable. *Id.* Based on these facts, the court held that, ***"[t]hus, if the Plaintiffs make a reasonable effort, they should be able to obtain the documents responsive to their requests."*** *Id.* at *2 (emphasis added). The court still ordered the defendant to indicate whether the documents produced were responsive, though it was not required to organize and label its responses to plaintiff's requests for production to correspond to the categories in the request because defendant had correctly produced documents as kept in the usual course of business. Here, again, the Trustee has already identified by file path and folder name the responsive documents.

### D. The Case Law Cited by Defendants is Inapposite

The Blue Wolf Entities complaint that the Trustee producing all the documents in its possession runs afoul of its discovery obligations is meritless and unsupported by the law. In support of its facile argument, Defendants cite to three cases. Each of these cases is inapposite to the issues at hand, uninstructive, or irrelevant.

First, Defendants cite to *ReedHycalog v. United Diamond*, a 2008 unpublished case from the Eastern District of Texas. In this case, the producing parties imaged and reviewed the hard drives of relevant custodians, removed privileged documents and designated documents under the protective order as confidential, and produced 750 gigabytes of data including baby pictures and audio folders. The court found that the producing parties had engaged in gamesmanship, as they reviewed their respective productions to remove privileged documents and designate confidential documents, but made no effort to narrow their production to information that may be relevant. Notably, no other court has favorably cited to this case on WestLaw, given the unique factual circumstances of this case. Rather, at least one court has distinguished *ReedHycalog*. In *Radian Asset Assur. Inc. v. College of the Christian Bros. of New Mexico*, the court found that the facts before it were not analogous to those in *ReedHycalog*; specifically, the court found that the defendant was not seeking to dump non-privileged materials on plaintiff after completing a privilege review. No. CIV-09-0885, 2010 WL 4928866, at *7 (D.N.M. Oct. 22, 2010). Instead, the court noted that the defendant was seeking to produce all of its ESI, in part, to avoid the expense of conducting a privilege review. *Id*. The court found that plaintiff's complaint of a data dump was unwarranted, because plaintiff was not seeking to use the defendant's "superior knowledge of the documents to produce a more refined search," but instead "only [sought] to have the College ***perform a search that Radian Asset is***

*equally competent to perform*." *Id*. (emphasis added).  The operative facts in *Radian*, and the base for distinguishing from *ReedHycalog*, were thus (1) that the defendant was not engaging in gamesmanship on seeking to produce a subset of its ESI;, and (2) the plaintiff was equally competent to perform the searches it was requesting of the defendant.

The same operative facts apply here. Trustee has made every attempt to comply with its discovery obligations.  Though the Trustee has indeed produced all of the electronic data in its possession, it has not reviewed or culled out privileged or confidential documents, or otherwise engaged in any discovery-related gamesmanship. Instead, Trustee has identified in its Initial Disclosures by file path and folder names the relevant documents in this case.  Though the parties have not exchanged any keyword search terms, the Blue Wolf Entities are competent to perform searches of any documents as Trustee has produced documents in a searchable format.

*Mancini v. Ins. Corp. of New York*, the only California federal court case cited by the Blue Wolf Entities, is also distinguishable. In that case, the producing party produced the entire underlying litigation file—on 73 computer disks—including deposition transcripts, expert reports, pleadings, etc.  The court found that each disk was an amalgam of various documents, and were not kept in the ordinary course of running the business of the depository.  On these bases, the court held that producing the entire universe of documents did not comport with the requirement that documents be produced as they are kept in the usual course of business. Here, however, Trustee has produced the electronic drives as they were kept in the ordinary and usual course of business.

Finally, the Blue Wolf Entities' reliance on *Residential Constructors, LLC v. ACE Prop. & Cas. Ins.* is inapposite to the Defendants' position.  In that case, the plaintiff made available for inspection documents which were contained in 41 large-sized boxes.  The documents were digitally imaged and the plaintiff provided defendant with CD discs containing the imaged documents, in the same order in which they were contained in the 41 boxes. The defendant complained that plaintiff did not provide any table of contents or index of the documents on the CD, making it unreasonably difficult to make use of the CDs. The court sided with the defendant, and ordered the plaintiff to create a table of contents or index by which to identify the files it has produced and in which boxes or group of document numbers the filed are located.

The Blue Wolf Entities fail to realize that the court's reference to commentary regarding the

"document dump" applies to situation where boxes of documents are produced, without organization or an index. *Id*. at *2 ("The Court qualifies its ruling by explicitly stating that in order to satisfy the requirements of Rule 34(b) any archived documents produced must be thoroughly indexed, the boxes accurately labeled and the depository kept in good order."). *Residential Constructors* is, in fact, supportive authority for the Trustee—the Trustee has produced the hard copy Storage Documents with a detailed index, and which were kept in the usual course of business.

Importantly, the Blue Wolf Entities do not cite to a ***single case*** where the court required a party that produced ESI in searchable, sortable, and an organized format, kept in the regular and ordinary course of business, to cull through its documents and identify—as the Blue Wolf Entities request here—every specific responsive document by Bates number.  Such a request is unduly burdensome where Defendants are equally competent and able to search Trustee's ESI production.  Trustee's production of its entire ESI file obviates the need for the parties to negotiate limited key word search terms; instead the Blue Entities are free to run an unlimited number of searches.[6]

In sum, the Trustee's production of the Storage Documents and ESI comports with Rule 34 and the governing practices in federal district courts in California.  The Blue Wolf Entities cite to no case law or authority where a court has required a producing party, which has produced searchable and sortable ESI, to identify to each of the requesting party's requests for production by identifying specific documents by Bates stamps.  Instead, the Blue Wolf Entities are in an equal position to conduct an unlimited number of key word searches and organize and sort through the responsive folders as Defendants wish.  The Blue Wolf Entities' complaint that Trustee has produced a massive database containing "millions of documents" rings hollow where the Trustee has already identified by file path and folder names the responsive and relevant documents in this action.

## III.    REQUESTS FOR PRODUCTION IN DISPUTE

## REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners ... forced BW

---

[6] The Defendants also cite to cases where courts dealt with the production of *hard-copy documents*. *See Cheng v. Aim Sports*; *Williams v. Taser Intern., Inc.*; and *Queensridge Towers, LLC v. Allianz Global Risks US Ins.* These cases are inapposite because they deal with a different set of rules than those that govern ESI.

Piezo, CTG, and CTG's subsidiary Electro Optical Industries to enter into a credit facility agreement with

CIT Bank, N.A.," as alleged in paragraph 27 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will

produce tangible documents responsive to this Request. Trustee further responds that this Request calls

for the production of ESI. Trustee has produced to Defendants all electronically stored information in its

possession, custody, and control, and the Defendants may search such ESI via their direct access.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee has failed produce any tangible documents that are responsive to this specific request and

has failed to identify a single document within its ESI database  responsive to this Request for

Production. Instead, the Trustee  refers Defendants to its massive ESI database containing millions of

documents.  Even if this is to be construed as a reference to the ESI database in the Disclosures, no

attempt is made to identify which of the categories in the index are responsive and the documents

referenced in the index number over one million pages.  While the Trustee says it has produced 9500

pages of documents, those documents were produced in state court litigation in which the Defendants'

counsel represented different parties.  The Trustee does not identify any of those documents which are

responsive to this request.  The fact that the Trustee has produced some random books and records in

state court litigation involving the same counsel is meaningless and irrelevant.  In referring Defendants to

the entirety of its ESI database, Trustee improperly attempts to shift the burden of identifying responsive

documents onto Defendants. "Generally, the purpose of discovery is to remove surprise from trial

preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Oakes v.*

*Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). Trustee has done nothing to remove this

surprise, and instead has doubled down on its clear intention to refuse to provide substantive discovery

and blindside Defendants at trial. It is Trustee's discovery obligation to identify the responsive

documents within its database. Indeed, Fed. R. Civ. P. 26 sets out specific rules regarding ESI, and states

that the responding party should "provide enough detail to enable the requesting party to evaluate the

burdens and costs of providing the discovery and the likelihood of finding responsive information on the

identified sources." Fed. R. Civ. P. 26 advisory committee's note to 2006 amendment. Trustee has done

no such thing, instead directing Defendants to search through millions of documents to identify a single responsive document. This obligation does not belong to Defendant, but rather belongs to Trustee.

Indeed, "a party may not frustrate the spirit of discovery rules — open, forthright, and efficient disclosure of information potentially relevant to the case — by burying relevant documents amid a sea of irrelevant ones." *ReedHycalog v. United Diamond*, No. 6:07 CV 251, 2008 U.S. Dist. LEXIS 93177, at *7-8 (E.D. Tex. Oct. 3, 2008) (holding that where the responding party referred to its produced database of 750 gigabytes of information in responding to discovery requests, such tactics were improper as "[e]lectronic discovery does not excuse [parties] from their discovery obligations, specifically to parse out irrelevant information."); *see also Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co,* No. 2:05-CV-1318, 2006 U.S. Dist. LEXIS 36943, at *7 (D. Nev. June 5, 2006) ("This Court does not endorse a method of document production that merely gives the requesting party access to a 'document dump' with an instruction to 'go fish.'"); *Mancini v. Ins. Corp. of New York*, No. 07cv1750-L(NLS), 2009 U.S. Dist. LEXIS 51321, at *17 (S.D. Cal. June 18, 2009) (granting motion to compel where the plaintiffs produced computer disks of their entire database of documents, and stating that "[w]hile it may be burdensome for Plaintiffs to review the entire universe of documents to ascertain which documents are responsive to the document requests, it would be even more burdensome for [defendant] to guess which documents are responsive to which requests," and further ordering that "Plaintiffs must identify the documents, for example by bates number, such that [defendant] will have no difficulty identifying and locating the specific responsive documents."). Ample case law makes it clear that Trustee's blanket reference to its produced ESI database of millions of documents is improper and contrary to its discovery obligations. It cannot get away with skirting its obligations at the great expense and undue burden of Defendants.

Trustee will likely cite to *In re MyKey Technology Inc. Patent Litigation* and similar authorities for the proposition that its reference to its entire database of ESI is proper under the Rules. No. CV 13-2461-AG (PLAx), 2016 U.S. Dist. LEXIS 184847 (C.D. Cal. Feb. 25, 2016). However, the Court in *Mykey* specifically held that such a reference was improper where the database "apparently contain[ed] a significant amount of material that is not responsive to any discovery request." *Id.* at *12. This is clearly the case here, where Trustee produced a database of millions of documents, when it has otherwise

1   represented in the Joint Status Report that it only plans to rely on approximately 100 exhibits at trial.

2   Thus, Trustee should be ordered to supplement its response to comply with its obligations under

3   Rule 26 and Rule 34.

4   **TRUSTEE'S POSITION:**

5   The Trustee refers the Court to the above arguments and authorities supporting the Trustee's

6   position that is has complied with all discovery obligations and properly produced ESI and hard-copy

7   documents in accordance with Rule 34.

8   The Trustee has produced ESI in searchable, sortable, and an organized format, and kept in the

9   regular and ordinary course of business.  Defendants' request is unduly burdensome where Defendants are

10   equally competent and able to search Trustee's ESI production.  Trustee's production of its entire ESI file

11   obviates the need for the parties to negotiate limited key word search terms; instead the Blue Entities are

12   free to run an unlimited number of searches.

13   The Trustee has complied with its discovery obligations pursuant to Rules 26 and 34.  Moreover,

14   the Trustee produced select responsive documents from the Storage Documents on February 13, 2021.  The

15   Trustee has also produced ESI in the required format, and has even taken the extra step of highlighting the

16   file path and folders containing relevant documents in the ESI.  Defendants' request should be denied.

17   **REQUEST FOR PRODUCTION NO. 2:**

18   All DOCUMENTS that support your contention that "Blue Wolf Capital Partners ... forced

19   CTG's management to obtain financing for these assets," as alleged in paragraph 31 of the

20   COMPLAINT.

21   **RESPONSE:**

22   Subject to and without waiver of its general objections, Trustee responds that it has or will

23   produce tangible documents responsive to this Request. Trustee further responds that this Request calls

24   for the production of ESI. Trustee has produced to Defendants all electronically stored information in its

25   possession, custody, and control, and the Defendants may search such ESI via their direct access.

26   **THE BLUE WOLF ENTITIES' POSITION:**

27   Defendants incorporate their position as to Request for Production No. 1.

28   **TRUSTEE'S POSITION:**

Trustee incorporates it position as stated in its response relating to Request for Production No. 1 and in the introductory section titled "Trustee's Position Regarding ESI Discovery."

**REQUEST FOR PRODUCTION NO. 3:[78]**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners ... forced CTG and its subsidiary to join BW Piezo and CTG Advanced Materials as borrowers in the Amended and Restated Credit Agreement with One West Bank," as alleged in paragraph 32 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Production No. 1.

**TRUSTEE'S POSITION:**

Trustee incorporates it position as stated in its response relating to Request for Production No. 1 and in the introductory section titled "Trustee's Position Regarding ESI Discovery."

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 17.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and

---

[7] Because Trustee responded identically to 102 other requests as it did to Request Nos. 1-3 set out in this stipulation, the Parties have only included 3 examples for efficiency and length purposes. Defendants also seek to move to compel as to Request Nos. 4-50, 64-94, 101-103, 106-122, and 130-132. Copies of Trustee's Responses to Defendants' Requests for Production, which include the Requests themselves, are attached hereto for the Court's reference.

[8] The Trustee objects to a footnote regarding requests that are not included though it has no objection to getting guidance from the Court regarding general positions and working with Defendants to resolve any other similar requests. Alternatively, the Trustee argues that its position regarding ESI discovery and its response relating to Request for Production No. 1 apply to these requests.

STIPULATION OF DISPUTED ISSUES

records in response to Request for Admission No. 17, and will supplement its response to this Request.

**THE BLUE WOLF ENTITIES' POSITION:**

The concurrently propounded Request for Admission No. 17 specified in this Request for Production asks whether or not Trustee made a certain payment. Trustee's response that it will "examin[e] its books and records" and "will supplement its response" at some future unspecified date is untenable. *Herrera v. PNC Bank, N.A.*, No. EDCV 18-144-JFW (KKx), 2018 U.S. Dist. LEXIS 227150, at *7 (C.D. Cal. July 26, 2018) ("[T]he response that 'discovery is ongoing' is evasive and incomplete and, hence, 'must be treated as a failure to . . . respond.'"). Trustee has had ample time to understand which facts support its allegations, particularly those that relate to specific monetary transfers; indeed, Trustee has amended its Complaint in this action three times. It is inconceivable that Trustee cannot answer what payments it did and did not make when its entire claim for damages is based on payments it allegedly made. Additionally, even if Trustee needs to examine certain "books and records" to respond to Request for Admission No. 17, it should produce those books and records in response to this Request for Production. Thus, Trustee should be ordered to immediately supplement its response to Request for Production No. 51 and produce documents responsive to the Request.

**TRUSTEE'S POSITION:**

The Blue Wolf Entities' complaint is unwarranted and premature in multiple respects.

First, the Trustee did indeed produce, on February 13, 2021, over 9,500 pages of documents culled from the Storage Documents which largely consist of books and records of CTG.

Second, the Trustee has not denied Requests for Admissions Nos. 17–29. Rather, the Trustee admits that the payments in question do not appear on bank statements, and that it is re-examining its books and records to confirm the circumstances of these payments and identify the precise supporting documents.

Third, discovery has just begun in this case. The Court has not entered a scheduling order nor have the parties agreed upon discovery deadline dates. While the Trustee has identified the payments in Schedule B, the Trustee is in the process of identifying the specific documents supporting these payments. The Trustee further maintains that the Blue Wolf Entities directed, controlled, operated, and managed CTG and that the Blue Wolf Entities are likely to possess the same or more documents which will support these payments. The Blue Wolf Entities have not produced any documents in this litigation or the state court

action and the Trustee is still in the process of serving written discovery.  In short, the Blue Wolf Entities'
claim that Trustee is evading responding to discovery requests is unwarranted and premature; the Trustee
has made a good-faith effort to respond to discovery and will supplement its responses upon re-examining
the books and records.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for
Admission No. 18.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and
records in response to Request for Admission No. 18, and will supplement its response to this Request.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Production No. 51.

**TRUSTEE'S POSITION:**

Trustee incorporates it position as stated in its response relating to Request for Production No. 51

**REQUEST FOR PRODUCTION NO. 53:[9]**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for
Admission No. 19.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and
records in response to Request for Admission No. 19, and will supplement its response to this Request.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Production No. 51.

**TRUSTEE'S POSITION:**

Trustee incorporates it position as stated in its response relating to Request for Production No. 51

---

[9] Because Trustee responded identically to 14 other requests as it did to Request Nos. 51-53 set out in this
stipulation, the Parties have only included 3 examples for efficiency and length purposes. Defendants
also seek to move to compel as to Request Nos. 54-63. Copies of Trustee's Responses to Defendants'
Requests for Production, which include the Requests themselves, are attached hereto for the Court's
reference.

**REQUEST FOR PRODUCTION NO. 124:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Fidus Investment Corporation.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee asserts pithy boilerplate objections as to relevance and proportionality. Such boilerplate objections are improper. *A. Farber & Partners Inc.*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections."); *Herrera*, 2018 U.S. Dist. LEXIS 227150, at *7 ("Plaintiff's boilerplate objections are improper and, therefore, overruled."); *Menell v. Rialto Unified School District, et al.*, No. EDCV 15-2124-VAP (KKx), 2016 U.S. Dist. LEXIS 80107, at *10 (C.D. Cal. June 20, 2016) (finding "boilerplate relevance and vagueness objections to each interrogatory are improper and not well taken" and granting motion to compel); *Reisdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSx), 2013 U.S. Dist. LEXIS 200627, at *31-32 (C.D. Cal. Sept. 9, 2013) ("Courts have found that the assertion of boilerplate objections [...] is tantamount to interposing no objections at all."); *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) ("[U]nexplained and unsupported boilerplate objections are improper.").

Further, Trustee's relevance objections are without merit. Fed. R. Civ. P. 26(b)(1) provides for broad discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Rule 26(b) "is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence; but the discoverable information need not be admissible at the trial." *Oakes*, 179 F.R.D. at 283. "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action" and "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the

subject matter of this action." *Id.*; *see also Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) ("The scope of discovery permissible under Rule 26 should be liberally construed; the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case.") "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Id.*; *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005). Here, Trustee has not clarified, explained, or otherwise supported its objections with any specificity or even generality. It simply asserts that the Request is not relevant, when in reality, a settlement agreement between any of the named defendants or parties in the case and Trustee, and the terms contained therein, will surely have the "possibility" of providing information that "may be relevant to the subject matter of this action." Indeed, it is possible that the settlement agreement that is the subject of this Request could relieve the Blue Wolf Entities of liability with respect to the underlying transfers that served as the basis for Trustee's claims, as section 550(d) of the Bankruptcy Code limits a trustee to a single satisfaction with respect to a transfer. Thus, Trustee should be ordered to supplement its response to explain its boilerplate objections and produce documents responsive to this Request.

The Trustee says in the Stipulation that it will now produce the documents "subject to (1) the protective order, (2) agreement from the Blue Wolf Entities that such agreement shall be designated as "Confidential" and (3) consent from the settling parties." There already has been a protective order entered; it is the obligation of the Trustee to designate the document as "Confidential" under the protective order and the Blue Wolf Entities have the right to contest the designation after receiving the documents which they should not be required to do in advance of receiving them; and while consent of the other parties to the agreement is not required by law, the Trustee sets forth no facts indicating it has done anything to obtain consents from the settling parties. This is just another example of the Trustee's inaction.

**TRUSTEE'S POSITION:**

The Trustee will produce a copy of the relevant settlement agreement subject to (1) the protective order, (2) agreement from the Blue Wolf Entities that such agreement shall be designated as "Confidential" and (3) consent from the settling parties.

**REQUEST FOR PRODUCTION NO. 125:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Fidus Mezzanine Capital II, L.P.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Production No. 124.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Request for Production No. 124.

**REQUEST FOR PRODUCTION NO. 126:[10]**

All DOCUMENTS relating to any settlement agreements executed between YOU and Avante Mezzanine Partners SBIC, LP.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Production No. 124.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Request for Production No. 124.

## IV.    REQUESTS FOR ADMISSION IN DISPUTE

---

[10] Because Trustee responded identically to 3 other requests as it did to Request Nos. 124-126 set out in this stipulation, the Parties have only included 3 examples for efficiency and length purposes. Defendants also seek to move to compel as to Request Nos. 127-129. Copies of Trustee's Responses to Defendants' Requests for Production, which include the Requests themselves, are attached hereto for the Court's reference.

**REQUEST FOR ADMISSION NO. 1:**

Admit that CTG was not insolvent prior to October 2013.

**RESPONSE:**

The Trustee objects to this Request as the term "insolvent" is not defined rendering the request vague and ambiguous. The request is also overbroad, beyond the scope of issues in dispute in this lawsuit, and unduly burdensome in that it makes a request as to any time prior to "October 2013." The admission also calls for a legal conclusion and is the subject of expert testimony. Subject to and without waiver of the foregoing objections, denied.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee's response to Request for Admission No. 1 is improperly nonresponsive. In responding to a request for admission, a party must either admit, deny, or explain in detail why the matter cannot be truthfully admitted or denied. Fed. R. Civ. Proc., R. 36(a)(4); *Anderson v. Hansen*, No. 1:09-cv-01924-LJO-MJS (PC), 2012 U.S. Dist. LEXIS 131010, *20 (E.D. Cal. Sep. 13, 2012) ("If a matter is not admitted, the responding party must specifically deny the matter or state in detail why the matter cannot be truthfully admitted or denied."). "When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 580 (9th Cir. 1992) ("Epistemological doubts speak highly of (party's) philosophical sophistication, but poorly of its respect for Rule 36(a)."). Trustee's objection to the word "insolvent" is not only an "overly-technical reading of the request," but is clearly disingenuous as Trustee is the one who brought this adversary proceeding, and is well aware of the meaning of the word "insolvent." Indeed, Trustee alleged in its Complaint that CTG is "insolvent," clearly demonstrating that it understands the meaning of the word. Further, whether an entity or individual is "insolvent" is "a factual determination[] that should be reserved for discovery." *Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445, 456 (Bankr. D. Del. 2018). Thus, the Request is proper, and Trustee must fulfill its discovery obligations by adequately responding to Defendants' Request.

Additionally, Trustee has failed to "specifically deny the matter," and thus the response must be considered an admission. *See Ameripride Servs. v. Valley Indus. Servs.*, No. CIV 2:00-cv-0113-LKK-JFM, 2011 U.S. Dist. LEXIS 39408, at *11-12 (E.D. Cal. April 1, 2011) (granting plaintiff's motion to

compel amended responses to its Requests for Admissions and stating "[i]t is also clear that an evasive

denial, one that does not 'specifically deny the matter,' or a response that does not set forth 'in detail' the

reasons why the answering party cannot truthfully admit or deny the matter, may be deemed an

admission."). Thus, Trustee should be ordered to withdraw its objections to this Request and supplement

its response to specify facts and details surrounding its denial or the request should be deemed admitted.

**TRUSTEE'S POSITION:**

First, in the guise of a single admission, Defendants impermissibly demand that Plaintiff identify

whether Plaintiff was insolvent each and every day of its existence prior to 2013.  That is on its face an

impermissibly broad request. Second, Defendants know that there are multiple tests for insolvency, but

they do not specify the test that the admission includes so it must include all of the possible tests for

insolvency. That too is an impermissibly overbroad request for admission. In other words, according to

Defendants, Plaintiff would have to address each test for insolvency for each day of CTG's existence

prior to 2013 to answer this request. Finally, legal insolvency is an ultimate legal conclusion that is

inappropriate for an admission. It is also usually the subject of expert testimony—and the deadline for

designating experts has not even been set, much less passed—not a subject of the Trustee's lay

testimony. For each and all of these reasons, this is an unfair and impermissible request for admission.

## REQUEST FOR ADMISSION NO. 2:

Admit that at no point in 2013 was CTG insolvent.

**RESPONSE:**

The Trustee objects to this Request as the term "insolvent" is not defined rendering the request

vague and ambiguous. The admission also calls for a legal conclusion and is the subject of expert

testimony. Subject to and without waiver of the foregoing objections, denied.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Admission No. 1.

**TRUSTEE'S POSITION:**

The Trustee incorporates its position with respect to Request for Admission No. 1. The only

difference in the request is that instead of asking for every day of CTG's existence, this request asks for

each day of the 365 days of 2013 whether under every possible test for insolvency whether CTG was

insolvent or not on each day of 2013. While perhaps this request acknowledges the overbreadth of Request for Admission No. 1 that incorporates all days of CTG's existence prior to 2013, the request for 365 days in 2013 is equally overbroad.

**REQUEST FOR ADMISSION NO. 3:[11]**

Admit that at no point in 2014 was CTG insolvent.

**RESPONSE:**

The Trustee objects to this Request as the term "insolvent" is not defined rendering the request vague and ambiguous. The admission also calls for a legal conclusion and is the subject of expert testimony. Subject to and without waiver of the foregoing objections, denied.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Admission No. 1

**TRUSTEE'S POSITION:**

The Trustee incorporates its position with respect to Request for Admission No. 1. The only difference in the request is that instead of asking for every day of CTG's existence, this request asks for each day of the 365 days of 2014 whether under every possible test for insolvency whether CTG was insolvent or not on each day of 2014. While perhaps this request acknowledges the overbreadth of Request for Admission No. 1 that incorporates all days of CTG's existence prior to 2013, the request for 365 days in 2014 is equally overbroad.

**REQUEST FOR ADMISSION NO. 7:**

Admit that CTG borrowed $1,750,000.00 on 10/1/15 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank. Subject to and without waiver of the foregoing objections, denied as stated.

---

[11] Because Trustee responded identically to 4 other requests as it did to Request Nos. 1-3 set out in this stipulation, the Parties have only included 3 examples for efficiency and length purposes. Defendants also seek to move to compel as to Request Nos. 4, 33, 34, and 41. Copies of Trustee's Responses to Defendants' Requests for Admission, which include the Requests themselves, are attached hereto for the Court's reference.

Adv. No. 9:18-ap-01058-DS

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee's response to Request for Admission No. 7 is improperly nonresponsive. Notwithstanding the fact that the debtor's records in this action reflect that it received a transfer from CIT Bank, N.A. on the date specified in the Request, Trustee refuses to even acknowledge that such a transfer occurred. Even as to basic issues such as the one set out in this Request, Trustee has stonewalled and refused to provide Defendants with clear, cohesive answers. It is imperative that Trustee complies with its discovery obligations and provides a straightforward answer, as Defendants' defense in this action is that while Trustee contends that the debtor transferred money to CIT Bank at its own expense, it ignores the fact that debtor ***received even more money*** than what it owed, thereby nullifying Trustee's claims.

Not only has Trustee substantively violated its discovery obligations in responding to this Request, it has done so procedurally as well. In responding to a request for admission, a party must either admit, deny, or explain in detail why the matter cannot be truthfully admitted or denied. Fed. R. Civ. Proc., R. 36(a)(4); *Anderson v. Hansen*, 2012 WL 4049979, *8 (E.D. Cal. Sep. 13, 2012) ("If a matter is not admitted, the responding party must specifically deny the matter or state in detail why the matter cannot be truthfully admitted or denied."). "When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request." *Holmgren v. State Farm Mut. Auto. Ins. Co*., 976 F.2d 573, 580 (9th Cir. 1992) ("Epistemological doubts speak highly of (party's) philosophical sophistication, but poorly of its respect for Rule 36(a)."). Trustee's objection that CTG was allegedly not the only borrower is an "overly-technical reading of the request"; it is clear that the Request is asking whether CTG borrowed a certain sum of money, regardless of whether CTG was the only borrower. By failing to answer the Request as stated, and instead qualifying the denial with a meritless objection, Trustee has again failed to "specifically deny the matter," and thus the response must be considered an admission. *See Ameripride Servs. v. Valley Indus. Servs*., No. CIV 2:00-cv-0113-LKK-JFM, 2011 U.S. Dist. LEXIS 39408, at *11-12 (E.D. Cal. April 1, 2011) (granting plaintiff's motion to compel amended responses to its Requests for Admissions and stating "[i]t is also clear that an evasive denial, one that does not 'specifically deny the matter,' or a response that does not set forth 'in detail' the reasons why the answering party cannot truthfully admit or deny the matter, may be deemed an admission."). Thus, Trustee should be ordered to withdraw its objections to

this Request and supplement its response to specify facts and details surrounding its denial.

**TRUSTEE'S POSITION:**

This request seeks a misleading admission. While CTG does not deny that it was a co-borrower under the loan facility that was entered into to purchase CTGAM, it was not the sole borrower. As Defendants know and the loan documents reflect, the other co-borrowers included, *inter alia*, the Blue Wolf Defendants through BWP and CTGAM. So CTG did not "borrow" that amount of money, all of the co-borrowers borrowed that amount of money. If Defendants simply wanted to obtain an admission about a transfer of funds from CIT to CTG's account on a date certain, then Defendants could reframe the request to ask that question, which is not in dispute. Instead, they have sought to characterize the transfer as a borrowing of money by CTG, soley, from CIT, and that is simply not accurate and must be denied.

As an aside, the Trustee denies the merits arguments that the Defendants insert. The borrowing of money by the entities, which included CTG, for the acquisition and operations of the alter-ego entities is not mitigated by subsequent borrowings by those same groups of companies. But these merits arguments really have no bearing on the discovery issues raised in this stipulation.

**REQUEST FOR ADMISSION NO. 8:**

Admit that CTG borrowed $1,300,000.00 on 10/9/15 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank. Subject to and without waiver of the foregoing objections, denied as stated.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Admission No. 7.

**TRUSTEE'S POSITION:**

Plaintiff incorporates its position as to Request for Admission No. 7. Again, transfers of funds on specific dates by CIT should not be in dispute but characterizing them as CTG's borrowings is not accurate and requires denial of the admission. Again, Plaintiff has invited Defendants to reframe this request if it only seeks acknowledgement of the transfer of funds on a particular date to an account, rather than mischaracterizing the transfer.

STIPULATION OF DISPUTED ISSUES

**REQUEST FOR ADMISSION NO. 9:[12]**

Admit that CTG borrowed $450,000.00 on 10/28/15 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank. Subject to and without waiver of the foregoing objections, denied as stated.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Admission No. 7.

**TRUSTEE'S POSITION:**

Plaintiff incorporates its position as to Request for Admission No. 7. Again, transfers of funds on specific dates by CIT should not be in dispute but characterizing them as CTG's borrowings is not accurate and requires denial of the admission. Again, Plaintiff has invited Defendants to reframe this request if it only seeks acknowledgement of the transfer of funds on a particular date to an account, rather than mischaracterizing the transfer.

**REQUEST FOR ADMISSION NO. 17:**

Admit CTG did not make a payment of $11,853.34 on 10/22/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustees response to this Request is, again, entirely non-responsive. Defendants have reviewed the relevant bank records and found that there is no evidence that there was ever a transfer made from the debtor's account on the day specified in the Request. Indeed, Trustee even acknowledges this discrepancy in its response, but ***still refuses to provide*** a direct answer to the simple question in the Request. This is yet another example of Trustee's inability to provide straightforward answers to basic

---

[12] Because Trustee responded identically to 4 other requests as it did to Request Nos. 7-9 set out in this stipulation, the Parties have only included 3 examples for efficiency and length purposes. Defendants also seek to move to compel as to Request Nos. 10-13. Copies of Trustee's Responses to Defendants' Requests for Admission, which include the Requests themselves, are attached hereto for the Court's reference.

1    requests for pertinent and necessary information.

2    Additionally, Trustee's response that it will "examin[e] this payment" and "will supplement its

3    response" at some future unspecified date is untenable. *Herrera*, 2018 U.S. Dist. LEXIS 227150, at *7

4    ("[T]he response that 'discovery is ongoing' is evasive and incomplete and, hence, 'must be treated as a

5    failure to . . . respond.'"). Trustee has had ample time to understand which facts support its allegations,

6    particularly those that relate to specific monetary transfers; indeed, Trustee has amended its Complaint in

7    this action three times. It is inconceivable that Trustee cannot answer what payments it did and did not

8    make when its entire claim for damages is based on payments it allegedly made. Trustee should be

9    ordered to immediately supplement its response to Request for Admission No. 17 to provide a full and

10   substantive answer.

11   **TRUSTEE'S POSITION:**

12   The Trustee will not hesitate to agree if it determines that the identified payment of $11,853.34 is

13   determined to not actually have been made. The accounting records reviewed by the Trustee included the

14   payment, and while the bank statements in the Trustee's possession do not show the payment in question,

15   the debtor's documents received by the Trustee do not include a complete set of bank statements from

16   CIT. In addition, the Trustee does not have access to the former accounting staff of CTG and has not yet

17   taken discovery from them. Accordingly, the Trustee does not feel that it has sufficient information to

18   deny the payment at this time though it expects that the results of will allow it to be able to confirm or

19   deny this payment in the future.

20   **REQUEST FOR ADMISSION NO. 18:**

21   Admit CTG did not make a payment of $1,580.44 on 10/22/15 to CIT BANK, N.A.

22   **RESPONSE:**

23   Trustee admits that this payment does not appear on bank statements; however Trust is examining

24   this payment in its books and records and will supplement its response to this Request.

25   **THE BLUE WOLF ENTITIES' POSITION:**

26   Defendants incorporate their position as to Request for Admission No. 17.

27   **TRUSTEE'S POSITION:**

28   Plaintiff incorporates its position as to Request for Admission No. 17.

**REQUEST FOR ADMISSION NO. 19:**[13]

Admit CTG did not make a payment of $9,815.49 on 12/9/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Admission No. 17.

**TRUSTEE'S POSITION:**

Plaintiff incorporates its position as to Request for Admission No. 17.

**REQUEST FOR ADMISSION NO. 35:**

Admit that CTG used $376,000 of proceeds from the sale of ADVANCED MATERIALS to make its rent payments.

**RESPONSE:**

Denied as stated upon information and belief. Notwithstanding this denial, Trustee has requested closing documents to confirm if rent payments were made from proceeds of the sale.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee's response to Request for Admission No. 35 is wholly disingenuous and without merit. Trustee is well aware of exactly which funds CTG used to pay its own rent, and has these documents in its possession, custody, and control. Thus, Trustee has not, in fact, answered based upon its information and belief, and must amend its response. Indeed, even if Trustee was not aware of what funds it used to make its rent payments, its response is still insufficient as it provides no date or timeframe as to when it will obtain the closing documents it needs to provide an adequate response.

**TRUSTEE'S POSITION:**

The debtor's records received by the Trustee did not include the closing documents from the sale

---

[13] Because Trustee responded identically to 10 other requests as it did to Request Nos. 17-19 set out in this stipulation, the Parties have only included 3 examples for efficiency and length purposes. Defendants also seek to move to compel as to Request Nos. 20-29. Copies of Trustee's Responses to Defendants' Requests for Admission, which include the Requests themselves, are attached hereto for the Court's reference.

of Advanced Materials. The Trustee has requested the closing documents from Defendant Advanced

Materials, and production by the Defendant is ongoing. Presumably, the Blue Wolf Defendants have

these documents as well, but for whatever reason they have not produced them in conjunction with their

disclosures. If the Blue Wolf Defendants would provide their set of closing document promptly, then

Plaintiff could review and revisit the answer above.

**REQUEST FOR ADMISSION NO. 37:**

Admit that CTG and ADVANCED MATERIALS filed consolidated tax returns.

**RESPONSE:**

Denied as stated.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee has failed to "specifically deny the matter," and thus the response must be considered an

admission. *See Ameripride Servs. v. Valley Indus. Servs.*, No. CIV 2:00-cv-0113-LKK-JFM, 2011 U.S.

Dist. LEXIS 39408, at *11-12 (E.D. Cal. April 1, 2011) (granting plaintiff's motion to compel amended

responses to its Requests for Admissions and stating "[i]t is also clear that an evasive denial, one that

does not 'specifically deny the matter,' or a response that does not set forth 'in detail' the reasons why

the answering party cannot truthfully admit or deny the matter, may be deemed an admission."). Thus,

Trustee should be ordered to supplement its response to specify facts and details surrounding its denial or

the request should be deemed admitted.

**TRUSTEE'S POSITION:**

While the Trustee has not yet received all of the tax returns filed for the alter-ego entities, it is the

understanding of the Trustee that this admission is not accurate. It is the Trustee's understanding that one

of the Blue Wolf Entities, BWP, filed tax returns that consolidated wholly owned subsidiaries including

both CTG and Advanced Materials. Accordingly, neither CTG nor Advanced Materials filed or had any

obligation to file any tax returns; only BWP had an obligation or did file a tax return for the group of

alter-ego entities including CTG and Advanced Materials.

**REQUEST FOR ADMISSION NO. 40:**

Admit that $6,901,369.25 of payments of CTG's loan from Gladstone Investment Corp. were

made before ADVANCED MATERIALS was acquired.

**RESPONSE:**

Trustee objects to this Request as vague and ambiguous as to the time period this Request covers. Subject to and without waiver of the foregoing objection, Trustee invites the Blue Wolf Entities to discuss the parameters of this Request and may amend or supplement its response accordingly.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee asserts pithy boilerplate objections, objecting to this request as "vague and ambiguous" without any further explanation. Such boilerplate objections are improper. *A. Farber & Partners Inc.*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections."); *Herrera*, 2018 U.S. Dist. LEXIS 227150, at *7 ("Plaintiff's boilerplate objections are improper and, therefore, overruled."); *Menell v. Rialto Unified School District, et al.*, No. EDCV 15-2124-VAP (KKx), 2016 U.S. Dist. LEXIS 80107, at *10 (C.D. Cal. June 20, 2016) (finding "boilerplate relevance and vagueness objections to each interrogatory are improper and not well taken" and granting motion to compel); *Reisdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSx), 2013 U.S. Dist. LEXIS 200627, at *31-32 (C.D. Cal. Sept. 9, 2013) ("Courts have found that the assertion of boilerplate objections […] is tantamount to interposing no objections at all."); *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) ("[U]nexplained and unsupported boilerplate objections are improper.").

Additionally, the objections are without merit as the Request does indeed specify the time period during which it is inquiring- the time period before Advanced Materials was acquired. There is nothing "vague" or "ambiguous" about this time period, and Trustee's objections are clearly meant to distract from the fact that it refuses to comply with its discovery obligations and admit that its loan payments were not made with funds used in the acquisition of Advanced Materials. Indeed, in Paragraph 35 of Complaint, the Trustee alleges that Advanced Materials assets were acquired in October 2013. Such avoidance and gamesmanship cannot be tolerated, and thus Trustee must be ordered to adequately and fully respond to this Request.

**TRUSTEE'S POSITION:**

The Second Amended Complaint lists certain payments made to Gladstone and the dates of those

payments. The Trustee could not reconcile the number in the requested admission with its schedule. Accordingly, Plaintiff invited Defendants to confer about this request. While the parties have conferred extensively about these requests, Defendants have not clarified this request for Plaintiffs so that the numbers can be reconciled. Plaintiff has submitted discovery requests to Gladstone that would encompass all payments made, but documents have not yet been provided at this time by Gladstone. In sum, the Plaintiff is happy to reach a stipulation or admission regarding payments made to Gladstone before the acquisition of HC Materials, but the Trustee cannot reconcile "$6,901,369.25" with the payments listed in its schedule, and the Blue Wolf Defendants have not been forthcoming about th details of that calculation to enable Plaintiff to do so.

**REQUEST FOR ADMISSION NO. 42:**

Admit that McDermott & Emery LLP provided legal services to CTG.

**RESPONSE:**

Trustee denies this Request to the extent the Request relies upon bills to CTG to identify which legal services were provided to CTG. Trustee believes that the majority of the services billed to CTG were for services provided to Blue Wolf Piezo or Advanced Materials. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee has provided absolutely no details or evidence to support its contention that the "majority of services billed to CTG were for serviced provided to Blue Wolf Piezo or Advanced Materials." Indeed, without further explanation or information to support this claim, Trustee's response is essentially a made-up scenario that it is using to avoid responding adequately to this Request. Additionally, Trustee's response that it cannot adequately respond because "discovery is ongoing" is untenable. *Herrera v. PNC Bank, N.A.*, No. EDCV 18-144-JFW (KKx), 2018 U.S. Dist. LEXIS 227150, at *7 (C.D. Cal. July 26, 2018) ("[T]he response that 'discovery is ongoing' is evasive and incomplete and, hence, 'must be treated as a failure to . . . respond.'"). Trustee has had ample time to understand which facts support its allegations; indeed, Trustee has amended its Complaint in this action three times. It is inconceivable that Trustee cannot answer whether certain legal services were provided to CTG when it is representing the interests of CTG, and when the bills and invoices so clearly reflect that such legal

services were indeed provided to CTG. Again, Trustee cannot even respond to a simple Request with a straightforward answer despite the documentation that clearly proves that this Request must be admitted. Thus, Trustee should be ordered to immediately supplement and amend its response to Request for Admission No. 42.

**TRUSTEE'S POSITION:**

The Trustee has produced McDermott & Emery LLP billing records to the Blue Wolf Defendants—more than once. While those billing records may not be sufficient without additional discovery to determine the final allocation of the benefit for these services, it appears to the Trustee that the majority of the work was done for the benefit of the Blue Wolf Entities.

**REQUEST FOR ADMISSION NO. 43:**

Admit that Dorsey & Whitney LLP provided legal services to CTG.

**RESPONSE:**

Trustee denies this Request to the extent the Request relies upon bills to CTG to identify which legal services were provided to CTG. Trustee believes that the majority of the services billed to CTG were for services provided to Blue Wolf Piezo or Advanced Materials. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Request for Admission No. 42.

**TRUSTEE'S POSITION:**

The Trustee has produced Dorsey & Whitney LLP's billing records to the Blue Wolf Defendants—more than once. While those billing records may not be sufficient without additional discovery to determine the final allocation of the benefit for these services, it appears to the Trustee that the majority of the work was done for the benefit of the Blue Wolf Entities. For example, the correspondence from a Dorsey Attorney to the Federal Government—attached to the Second Amended Complaint—explicitly identifies CTGAM as a subsidiary of CTG in an effort to use CTG's security clearance for CTGAM.

**REQUEST FOR ADMISSION NO. 44:**

Admit that none of "CTG's cash" was used to pay for the acquisition of ADVANCED MATERIALS, as alleged in paragraph 35 of the COMPLAINT.

**RESPONSE:**

Denied as stated.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee has failed to "specifically deny the matter," and thus the response must be considered an admission. *See Ameripride Servs. v. Valley Indus. Servs.*, No. CIV 2:00-cv-0113-LKK-JFM, 2011 U.S. Dist. LEXIS 39408, at *11-12 (E.D. Cal. April 1, 2011) (granting plaintiff's motion to compel amended responses to its Requests for Admissions and stating "[i]t is also clear that an evasive denial, one that does not 'specifically deny the matter,' or a response that does not set forth 'in detail' the reasons why the answering party cannot truthfully admit or deny the matter, may be deemed an admission."). Thus, Trustee should be ordered to supplement its response to specify facts and details surrounding its denial or the request should be deemed admitted.

**TRUSTEE'S POSITION:**

CTG paid for ancillary services related to that acquisition and—more significantly—the assets and credit of CTG were used to obtain the loan from CIT that funded the acquisition. Subsequently, CTG funds were used to make repayments of that acquisition loan as well. Accordingly, the admission is properly denied. If the intent was simply to ask whether cash was taken from CTG's operating funds to purchase HC Materials, then the Trustee could admit that more narrow admission.

**REQUEST FOR ADMISSION NO. 45:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included duplicate transfers totaling $5,834,527.96.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee has failed to "specifically deny the matter," and thus the response must be considered an admission. *See Ameripride Servs. v. Valley Indus. Servs.*, No. CIV 2:00-cv-0113-LKK-JFM, 2011 U.S. Dist. LEXIS 39408, at *11-12 (E.D. Cal. April 1, 2011) (granting plaintiff's motion to compel amended

1  responses to its Requests for Admissions and stating "[i]t is also clear that an evasive denial, one that

2  does not 'specifically deny the matter,' or a response that does not set forth 'in detail' the reasons why

3  the answering party cannot truthfully admit or deny the matter, may be deemed an admission."). Thus,

4  Trustee should be ordered to supplement its response to specify facts and details surrounding its denial or

5  the request should be deemed admitted.

6  Additionally, Trustee's response that it cannot adequately respond because "discovery is

7  ongoing" is untenable. *Herrera v. PNC Bank, N.A.*, No. EDCV 18-144-JFW (KKx), 2018 U.S. Dist.

8  LEXIS 227150, at *7 (C.D. Cal. July 26, 2018) ("[T]he response that 'discovery is ongoing' is evasive

9  and incomplete and, hence, 'must be treated as a failure to . . . respond.'"). Trustee has had ample time to

10  understand which facts support its allegations; indeed, Trustee has amended its Complaint in this action

11  three times. It is inconceivable that Trustee cannot answer whether it included a duplicate transfer in its

12  ***own computation of Schedule B that it prepared***. An adequate response to this Request only requires

13  Trustee to examine the document ***it prepared***- no other "discovery" or investigation is necessary. Again,

14  Trustee cannot even respond to a simple Request with a straightforward answer despite the

15  documentation that clearly proves that this Request must be admitted. Thus, Trustee should be ordered to

16  immediately supplement and amend its response to Request for Admission No. 45.

17  **TRUSTEE'S POSITION:**

18  The Trustee will not hesitate to agree if it determines that any payment listed in the schedule is a

19  duplicate. The accounting records reviewed by the Trustee included the payments listed in the schedules,

20  and as noted above, the debtor's documents received by the Trustee do not include a complete set of bank

21  statements from CIT. In addition, the Trustee does not have access to the former accounting staff of CTG

22  and has not yet taken discovery from them. Finally, the Defendants have not provided a methodology for

23  their total in this admission, just a lump-sum. Accordingly, the Trustee does not feel that it has sufficient

24  information to admit that certain payments are duplicates at this time though it expects that the results of

25  discovery will allow it to be able to confirm or deny each identified duplicate in the future.

26

27  **REQUEST FOR ADMISSION NO. 46:**

28  Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a

1 duplicate transfer of $105,877.54 on 8/28/14.

2 **RESPONSE:**

3     Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or

4 supplement this response.

5 **THE BLUE WOLF ENTITIES' POSITION:**

6     Defendants incorporate their position as to Request for Admission No. 45.

7 **TRUSTEE'S POSITION:**

8     The Trustee will not hesitate to agree if it determines that the identified payment of $105,877.54

9 is determined to not actually have been made. The accounting records reviewed by the Trustee included

10 the payment. As noted above, the debtor's documents received by the Trustee do not include a complete

11 set of bank statements from CIT. In addition, the Trustee does not have access to the former accounting

12 staff of CTG and has not yet taken discovery from them. Accordingly, the Trustee does not feel that it has

13 sufficient information to deny the payment at this time though it expects that the results of discovery will

14 allow it to be able to confirm or deny this payment in the future.

15 **REQUEST FOR ADMISSION NO. 47:**[14]

16     Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a

17 duplicate transfer of $111,684.22 on 10/31/14.

18 **RESPONSE:**

19     Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or

20 supplement this response.

21 **THE BLUE WOLF ENTITIES' POSITION:**

22     Defendants incorporate their position as to Request for Admission No. 45.

23 **TRUSTEE'S POSITION:**

24

25 [14] Because Trustee responded identically to 10 other requests as it did to Request Nos. 45-47 set out in

26 this stipulation, the Parties have only included 3 examples for efficiency and length purposes. Defendants also seek to move to compel as to Request Nos. 48-57. Copies of Trustee's Responses to Defendants'

27 Requests for Admission, which include the Requests themselves, are attached hereto for the Court's reference. The Trustee objects to a footnote regarding requests that are not included though it has no

28 objection to getting guidance from the Court regarding general positions and working with Defendants to resolve any other similar requests.

The Trustee will not hesitate to agree if it determines that the identified payment of $111,684.22 is determined to not actually have been made. The accounting records reviewed by the Trustee included the payment. As noted above, the debtor's documents received by the Trustee do not include a complete set of bank statements from CIT. In addition, the Trustee does not have access to the former accounting staff of CTG and has not yet taken discovery from them. Accordingly, the Trustee does not feel that it has sufficient information to deny the payment at this time though it expects that the results of discovery will allow it to be able to confirm or deny this payment in the future.

**REQUEST FOR ADMISSION NO. 58:**

Admit that ADVANCED MATERIALS' business office was located in Bowling Brook, Illinois.

**RESPONSE:**

Trustee objects that this Request is vague and ambiguous as to the term "business office." Trustee further objects to this Request as vague and ambiguous as to the location "Bowling Brook, Illinois." Subject to and without waiver of the foregoing objections, denied as stated.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee's response to Request No. 58 is another example of its refusal to provide basic answers to basic questions. Trustee responds by stating that the term "business office" is "vague and ambiguous." However, in its response to Request No. 59, which asked Trustee to admit that "CTG's business office was located in Santa Barbara, California," and is on the ***same page*** as its response to Request No. 58, Trustee readily admits with no qualification, showing that it does not actually find the phrase "business office" to be vague or ambiguous. It is blatantly clear that Trustee is picking and choosing which Requests it wants to dispute and which Requests it wants to answer, not based on valid objections, but based on what it believes will support it in its claims against Defendants. Such tactics cannot be permitted in discovery, and Trustee must be ordered to amend its responses to properly answer Defendants' Requests.

**TRUSTEE'S POSITION:**

The Blue Wolf Defendants apparently want to litigate their case through argumentative admissions. They misstate the Trustee's position. The Trustee does not deny that CTGAM had a facility in Illinois. It even had a controller in Illinois and other employees. The CEO for CTGAM had his office in Santa Barbara. The CFO for CTGAM had his office in Santa Barbara. In other words, the CTGAM

46                                    Adv. No. 9:18-ap-01058-DS

1  administrators in Illinois reported to the CTG staff in the Santa Barbara office of CTG. So it is not accurate

2  to say that the "business office" of CTGAM was located solely in Illinois.

3      The same is not true for CTG, as Defendants try to imply, because CTG's executives were all

4  located in Santa Barbara. Other subsidiaries and controlled-entities, such as CTGAM, EOI and MSI

5  reported to Santa Barbara, but CTG did not maintain offices elsewhere. Accordingly, there is no disoute

6  where CTG's business office was located. That is not the case for CTGAM.

7  **REQUEST FOR ADMISSION NO. 62:**

8      Admit that invoices sent to CTG's customers referenced CTG and did not reference ADVANCED

9  MATERIALS.

10  **RESPONSE:**

11      Plaintiff is without sufficient information to respond at this time to answer this request because it

12  does not have access to a list of all of the customers of CTG-Advanced Materials. Because discovery is

13  ongoing, Trustee reserves the right to amend and/or supplement this response.

14  **THE BLUE WOLF ENTITIES' POSITION:**

15      At bottom, Trustee's response makes absolutely no sense. The Request requires Trustee to look to

16  the invoices CTG sent to its customers; no part of the Request, and no interpretation of the Request,

17  requires Trustee to acquire or review "a list of all the customers of CTG-Advanced Materials." Trustee's

18  response again only demonstrates its gamesmanship and obtrusive tactics to avoid complying with its

19  discovery obligations.

20      Additionally, Trustee's response that it cannot adequately respond because "discovery is

21  ongoing" is untenable. *Herrera v. PNC Bank, N.A.*, No. EDCV 18-144-JFW (KKx), 2018 U.S. Dist.

22  LEXIS 227150, at *7 (C.D. Cal. July 26, 2018) ("[T]he response that 'discovery is ongoing' is evasive

23  and incomplete and, hence, 'must be treated as a failure to . . . respond.'"). Trustee has had ample time to

24  understand which facts support its allegations; indeed, Trustee has amended its Complaint in this action

25  three times. It is inconceivable that Trustee cannot answer whether CTG's ***own invoices*** reference

26  Advanced Materials. An adequate response to this Request only requires Trustee to examine ***its own***

27  ***invoices***- no other "discovery" or investigation is necessary. Again, Trustee cannot even respond to a

28  simple Request with a straightforward answer despite the documentation in its possession that clearly

proves that this Request must be admitted. Thus, Trustee should be ordered to immediately supplement and amend its response to Request for Admission No. 62

**TRUSTEE'S POSITION:**

The Trustee does not have access to all of CTGAM's customers or invoices to know whether there were overlapping customers of both that received separate invoices or combined invoices. The Trustee just does not have this knowledge or sufficient records to say so at this point in time.

**REQUEST FOR ADMISSION NO. 64:**

Admit that no customer of CTG has claimed that it understood it was conducting business with ADVANCED MATERIALS.

**RESPONSE:**

Trustee objects to this Request as the term "customer" is not defined rendering the request vague and ambiguous. The Request is also overbroad, vague, beyond the scope of issues in dispute in this lawsuit, and unduly burdensome in that it makes a request as to any or "no" "customer." Subject to and without waiver of the foregoing objections, the Trustee is without sufficient information to admit or deny facts not within its knowledge.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee asserts pithy boilerplate objections, objecting to this request as "vague and ambiguous," "overbroad," "beyond the scope of issues in dispute in this lawsuit," and "unduly burdensome" without any further explanation. Such boilerplate objections are improper. *A. Farber & Partners Inc.*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections."); *Herrera*, 2018 U.S. Dist. LEXIS 227150, at *7 ("Plaintiff's boilerplate objections are improper and, therefore, overruled."); *Menell v. Rialto Unified School District, et al.*, No. EDCV 15-2124-VAP (KKx), 2016 U.S. Dist. LEXIS 80107, at *10 (C.D. Cal. June 20, 2016) (finding "boilerplate relevance and vagueness objections to each interrogatory are improper and not well taken" and granting motion to compel); *Reisdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSx), 2013 U.S. Dist. LEXIS 200627, at *31-32 (C.D. Cal. Sept. 9, 2013) ("Courts have found that the assertion of boilerplate objections […] is tantamount to interposing no objections at all."); *Duran v. Cisco Sys., Inc.*, 258 F.R.D.

375, 379 (C.D. Cal. 2009) ("[U]nexplained and unsupported boilerplate objections are improper.").

Additionally, the objections are without merit as the word "customer" is by no stretch "vague or ambiguous," and Trustee's objections are clearly meant to distract from the fact that it refuses to comply with its discovery obligations and admit that none of its customers were under the impression that they were doing business with Advanced Materials rather than CTG. "When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request." *Holmgren v. State Farm Mut. Auto. Ins. Co*., 976 F.2d 573, 580 (9th Cir. 1992) ("Epistemological doubts speak highly of (party's) philosophical sophistication, but poorly of its respect for Rule 36(a)."). Trustee's objection to the word "customer" is not only an "overly-technical reading of the request," but is clearly disingenuous as Trustee uses the word "customer" in its Complaint and in the exhibits attached to its Complaint. Such avoidance and gamesmanship cannot be tolerated, and thus Trustee must be ordered to adequately and fully respond to this Request.

**TRUSTEE'S POSITION:**

The Trustee has no way to verify that each and every former customer of the debtor did or did not complain. And the Trustee is under no obligation to conduct this onerous third-party survey in response to this admission.

**REQUEST FOR ADMISSION NO. 67:**

Admit that CTG and ADVANCED MATERIALS had separate bank accounts.

**RESPONSE:**

Admitted to the extent that each entity had some accounts in its own name, but denied that the entities maintained separate accounts because money was transferred back and forth between the various accounts of the entities.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee's quasi-response is clearly meant to distract from the fact that it refuses to comply with its discovery obligations and admit that no alter ego factor can be satisfied. "When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request." *Holmgren v. State Farm Mut. Auto. Ins. Co*., 976 F.2d 573, 580 (9th Cir. 1992) ("Epistemological doubts speak highly of (party's) philosophical sophistication, but poorly of its respect

for Rule 36(a)."). Trustee's interpretation of the phrase "separate bank accounts" is not only an "overly-technical reading of the request," but is clearly an attempt to avoid the clear "purpose and significance" of the Request as "separate bank accounts" can only mean that "each entity had [] accounts in its own name," and not whether funds were transferred between the accounts every now and then. The fact that there were inter-company transfers, which are certainly not uncommon as between corporate affiliates, does not in any way result in a conclusion that the accounts were not separate. Such avoidance and gamesmanship cannot be tolerated, and thus Trustee must be ordered to adequately and fully respond to this Request.

**TRUSTEE'S POSITION:**

The Blue Wolf Defendants admit that millions of dollars flowed back and forth between the accounts of CTG and CTGAM during the relevant period. It even claims that CTGAM transferred money to CTG to make some of the payments on the loan to acquire CTGAM. Loan proceeds flowed into CTG's accounts for the benefit of CTGAM, CTG and BWP of the Blue Wolf Entities. BWP did not even have its own account and used CTG's accounts and money as its own. Accordingly, the Trustee does not agree with the characterization that the entities had separate accounts. The Trustee is happy to answer a proper admission for the fact that CTGAM had accounts with a bank in its own name. That factual question is not the admission submitted.

**REQUEST FOR ADMISSION NO. 68:**

Admit that CTG and ADVANCED MATERIALS had separate books and records.

**RESPONSE:**

Trustee objects that this Request is vague and ambiguous as to the term "books and record." Subject to and without waiver of the foregoing objections, denied as stated.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee asserts pithy boilerplate objections, objecting to this request as "vague and ambiguous" without any further explanation. Such boilerplate objections are improper. *A. Farber & Partners Inc.*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections."); *Herrera*, 2018 U.S. Dist. LEXIS 227150, at *7 ("Plaintiff's boilerplate

1  objections are improper and, therefore, overruled."); *Menell v. Rialto Unified School District, et al.*, No.

2  EDCV 15-2124-VAP (KKx), 2016 U.S. Dist. LEXIS 80107, at *10 (C.D. Cal. June 20, 2016) (finding

3  "boilerplate relevance and vagueness objections to each interrogatory are improper and not well taken"

4  and granting motion to compel); *Reisdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSx), 2013

5  U.S. Dist. LEXIS 200627, at *31-32 (C.D. Cal. Sept. 9, 2013) ("Courts have found that the assertion of

6  boilerplate objections […] is tantamount to interposing no objections at all."); *Duran v. Cisco Sys., Inc.*,

7  258 F.R.D. 375, 379 (C.D. Cal. 2009) ("[U]nexplained and unsupported boilerplate objections are

8  improper.").

9       Additionally, the objections are without merit as the phrase "books and records" is by no stretch

10  "vague or ambiguous," and Trustee's objections are clearly meant to distract from the fact that it refuses

11  to comply with its discovery obligations and admit that no alter ego factor can be satisfied. "When the

12  purpose and significance of a request are reasonably clear, courts do not permit denials based on an

13  overly-technical reading of the request." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 580

14  (9th Cir. 1992) ("Epistemological doubts speak highly of (party's) philosophical sophistication, but

15  poorly of its respect for Rule 36(a)."). Trustee's objection to the phrase "books and records" is not only

16  an "overly-technical reading of the request," but is clearly disingenuous as the phrase is prevalent in the

17  exhibits attached to its Complaint. Such avoidance and gamesmanship cannot be tolerated, and thus

18  Trustee must be ordered to adequately and fully respond to this Request.

19  **TRUSTEE'S POSITION:**

20       Again, the Blue Wolf Defendants apparently want to litigate their case through argumentative

21  admissions. They misstate the Trustee's position. The Trustee does not deny that CTGAM had a facility in

22  Illinois and a controller in Illinois. While the Trustee has not yet received a copy of those records from

23  Defendant Advanced Materials, there is little doubt that certain books and records at the time were in

24  Illinois and not in Santa Barbara. As noted, the CEO for CTGAM had his office in Santa Barbara and

25  would have had books and records related to his direct supervision of that entity with CTG. The CFO for

26  CTGAM had his office in Santa Barbara, including accounting records for the entire group of entities, so

27  those books and records were maintained by CTG. Reporting of accounting results was done by Santa

28  Barbara on a consolidated basis that included CTGAM. Again, those records were not separate. The tax

returns, as discussed, and other accounting "books records" were unquestionably maintained by CTG staff in the Santa Barbara office of CTG. It is simply a lie to say that the "books and records" of CTGAM and CTG were separate. The Trustee might be able to admit that certain "books and records" were separately maintained, but the Defendants did not define or specify a narrow set of records that the Trustee could honestly say were maintained separately.

## V.    INTERROGATORIES IN DISPUTE

**INTERROGATORY NO. 1:**

State all facts supporting YOUR contention that "BW Piezo, CTG, and CTG Advanced Materials operated as alter egos of each other," as alleged in paragraph 39 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" that "BW Piezo, CTG, and CTG Advanced Materials operated as alter egos of each other. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that the facts alleged in paragraph 39 of the SAC support Trustee's contention that BW Piezo, CTG, and CTG Advanced Materials operated as alter egos of each other. Trustee further responds that the following facts support Trustee's contention in paragraph 39:

1. The Blue Wolf Entities sent a "Confidential Information Memorandum" to proposed lenders, referring to CTG and HC Materials as the "Combined Company." The Blue Wolf Entities further represented that CTG would acquire AM or be consolidated into AM.

2. CTG funds were used to pay for the liabilities and debts of CTG Advanced Materials and BW Piezo, including payroll. See Second Amended Complaint ("SAC"), Ex. 19 (1/26/16 email from L. Chen to C. Hanna); SAC, Ex. 20 (1/5/16 email from L. Chen to C. Hanna); SAC, Ex. 14 (2/17/16 email from C. Hanna to J. Hager).

3. CTG Advanced Materials funds were used to pay for the liabilities and debts of CTG, including accounts receivable. See SAC, Ex. 21 (12/2/15 email from L. Chen to C. Hanna).

4. Accounting between the two companies was commingled. For example, CTG Advanced Materials' revenues were accounted for as part of CTG's overall revenues. See SAC Ex. 22 (1/21/16 email from L. Chen to S. Hoyos).

5. CTG funds were transferred to BW Piezo to pay out CTG Advanced Materials bonuses and legal expenses.

6. The liabilities of all BW Piezo subsidiaries were paid through CTG's operating account, and BW Piezo did not have its own separate bank account. See SAC Ex. 23 (1/21/16 email from L. Chen to A. Ortega).

7. CTG expenses were accrued between CTG and BW Piezo. See SAC Ex. 24 (1/15/16 email from L. Chen to C. Hanna).

8. Legal expenses incurred in relation to CTG matters were charged to BW Piezo's general liabilities. See SAC Ex. 27 (1/12/16 email from L. Chen to C. Hanna).

9. BW Piezo would pay for certain CTG-related expenses directly and then seek reimbursement from CTG. See SAC Ex. 25 (2/2/16 email from L. Chen to D. Oldham).

10. CTG's "cash flow" position was forecasted to include the "cash flow" position of CTG Advanced Materials.

11. CTG incurred BW Piezo's legal, tax, and other service expenses. See Ex. SAC 26 (3/8/16 email from C. Hanna to A. Ortega)

12.    BW Piezo owned all of the equity of CTG and AM.

13.    BW Piezo did not have its own physical location and held board meeting at the offices of CTG. See SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington).

14. AM's CEO and CFO were located in CTG's officers, and AM's officers reported to CTG's officers.

15. The Blue Wolf Entities and CTG represented to third party entities that AM was a subsidiary of CTG. See SAC, Ex. 17 (Presentation structuring AM as subsidiary of CTG).

16. The Blue Wolf Entities, Mr. Blumenthal, and Mr. Narulla issued press releases and represented to the public that CTG had acquired H.C. Materials.   See SAC, Ex. 8 (October 15, 2013 Press Release).

17. CTG's corporate documents and communications with auditors represented CTG Advanced Materials as a "division" of CTG. See Ex. SAC 28 (pdf attachment to 12/26/15 email rom L. Chen to D. Ligon); Ex. 29 (attachment to 1/19/16 email from L. Chen to J. Cherry).

18. CTG Advanced Materials was represented in government submissions as being a subsidiary of CTG. See SAC Ex. 9 (Dorsey Whitney letter).

**THE BLUE WOLF ENTITIES' POSITION:**

As detailed in the introduction above, Defendants take issue with the sufficiency of Trustee's interrogatory responses in that the responses largely constitute a recitation of conclusory arguments from the complaint and are almost wholly devoid of the specific facts demanded in the interrogatories.  In amending the response to Interrogatory No. 1, Trustee only struck the phrase "among others" and struck the direction to Defendants to search through the ESI themselves.   But the fundamental absence of facts remains.  In the list of supporting "facts", Trustee makes conclusory statements from the complaint, such as: *CTG funds were used to pay for the liabilities and debts of CTG Advanced Materials and BW Piezo, including payroll*"; "*CTG Advanced Materials funds were used to pay for the liabilities and debts of CTG, including accounts receivable.*"; "*Accounting between the two companies was commingled. For example, CTG Advanced Materials' revenues were accounted for as part of CTG's overall revenues.*"; "CTG funds were transferred to BW Piezo to pay out CTG Advanced Materials bonuses and legal expenses"; and numerous other such conclusory statements, each followed by perhaps one or two references to particular emails without any recitation of the <u>facts</u> those emails supposedly contain. Defendants are still left to guess at the specifics of which payments or transfers Trustee seeks to avoid and how they were wrongful.  These responses do not provide a recitation of the evidence Trustee intends to use to support its claim.

Trustee is aware of the facts that respond to the Interrogatory, and must include them in its response. *See Trueman v. N.Y. State Canal Corp.*, No. 1:09-CV-049 (LEK/RFT), 2010 U.S. Dist. LEXIS 16430, at *8 (N.D.N.Y. Feb. 24, 2010) ("In order for an answer to be adequate it must be a complete response to the interrogatory, specific as possible and not evasive."); *see also In re Savitt/Adler Litig.*, 176 F.R.D. 44, 50 (N.D.N.Y. 1997) (holding that where an interrogatory requests that the responding party "state all facts supporting the contentions of the complaints," "[t]hose facts can and should be specifically and fully stated.").

**TRUSTEE'S POSITION:**

Trustee has served its First Amended Objections and Responses to Defendant Blue Wolf Entities'

First Set of Interrogatories addressing the Blue Wolf Entities' issue with the phrase "among others." Moreover, the Trustee has answered Interrogatory No. 1 fully and to the best of its ability at this time. The Court has not entered a scheduling order nor have the parties agreed upon discovery deadline dates. While the Trustee has identified all relevant facts within Trustee's knowledge at this time—and has included 29 exhibits to its Second Amended Complaint in support thereof—discovery has just begun in this case and Trustee will may uncover additional facts upon receiving documents from the Blue Wolf Entities. The Blue Wolf Entities directed, controlled, operated, and managed CTG and that the Blue Wolf Entities likely possess the relevant documents that will additionally support Trustee's claims. The Blue Wolf Entities have not produced any documents in this litigation or the state court action and the Trustee is still in the process of receiving discovery responses from Defendants.

The Defendants acknowledge that Trustee has identified facts "each followed by perhaps one or two references to particular emails," yet Defendants still incredulously complain that Trustee's facts are "conclusory" and deficient. Defendants' issue is not that Trustee has provided evasive or deficient answers; rather, Defendants seek different answers. At bottom, the Trustee has sworn to and verified the facts in answering this interrogatory fully.

**INTERROGATORY NO. 2:**

State all facts supporting YOUR contention that "Throughout 2014 and 2015, CTG struggled to balance its finances," as alleged in paragraph 40 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" relating to paragraph 40 of the SAC. Subject to and without waiver of the foregoing general and specific objections, Trustee responds as follows:

1.      After acquiring the Debtor, the Debtor's management, under BW Partners' control, decided to acquire H.C. Materials, Inc.

2.      Instead of having CTG purchase H.C. Materials' assets directly, BW Partners, acting through BW Piezo, decided to create a new entity to hold the assets: CTG Advanced Materials.

3.      In October of 2013, BW Partners, acting through BW Piezo, forced the Debtor and its subsidiary to join BW Piezo and AM as borrowers.

4.      BW Partners, acting through BW Piezo forced the Debtor to enter into separate loan and investment agreements (the "Loan and Investment Agreements") with Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, and Avante Mezzanine Partners II, Inc. (collectively, the "Mezzanine Lenders")

5.      The terms of the Loan and Investment Agreements were onerous to the Debtor.

6.      In exchange for (1) a security interest in all of the Debtor's and Electro- Optical Industries, LLC's assets (a subsidiary of the Debtor), and (2) equity in BW Partners's shell company and the Debtor's "owner"—BW Piezo—, the Mezzanine Lenders lent BW Partners, BW Piezo, and the Debtor $14,000,000 to purchase H.C. Materials's assets.

7.      BW Partners, acting through its executive management team and BW Piezo forced the Debtor to use its assets to make payments to the Mezzanine Lenders  and  to  CIT Bank,  N.A. pursuant to  the loan agreements, for the benefit of AM—which Debtor did not own.

8.      BW Piezo, the Debtor, and AM operated as alter egos of each other, and the three entities regularly comingled funds and assets.

9.      Blue Wolf Capital Partners, acting through its executive management team and BW Piezo, indiscriminately directed CTG to transfer funds to pay for BW Piezo's and  CTG  Advanced Materials's liabilities,  including payroll, professional services, and legal bills, and vice versa benefitting those entities, as well as BW Partners and its shell companies and the Mezzanine Lenders by virtue of their equity interest in BW Piezo.

10.      From December 20, 2013 to December 31, 2015, CTG made regular payments to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. totaling $1,959,987.31.

11.      From December 19, 2013 to February 18, 2016, CTG made regular payments to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc. totaling $1,957,300.44.

12.      CTG was unable to pay debts as they became due to the onerous loan payments and loan conditions placed upon CTG, coupled with CTG supporting BW Piezo and CTG Advanced Materials.

13.      By October of 2015, BW Piezo board minutes indicate that CTG was in poor financial shape and was walking a "tightrope." *See* SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington). In fact, by this same time, BW Piezo was already contemplating the sale of CTG Advanced

Materials and noting that it needed to focus on "how to improve cash flow to . . . direct capital to [Advanced Materials] . . . to improve the value before exit" at the expense of CTG. *See* SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington).

14.    By January 2016, CTG was instructing CTG Advanced Materials that: "we do need you to stretch your payments out to suppliers as much as possible…[a]s you know we [i.e., CTG] are managing our cash very tightly and will need [Advanced Materials] to slow down the outflows as well." *See* SAC Ex. 11 (1/27/16 email from L. Chen to S. Hoyos). Because CTG Advanced Materials was dependent on CTG's support, Blue Wolf Capital Partners made this request to delay CTG from running out of funds and being forced to file for bankruptcy prior to the sale of CTG Advanced Materials.

15.    Unsurprisingly, then, by January 2016, CTG was insolvent and not making timely payments to its vendors. Vendors were complaining to CTG of its late payments on invoiced billings and failure to honor extended payment plans. *See* SAC Ex. 12 (1/22/16 mail from L. Chen to J. Rumsey).

16.    By February 2016, CTG was lamenting its cash flow and insolvency, noting that forecasts "do [] not look good." *See* SAC Ex. 13 (2/9/16 email from S. Hoyos to L. Chen).

17.    Also, by February 2016, CTG Advanced Materials could not even make its payroll without borrowing funds from CTG. *See* SAC Ex. 14 (2/17/16 email from C. Hanna to J. Hager).

18.    CTG's assumption of CTG Advanced Material's and other affiliates and subsidiaries' liabilities and use of CTG's capital and assets to maintain CTG Advanced Material's and other affiliates and subsidiaries' businesses. *See* Ex. 17 (Presentation Structuring CTG Advanced Materials as Subsidiary of CTG).

19.    The sale of Electro-Optical Industries to "a foreign interest," which CTG reported left the Department of State "appalled" and jeopardized CTG's security accreditation. *See* SAC Ex. 15 (6/24/16 email from C. Holmes to V. Caruso); SAC Ex. 16 (6/20/16 email from C. Holmes to V. Caruso).

20.    On or about March 2016, Blue Wolf Capital Partners, through its executive management team and BW Piezo, sold CTG Advanced Materials for approximately $73 million to CTS Corporation. Instead of returning to CTG the proceeds from the sale of assets of CTG Advanced Materials, Blue Wolf Capital Partners, acting through BW Piezo, structured the transaction to have CTS Corporation transfer the proceeds to Blue Wolf Capital Partners and its shell companies, CIT Bank, N.A., the Mezzanine

Lenders, Pengdi Han, and to Blue Wolf Capital Partners insiders as bonus payments. BW Piezo did not even have its own bank account and Blue Wolf Capital Partners directed CTS Corporation to transfer the proceeds from the sale of CTG Advanced Materials to Blue Wolf Capital Fund.

**THE BLUE WOLF ENTITIES' POSITION:**

Trustee's amended response to Interrogatory No. 2 remains wholly deficient for the same reasons that made the response to Interrogatory No. 1 improper.  In amending the response, Trustee added a new list of purported "facts" that are just as conclusory and argumentative as the list in Interrogatory No. 1. And here, most of those statements fail to refer to even  a single supporting document, let alone provide any actual recitation of facts in the form of the who, what, where, when or how of the conduct alleged. Trustee claims to have stated all facts presently known to Trustee to support the conclusory statements these conclusions.  If that is the case, Trustee must not be permitted to later claim some entitlement to present additional or different facts that Trustee refuses to identify now.   The following are a few representative examples of unsupported conclusory statements in the response to Interrogatory No. 2:

•    "BW Partners, acting through BW Piezo forced the Debtor to enter into separate loan and investment agreements (the "Loan and Investment 22 Agreements") with Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, and Avante Mezzanine Partners II, Inc."

•    "The terms of the Loan and Investment Agreements were onerous to the Debtor."

•    "BW Partners, acting through its executive management team and BW Piezo forced the Debtor to use its assets to make payments to the Mezzanine Lenders and to CIT Bank, N.A. pursuant to the loan agreements, for the benefit of AM—which Debtor did not own."

•    "BW Piezo, the Debtor, and AM operated as alter egos of each other, and the three entities regularly comingled funds and assets."

•    "Blue Wolf Capital Partners, acting through its executive management team and BW Piezo, indiscriminately directed CTG to transfer funds to pay for BW Piezo's and CTG Advanced Materials's liabilities, including payroll, professional services, and legal bills, and vice versa benefitting those entities, as well as BW Partners and its shell companies and the Mezzanine Lenders by virtue of their equity interest in BW Piezo."

•    "From December 20, 2013 to December 31, 2015, CTG made regular payments to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. totaling $1,959,987.31."

•    "From December 19, 2013 to February 18, 2016, CTG made regular payments to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc. totaling $1,957,300.44."

For these and the numerous other conclusions stated in the response, Trustee supplies little or no detail concerning how it will support these allegations. The responses raise far more questions for Defendants than they answer, such as:  who supposedly forced Debtor to enter a loan, when, and how? What were the terms of the agreement, how were they "onerous," and what made them improper?  Who specifically directed payment of liabilities? When?  Which liabilities?  How do we know the liabilities, such as those for legal bills and professional services, were for the benefit of one entity or another? That Defendants are still unable to determine from the interrogatory response the answer to such basic questions confirms the deficiency of the response. *In re M & L Bus. Mach. Co., Inc.*, 167 B.R. 631, 634–35 (D. Colo. 1994), 167 B.R. 631, 634–35 (D. Colo. 1994) (granting motion to compel supplementation of interrogatories and sanctions against a Bankruptcy Trustee where "despite [the defendant's] repeated requests for an identification of the allegedly avoidable transactions and a description of the legal basis underlying certain of the Trustee's claims, the Trustee continue[d] to provide evasive answers to the interrogatories which were the subject of its motion to compel"; adding that "[u]nder Rule 37(a)(3), an evasive or incomplete answer is 'treated as a failure to disclose, answer, or respond'"; and, ordering that Trustee was obligated to state in detail in its interrogatory responses the specifics concerning transactions Trustee sought to avoid.);  *See also In re Cont'l Cap. Inv. Servs., Inc.*, 2009 WL 1661918, at *5 (Bankr. N.D. Ohio Mar. 6, 2009) (Holding that Trustee must answer with a detailed narrative response interrogatories seeking "all facts" detailing alleged avoidable transfers even if so doing imposes a "substantial burden" on Trustee and ordering Trustee "to identify the factual basis for his claim with respect to each transfer he claims is recoverable [from defendant] as a fraudulent transfer.").

Moreover, where, as here, interrogatories ask the responding party to "state all facts" supporting allegations, to the extent Trustee relies on Rule 33(d) in support of its response, such reliance is improper.  "Reliance on Rule 33(d) is appropriate when the interrogatory requests objective facts that are obvious from the specified documents, but is generally inappropriate when the interrogatory asks a party

to state its contentions or to state facts supporting its allegations." *Morock v. Chautauqua Airlines, Inc.,* 2007 WL 4247767, at* 2 (M.D. Fla. Dec. 3, 2007) (directing the party required to respond to interrogatories to respond in narrative form because reliance on Fed. R. Civ. P. 33(d) necessarily required the party who propounded the interrogatories to read the mind of the responding party regarding how the incident at issue occurred). *In re Savitt/Adler Litig.,* 176 F.R.D. at 49 ("Each of the interrogatories at issue directs a plaintiff to 'state the facts' supporting various allegations in her complaint. None of the interrogatories ask for the evidence or documents supporting those allegations. Given the particular interrogatories, then, Rule 33(b) required that they be answered 'separately and fully,' and the resort to Rule 33(d) in response to these interrogatories was inappropriate."). When a party relies on Rule 33(d), the Rule "is not satisfied by the 'wholesale dumping of documents.' " *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Col. 2009). "A general reference to responsive documents is an insufficient response." *Id*. at 519. *See also SEC v. Bilzerian (In re Bilzerian)*, 190 B.R. 964 (Bankr. M.D. Fla. 1995); *Zaremba v. Shumaker, Loop & Kendrick, LLP (In re Continental Capital Inv. Servs., Inc.)*, 2009 WL 1661918 (Bankr. N.D. Ohio Mar. 6, 2009).  Trustees attempt to supply documents instead of facts and the failure even to identify all such responsive documents, does not satisfy the Rule of Civil 33(d). *In re Savitt/Adler Litigation*, 176 F.R.D. at 49.  *Fed. Indus. v. Cameron Techs. U.S., Inc.*, No. CV 07-1098-VBF(CTx), 2008 U.S. Dist. LEXIS 129004, at *4-5 (C.D. Cal. Oct. 16, 2008) (granting a motion to compel and holding that a response to an interrogatory was "inadequate" where the responding party responded to a contention interrogatory by referencing a large set of documents, and stating that "Federal has not identified any particular documents. Instead, Federal refers to a broad set of documents, the parameters of which are up to Federal's subjective determination. As a result, Cameron is left to guess which documents Federal is talking about."); *Cambridge Electronics Corp. v. MGA Electronics, Inc*., 227 F.R.D. 313, 323 (C.D. Cal. 2004) (granting motion to compel and holding that response to interrogatory stating "[t]he answer to this interrogatory may be derived or ascertained from the business records of the Responding Party" was not sufficient, and that the responding party must specify particular documents responsive to the interrogatory); *Walt Disney Co. v. DeFabiis,* 168 F.R.D. 281, 284 (C.D. Cal. 1996) (granting motion to compel and holding that it was inappropriate to cite to Rule 33(d) without specifying the particular location and category of records in which the responsive documents could be

found); *Pac. Lumber Co v. Nat'l Union Fire Ins. Co*, 2005 U.S. Dist. LEXIS 1773, No. C 02-4799 SBA (JL) at *18 (N.D. Cal. Jan. 5, 2005) (granting a motion to compel where the responding party referred the propounding party to a database of 70,000 documents, and ordering the party to respond to the interrogatory by "identifying only those documents" that were directly responsive to the interrogatory, and stating "[c]atch-all provisions are not sufficiently specific to be responsive, even when combined with more specific references to evidence.").

In its present construction, Trustee's response to Interrogatory No. 2 makes it impossible for Defendants to evaluate the merits of the allegations or to prepare the defense to same.

**TRUSTEE'S POSITION:**

The Trustee refers the Court to its response regarding Interrogatory No. 1.  The Trustee, upon amending its responses, removed references to Rule 33(d) and provided fulsome, sworn, and verified answers to the interrogatory.

Moreover, the Defendants' attempt to prohibit Trustee from amending its responses in the future is an improper and unreasonable request and should be denied.  First, the Defendants are likely to possess relevant documents, knowledge, and information, which will be uncovered through the discovery process.  Second, Defendants seek to prohibit Trustee from amending its responses upon future discovery of facts before a scheduling order has been entered and before the Defendants have provided responses to Trustee's written discovery requests or produced any documents. Defendants' blatant attempt to use the discovery process as both a sword and a shield and prematurely prevent the Trustee from developing its case by hindering the Trustee from obtaining and relying on any discovery from the Defendant is a frivolous request and must be denied.

**<ins>INTERROGATORY NO. 3:</ins>**

State all facts supporting YOUR contention that "Blue Wolf Capital Partners directed CTG to file for bankruptcy in late 2016 to leave the other creditors of CTG 'holding the bag' while Defendants enjoyed the millions in distributions from the sale of CTG Advanced Materials," as alleged in paragraph 48 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" relating to paragraph 48 of the SAC. Subject to and without waiver of the foregoing general and specific objections, Trustee responds as follows:

1. After acquiring the Debtor, the Debtor's management, under BW Partners' control, decided to acquire H.C. Materials, Inc.

2. Instead of having CTG purchase H.C. Materials' assets directly, BW Partners, acting through BW Piezo, decided to create a new entity to hold the assets: CTG Advanced Materials.

3. In October of 2013, BW Partners, acting through BW Piezo, forced the Debtor and its subsidiary to join BW Piezo and AM as borrowers.

4. BW Partners, acting through BW Piezo forced the Debtor to enter into separate loan and investment agreements (the "Loan and Investment Agreements") with Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, and Avante Mezzanine Partners II, Inc. (collectively, the "Mezzanine Lenders")

5. The terms of the Loan and Investment Agreements were onerous to the Debtor.

6. In exchange for (1) a security interest in all of the Debtor's and Electro- Optical Industries, LLC's assets( a subsidiary of the Debtor), and (2) equity in BW Partners's shell company and the Debtor's "owner"—BW Piezo—, the Mezzanine Lenders lent BW Partners, BW Piezo, and the Debtor $14,000,000 to purchase H.C. Materials's assets.

7. BW Partners, acting through its executive management team and BW Piezo forced the Debtor to use its assets to make payments to the Mezzanine Lenders and to CIT Bank, N.A. pursuant to the loan agreements, for the benefit of AM—which Debtor did not own.

8. BW Piezo, the Debtor, and AM operated as alter egos of each other, and the three entities regularly comingled funds and assets.

9. Blue Wolf Capital Partners, acting through its executive management team and BW Piezo, indiscriminately directed CTG to transfer funds to pay for BW Piezo's and CTG Advanced Materials's liabilities, including payroll, professional services, and legal bills, and vice versa benefitting those entities, as well as BW Partners and its shell companies and the Mezzanine Lenders by virtue of their equity interest in BW Piezo.

10.    From December 20, 2013 to December 31, 2015, CTG made regular payments to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. totaling $1,959,987.31.

11.    From December 19, 2013 to February 18, 2016, CTG made regular payments to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc. totaling $1,957,300.44.

12.    CTG was unable to pay debts as they became due to the onerous loan payments and loan conditions placed upon CTG, coupled with CTG supporting BW Piezo and CTG Advanced Materials.

13.    By October of 2015, BW Piezo board minutes indicate that CTG was in poor financial shape and was walking a "tightrope." See SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington). In fact, by this same time, BW Piezo was already contemplating the sale of CTG Advanced Materials and noting that it needed to focus on "how to improve cash flow to . . . direct capital to [Advanced Materials] . . . to improve the value before exit" at the expense of CTG. See SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to Carrington).

14.    By January 2016, CTG was instructing CTG Advanced Materials that: "we do need you to stretch your payments out to suppliers as much as possible . .. [a]s you know we [i.e., CTG] are managing our cash very tightly and will need [Advanced Materials] to slow down the outflows as well." See SAC Ex. 11 (1/27/16 email from L. Chen to S. Hoyos). Because CTG Advanced Materials was dependent on CTG's support, Blue Wolf Capital Partners made this request to delay CTG from running out of funds and being forced to file for bankruptcy prior to the sale of CTG Advanced Materials.

15.    Unsurprisingly, then, by January 2016, CTG was insolvent and not making timely payments to its vendors. Vendors were complaining to CTG of its late payments on invoiced billings and failure to honor extended payment plans.  See SAC Ex. 12 (1/22/16 mail from L. Chen to J. Rumsey).

16.    By February 2016, CTG was lamenting its cash flow and insolvency, noting that forecasts "do [] not look good." See SAC Ex. 13 (2/9/16 email from S. Hoyos to L. Chen).

17.    Also, by February 2016, CTG Advanced Materials could not even make its payroll without borrowing funds from CTG. See SAC Ex. 14 (2/17/16 email from C. Hanna to J. Hager).

18.    CTG's assumption of CTG Advanced Material's and other affiliates and subsidiaries' liabilities and use of CTG's capital and assets to maintain CTG Advanced Material's and other affiliates and subsidiaries' businesses. See Ex. 17 (Presentation Structuring CTG Advanced

Materials as Subsidiary of CTG).

19.     The sale of Electro-Optical Industries to "a foreign interest," which CTG reported left the Department of State "appalled" and jeopardized CTG's security accreditation. See SAC Ex. 15 (6/24/16 email from C. Holmes to V. Caruso); SAC Ex. 16 (6/20/16 email from C. Holmes to V. Caruso).

20.     On or about March 2016, Blue Wolf Capital Partners, through its executive management team and BW Piezo, sold CTG Advanced Materials for approximately $73 million to CTS Corporation. Instead of returning to CTG the proceeds from the sale of assets of CTG Advanced Materials, Blue Wolf Capital Partners, acting through BW Piezo, structured the transaction to have CTS Corporation transfer the proceeds to Blue Wolf Capital Partners and its shell companies, CIT Bank, N.A., the Mezzanine Lenders, Pengdi Han, and to Blue Wolf Capital Partners insiders as bonus payments. BW Piezo did not even have its own bank account and Blue Wolf Capital Partners directed CTS Corporation to transfer the proceeds from the sale of CTG Advanced Materials to Blue Wolf Capital Fund.

21.     Subsequently, and with CTG Advanced Materials's assets liquidated and distributed amongst Blue Wolf Capital Partners, its insiders, and its lenders, Blue Wolf Capital Partners and Mr. Holmes began to position CTG to declare for bankruptcy. Blue Wolf was desperate to delay CTG's filing for bankruptcy protection for as long as possible to avoid the bankruptcy preference period and protect the validity of the transfers related to the CTG Advanced Materials sale. To accomplish this, Blue Wolf Capital Partners and Mr. Holmes directed CTG, in April 2016, to enter a prepetition lending agreement with Blue Wolf Capital Fund II, L.P., to provide a cash infusion in exchange for a security interest in CTG's assets. Next, in June 2016, Blue Wolf sealed CTG's fate by selling one of its most valuable subsidiaries, Electro-Optical Industries, at a cut-rate price in June 2016 to keep CTG from being forced to file bankruptcy for a couple more months.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Interrogatory No. 2.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying all facts known to the Trustee at this time.

**INTERROGATORY NO. 4:**

State all facts supporting YOUR contention that "there was no corporate separateness between [CTG and CTG Advanced Materials] (or BW Piezo)," as alleged in paragraph 54 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" relating to paragraph 54 of the SAC.  Subject to and without waiver of the foregoing general and specific objections, Trustee responds as follows:

1.      At all relevant times, Blue Wolf Capital Partners was operated by its Founder, Managing Partner, and Managing Principal, Adam Blumenthal, and its partners, including Blue Wolf Capital Partners owns, dominates, and controls Blue Wolf Capital Fund II, L.P. The two entities shared the same managing partner: Adam Blumenthal. In addition, Blue Wolf Capital Partners insiders, including Blumenthal, Miller, Narulla, and Ranson serve as directors for Blue Wolf Capital Fund. Blue Wolf Capital Partners uses Blue Wolf Capital Fund as a mere liability shield for the operations of Blue Wolf Capital Partners, and all funds from it and its subsidiaries are siphoned up to Blue Wolf Capital Partners and its insiders. Blue Wolf Capital Fund does not have an independent office or independent employees.

2.      Blue Wolf Capital Partners uses another shell company to manage Blue Wolf Capital Fund: Blue Wolf Capital Advisors. Blue Wolf Capital Advisors is owned and operated by the same group of Blue Wolf Capital Partners insiders, including Blumenthal, Miller, Narulla, and Ranson. Blue Wolf Capital Partners structured Blue Wolf Capital Advisors, LP as the general partner of Blue Wolf Capital Fund II, LP. Blue Wolf Capital Partners uses Blue Wolf Capital Advisors as a mere liability shield to manage Blue Wolf Capital Fund, and all funds from it and its subsidiaries are siphoned up to Blue Wolf Capital Partners and its insiders. Blue Wolf Capital Advisors does not have an independent office or independent employees.

3.      Blue Wolf Capital Partners used Blue Wolf Capital Advisors to direct Blue Wolf Fund to establish BW Piezo to acquire CTG. BW Piezo is not an independent entity and is made up and controlled by the same Blue Wolf Capital Partners insiders, including its Founder and Managing Partner, Adam Blumenthal, and Charles P. Miller, Haranjeet Narulla, and Michael Ranson. BW Piezo is merely a façade for the operations of Blue Wolf Capital Partners and all funds from it and its subsidiaries

are siphoned up to Blue Wolf Capital Partners and its insiders. Further, Blue Wolf Capital Partners, and its agents, operate BW Piezo as a mere division of Blue Wolf Capital Partners and do not respect its distinct corporate form. BW Piezo does not have an independent office or independent employees.

4.    BW Piezo, CTG, and CTG Advanced Materials were organized and operated as alter egos of each other. Although Blue Wolf identified CTG and CTG Advanced Materials as separate entities in organizational charts, in practice, there was no corporate separateness between the two (or BW Piezo). Blue Wolf Capital Partners—utilizing its "shell company" BW Piezo— routinely commingled funds and assets between the two to cover company liabilities.

5.    CTG funds were used to pay for the liabilities and debts of CTG Advanced Materials and BW Piezo, including payroll. See Second Amended Complaint ("SAC"), Ex. 19 (1/26/16 email from L. Chen to C. Hanna); SAC, Ex. 20 (1/5/16 email from L. Chen to C. Hanna); SAC, Ex. 14 (2/17/16 email from C. Hanna to J. Hager).

6.    CTG Advanced Materials funds were used to pay for the liabilities and debts of CTG, including accounts receivable. See SAC, Ex. 21 (12/2/15 email from L. Chen to C. Hanna).

7.    Accounting between the two companies was commingled. For example, CTG Advanced Materials' revenues were accounted for as part of CTG's overall revenues. See SAC Ex. 22 (1/21/16 email from L. Chen to S. Hoyos).

8.    CTG funds were transferred to BW Piezo to pay out CTG Advanced Materials bonuses and legal expenses.

9.    The liabilities of all BW Piezo subsidiaries were paid through CTG's operating account, and BW Piezo did not have its own separate bank account. See SAC Ex. 23 (1/21/16 email from L. Chen to A. Ortega).

10.   CTG expenses were accrued between CTG and BW Piezo. See SAC Ex. 24 (1/15/16 email from L. Chen to C. Hanna).

11.   Legal expenses incurred in relation to CTG matters were charged to BW Piezo's general liabilities. See SAC Ex. 27 (1/12/16 email from L. Chen to C. Hanna).

12.   BW Piezo would pay for certain CTG-related expenses directly and then seek reimbursement from CTG. See SAC Ex. 25 (2/2/16 email from L. Chen to D. Oldham).

13.     CTG's "cash flow" position was forecasted to include the "cash flow" position of CTG Advanced Materials.

14.     CTG incurred BW Piezo's legal, tax, and other service expenses. See Ex. SAC (3/8/16 email from C. Hanna to A. Ortega)

15.     BW Piezo owned all of the equity of CTG and AM.

16.     BW Piezo did not have its own physical location and held board meeting at the offices of CTG. See SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington).

17.     AM's CEO and CFO were located in CTG's officers, and AM's officers reported to CTG's officers.

18.     The Blue Wolf Entities and CTG represented to third party entities that AM was a subsidiary of CTG. See SAC, Ex. 17 (Presentation structuring AM as subsidiary of CTG).

19.     The Blue Wolf Entities, Mr. Blumenthal, and Mr. Narulla issued press releases and represented to the public that CTG had acquired H.C. Materials. See SAC, Ex. 8 (October 15, 2013 Press Release).

20.     CTG's corporate documents and communications with auditors represented CTG Advanced Materials as a "division" of CTG. See Ex. SAC 28 (pdf attachment to 12/26/15 email rom L. Chen to D. Ligon); Ex. 29 (attachment to 1/19/16 email from L. Chen to J. Cherry).

21.     CTG Advanced Materials was represented in government submissions as being a subsidiary of CTG. See SAC Ex. 9 (Dorsey Whitney letter).

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Interrogatory No. 2.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.

**<u>INTERROGATORY NO. 5:</u>**

State all facts supporting YOUR contention that "Blue Wolf Capital Partners, through its shell companies and executive management team, formed, organized, and operated BW Piezo, CTG, and CTG

Advanced Materials to evade government regulation, legal obligations, and debt obligations, including national security related regulations and bankruptcy laws," as alleged in paragraph 55 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" relating to paragraph 54 of the SAC. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory No. 4.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Interrogatory No. 2.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.


**INTERROGATORY NO. 6:**

State all facts supporting YOUR contention that "Blue Wolf Entities allowed the entities to operate with inadequate capital for the type of business they were conducting, siphoning CTG' s assets and capital to repay Blue Wolf Capital Partners and make distributions to themselves," as alleged in paragraph 56 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 56 of the Complaint. The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody or control, which Defendants have not produced yet to Trustee. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory Nos. 1, 2, and 4.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Interrogatory Nos. 1 and 2.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.

**INTERROGATORY NO. 7:**

State all facts supporting YOUR contention that "Blue Wolf Capital Partners operated BW Piezo, CTG, and CTG Advanced Materials as part of a single business enterprise," as alleged in paragraph 57 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 57 of the Complaint. The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody or control. Trustee further objects to this Interrogatory as duplicative of Interrogatory No.1. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory No. 1.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Interrogatory No. 1.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.

**INTERROGATORY NO. 8:**

State all facts supporting YOUR contention that "Blue Wolf Capital Partners dominated and controlled CTG and CTG Advanced Materials," as alleged in paragraph 59 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks

"all facts" supporting the allegation in paragraph 59 of the Complaint. The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody or control, which Defendants have not produced yet to Trustee. Trustee further objects to this Interrogatory as duplicative in substance as Interrogatory No. 1. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory Nos. 1 and 4.

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Interrogatory Nos. 1 and 4.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.

**INTERROGATORY NO. 9:**

State all facts supporting YOUR contention that "Blue Wolf Capital Partners forced CTG to enter into and secure oppressive loan agreements for the sole benefit of BW Piezo and itself, forced CTG to make payments on these loans that did not benefit CTG, forced CTG to pass on corporate opportunities, such as the acquisition of HC Materials' assets directly, and forced CTG to pay for CTG Advanced Materials' and BW Piezo's liabilities and debts-all without CTG receiving any reasonably equivalent value," as alleged in paragraph 61 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 161 of the Complaint. The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody or control, which Defendants have not produced yet to Trustee. Trustee further objects to this Interrogatory as duplicative in substance as Interrogatory No. 2. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory Nos. 2.

STIPULATION OF DISPUTED ISSUES

**THE BLUE WOLF ENTITIES' POSITION:**

Defendants incorporate their position as to Interrogatory No. 2.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.

**INTERROGATORY NO. 10:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for funds transferred to Grant Thornton, LLP, as alleged in paragraph 161 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 161 of the Complaint. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that CTG transferred $1,054,753.85 to Grant Thornton, LLP from January 7, 2013 to March 2017. The transfers were made to pay for accounting and financial services rendered to BW Piezo and CTG Advanced Materials, and CTG did not receive reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to pay these expenses to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that paying these expenses would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**THE BLUE WOLF ENTITIES' POSITION:**

The Trustee merely parrots the language in the Complaint. Further, despite the fact that Grant Thornton provided accounting services for the debtor, the Trustee says nothing about this in its answer. The Trustee has a duty to investigate and fully respond to interrogatories and this is a further example of the Trustee doing absolutely nothing to respond to the interrogatory despite having access to records to do so.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended

Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the

relevant facts at this point in time.

**INTERROGATORY NO. 11:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value

for the funds transferred to Holland & Knight, as alleged in paragraph 162 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks

"all facts" supporting the allegation in paragraph 162 of the Complaint.    Subject to and without

waiver of the foregoing general and specific objections, Trustee responds that CTG transferred

$789,579.14 to Holland & Knight from December 2012 to September 2016. The transfers were made to

pay for legal services rendered to BW Piezo and CTG Advanced Materials, and CTG did not receive

reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to pay

these expenses to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets,

upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that paying these expenses

would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf

Capital Partners forced CTG into bankruptcy.

**THE BLUE WOLF ENTITIES' POSITION:**

The Trustee merely parrots the language in the Complaint.  Further, despite the fact that Holland

& Knight provided legal services for the debtor, the Trustee says nothing about this in its answer.  The

Trustee has a duty to investigate and fully respond to interrogatories and this is a further example of the

Trustee doing absolutely nothing to respond to the interrogatory despite having access to records to do so.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended

Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the

relevant facts at this point in time.

Adv. No. 9:18-ap-01058-DS

**INTERROGATORY NO. 12:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for funds transferred to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P, as alleged in paragraph 163 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 163 of the Complaint. Subject to and without waiver of the foregoing general and specific objections,  Trustee responds that CTG transferred $1,959,987.31 to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. from December 2013 to December 2015. The transfers were loan payments pursuant to the Loan and Investment Agreement entered into by BW Piezo, CTG Advanced Materials, CTG, and Electro Optical Industries for the purchase of HC Materials. If BW Piezo and CTG Advanced Materials are not CTG's alter egos, then CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**THE BLUE WOLF ENTITIES' POSITION:**

The Trustee admits in the answer that the debtor was a party to the loan agreement with the Fidus entities and says that the debtor was "forced" to make transfers by Blue Wolf Capital Partners and forced into bankruptcy without citing a single fact pertaining to same, such as who took actions, when they took actions, and what documents evidence the actions. Setting forth conclusions does not comport with discovery obligations.  Saying that discovery is in its early stages is no excuse as Bankruptcy Rule 9011 requires that there be factual support for claims set forth in a complaint.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.

**INTERROGATORY NO. 13:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for the $1,957,300.44 transferred to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc., as alleged in paragraph 164 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 164 of the Complaint.    Subject to and without waiver of the foregoing general and specific objections, Trustee responds that CTG transferred $1,957,300.44 to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc. from December 2013 to February 2016. The transfers were loan payments pursuant to the Loan and Investment Agreement entered into by BW Piezo, CTG Advanced Materials, CTG, and Electro Optical Industries for the purchase of HC Materials. If BW Piezo and CTG Advanced Materials are not CTG's alter egos, then CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**THE BLUE WOLF ENTITIES' POSITION:**

The Trustee admits in the answer that the debtor was a party to the loan agreement with the Avante entities and says that the debtor was "forced" to make transfers by Blue Wolf Capital Partners and forced into bankruptcy without citing a single fact pertaining to same, such as who took actions, when they took actions, and what documents evidence the actions. Setting forth conclusions does not comport with discovery obligations. Saying that discovery is in its early stages is no excuse as Bankruptcy Rule 9011 requires that there be factual support for claims set forth in a complaint.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the

relevant facts at this point in time.

**INTERROGATORY NO. 14:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for funds transferred to CIT BANK, N.A., as alleged in paragraph 165 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 165 of the Complaint. Subject to and without waiver of the foregoing general and specific objections, Trustee responds CTG transferred $ 33,248,711.36 to CIT Bank, N.A. from May 2013 to April 2016. The transfers were loan payments pursuant to a loan agreement entered into by BW Piezo, CTG Advanced Materials, CTG, and Electro Optical Industries for the purchase of HC Materials. If BW Piezo and CTG Advanced Materials are not CTG's alter egos, then CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**THE BLUE WOLF ENTITIES' POSITION:**

The Trustee admits in the answer that the debtor was a party to the loan agreement with CIT Bank, N.A. entities and says that the debtor was "forced" to make transfers by Blue Wolf Capital Partners without citing a single fact pertaining to same, such as who took actions, when they took actions, and what documents evidence the actions. Setting forth conclusions does not comport with discovery obligations. This is one of the most egregious examples of the Trustee intentionally failing and refusing to comply with discovery obligations. The Trustee has been given records of loans the debtor received from CIT Bank, N.A. which exceed the amount of the alleged transfers which funds were used for the debtor's business operations yet no mention of this is made in the answer. A party cannot be allowed to assert $60 million in claims and act in this fashion. Despite repeated requests, the Trustee has failed and refused to verify the interrogatory responses. The Blue Wolf Entities reserve the right to seek sanctions

against whoever signs the verification to these interrogatories.  Saying that discovery is in its early stages is no excuse as Bankruptcy Rule 9011 requires that there be factual support for claims set forth in a complaint.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying all facts known to the Trustee at this time.  The Court should deny Defendants' over-the-top and inflammatory request for sanctions; as detailed previously, the Trustee thoroughly investigated its Second Amended Complaint, and in addition to asserting 290 facts has attached 29 separate exhibits to its Complaint in support thereof.  Moreover, the Trustee has provided verified interrogatory responses and has verified that it has identified the relevant facts at this point this time in response to each interrogatory request.

**INTERROGATORY NO. 15:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for funds transferred to Gladstone Investment Corporation, as alleged in paragraph 166 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 166 of the Complaint. Subject to and without waiver of the foregoing general and specific objections, Trustee responds CTG transferred $7,576,027.49 to Gladstone Investment Corporation from February 2012 to June 2016. The transfers were distributions made to BW Piezo's and the Blue Wolf Fund's equity owners, and CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**THE BLUE WOLF ENTITIES' POSITION:**

The Trustee again makes no attempt to set forth a responsive answer.  The Trustee says that transfers to Gladstone Investment Corporation ("Gladstone") were distributions to BW Piezo and Blue Wolf Fund's equity owners.  There are no facts explaining how a transfer to Gladstone, an unrelated entity, can be a transfer to Blue Wolf Entities.  Further there are no facts explaining how the Blue Wolf Entities "forced" these distributions to be made or how transfers dating back to 2012 could be done knowing that the debtor would be deprived of assets some 4 years later.  Facts supporting these conclusions must be set forth.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.

**INTERROGATORY NO. 17:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for the $165,365.86 transferred to McDermott Will & Emery, LLP, as alleged in paragraph 170 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 170 of the Complaint. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that CTG transferred $165,365.86 to McDermott Will & Emery, LLP from March 2015 to May 2016. The transfers were made to pay for legal services rendered to CTG Advanced Materials, and CTG did not receive reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to pay these expenses.

**THE BLUE WOLF ENTITIES' POSITION:**

The Trustee merely parrots the language in the Complaint.  Further, despite the fact that McDermott Will provided legal services for the debtor, the Trustee says nothing about this in its answer.

The Trustee has a duty to investigate and fully respond to interrogatories and this is a further example of the Trustee doing absolutely nothing to respond to the interrogatory despite having access to records to do so.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory No. 1 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.

**INTERROGATORY NO. 18:**

IDENTIFY all transfers for which YOU allege Blue Wolf Capital Partners, LLC is liable and set forth specific facts and PERSONS with knowledge to support the basis for YOUR contention.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks the identity of "all transfers". The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody, or control. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that Blue Wolf Capital Partners, LLC is liable for every transfer in Schedule B identified as having been made for the benefit of BW Piezo, CTG Advanced Materials, Blue Wolf Capital Partners. The Trustee further identifies the following persons with knowledge to support the basis of its contentions:

1. Adam Blumenthal

2. Pierre Chao

3. Christopher Holmes

4. David Oldham

5. John Mei

6. Charles Miller

7. Lynn Chen

8. Mark Shaw

9. Kevin Ruelas

10. Arturo Ortega

11. Ralph Phillips

12. Pengdi Han

13. Cheryl Hanna

14. Haranjeet Narullah

15. Richard Feferman

16. David Tiffany

**THE BLUE WOLF ENTITIES' POSITION:**

Without reference to any facts, the Trustee states that Blue Wolf Capital Partners, LLC is liable for the hundreds of transfers totaling tens of millions of dollars set forth on Schedule B to the Complaint. This is an egregious failure to comply with discovery obligations.  The Trustee also provides a laundry list of names of people who allegedly have knowledge that this upstream entity is somehow responsible for the debts, including Pengdi Han who the Trustee has never even spoken with.  There is no basis for the Trustee to list all of  these names.  The right to seek sanctions against the signatory to the verification of these interrogatories is reserved.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory Nos. 1  and 14 and has served its First Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories identifying the relevant facts at this point in time.  Defendants' frivolous request for sanctions should be denied. Trustee believes that the individuals identified above —who are also the individuals identified by Defendants in their Initial Disclosures—have first-hand knowledge about the Debtor and the Blue Wolf Entities' control, management, and direction of the Debtor, as well as the Debtor's operations.

**<u>INTERROGATORY NO. 19:</u>**

IDENTIFY all transfers for which YOU allege Blue Wolf Capital Advisors, L.P. is liable and set forth specific facts and PERSONS with knowledge to support the basis for YOUR contention.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks the  identity of "all transfers". The Trustee also objects  to this Interrogatory to the extent it calls for or is

based on information in the Blue Wolf Entities' possession, custody, or control. Trustee has requested or will request discovery and documents regarding transfers made between Blue Wolf Capital Fund II, L.P., and Blue Wolf Capital Advisors, L.P. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that Blue Wolf Capital Advisors, L.P. is liable for every transfer in Schedule B identified as having been made for the benefit of BW Piezo, CTG Advanced Materials, Blue Wolf Capital Partners. The Trustee further identifies the following persons with knowledge to support the basis of its contentions:

1. Adam Blumenthal

2. Pierre Chao

3. Christopher Holmes

4. David Oldham

5. John Mei

6. Charles Miller

7. Lynn Chen

8. Mark Shaw

9. Kevin Ruelas

10. Arturo Ortega

11. Ralph Phillips

12. Pengdi Han

13. Cheryl Hanna

14. Haranjeet Narullah

15. Richard Feferman

16. David Tiffany

**THE BLUE WOLF ENTITIES' POSITION:**

Without reference to any facts, the Trustee states that Blue Wolf Capital Advisors, L.P. is liable for the hundreds of transfers totaling tens of millions of dollars set forth on Schedule B to the Complaint. This is an egregious failure to comply with discovery obligations. The Trustee also provides a laundry

list of names of people who allegedly have knowledge that this upstream entity is somehow responsible

for the debts, including Pengdi Han who the Trustee has never even spoken with.  There is no basis for

the Trustee to list all of these names.  The right to seek sanctions against the signatory to the verification

of these interrogatories is reserved.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory Nos. 1 and 18 and has served its First

Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories

identifying all facts known to the Trustee at this time.

**INTERROGATORY NO. 20:**

IDENTIFY all transfers for which YOU allege Blue Wolf Capital Fund II, L.P. is liable and set

forth specific facts and PERSONS with knowledge to support the basis for YOUR contention.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks

the identity of "all transfers". The Trustee also objects to this Interrogatory to the extent it calls for or is

based on information in the Blue Wolf Entities' possession, custody, or control. Trustee has requested

or will request discovery and documents regarding transfers made by Blue Wolf Capital Fund II, L.P..

Upon information and believe, and subject to and without waiver of the foregoing general and specific

objections, Trustee responds that Blue Wolf Fund II, L.P. received $5,669,848.62 from the proceeds of

the sale of Advanced Materials. Trustee further responds that Blue Wolf Capital Fund II, L.P. is liable for

every transfer in Schedule B identified as having been made for the benefit of BW Piezo, CTG Advanced

Materials, Blue Wolf Capital Partners. The Trustee further identifies the following persons with

knowledge to support the basis of its contentions:

1. Adam Blumenthal

2. Pierre Chao

3. Christopher Holmes

4. David Oldham

5. John Mei

6. Charles Miller

7. Lynn Chen

8. Mark Shaw

9. Kevin Ruelas

10. Arturo Ortega

11. Ralph Phillips

12. Pengdi Han

13. Cheryl Hanna

14. Haranjeet Narullah

15. Richard Feferman

16. David Tiffany

**THE BLUE WOLF ENTITIES' POSITION:**

Without reference to any facts, the Trustee states that Blue Wolf Capital Fund II, L.P. is liable for the hundreds of transfers totaling tens of millions of dollars set forth on Schedule B to the Complaint. This is an egregious failure to comply with discovery obligations. The Trustee also provides a laundry list of names of people who allegedly have knowledge that this upstream entity is somehow responsible for the debts, including Pengdi Han who the Trustee has never even spoken with. There is no basis for the Trustee to list all of these names. The right to seek sanctions against the signatory to the verification of these interrogatories is reserved.

**TRUSTEE'S POSITION:**

Trustee incorporates its position as to Interrogatory Nos. 1 and 18 and has served its First

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

STIPULATION OF DISPUTED ISSUES

Amended Objections and Responses to Defendant Blue Wolf Entities' First Set of Interrogatories

identifying the relevant facts at this point in time.

DATED:  April 22, 2021                    GREENBERG TRAURIG, LLP


                                          By /s/ Howard J. Steinberg
                                             Howard J. Steinberg
                                             Attorneys for Defendants
                                             BLUE WOLF CAPITAL PARTNERS, LLC
                                             BLUE WOLF CAPITAL FUND II, L.P.
                                             BLUE WOLF CAPITAL ADVISORS L.P.


DATED:  April 22, 2021                    LYNN PINKER HURST & SCHWEGMANN, LLP


                                          By /s/ Samuel B. Hardy
                                             Samuel B. Hardy
                                             Special Litigation Counsel for
                                             CORPORATE RECOVERY ASSOCIATES, LLC, as
                                             Trustee for the Liquidating Trust of Debtor
                                             Channel Technologies Group, LLC

**EXHIBIT B**

Edward Jason Dennis
Texas State Bar No. 24045776
jdennis@lynnllp.com
Samuel B. Hardy
Texas State Bar No. 24074360
shardy@lynnllp.com
Barira Munshi
Texas State Bar No. 24095924
bmunshi@lynnllp.com
Eliyahu Ness
California State Bar No. 311054
eness@lynnllp.com
**Lynn Pinker Hurst & Schwegmann, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

Special Litigation Counsel for Plaintiff

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>CHANNEL TECHNOLOGIES GROUP, LLC<br><br>*Debtor.* | CASE NO:    9:16-bk-11912-DS<br><br>Adv. Case No. 9:18-ap-01058-DS<br><br>Chapter 11 Proceeding |
| CORPORATE RECOVERY ASSOCIATES, LLC, as Liquidating Trustee appointed under the confirmed Chapter 11 plan of Channel Technologies Group, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>BLUE WOLF CAPITAL PARTNERS, LLC, et al.,<br><br>    *Defendant.* | **PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, LP, AND BLUE WOLF CAPITAL ADVISORS, LP'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF** |

1

2      Plaintiff Corporate Recovery Associates, LLC, as Trustee for the liquidating

3   Trust of Channel Technologies Group, LLC (the "Trustee"), provides the following

4   *Objections and Responses to Defendant Blue Wolf Capital Partners, LLC, Blue Wolf*

5   *Capital Fund II, LP, and Blue Wolf Capital Advisors LP's First Set of Requests for*

6   *Production of Documents*, pursuant to Federal Rules of Civil Procedure, Rule 34, and

7   Federal Rules of Bankruptcy Procedure, Rule 7034, as follows:

8                          **Preliminary Statement**

9      The Trustee has not completed its investigation relating to this action, has not

10  completed discovery in this action, and has not completed preparation for trial.  As

11  discovery proceeds, facts, information, evidence, and documents may be discovered

12  that are not set forth in these responses, but which may have been responsive to

13  Defendant's request.  The following objections and responses are based on the Trustee's

14  knowledge, information, and belief at this time and are complete as to the Trustee's

15  best knowledge at this time.   The Trustee assumes no obligation to voluntarily

16  supplement or amend these responses to reflect information, evidence, or documents

17  discovered following service of these responses.  These responses are given without

18  prejudice to subsequent revision or supplementation based upon any information,

19  evidence, and documentation that may be discovered.  The Trustee reserves the right

20  to refer to, conduct discovery with reference to, or to offer into evidence at the time of

21  trial, any and all facts, evidence, or documents developed during the course of discovery

22  and trial preparation notwithstanding the reference to facts, evidence, or documents

23  in these responses.

24      Moreover, these responses were prepared based on the Trustee's good-faith

25  interpretation and understanding of the individual requests and are subject to

26  correction for inadvertent errors or omissions, if any.  For instance, the Trustee has

27  answered these requests based on the numeration from the Trustee's "Second

28  Amended Complaint."

## **GENERAL OBJECTIONS**

1.      <u>Possession, Custody, and Control of Documents and Information</u>: Trustee objects to each Request, including each instruction and/or definition contained in the Requests, that seeks documents, communications, and/or information not in the possession, custody, or control of Trustee. Trustee further objects to each Request, including each instruction and/or definition contained in the Requests, that seeks documents, communications, and/or information that are (1) publicly available, (2) equally available to the Blue Wolf Entities and/or within the Blue Wolf Entities' possession, custody, or control, and/or (3) within the possession, custody, or control of third parties to whom the Blue Wolf Entities may direct discovery.

2.      <u>Consistency with Federal Rules, Local Rules and Court Orders</u>: Trustee will respond to the Requests in accordance with the Federal Rules, the Local Rules and any relevant Court order that has been entered in this action. To the extent the Requests, including the definitions and instructions therein, seek to increase or otherwise modify Trustee's obligations under the Federal Rules, the Federal Rules of Evidence, the Local Rules, any relevant Court order, or any applicable law, Trustee objects on the grounds that those Requests, definitions and/or instructions are overbroad or unduly burdensome.

3.      <u>Proportionality</u>: Per the Federal Rules, to obtain discovery of non-privileged documents or information, the discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Trustee objects to any Request to the extent it seeks information that is not relevant to the claims or defenses in this action and/or not proportional to the needs of this case.

4.      <u>Reasonable Diligence</u>: Whenever, in response to a Request, Trustee agrees to provide information and/or produce documents, that agreement does not represent that such information or documents exist, but only that such information or documents will be provided if they exist, can be located with reasonable diligence, are within the possession, custody or control of Trustee, are relevant and proportional to the needs of

3

the case, and are not otherwise protected from disclosure.

5.    <u>Electronically Stored Information (ESI)</u>: To the extent these Requests call for the production of electronically stored information ("ESI"), Trustee objects to the Request to the extent it requires production of ESI in any manner other than that required by the Rules for ESI.  *See* Fed. R. Civ. P. 34 Advisory Committee's Notes (2006 Amendment).

6.    <u>Incorporation of Objections</u>: All responses to the Requests are expressly subject to these General Objections, and such General Objections are incorporated into each individual Request response.

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

## OBJECTIONS AND RESPONSES TO FIRST REQUEST
## FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners ... forced BW Piezo, CTG, and CTG's subsidiary Electro Optical Industries to enter into a credit facility agreement with CIT Bank, N.A.," as alleged in paragraph 27 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners ... forced CTG's management to obtain financing for these assets," as alleged in paragraph 31 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners ... forced CTG and its subsidiary to join BW Piezo and CTG Advanced Materials as borrowers in the Amended and Restated Credit Agreement with One West Bank," as alleged in paragraph 32 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS that support your contention that "Blue Wolf Capital partners [sic] ... forced CTG to enter into separate loan and investment agreements ('Loan and Investment Agreements') with Fidus Investment Corporation; Fidus Mezzanine Capital LP.; Avante Mezzanine Partners SBIC, LP; Avante Mezzanine Partners II, Inc. (the 'Mezzanine Lenders')," as alleged in paragraph 33 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS that support your contention that "The paper segregation was fictional. Despite surreptitiously structuring CTG Advanced Materials as a sister company, Blue Wolf Capital Partners, acting through its executive management team and BW Piezo, forced CTG to use its assets to make payments to the Mezzanine Lenders and to CIT Bank, N.A. pursuant to the loan agreements," as alleged in paragraph 37 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that support your contention that "BW Piezo, CTG, and CTG Advanced Materials operated as alter egos of each other," as alleged in paragraph 39 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 7:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

All DOCUMENTS that support your contention that "Throughout 2014 and 2015, CTG struggled to balance its finances," as alleged in paragraph 40 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that support your contention that "Realizing that CTG was insolvent and facing mounting debt, Blue Wolf Capital Partners and Adam Blumenthal undertook a plan to a plan to liquidate CTG's assets in a manner to maximize their own recovery in the event of likely bankruptcy," as alleged in paragraph 41 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that support your contention that "Mr. Blumenthal falsely represented to Mr. Phillips that Blue Wolf was in the process of selling CTG Advanced

Materials and misrepresented that the proceeds would go to CTG," as alleged in paragraph 43 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS that support your contention that "prior to filing for bankruptcy, CTG was habitually cash-strapped and in desperate need of operating capital," as alleged in paragraph 44 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners made this request to delay CTG from running out of funds and being forced to file for bankruptcy prior to the sale of CTG Advanced Materials," as alleged in paragraph 44 of the COMPLAINT.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS that support your contention that "Blue Wolf was desperate to delay CTG's filing for bankruptcy protection for as long as possible to avoid the bankruptcy preference period and protect the validity of the transfers related to the CTG Advanced Materials sale," as alleged in paragraph 47 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners directed CTG to file for bankruptcy in late 2016 to leave the other creditors of CTG 'holding the bag' while Defendants enjoyed the millions in distributions from the sale of CTG Advanced Materials," as alleged in paragraph 48 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further

responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS that support your contention that "there was no corporate separateness between [CTG and CTG Advanced Materials] (or BW Piezo)," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners-utilizing its 'shell company' BW Piezo-routinely commingled funds and assets between the two to cover company liabilities," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS that supp01i your contention that "CTG funds were used to pay for the liabilities and debts of CTG Advanced Materials and BW Piezo, including payroll," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS that support your contention that "CTG Advanced Materials funds were used to pay for the liabilities and debts of CTG, including accounts receivable," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS that support your contention that "Accounting between the two companies was commingled," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that support your contention that "CTG funds were transferred to BW Piezo to pay out CTG Advanced Materials bonuses and legal expenses," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS that support your contention that "CTG's 'cash flow' position was forecasted to include the 'cash flow' position of CTG Advanced Materials," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to

Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS that support your contention that "The liabilities of all BW Piezo subsidiaries were paid through CTG's operating account, and BW Piezo did not have its own separate bank account.," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS that support your contention that "CTG expenses were accrued between CTG and BW Piezo," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 23:**

14

All DOCUMENTS that support your contention that "BW Piezo would pay for certain CTG related expenses directly and then seek reimbursement from CTG," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS that support your contention that "CTG incurred BW Piezo's legal, tax, and other service expenses," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS that support your contention that "CTG's corporate documents and communications with auditors represented CTG Advanced Materials as a 'division' of CTG," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS that support your contention that "CTG Advanced Materials was represented in government submissions and public press releases as being a subsidiary of CTG," as alleged in paragraph 54 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners, through its shell companies and executive management team, formed, organized, and operated BW Piezo, CTG, and CTG Advanced Materials to evade government regulation, legal obligations, and debt obligations, including national security related regulations and bankruptcy laws," as alleged in paragraph 55 of the COMPLAINT.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS that support your contention that "Blue Wolf Entities allowed the entities to operate with inadequate capital for the type of business they were conducting. siphoning CTG's assets and capital to repay Blue Wolf Capital Partners and make distributions to themselves," as alleged in paragraph 56 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS that suppo1i your contention that "Blue Wolf Capital Partners operated BW Piezo, CTG, and CTG Advanced Materials as part of a single business enterprise," as alleged in paragraph 57 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners' abuse of the corporate form is inequitable because Blue Wolf Capital Partners, Blue Wolf Capital Fund, Blue Wolf Capital Advisors, BW Piezo, and CTG Advanced Materials reaped the benefits of holding out and treating CTG and CTG Advanced Materials as the same entity but left CTG's creditors to pay for that arrangement," as alleged in paragraph 58 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners dominated and controlled CTG and CTG Advanced Materials," as alleged in paragraph 59 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners controlled CTG's management and board of directors and directed CTG in every major decision," as alleged in paragraph 60 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners forced CTG to enter into and secure oppressive loan agreements for the sole benefit of BW Piezo and itself, forced CTG to make payments on these loans that did not benefit CTG, forced CTG to pass on corporate opportunities, such as the acquisition of HC Materials' assets directly, and forced CTG to pay for CTG Advanced Materials' and BW Piezo's liabilities and debts-all without CTG receiving any reasonably equivalent value," as alleged in paragraph 61 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to

19

Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS that support your contention that "These actions were not in the best interest of CTG, limited CTG's growth, and depleted the assets available to satisfy CTG's debts," as alleged in paragraph 61 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 1.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 36:**

20

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 2.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 3.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 4.

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 5.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 6.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced

to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 7.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 8.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 9.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 10.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 45:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS

All DOCUMENTS sufficient to suppo1i any denial of concurrently propounded Request for Admission No. 11.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 12.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 13.

25

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 14.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 15.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS

Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 16.

**RESPONSE:**

Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 17.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 17, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 18.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 18, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 19.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 19, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 54:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 20.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 20, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 21.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 21 and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 56:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 22.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 22, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 57:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 23.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 23, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 24.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 24 and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 25.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 25, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 60:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 26.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 26, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 61:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 27.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 27, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 62:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 28.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 28, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 29.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee is examining its books and records in response to Request for Admission No. 29, and will supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No, 30.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No, 31.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 32.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 67:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 33.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 68:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 34.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 69:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 35.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee

further responds that this Request calls for the production of ESI.  Trustee has produced

to Defendants all electronically stored information in its possession, custody, and

control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 70:**

All DOCUMENTS sufficient to support any denial of concurrently propounded

Request for Admission No. 36.

**RESPONSE:**

Trustee objects to this Request on the basis that it cannot confirm or deny

Request for Admission No. 36 at this time.

**REQUEST FOR PRODUCTION NO. 71:**

All DOCUMENTS sufficient to support any denial of concurrently propounded

Request for Admission No. 37.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds

that it has or will produce tangible documents responsive to this Request.  Trustee

further responds that this Request calls for the production of ESI.  Trustee has produced

to Defendants all electronically stored information in its possession, custody, and

control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 72:**

All DOCUMENTS sufficient to support any denial of concurrently propounded

Request for Admission No, 38.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in

its Objections and Responses to Defendants' First Set of Requests for Admissions,

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS

Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 73:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 39.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 74:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 40.

**RESPONSE:**

Trustee objects to this Request to the extent it has not admitted or denied Request for Admission No. 39. Subject to and without waiver of the foregoing objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 41.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 76:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 42.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its

possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 77:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 43.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 78:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 44.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.**REQUEST FOR PRODUCTION NO. 79:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 45.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 80:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 46.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 81:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 47.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced

to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 82:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 48.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 83:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 49.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 50.

**RESPONSE:**

39

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.   Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 85:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 51.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.   Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 86:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 52.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.   Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 87:**

40

1  All DOCUMENTS sufficient to support any denial of concurrently propounded
2
3  Request for Admission No. 53.

**RESPONSE:**

4
5  Subject to and without waiver of its general objections herein, Trustee responds
6  that it has or will produce tangible documents responsive to this Request.  Trustee
7  further responds that this Request calls for the production of ESI.  Trustee has produced
8
9  to Defendants all electronically stored information in its possession, custody, and
10  control, and the Defendants may search such ESI via their direct access.

11  **REQUEST FOR PRODUCTION NO. 88:**

12  All DOCUMENTS sufficient to support any denial of concurrently propounded
13  Request for Admission No. 54.

14  **RESPONSE:**

15
16  Subject to and without waiver of its general objections herein, Trustee responds
17  that it has or will produce tangible documents responsive to this Request.  Trustee
18  further responds that this Request calls for the production of ESI.  Trustee has produced
19  to Defendants all electronically stored information in its possession, custody, and
20  control, and the Defendants may search such ESI via their direct access.

21
22  **REQUEST FOR PRODUCTION NO. 89:**

23  All DOCUMENTS sufficient to support any denial of concurrently propounded
24  Request for Admission No. 55.

25  **RESPONSE:**

26  Subject to and without waiver of its general objections herein, Trustee responds
27  that it has or will produce tangible documents responsive to this Request.  Trustee
28  further responds that this Request calls for the production of ESI.  Trustee has produced

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS

to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 90:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 56.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 91:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 57.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 92:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 58.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 93:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 59.

**RESPONSE:**

Trustee objects to this Request to the extent it has not denied Request for Admission No. 59.

**REQUEST FOR PRODUCTION NO. 94:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 60.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 61.

**RESPONSE:**

Trustee objects to this Request to the extent it has not admitted or denied Request for Admission No. 61.

**REQUEST FOR PRODUCTION NO. 96:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 62.

**RESPONSE:**

Trustee objects to this Request to the extent it has not admitted or denied Request for Admission No. 62.

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 63.

**RESPONSE:**

Trustee objects to this Request to the extent it has not admitted or denied Request for Admission No. 63.

**REQUEST FOR PRODUCTION NO. 98:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 64.

**RESPONSE:**

Trustee objects to this Request to the extent it has not admitted or denied Request for Admission No. 64.

44

**REQUEST FOR PRODUCTION NO. 99:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 65.

**RESPONSE:**

Trustee objects to this Request to the extent it has not admitted or denied Request for Admission No. 65.

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 66.

**RESPONSE:**

Trustee objects to this Request to the extent it has not admitted or denied Request for Admission No. 66.

**REQUEST FOR PRODUCTION NO. 101:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 67.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 102:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 68.

**RESPONSE:**

Subject to and without waiver of its general objections herein and objections in its Objections and Responses to Defendants' First Set of Requests for Admissions, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 103:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 69.

**RESPONSE:**

Subject to and without waiver of its general objections herein, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 104:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 70.

**RESPONSE:**

Trustee objects to this Request to the extent it has not denied Request for Admission No. 70.

**REQUEST FOR PRODUCTION NO. 105:**

All DOCUMENTS sufficient to support any denial of concurrently propounded Request for Admission No. 71.

**RESPONSE:**

Trustee objects to this Request as Defendants have not concurrently propounded a Request for Admission No. 71.

**REQUEST FOR PRODUCTION NO. 106:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $1,054,753.85 transferred to Grant Thornton, LLP, as alleged in paragraph 161 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 107:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $789,579.14 transferred to Holland & Knight, as alleged in paragraph 162 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 108:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $1,959,987.31 transferred to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P, as alleged in paragraph 163 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 109:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $1,957,300.44 transferred to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc., as alleged in paragraph 164 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further

48

responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 110:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $33,248,711.36 transferred to CIT BANK, N.A., as alleged in paragraph 165 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 111:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $7,576,027.49 transferred to Gladstone Investment Corporation, as alleged in paragraph 166 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 112:**

49

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $50,000.00 transferred to Raymond James, as alleged in paragraph 167 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 113:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $1,984,330.21 transferred to Blue Wolf Capital Partners, as alleged in paragraph 168 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 114:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $36,995.00 transferred to Duff & Phelps, as alleged in paragraph 169 of the COMPLAINT.

**RESPONSE:**

50

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 115:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $165,365.86 transferred to McDermott Will & Emery, LLP, as alleged in paragraph 170 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 116:**

All DOCUMENTS that support your contention that CTG did not receive reasonably equivalent value for the $49,022.75 transferred to Dorsey & Whitney, LLP, as alleged in paragraph 171 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS

Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 117:**

All DOCUMENTS that support your contention that "CTG transferred the above-listed property in order to benefit insiders of CTG, including BW Piezo and entities owned by Blue Wolf Capital Partners," as alleged in paragraph 172 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 118:**

All DOCUMENTS that support your contention that "CTG did not receive any reasonably equivalent value for the above-listed transfers," as alleged in paragraph 175 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 119:**

All DOCUMENTS that support your contention that "Blue Wolf Capital Partners, acting through its shell companies, principals, including Adam Blumenthal, Charles Miller, Haranjeet Narulla, and Chris Ranson, and BW Piezo, wrongfully exercised dominion or control over the property and distributed to itself the proceeds from selling CTG's assets," as alleged in paragraph 245 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 120:**

All DOCUMENTS that support your contention that "BW Piezo breached this duty by engaging in the following conduct, which includes but is not limited to:

• Self-dealing, including but not limited to,

    o Pursuing their self-interests at the expense of CTG and their obligations as fiduciaries;

    o Misdirecting CTG funds to pay for undue benefits and distributions for themselves; and

    o Using the advantage of their position to misappropriate CTG's assets and proceeds from the sale of the same to themselves; and

• Engaging in transactions on behalf of themselves that were not fair and 2g equitable to CTG and violated their fiduciary duties to CTG.

53

· Diverting funds that would have been retained by CTG, thereby rendering CTG insolvent and unable to pay its debts to its creditors.

· Making improper corporate distribution in violation of California Corporate Code sections 17704.05-.06," as alleged in paragraph 249 of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 121:**

All DOCUMENTS relating to the alleged payments made by CTG to CIT BANK, N.A., as alleged in Schedule B of the COMPLAINT.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 122:**

All DOCUMENTS upon which YOU relied in responding to Defendants' First Set of Interrogatories to YOU, served concurrently herewith.

**RESPONSE:**

Subject to and without waiver of any objections asserted in response to Defendants' First Set of Interrogatories, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 123:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Gladstone Investment Corporation.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case. Subject to and without waiver of the foregoing objections, the Trustee responds that no responsive documents exist.

**REQUEST FOR PRODUCTION NO. 124:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Fidus Investment Corporation.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 125:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Fidus Mezzanine Capital II, L.P.

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 126:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Avante Mezzanine Partners SBIC, LP.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 127:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Avante Mezzanine Partners II, Inc.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 128:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Grant Thornton, LLP.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 129:**

All DOCUMENTS relating to any settlement agreements executed between YOU and Electro Optical Industries, Inc.

**RESPONSE:**

Trustee objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 130:**

All DOCUMENTS supporting Blue Wolf Capital Partners, LLC's alleged liability for all the monetary transfers YOU seek to avoid.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request. Trustee further responds that this Request calls for the production of ESI. Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 131:**

All DOCUMENTS supporting Blue Wolf Capital Advisors, L.P.'s alleged liability for all the monetary transfers YOU seek to avoid.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

**REQUEST FOR PRODUCTION NO. 132:**

All DOCUMENTS supporting Blue Wolf Capital Fund II, L.P. 's alleged liability for all the monetary transfers YOU seek to avoid.

**RESPONSE:**

Subject to and without waiver of its general objections, Trustee responds that it has or will produce tangible documents responsive to this Request.  Trustee further responds that this Request calls for the production of ESI.  Trustee has produced to Defendants all electronically stored information in its possession, custody, and control, and the Defendants may search such ESI via their direct access.

Respectfully submitted,

*/s/ Edward Jason Dennis*
Edward Jason Dennis
Texas State Bar No. 24045776
jdennis@lynnllp.com
Samuel B. Hardy
Texas State Bar No. 24074360
shardy@lynnllp.com
Barira Munshi
Texas State Bar No. 24095924
bmunshi@lynnllp.com
Eliyahu Ness
California State Bar No. 311054
eness@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

Special Litigation Counsel for
Corporate Recovery Associates, LLC,
Trustee for the Liquidating Trust of
Debtor Channel Technologies Group, LLC

## PROOF OF SERVICE

**STATE OF TEXAS, COUNTY OF DALLAS**

      I am employed in the County of Dallas, State of Texas.  I am over the age of 18 and not a party to the within action; my business address is 2100 Ross Avenue, Suite 2700, Dallas, Texas 75201.

On January 28, 2021, I caused the document described below as **PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** to be served on all interested parties in this action via email:

## SEE ATTACHED SERVICE LIST

**[]**    **(BY MAIL)** I caused such envelope(s) fully prepaid to be placed in the United States Mail at Dallas, Texas.  I am "readily familiar" with the firm's practice of collection and processing correspondence or mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Dallas, Texas in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**[]**    **(BY OVERNIGHT-FEDERAL EXPRESS)** I caused said document(s) to be picked up by U.S. Federal Express Services for overnight delivery to the offices of the addressees listed on the Service List.

**[]**    **(BY PERSONAL SERVICE)** I caused to be delivered such document by hand to the above-identified recipient through the use of First Legal Attorney Service whose address is:  1517 West Beverly Boulevard, Los Angeles, CA  90026, and whose telephone number is (213) 250-1111.

**[]**    **(BY FACSIMILE)** I caused said document(s) to be telephonically transmitted to each addressee's telecopier (Fax) number as noted.

**[XX]**  **(BY ELECTRONIC MAIL)** I caused said document(s) to be served via electronic transmission to each addressee's electronic mail address(es) as noted on the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 28, 2021, at Dallas, Texas.

                                  */s/ Barira Munshi*
                                Barira Munshi

1

2

3

4

**SERVICE LIST**
**United States Bankruptcy Court**
**Central District of California, Northern Division**
**Case No. 9:16-BK-11912-DS**
**dv. No. 9:18-AP-01058-DS**

5

6

7

8

9

10

11

12

13

Howard J. Steinberg
steinbergh@gtlaw.com
Greenberg Traurig, LLP
1840 Century Park East, Suite
1900
Los Angeles, California 90067-2121

**Attorneys for Defendants**
**Blue Wolf Capital Partners,**
**LLC,**
**Blue Wolf Capital Fund II, L.P.,**
**Blue Wolf Capital Advisors**
**L.P., and BW Piezo Holdings,**
**LLC**

Jonathan Boustani
jboustani@btlaw.com
Jonathan Sundheimer
Jonathan.sundheimer@btlaw.com
Barnes & Thornburg LLP
2029 Century Park East, Ste. 300
Los Angeles, CA 90067

**Attorney CTG Advanced**
**Materials, LLC and CTS**
**Corporation**

14

15

16

17

18

19

20

Cheryl S. Chang
Chang@Blankrome.com
Craig N. Haring
charing@blankrome.com
Blank Rome LLP
2029 Century Park East, Sixth
Floor
Los Angeles, California 90067

**Attorneys for Gladstone**
**Investment Corporation**

21

22

23

24

25

26

27

28

61

**EXHIBIT C**

1  Edward Jason Dennis
2  Texas State Bar No. 24045776
   jdennis@lynnllp.com
3  Samuel B. Hardy
4  Texas State Bar No. 24074360
   shardy@lynnllp.com
5  Barira Munshi
   Texas State Bar No. 24095924
6  bmunshi@lynnllp.com
7  Eliyahu Ness
   California State Bar No. 311054
8  eness@lynnllp.com
   **LYNN HURST & SCHWEGMANN, LLP**
9  2100 Ross Avenue, Suite 2700
   Dallas, Texas 75201
10 (214) 981-3800 - Telephone
11 (214) 981-3839 - Facsimile

12 Special Litigation Counsel for Plaintiff

13

14               UNITED STATES BANKRUPTCY COURT

15       CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

16

17 In re:                                  CASE NO:    9:16-bk-11912-DS

18 CHANNEL TECHNOLOGIES              Adv. Case No. 9:18-ap-01058-DS
   GROUP, LLC
19        *Debtor.*                        Chapter 11 Proceeding

20 CORPORATE RECOVERY                **PLAINTIFF'S OBJECTIONS AND**
   ASSOCIATES, LLC, as Liquidating   **RESPONSES TO BLUE WOLF**
21 Trustee appointed under the confirmed  **CAPITAL PARTNERS, LLC,**
   Chapter 11 plan of Channel        **BLUE WOLF CAPITAL FUND II,**
22 Technologies Group, LLC,          **LP, AND BLUE WOLF CAPITAL**
                                     **ADVISORS, LP'S FIRST SET OF**
23        *Plaintiff,*               **REQUESTS FOR ADMISSION TO**
                                     **PLAINTIFF**
24 v.

25 BLUE WOLF CAPITAL PARTNERS,
   LLC, et al.,
26        *Defendant.*

27

28

                                    1

Plaintiff Corporate Recovery Associates, LLC, as Trustee for the liquidating Trust of Channel Technologies Group, LLC (the "Trustee"), provides the following *Objections and Responses to Defendant Blue Wolf Capital Partners, LLC, Blue Wolf Capital Fund II, LP, and Blue Wolf Capital Advisors LP's First Set of Requests for Admission*, pursuant to Federal Rules of Civil Procedure, Rule 36, and Federal Rules of Bankruptcy Procedure, Rule 7036, as follows:

### **Preliminary Statement**

The Trustee has not completed its investigation relating to this action, has not completed discovery in this action, and has not completed preparation for trial.  As discovery proceeds, facts, information, evidence, and documents may be discovered that are not set forth in these responses, but which may have been responsive to Defendant's request.  The following objections and responses are based on the Trustee's knowledge, information, and belief at this time and are complete as to the Trustee's best knowledge at this time.  The Trustee assumes no obligation to voluntarily supplement or amend these responses to reflect information, evidence, or documents discovered following service of these responses.  These responses are given without prejudice to subsequent revision or supplementation based upon any information, evidence, and documentation that may be discovered.  The Trustee reserves the right to refer to, conduct discovery with reference to, or to offer into evidence at the time of trial, any and all facts, evidence, or documents developed during the course of discovery and trial preparation notwithstanding the reference to facts, evidence, or documents in these responses.

Moreover, these responses were prepared based on the Trustee's good-faith interpretation and understanding of the individual requests and are subject to correction for inadvertent errors or omissions, if any.  For instance, the Trustee has answered these requests based on the numeration from the Trustee's Second Amended Complaint.

## OBJECTIONS AND RESPONSES TO FIRST REQUEST
## FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that CTG was not insolvent prior to October 2013.

**RESPONSE:**

The Trustee objects to this Request as the term "insolvent" is not defined rendering the request vague and ambiguous.  The request is also overbroad, beyond the scope of issues in dispute in this lawsuit, and unduly burdensome in that it makes a request as to any time prior to "October 2013."  The admission also calls for a legal conclusion and is the subject of expert testimony.  Subject to and without waiver of the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 2:**

Admit that at no point in 2013 was CTG insolvent.

**RESPONSE:**

The Trustee objects to this Request as the term "insolvent" is not defined rendering the request vague and ambiguous.  The admission also calls for a legal conclusion and is the subject of expert testimony.  Subject to and without waiver of the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that at no point in 2014 was CTG insolvent.

**RESPONSE:**

The Trustee objects to this Request as the term "insolvent" is not defined rendering the request vague and ambiguous.  The admission also calls for a legal

conclusion and is the subject of expert testimony.  Subject to and without waiver of the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that at no point in 2015 was CTG insolvent.

**RESPONSE:**

The Trustee objects to this Request as the term "insolvent" is not defined rendering the request vague and ambiguous.  The admission also calls for a legal conclusion and is the subject of expert testimony.  Subject to and without waiver of the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 5:**

Admit that CTG did borrow funds from the CIT BANK, N.A. line of credit.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that CTG borrowed $1,600,000.00 on 1/6/15 from CIT BANK, N.A.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that CTG borrowed $1,750,000.00 on 10/1/15 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank.  Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 8:**

Admit that CTG borrowed $1,300,000.00 on 10/9/15 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank.  Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 9:**

Admit that CTG borrowed $450,000.00 on 10/28/15 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank.  Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 10:**

Admit that CTG borrowed $200,000.00 on 12/23/15 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank.  Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 11:**

Admit that CTG borrowed $1,200,000.00 on 12/30/15 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank.  Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 12:**

Admit that CTG borrowed $950,000.00 on 1/5/16 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank. Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 13:**

Admit that CTG borrowed $1,000,000.00 on 1/27/16 from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank. Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 14:**

Admit that on or about the time that the CIT BANK, N.A. loan referenced in paragraph 32 of the COMPLAINT was made, that bank line owing by CTG to Gladstone Investment Corp. in the amount of $16,759,882.64 was paid off using loan proceeds from CIT BANK, N.A.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 15:**

Admit that during the time the CIT BANK, N.A. line was open, CTG made direct borrowings under that line of $34,060,440.90.

**RESPONSE:**

Denied as stated.

**REQUEST FOR ADMISSION NO. 16:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR ADMISSION

Admit CTG did not make a payment of $89,000 on 1/28/15 to CIT BANK, N.A.

**RESPONSE:**

Admitted as to a payment made by CTG in the amount of $89,000 to OneWest Bank. Denied as to the remainder because this payment was made on 9/29/2014.

**REQUEST FOR ADMISSION NO. 17:**

Admit CTG did not make a payment of $11,853.34 on 10/22/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 18:**

Admit CTG did not make a payment of $1,580.44 on 10/22/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 19:**

Admit CTG did not make a payment of $9,815.49 on 12/9/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 20:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR ADMISSION

Admit CTG did not make a payment of $ 11,111.87 on 12/9/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 21:**

Admit CTG did not make a payment of $2,190.97 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 22:**

Admit CTG did not make a payment of$842.36 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 23:**

Admit CTG did not make a payment of$59,031.l 7 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 24:**

Admit CTG did not make a payment of $9,616.43 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 25:**

Admit CTG did not make a payment of $44,437.50 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 26:**

Admit CTG did not make a payment of $12,679.17 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 27:**

Admit CTG did not make a payment of $825,833.92 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 28:**

Admit CTG did not make a payment of $ 957.18 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 29:**

Admit CTG did not make a payment of $1,690.55 on 12/31/15 to CIT BANK, N.A.

**RESPONSE:**

Trustee admits that this payment does not appear on bank statements; however Trust is examining this payment in its books and records and will supplement its response to this Request.

**REQUEST FOR ADMISSION NO. 30:**

Admit that CTG did not pay any interest on the monies that CTG borrowed from CIT BANK, N.A.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank.  The Trustee further objects that the Request is overbroad, beyond the scope of issues in dispute in this lawsuit, and unduly burdensome in that it is not limited in scope or time.  Trustee further objects to this Request to the extent it seeks information that is neither relevant, reasonably

calculated to lead to the discovery of admissible evidence, nor proportional to the needs

of the case.  Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 31:**

Admit that all interest on the monies that CTG borrowed from CIT BANK, N.A.

were paid by Blue Wolf Piezo Holdings, LLC and/or ADVANCED MATERIALS.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the

lending agreement with One West Bank.  The Trustee further objects that the Request

is overbroad, beyond the scope of issues in dispute in this lawsuit, and unduly

burdensome in that it is not limited in scope or time.  Trustee further objects to this

Request to the extent it seeks information that is neither relevant, reasonably

calculated to lead to the discovery of admissible evidence, nor proportional to the needs

of the case.  Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 32:**

Admit that as of the close of the sale of ADVANCED MATERIALS, the CIT

BANK, N.A. line was repaid in full using monies directly provided by CTS Corporation.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the

lending agreement with One West Bank.  Trustee further objects to this Request to the

extent it seeks information that is neither relevant, reasonably calculated to lead to the

discovery of admissible evidence, nor proportional to the needs of the case.  Subject to

and without waiver of the foregoing objections, admitted.

**REQUEST FOR ADMISSION NO. 33:**

Admit that as of the close of the ADVANCED MATERIALS sale, all loan obligating owing by CTG were paid off in full using proceeds from the sale of ADVANCED MATERIALS.

**RESPONSE:**

The Trustee objects to this Request as CTG was not the sole borrower on the lending agreement with One West Bank.  Trustee further objects to this Request to the extent it seeks information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case. Trustee further objects that the Request is the subject of expert testimony. Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 34:**

Admit that from the time of the formation of ADVANCED MATERIALS through the time of the sale of ADVANCED MATERIALS, over $12,000,000.00 of profits from ADVANCED MATERIALS were used to pay off CTG obligations.

**RESPONSE:**

The Trustee objects to this Request as the terms "profits" and "obligations" are not defined rendering the request vague and ambiguous.  The request is also overbroad, beyond the scope of issues in dispute in this lawsuit, and unduly burdensome in that it makes a request as to any time "from the time of the formation of ADVANCED MATERIALS through the time of the sale of ADVANCED MATERIALS."  The admission also is the subject of expert testimony as to "profits" and "obligations" of CTG. Subject to and without waiver of the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 35:**

Admit that CTG used $376,000 of proceeds from the sale of ADVANCED MATERIALS to make its rent payments.

**RESPONSE:**

Denied as stated upon information and belief.  Notwithstanding this denial, Trustee has requested closing documents to confirm if rent payments were made from proceeds of the sale.

**REQUEST FOR ADMISSION NO. 36:**

Admit that a capital contribution of $1,000,000.00 was made to CTG on 3/11/16.

**RESPONSE:**

The Trustee does not have sufficient information to admit or deny at this time. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 37:**

Admit that CTG and ADVANCED MATERIALS filed consolidated tax returns.

**RESPONSE:**

Denied as stated.

**REQUEST FOR ADMISSION NO. 38:**

Admit that Grant Thornton LLP provided accounting and financial services to Blue Wolf Piezo Holdings, LLC, CTG, and ADVANCED MATERIALS.

**RESPONSE:**

Trustee admits that Grant Thornton provided services to Blue Wolf Piezo and Advanced Materials.  Plaintiff believes that none of these services provided any benefit to CTG, which did not have to file a tax return. CTG, however, has requested a copy of Grant Thornton's files related to this work and reserves the right to review that work

1    and confirm its belief.  Because discovery is ongoing, Trustee reserves the right to

2    amend and/or supplement this response.

3
4    **REQUEST FOR ADMISSION NO. 39:**

5        Admit that Holland & Knight LLP provided legal services to CTG.

6    **RESPONSE:**

7        Trustee admits that Holland & Knight LLP provided some legal services to CTG.

8    Trustee denies this Request to the extent the Request relies upon bills to CTG to identify

9    which legal services were provided to CTG.  Trustee believes that the majority of the

10   services billed to CTG were for services provided to Blue Wolf Piezo or Advanced

11   Materials. Because discovery is ongoing, Trustee reserves the right to amend and/or

12   supplement this response.

13
14   **REQUEST FOR ADMISSION NO. 40:**

15       Admit that $6,901,369.25 of payments of CTG's loan from Gladstone Investment

16   Corp. were made before ADVANCED MATERIALS was acquired.

17
18   **RESPONSE:**

19       Trustee objects to this Request as vague and ambiguous as to the time period this

20   Request covers. Subject to and without waiver of the foregoing objection, Trustee invites

21   the Blue Wolf Entities to discuss the parameters of this Request and may amend or

22   supplement its response accordingly.

23
24   **REQUEST FOR ADMISSION NO. 41:**

25       Admit that at the time payments were made to Gladstone Investment Corp. in

26   2012, CTG was not insolvent.

27   **RESPONSE:**

28

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR ADMISSION

The Trustee objects to this Request as the term "insolvent" is not defined rendering the request vague and ambiguous.  The admission also calls for a legal conclusion and is the subject of expert testimony.  Subject to and without waiver of the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 42:**

Admit that McDermott & Emery LLP provided legal services to CTG.

**RESPONSE:**

Trustee denies this Request to the extent the Request relies upon bills to CTG to identify which legal services were provided to CTG.  Trustee believes that the majority of the services billed to CTG were for services provided to Blue Wolf Piezo or Advanced Materials.  Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 43:**

Admit that Dorsey & Whitney LLP provided legal services to CTG.

**RESPONSE:**

Trustee denies this Request to the extent the Request relies upon bills to CTG to identify which legal services were provided to CTG.  Trustee believes that the majority of the services billed to CTG were for services provided to Blue Wolf Piezo or Advanced Materials. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 44:**

Admit that none of "CTG's cash" was used to pay for the acquisition of ADVANCED MATERIALS, as alleged in paragraph 35 of the COMPLAINT.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR ADMISSION

Denied as stated.

**REQUEST FOR ADMISSION NO. 45:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included duplicate transfers totaling $5,834,527.96.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 46:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $105,877.54 on 8/28/14.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 47:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $111,684.22 on 10/31/14.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 48:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $100,876.07 on 11/25/14.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 49:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $700,200.39 on 12/31/14.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 50:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $700,000.00 on 12/31/14.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 51:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $97,911.92 on 4/30/15.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 52:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $94,859.23 on 5/28/15.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 53:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $650,371.04 on 6/30/15.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 54:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $99,370.29 on 7/30/15.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 55:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $545,672.82 on 9/30/15.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 56:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $94,295.90 on 10/30/15.

**RESPONSE:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR ADMISSION

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 57:**

Admit that in computing the transfers listed in Schedule B of the COMPLAINT, YOU included a duplicate transfer of $97,322.88 on 11/30/15.

**RESPONSE:**

Denied as stated. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 58:**

Admit that ADVANCED MATERIALS' business office was located in Bowling Brook, Illinois.

**RESPONSE:**

Trustee objects that this Request is vague and ambiguous as to the term "business office." Trustee further objects to this Request as vague and ambiguous as to the location "Bowling Brook, Illinois." Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 59:**

Admit that CTG's business office was located in Santa Barbara, California.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the products sold by ADVANCED MATERIALS were different than the products sold by CTG.

**RESPONSE:**

Trustee objects to this Request as overbroad, vague, beyond the scope of issues in dispute in this lawsuit, and irrelevant.  Subject to and without waiver of the foregoing objections, the Trustee is without sufficient information to admit or deny that the products sold by CTG were different than products sold by Advanced Materials to the extent it requires Trustee to understand each and every product sold by CTG and Advanced Materials.

**REQUEST FOR ADMISSION NO. 61:**

Admit that invoices sent to ADVANCED MATERIALS' customers referenced ADVANCED MATERIALS and did not reference CTG.

**RESPONSE:**

Plaintiff is without sufficient information to respond at this time to answer this request because it does not have access to a list of all of the customers of CTG-Advanced Materials. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 62:**

Admit that invoices sent to CTG's customers referenced CTG and did not reference ADVANCED MATERIALS.

**RESPONSE:**

Plaintiff is without sufficient information to respond at this time to answer this request because it does not have access to a list of all of the customers of CTG-Advanced Materials. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 63:**

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR ADMISSION

Admit that no customer of ADVANCED MATERIALS has claimed that it understood it was conducting business with CTG.

**RESPONSE:**

Plaintiff is without sufficient information to respond at this time to answer this request because it does not have access to a list of all of the customers of CTG-Advanced Materials. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 64:**

Admit that no customer of CTG has claimed that it understood it was conducting business with ADVANCED MATERIALS.

**RESPONSE:**

Trustee objects to this Request as the term "customer" is not defined rendering the request vague and ambiguous.  The Request is also overbroad, vague, beyond the scope of issues in dispute in this lawsuit, and unduly burdensome in that it makes a request as to any or "no" "customer."  Subject to and without waiver of the foregoing objections, the Trustee is without sufficient information to admit or deny facts not within its knowledge.

**REQUEST FOR ADMISSION NO. 65:**

Admit that CTG and ADVANCED MATERIALS had separate phone numbers and phone systems.

**RESPONSE:**

The Trustee is without sufficient information to admit or deny.

**REQUEST FOR ADMISSION NO. 66:**

Admit that CTG and ADVANCED MATERIALS had separate customers.

21

**RESPONSE:**

Plaintiff is without sufficient information to respond at this time to answer this request because it does not have access to a list of all of the customers of CTG-Advanced Materials. Because discovery is ongoing, Trustee reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 67:**

Admit that CTG and ADVANCED MATERIALS had separate bank accounts.

**RESPONSE:**

Admitted to the extent that each entity had some accounts in its own name, but denied that the entities maintained separate accounts because money was transferred back and forth between the various accounts of the entities.

**REQUEST FOR ADMISSION NO. 68:**

Admit that CTG and ADVANCED MATERIALS had separate books and records.

**RESPONSE:**

Trustee objects that this Request is vague and ambiguous as to the term "books and record." Subject to and without waiver of the foregoing objections, denied as stated.

**REQUEST FOR ADMISSION NO. 69:**

Admit that CTG and ADVANCED MATERIALS had separate presidents.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 70:**

Admit that CTG and ADVANCED MATERIALS had separate controllers.

**RESPONSE:**

Admitted as to separate controllers that both reported to the CFO of CTG.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ *Edward Jason Dennis*
Edward Jason Dennis
Texas State Bar No. 24045776
jdennis@lynnllp.com
Samuel B. Hardy
Texas State Bar No. 24074360
shardy@lynnllp.com
Barira Munshi
Texas State Bar No. 24095924
bmunshi@lynnllp.com
Eliyahu Ness
California State Bar No. 311054
eness@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

Special Litigation Counsel for
Corporate Recovery Associates, LLC,
Trustee for the Liquidating Trust of
Debtor Channel Technologies Group, LLC

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR ADMISSION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

**STATE OF TEXAS, COUNTY OF DALLAS**

    I am employed in the County of Dallas, State of Texas.  I am over the age of 18 and not a party to the within action; my business address is 2100 Ross Avenue, Suite 2700, Dallas, Texas 75201.

On January 28, 2021, I caused the document described below as **PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST SET OF REQUEST FOR ADMISSIONS** to be served on all interested parties in this action via email:

## SEE ATTACHED SERVICE LIST

**[]**    **(BY MAIL)** I caused such envelope(s) fully prepaid to be placed in the United States Mail at Dallas, Texas.  I am "readily familiar" with the firm's practice of collection and processing correspondence or mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Dallas, Texas in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**[]**    **(BY OVERNIGHT-FEDERAL EXPRESS)** I caused said document(s) to be picked up by U.S. Federal Express Services for overnight delivery to the offices of the addressees listed on the Service List.

**[]**    **(BY PERSONAL SERVICE)** I caused to be delivered such document by hand to the above-identified recipient through the use of First Legal Attorney Service whose address is:  1517 West Beverly Boulevard, Los Angeles, CA  90026, and whose telephone number is (213) 250-1111.

**[]**    **(BY FACSIMILE)** I caused said document(s) to be telephonically transmitted to each addressee's telecopier (Fax) number as noted.

**[XX]**  **(BY ELECTRONIC MAIL)** I caused said document(s) to be served via electronic transmission to each addressee's electronic mail address(es) as noted on the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 28, 2021, at Dallas, Texas.

                             */s/ Barira Munshi*
                             Barira Munshi

PLAINTIFF'S OBJECTIONS AND RESPONSES TO BLUE WOLF ENTITIES' FIRST REQUEST FOR ADMISSION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**
**United States Bankruptcy Court**
**Central District of California, Northern Division**
**Case No. 9:16-BK-11912-DS**
**Adv. No. 9:18-AP-01058-DS**

Howard J. Steinberg
steinbergh@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite
1900
Los Angeles, California 90067-2121

**Attorneys for Defendants**
**Blue Wolf Capital Partners,**
**LLC,**
**Blue Wolf Capital Fund II, L.P.,**
**Blue Wolf Capital Advisors**
**L.P., and BW Piezo Holdings,**
**LLC**

Cheryl S. Chang
Chang@Blankrome.com
Craig N. Haring
charing@blankrome.com
BLANK ROME LLP
2029 Century Park East, Sixth
Floor
Los Angeles, California 90067

**Attorneys for Gladstone**
**Investment Corporation**

Jonathan Boustani
jboustani@btlaw.com
Jonathan Sundheimer
Jonathan.sundheimer@btlaw.com
Barnes & Thornburg LLP
2029 Century Park East, Ste. 300
Los Angeles, CA 90067

**Attorney CTG Advanced**
**Materials, LLC and CTS**
**Corporation**

**EXHIBIT D**

Edward Jason Dennis
Texas State Bar No. 24045776
jdennis@lynnllp.com
Samuel B. Hardy
Texas State Bar No. 24074360
shardy@lynnllp.com
Barira Munshi
Texas State Bar No. 24095924
bmunshi@lynnllp.com
Eliyahu Ness
California State Bar No. 311054
eness@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

Special Litigation Counsel for Plaintiff

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>CHANNEL TECHNOLOGIES GROUP, LLC<br><br>_Debtor._<br><br>CORPORATE RECOVERY ASSOCIATES, LLC, as Liquidating Trustee appointed under the confirmed Chapter 11 plan of Channel Technologies Group, LLC,<br><br>    _Plaintiff,_<br><br>v.<br><br>BLUE WOLF CAPITAL PARTNERS, LLC, et al.,<br><br>    _Defendant._ | CASE NO:    9:16-bk-11912-DS<br><br>Adv. Case No. 9:18-ap-01058-DS<br><br>Chapter 11 Proceeding<br><br><br>**PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANTS BLUE WOLF CAPITAL PARTNERS, LLC, BLUE WOLF CAPITAL FUND II, LP, AND BLUE WOLF CAPITAL ADVISORS LP'S FIRST SET OF INTERROGATORIES TO PLAINTIFF** |

1

1

2    Plaintiff Corporate Recovery Associates, LLC, as Trustee for the liquidating

3    Trust of Channel Technologies Group, LLC (the "Trustee"), provides the following *First*

4    *Amended Objections and Answers to Defendant Blue Wolf Capital Partners, LLC, Blue*

5    *Wolf Capital Fund II, LP, and Blue Wolf Capital Advisors LP's First Set of*

6    *Interrogatories to Plaintiff*, pursuant to Federal Rules of Civil Procedure, Rule 33, and

7    Federal Rules of Bankruptcy Procedure, Rule 7033, as follows:

8    <u>**Preliminary Statement**</u>

9    The Trustee has not completed its investigation relating to this action, has not

10    completed discovery in this action, and has not completed preparation for trial.  As

11    discovery proceeds, facts, information, evidence, and documents may be discovered

12    that are not set forth in these responses, but which may have been responsive to

13    Defendant's request.  The following objections and responses are based on the Trustee's

14    knowledge, information, and belief at this time and are complete as to the Trustee's

15    best knowledge at this time.  The Trustee assumes no obligation to voluntarily

16    supplement or amend these responses to reflect information, evidence, or documents

17    discovered following service of these responses.  These responses are given without

18    prejudice to subsequent revision or supplementation based upon any information,

19    evidence, and documentation that may be discovered.  The Trustee reserves the right

20    to refer to, conduct discovery with reference to, or to offer into evidence at the time of

21    trial, any and all facts, evidence, or documents developed during the course of discovery

22    and trial preparation notwithstanding the reference to facts, evidence, or documents

23    in these responses.

24    Moreover, these responses were prepared based on the Trustee's good-faith

25    interpretation and understanding of the individual requests and are subject to

26    correction for inadvertent errors or omissions, if any.  For instance, the Trustee has

27    answered these requests based on the numeration from the Trustee's "Second

28    Amended Complaint."

## **GENERAL OBJECTIONS**

1.     Possession, Custody, and Control of Documents and Information: Trustee objects to each Request, including each instruction and/or definition contained in the Requests, that seeks information not in the possession, custody, or control of Trustee. Trustee further objects to each Request, including each instruction and/or definition contained in the Requests, that seeks information that are (1) publicly available, (2) equally available to the Blue Wolf Entities and/or within the Blue Wolf Entities' possession, custody, or control, and/or (3) within the possession, custody, or control of third parties to whom the Blue Wolf Entities may direct discovery.

2.     Consistency with Federal Rules, Local Rules and Court Orders: Trustee will respond to the Requests in accordance with the Federal Rules, the Local Rules and any relevant Court order that has been entered in this action. To the extent the Requests, including the definitions and instructions therein, seek to increase or otherwise modify Trustee's obligations under the Federal Rules, the Federal Rules of Evidence, the Local Rules, any relevant Court order, or any applicable law, Trustee objects on the grounds that those Requests, definitions and/or instructions are overbroad or unduly burdensome.

3.     Reasonable Diligence: Whenever, in response to a Request, Trustee agrees to provide information and/or produce documents, that agreement does not represent that such information or documents exist, but only that such information or documents will be provided if they exist, can be located with reasonable diligence, are within the possession, custody or control of Trustee, are relevant and proportional to the needs of the case, and are not otherwise protected from disclosure.

4.     Electronically Stored Information (ESI): Pursuant to Federal Rule of Civil Procedure 34(d), Trustee may answer any interrogatory by exercising the option to produce business records, including ESI. Trustee responds to each interrogatory by having produced to Defendants all electronically stored information in its possession, custody, and control.  Defendants are able to locate and identify the ESI as readily as

Trustee, may search such ESI via their direct access, and have been given a reasonable opportunity to examine, audit, or inspect the information.  To the extent Defendants require technical support, information on application software, or other assistance, Trustee is ready to provide the same.  *See* Fed. R. Civ. P. 33(d) Advisory Committee Notes (2006 Amendment).

　　　　5.　　<u>Incorporation of Objections</u>: All responses to the Requests are expressly subject to these General Objections, and such General Objections are incorporated into each individual Request response.

PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF ENTITIES' FIRST SET OF INTERROGATORIES

## FIRST AMENDED OBJECTIONS AND ANSWERS TO FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1:

State all facts supporting YOUR contention that "BW Piezo, CTG, and CTG Advanced Materials operated as alter egos of each other," as alleged in paragraph 39 of the COMPLAINT.

### ANSWER:

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" that "BW Piezo, CTG, and CTG Advanced Materials operated as alter egos of each other.  Subject to and without waiver of the foregoing general and specific objections, Trustee responds that the facts alleged in paragraph 39 of the SAC support Trustee's contention that BW Piezo, CTG, and CTG Advanced Materials operated as alter egos of each other.  Trustee further responds that the following facts support Trustee's contention in paragraph 39:

1. The Blue Wolf Entities sent a "Confidential Information Memorandum" to proposed lenders, referring to CTG and HC Materials as the "Combined Company." The Blue Wolf Entities further represented that CTG would acquire AM or be consolidated into AM.

2. CTG funds were used to pay for the liabilities and debts of CTG Advanced Materials and BW Piezo, including payroll. *See* Second Amended Complaint ("SAC"), Ex. 19 (1/26/16 email from L. Chen to C. Hanna); SAC, Ex. 20 (1/5/16 email from L. Chen to C. Hanna); SAC, Ex. 14 (2/17/16 email from C. Hanna to J. Hager).

3. CTG Advanced Materials funds were used to pay for the liabilities and debts of CTG, including accounts receivable. *See* SAC, Ex. 21 (12/2/15 email from L. Chen to C. Hanna).

4. Accounting between the two companies was commingled. For example, CTG Advanced Materials' revenues were accounted for as part of CTG's overall revenues. *See* SAC Ex. 22 (1/21/16 email from L. Chen to S. Hoyos).

5. CTG funds were transferred to BW Piezo to pay out CTG Advanced Materials bonuses and legal expenses.

6. The liabilities of all BW Piezo subsidiaries were paid through CTG's operating account, and BW Piezo did not have its own separate bank account. *See* SAC Ex. 23 (1/21/16 email from L. Chen to A. Ortega).

7. CTG expenses were accrued between CTG and BW Piezo. See SAC Ex. 24 (1/15/16 email from L. Chen to C. Hanna).

8. Legal expenses incurred in relation to CTG matters were charged to BW Piezo's general liabilities. See SAC Ex. 27 (1/12/16 email from L. Chen to C. Hanna).

9. BW Piezo would pay for certain CTG-related expenses directly and then seek reimbursement from CTG. See SAC Ex. 25 (2/2/16 email from L. Chen to D. Oldham).

10. CTG's "cash flow" position was forecasted to include the "cash flow" position of CTG Advanced Materials.

11. CTG incurred BW Piezo's legal, tax, and other service expenses. See Ex. SAC 26 (3/8/16 email from C. Hanna to A. Ortega)

12. BW Piezo owned all of the equity of CTG and AM.

13. BW Piezo did not have its own physical location and held board meeting at the offices of CTG. See SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington).

14. AM's CEO and CFO were located in CTG's officers, and AM's officers reported to CTG's officers.

15. The Blue Wolf Entities and CTG represented to third party entities that AM was a subsidiary of CTG. *See* SAC, Ex. 17 (Presentation structuring AM as subsidiary of CTG).

16. The Blue Wolf Entities, Mr. Blumenthal, and Mr. Narulla issued press releases and represented to the public that CTG had acquired H.C. Materials. *See* SAC, Ex. 8 (October 15, 2013 Press Release).

17. CTG's corporate documents and communications with auditors represented CTG Advanced Materials as a "division" of CTG. See Ex. SAC 28 (pdf attachment to 12/26/15 email rom L. Chen to D. Ligon); Ex. 29 (attachment to 1/19/16 email from L. Chen to J. Cherry).

18. CTG Advanced Materials was represented in government submissions as being a subsidiary of CTG. See SAC Ex. 9 (Dorsey Whitney letter).

## INTERROGATORY NO. 2:

State all facts supporting YOUR contention that "Throughout 2014 and 2015, CTG struggled to balance its finances," as alleged in paragraph 40 of the COMPLAINT.

## ANSWER:

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" relating to paragraph 40 of the SAC.  Subject to and without waiver of the foregoing general and specific objections, Trustee responds as follows:

PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF ENTITIES' FIRST SET OF INTERROGATORIES

1. After acquiring the Debtor, the Debtor's management, under BW Partners' control, decided to acquire H.C. Materials, Inc.

2. Instead of having CTG purchase H.C. Materials' assets directly, BW Partners, acting through BW Piezo, decided to create a new entity to hold the assets: CTG Advanced Materials.

3. In October of 2013, BW Partners, acting through BW Piezo, forced the Debtor and its subsidiary to join BW Piezo and AM as borrowers.

4. BW Partners, acting through BW Piezo forced the Debtor to enter into separate loan and investment agreements (the "Loan and Investment Agreements") with Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, and Avante Mezzanine Partners II, Inc. (collectively, the "Mezzanine Lenders")

5. The terms of the Loan and Investment Agreements were onerous to the Debtor.

6. In exchange for (1) a security interest in all of the Debtor's and Electro-Optical Industries, LLC's assets( a subsidiary of the Debtor), and (2) equity in BW Partners's shell company and the Debtor's "owner"—BW Piezo—, the Mezzanine Lenders lent BW Partners, BW Piezo, and the Debtor $14,000,000 to purchase H.C. Materials's assets.

7. BW Partners, acting through its executive management team and BW Piezo forced the Debtor to use its assets to make payments to the Mezzanine Lenders and to CIT Bank, N.A. pursuant to the loan agreements, for the benefit of AM—which Debtor did not own.

8. BW Piezo, the Debtor, and AM operated as alter egos of each other, and the three entities regularly comingled funds and assets.

9. Blue Wolf Capital Partners, acting through its executive management team and BW Piezo, indiscriminately directed CTG to transfer funds to pay for BW Piezo's and CTG Advanced Materials's liabilities, including payroll, professional services, and legal bills, and vice versa benefitting those entities, as well as BW Partners and its shell companies and the Mezzanine Lenders by virtue of their equity interest in BW Piezo.

10. From December 20, 2013 to December 31, 2015, CTG made regular payments to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. totaling $1,959,987.31.

11. From December 19, 2013 to February 18, 2016, CTG made regular payments to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc. totaling $1,957,300.44.

12. CTG was unable to pay debts as they became due to the onerous loan payments and loan conditions placed upon CTG, coupled with CTG supporting BW Piezo and CTG Advanced Materials.

13. By October of 2015, BW Piezo board minutes indicate that CTG was in poor financial shape and was walking a "tightrope." *See* SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington). In fact, by this same time, BW Piezo was already contemplating the sale of CTG Advanced Materials and noting that it needed to focus on "how to improve cash flow to . . . direct capital to [Advanced Materials] . . . to improve the value before exit" at the expense of CTG. *See* SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington).

14. By January 2016, CTG was instructing CTG Advanced Materials that: "we do need you to stretch your payments out to suppliers as much as possible . . . [a]s you know we [*i.e.*, CTG] are managing our cash very tightly and will need [Advanced Materials] to slow down the outflows as well." *See* SAC Ex. 11 (1/27/16 email from L. Chen to S. Hoyos). Because CTG Advanced Materials was dependent on CTG's support, Blue Wolf Capital Partners made this request to delay CTG from running out of funds and being forced to file for bankruptcy prior to the sale of CTG Advanced Materials.

15. Unsurprisingly, then, by January 2016, CTG was insolvent and not making timely payments to its vendors. Vendors were complaining to CTG of its late payments on invoiced billings and failure to honor extended payment plans. *See* SAC Ex. 12 (1/22/16 mail from L. Chen to J. Rumsey).

16. By February 2016, CTG was lamenting its cash flow and insolvency, noting that forecasts "do [] not look good." *See* SAC Ex. 13 (2/9/16 email from S. Hoyos to L. Chen).

17. Also, by February 2016, CTG Advanced Materials could not even make its payroll without borrowing funds from CTG. *See* SAC Ex. 14 (2/17/16 email from C. Hanna to J. Hager).

18. CTG's assumption of CTG Advanced Material's and other affiliates and subsidiaries' liabilities and use of CTG's capital and assets to maintain CTG Advanced Material's and other affiliates and subsidiaries' businesses. *See* Ex. 17 (Presentation Structuring CTG Advanced Materials as Subsidiary of CTG).

19. The sale of Electro-Optical Industries to "a foreign interest," which CTG reported left the Department of State "appalled" and jeopardized CTG's security accreditation. *See* SAC Ex. 15 (6/24/16 email from C. Holmes to V. Caruso); SAC Ex. 16 (6/20/16 email from C. Holmes to V. Caruso).

20. On or about March 2016, Blue Wolf Capital Partners, through its executive management team and BW Piezo, sold CTG Advanced Materials for approximately $73 million to CTS Corporation. Instead of returning to CTG the proceeds from the sale of assets of CTG Advanced Materials, Blue Wolf Capital Partners, acting through BW Piezo, structured the transaction to have CTS Corporation transfer the proceeds to Blue Wolf Capital Partners and its shell companies, CIT Bank, N.A., the Mezzanine Lenders, Pengdi Han, and to Blue Wolf Capital Partners insiders as bonus payments. BW Piezo did not even have its own bank account and Blue Wolf Capital Partners directed CTS Corporation to transfer the proceeds from the sale of CTG Advanced Materials to Blue Wolf Capital Fund.

## INTERROGATORY NO. 3:

State all facts supporting YOUR contention that "Blue Wolf Capital Partners directed CTG to file for bankruptcy in late 2016 to leave the other creditors of CTG 'holding the bag' while Defendants enjoyed the millions in distributions from the sale of CTG Advanced Materials," as alleged in paragraph 48 of the COMPLAINT.

## ANSWER:

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" relating to paragraph 48 of the SAC.  Subject to and without waiver of the foregoing general and specific objections, Trustee responds as follows:

1. After acquiring the Debtor, the Debtor's management, under BW Partners' control, decided to acquire H.C. Materials, Inc.

2. Instead of having CTG purchase H.C. Materials' assets directly, BW Partners, acting through BW Piezo, decided to create a new entity to hold the assets: CTG Advanced Materials.

3. In October of 2013, BW Partners, acting through BW Piezo, forced the Debtor and its subsidiary to join BW Piezo and AM as borrowers.

4. BW Partners, acting through BW Piezo forced the Debtor to enter into separate loan and investment agreements (the "Loan and Investment Agreements") with Fidus Investment Corporation, Fidus Mezzanine Capital II, L.P., Avante Mezzanine Partners SBIC, LP, and Avante Mezzanine Partners II, Inc. (collectively, the "Mezzanine Lenders")

5. The terms of the Loan and Investment Agreements were onerous to the Debtor.

6. In exchange for (1) a security interest in all of the Debtor's and Electro-Optical Industries, LLC's assets( a subsidiary of the Debtor), and (2) equity

in BW Partners's shell company and the Debtor's "owner"—BW Piezo—, the Mezzanine Lenders lent BW Partners, BW Piezo, and the Debtor $14,000,000 to purchase H.C. Materials's assets.

7. BW Partners, acting through its executive management team and BW Piezo forced the Debtor to use its assets to make payments to the Mezzanine Lenders and to CIT Bank, N.A. pursuant to the loan agreements, for the benefit of AM—which Debtor did not own.

8. BW Piezo, the Debtor, and AM operated as alter egos of each other, and the three entities regularly comingled funds and assets.

9. Blue Wolf Capital Partners, acting through its executive management team and BW Piezo, indiscriminately directed CTG to transfer funds to pay for BW Piezo's and CTG Advanced Materials's liabilities, including payroll, professional services, and legal bills, and vice versa benefitting those entities, as well as BW Partners and its shell companies and the Mezzanine Lenders by virtue of their equity interest in BW Piezo.

10. From December 20, 2013 to December 31, 2015, CTG made regular payments to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. totaling $1,959,987.31.

11. From December 19, 2013 to February 18, 2016, CTG made regular payments to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc. totaling $1,957,300.44.

12. CTG was unable to pay debts as they became due to the onerous loan payments and loan conditions placed upon CTG, coupled with CTG supporting BW Piezo and CTG Advanced Materials.

13. By October of 2015, BW Piezo board minutes indicate that CTG was in poor financial shape and was walking a "tightrope." *See* SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington). In fact, by this same time, BW Piezo was already contemplating the sale of CTG Advanced Materials and noting that it needed to focus on "how to improve cash flow to . . . direct capital to [Advanced Materials] . . . to improve the value before exit" at the expense of CTG. *See* SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington).

14. By January 2016, CTG was instructing CTG Advanced Materials that: "we do need you to stretch your payments out to suppliers as much as possible . . . [a]s you know we [*i.e.*, CTG] are managing our cash very tightly and will need [Advanced Materials] to slow down the outflows as well." *See* SAC Ex. 11 (1/27/16 email from L. Chen to S. Hoyos). Because CTG Advanced Materials was dependent on CTG's support, Blue Wolf Capital Partners made this request to delay CTG from running out of funds and being forced to file for bankruptcy prior to the sale of CTG Advanced Materials.

15. Unsurprisingly, then, by January 2016, CTG was insolvent and not making timely payments to its vendors. Vendors were complaining to CTG of its late payments on invoiced billings and failure to honor extended payment plans. *See* SAC Ex. 12 (1/22/16 mail from L. Chen to J. Rumsey).

16. By February 2016, CTG was lamenting its cash flow and insolvency, noting that forecasts "do [] not look good." *See* SAC Ex. 13 (2/9/16 email from S. Hoyos to L. Chen).

17. Also, by February 2016, CTG Advanced Materials could not even make its payroll without borrowing funds from CTG. *See* SAC Ex. 14 (2/17/16 email from C. Hanna to J. Hager).

18. CTG's assumption of CTG Advanced Material's and other affiliates and subsidiaries' liabilities and use of CTG's capital and assets to maintain CTG Advanced Material's and other affiliates and subsidiaries' businesses. *See* Ex. 17 (Presentation Structuring CTG Advanced Materials as Subsidiary of CTG).

19. The sale of Electro-Optical Industries to "a foreign interest," which CTG reported left the Department of State "appalled" and jeopardized CTG's security accreditation. *See* SAC Ex. 15 (6/24/16 email from C. Holmes to V. Caruso); SAC Ex. 16 (6/20/16 email from C. Holmes to V. Caruso).

20. On or about March 2016, Blue Wolf Capital Partners, through its executive management team and BW Piezo, sold CTG Advanced Materials for approximately $73 million to CTS Corporation. Instead of returning to CTG the proceeds from the sale of assets of CTG Advanced Materials, Blue Wolf Capital Partners, acting through BW Piezo, structured the transaction to have CTS Corporation transfer the proceeds to Blue Wolf Capital Partners and its shell companies, CIT Bank, N.A., the Mezzanine Lenders, Pengdi Han, and to Blue Wolf Capital Partners insiders as bonus payments. BW Piezo did not even have its own bank account and Blue Wolf Capital Partners directed CTS Corporation to transfer the proceeds from the sale of CTG Advanced Materials to Blue Wolf Capital Fund.

21. Subsequently, and with CTG Advanced Materials's assets liquidated and distributed amongst Blue Wolf Capital Partners, its insiders, and its lenders, Blue Wolf Capital Partners and Mr. Holmes began to position CTG to declare for bankruptcy. Blue Wolf was desperate to delay CTG's filing for bankruptcy protection for as long as possible to avoid the bankruptcy preference period and protect the validity of the transfers related to the CTG Advanced Materials sale. To accomplish this, Blue Wolf Capital Partners and Mr. Holmes directed CTG, in April 2016, to enter a prepetition lending agreement with Blue Wolf Capital Fund II, L.P., to provide a cash infusion in exchange for a security interest in CTG's assets. Next, in June 2016, Blue Wolf sealed CTG's fate by selling one of its most valuable subsidiaries, Electro-Optical

Industries, at a cut-rate price in June 2016 to keep CTG from being forced to file bankruptcy for a couple more months.

## INTERROGATORY NO. 4:

State all facts supporting YOUR contention that "there was no corporate separateness between [CTG and CTG Advanced Materials] (or BW Piezo)," as alleged in paragraph 54 of the COMPLAINT.

## ANSWER:

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" relating to paragraph 54 of the SAC.  Subject to and without waiver of the foregoing general and specific objections, Trustee responds as follows:

1.  At all relevant times, Blue Wolf Capital Partners was operated by its Founder, Managing Partner, and Managing Principal, Adam Blumenthal, and its partners, including Blue Wolf Capital Partners owns, dominates, and controls Blue Wolf Capital Fund II, L.P. The two entities shared the same managing partner: Adam Blumenthal. In addition, Blue Wolf Capital Partners insiders, including Blumenthal, Miller, Narulla, and Ranson serve as directors for Blue Wolf Capital Fund. Blue Wolf Capital Partners uses Blue Wolf Capital Fund as a mere liability shield for the operations of Blue Wolf Capital Partners, and all funds from it and its subsidiaries are siphoned up to Blue Wolf Capital Partners and its insiders. Blue Wolf Capital Fund does not have an independent office or independent employees.

2.  Blue Wolf Capital Partners uses another shell company to manage Blue Wolf Capital Fund: Blue Wolf Capital Advisors. Blue Wolf Capital Advisors is owned and operated by the same group of Blue Wolf Capital Partners insiders, including Blumenthal, Miller, Narulla, and Ranson. Blue Wolf Capital Partners structured Blue Wolf Capital Advisors, LP as the general partner of Blue Wolf Capital Fund II, LP. Blue Wolf Capital Partners uses Blue Wolf Capital Advisors as a mere liability shield to manage Blue Wolf Capital Fund, and all funds from it and its subsidiaries are siphoned up to Blue Wolf Capital Partners and its insiders. Blue Wolf Capital Advisors does not have an independent office or independent employees.

3.  Blue Wolf Capital Partners used Blue Wolf Capital Advisors to direct Blue Wolf Fund to establish BW Piezo to acquire CTG. BW Piezo is not an independent entity and is made up and controlled by the same Blue Wolf Capital Partners insiders, including its Founder and Managing Partner, Adam Blumenthal, and Charles P. Miller, Haranjeet Narulla, and Michael Ranson. BW Piezo is merely a façade for the operations of Blue Wolf Capital Partners and all funds from it and its subsidiaries are siphoned up to Blue Wolf Capital Partners and its insiders. Further, Blue Wolf Capital Partners,

PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF ENTITIES' FIRST SET OF INTERROGATORIES

and its agents, operate BW Piezo as a mere division of Blue Wolf Capital Partners and do not respect its distinct corporate form. BW Piezo does not have an independent office or independent employees.

4.  BW Piezo, CTG, and CTG Advanced Materials were organized and operated as alter egos of each other. Although Blue Wolf identified CTG and CTG Advanced Materials as separate entities in organizational charts, in practice, there was no corporate separateness between the two (or BW Piezo). Blue Wolf Capital Partners—utilizing its "shell company" BW Piezo— routinely commingled funds and assets between the two to cover company liabilities.

5.  CTG funds were used to pay for the liabilities and debts of CTG Advanced Materials and BW Piezo, including payroll. *See* Second Amended Complaint ("SAC"), Ex. 19 (1/26/16 email from L. Chen to C. Hanna); SAC, Ex. 20 (1/5/16 email from L. Chen to C. Hanna); SAC, Ex. 14 (2/17/16 email from C. Hanna to J. Hager).

6.  CTG Advanced Materials funds were used to pay for the liabilities and debts of CTG, including accounts receivable. *See* SAC, Ex. 21 (12/2/15 email from L. Chen to C. Hanna).

7.  Accounting between the two companies was commingled. For example, CTG Advanced Materials' revenues were accounted for as part of CTG's overall revenues. *See* SAC Ex. 22 (1/21/16 email from L. Chen to S. Hoyos).

8.  CTG funds were transferred to BW Piezo to pay out CTG Advanced Materials bonuses and legal expenses.

9.  The liabilities of all BW Piezo subsidiaries were paid through CTG's operating account, and BW Piezo did not have its own separate bank account. *See* SAC Ex. 23 (1/21/16 email from L. Chen to A. Ortega).

10. CTG expenses were accrued between CTG and BW Piezo. See SAC Ex. 24 (1/15/16 email from L. Chen to C. Hanna).

11. Legal expenses incurred in relation to CTG matters were charged to BW Piezo's general liabilities. See SAC Ex. 27 (1/12/16 email from L. Chen to C. Hanna).

12. BW Piezo would pay for certain CTG-related expenses directly and then seek reimbursement from CTG. See SAC Ex. 25 (2/2/16 email from L. Chen to D. Oldham).

13. CTG's "cash flow" position was forecasted to include the "cash flow" position of CTG Advanced Materials.

14. CTG incurred BW Piezo's legal, tax, and other service expenses. See Ex. SAC 26 (3/8/16 email from C. Hanna to A. Ortega)

PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF ENTITIES' FIRST SET OF INTERROGATORIES

15. BW Piezo owned all of the equity of CTG and AM.

16. BW Piezo did not have its own physical location and held board meeting at the offices of CTG. See SAC Ex. 10 (attachment to 2/5/16 email from L. Chen to K. Carrington).

17. AM's CEO and CFO were located in CTG's officers, and AM's officers reported to CTG's officers.

18. The Blue Wolf Entities and CTG represented to third party entities that AM was a subsidiary of CTG. *See* SAC, Ex. 17 (Presentation structuring AM as subsidiary of CTG).

19. The Blue Wolf Entities, Mr. Blumenthal, and Mr. Narulla issued press releases and represented to the public that CTG had acquired H.C. Materials. *See* SAC, Ex. 8 (October 15, 2013 Press Release).

20. CTG's corporate documents and communications with auditors represented CTG Advanced Materials as a "division" of CTG. See Ex. SAC 28 (pdf attachment to 12/26/15 email rom L. Chen to D. Ligon); Ex. 29 (attachment to 1/19/16 email from L. Chen to J. Cherry).

21. CTG Advanced Materials was represented in government submissions as being a subsidiary of CTG. See SAC Ex. 9 (Dorsey Whitney letter).

## INTERROGATORY NO. 5:

State all facts supporting YOUR contention that "Blue Wolf Capital Partners, through its shell companies and executive management team, formed, organized, and operated BW Piezo, CTG, and CTG Advanced Materials to evade government regulation, legal obligations, and debt obligations, including national security related regulations and bankruptcy laws," as alleged in paragraph 55 of the COMPLAINT.

## ANSWER:

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" relating to paragraph 54 of the SAC. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory No. 4.

## INTERROGATORY NO. 6:

State all facts supporting YOUR contention that "Blue Wolf Entities allowed the entities to operate with inadequate capital for the type of business they were conducting, siphoning CTG's assets and capital to repay Blue Wolf Capital Partners and make distributions to themselves," as alleged in paragraph 56 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 56 of the Complaint. The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody or control, which Defendants have not produced yet to Trustee. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory Nos. 1, 2, and 4.

**INTERROGATORY NO. 7:**

State all facts supporting YOUR contention that "Blue Wolf Capital Partners operated BW Piezo, CTG, and CTG Advanced Materials as part of a single business enterprise," as alleged in paragraph 57 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 57 of the Complaint. The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody or control. Trustee further objects to this Interrogatory as duplicative of Interrogatory No.1. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory No. 1.

**INTERROGATORY NO. 8:**

State all facts supporting YOUR contention that "Blue Wolf Capital Partners dominated and controlled CTG and CTG Advanced Materials," as alleged in paragraph 59 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 59 of the Complaint. The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody or control, which Defendants have not produced yet to Trustee. Trustee further objects to this Interrogatory as duplicative in substance as Interrogatory No.1. Subject to and without waiver of the foregoing general and specific objections, Trustee identifies the same facts as in its response to Interrogatory Nos. 1 and 4.

**INTERROGATORY NO. 9:**

State all facts supporting YOUR contention that "Blue Wolf Capital Partners forced CTG to enter into and secure oppressive loan agreements for the sole benefit of BW Piezo and itself, forced CTG to make payments on these loans that did not benefit CTG, forced CTG to pass on corporate opportunities, such as the acquisition of HC

1    Materials' assets directly, and forced CTG to pay for CTG Advanced Materials' and BW
2    Piezo's liabilities and debts-all without CTG receiving any reasonably equivalent
     value," as alleged in paragraph 61 of the COMPLAINT.

3

4    **ANSWER:**
            Trustee objects to this Interrogatory as overbroad and unduly burdensome to the
5    extent it seeks "all facts" supporting the allegation in paragraph 161 of the Complaint.
6    The Trustee also objects to this Interrogatory to the extent it calls for or is based on
     information in the Blue Wolf Entities' possession, custody or control, which Defendants
7    have not produced yet to Trustee.  Trustee further objects to this Interrogatory as
8    duplicative in substance as Interrogatory No. 2. Subject to and without waiver of the
     foregoing general and specific objections, Trustee identifies the same facts as in its
9    response to Interrogatory Nos. 2.

10   **INTERROGATORY NO. 10:**

11          State all facts supporting YOUR contention that CTG did not receive reasonably
     equivalent value for funds transferred to Grant Thornton, LLP, as alleged in paragraph
12   161 of the COMPLAINT.

13

14   **ANSWER:**
            Trustee objects to this Interrogatory as overbroad and unduly burdensome to the
15   extent it seeks "all facts" supporting the allegation in paragraph 161 of the Complaint.
     Subject to and without waiver of the foregoing general and specific objections, Trustee
16   responds that CTG transferred $1,054,753.85 to Grant Thornton, LLP from January
17   2013 to March 2017.  The transfers were made to pay for accounting and financial
     services rendered to BW Piezo and CTG Advanced Materials, and CTG did not receive
18   reasonably equivalent value for making these transfers. Blue Wolf Capital Partners
     forced CTG to pay these expenses to maximize CTG Advanced Materials's assets and
19   value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf
20   Capital Partners knew that paying these expenses would deprive CTG of assets
     available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners
21   forced CTG into bankruptcy.

22   **INTERROGATORY NO. 11:**

23          State all facts supporting YOUR contention that CTG did not receive reasonably
     equivalent value for the funds transferred to Holland & Knight, as alleged in
24   paragraph 162 of the COMPLAINT.

25

26   **ANSWER:**
            Trustee objects to this Interrogatory as overbroad and unduly burdensome to
27   the extent it seeks "all facts" supporting the allegation in paragraph 162 of the
     Complaint.  Subject to and without waiver of the foregoing general and specific
28   objections, Trustee responds that CTG transferred $789,579.14 to Holland & Knight
     from December 2012 to September 2016. The transfers were made to pay for legal

services rendered to BW Piezo and CTG Advanced Materials, and CTG did not receive reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to pay these expenses to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that paying these expenses would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**INTERROGATORY NO. 12:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for funds transferred to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P, as alleged in paragraph 163 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 163 of the Complaint. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that CTG transferred $1,959,987.31 to Fidus Investment Corporation and Fidus Mezzanine Capital II, L.P. from December 2013 to December 2015. The transfers were loan payments pursuant to the Loan and Investment Agreement entered into by BW Piezo, CTG Advanced Materials, CTG, and Electro Optical Industries for the purchase of HC Materials. If BW Piezo and CTG Advanced Materials are not CTG's alter egos, then CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**INTERROGATORY NO. 13:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for the $1,957,300.44 transferred to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc., as alleged in paragraph 164 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 164 of the Complaint.    Subject to and without waiver of the foregoing general and specific objections, Trustee responds that CTG transferred $1,957,300.44 to Avante Mezzanine Partners SBIC, LP and Avante Mezzanine Partners II, Inc. from December 2013 to February 2016. The transfers were loan payments pursuant to the Loan and Investment Agreement entered into by BW Piezo, CTG Advanced Materials, CTG, and Electro Optical Industries for the purchase of HC Materials. If BW Piezo and CTG

Advanced Materials are not CTG's alter egos, then CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**INTERROGATORY NO. 14:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for funds transferred to CIT BANK, N.A., as alleged in paragraph 165 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 165 of the Complaint. Subject to and without waiver of the foregoing general and specific objections, Trustee responds CTG transferred $ 33,248,711.36 to CIT Bank, N.A. from May 2013 to April 2016. The transfers were loan payments pursuant to a loan agreement entered into by BW Piezo, CTG Advanced Materials, CTG, and Electro Optical Industries for the purchase of HC Materials. If BW Piezo and CTG Advanced Materials are not CTG's alter egos, then CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**INTERROGATORY NO. 15:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for funds transferred to Gladstone Investment Corporation, as alleged in paragraph 166 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 166 of the Complaint.   Subject to and without waiver of the foregoing general and specific objections, Trustee responds  CTG transferred $7,576,027.49 to Gladstone Investment Corporation from February 2012 to June 2016. The transfers were distributions made to BW Piezo's and the Blue Wolf Fund's equity owners, and CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to

CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**INTERROGATORY NO. 16:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for the $1,984,330.21 transferred to Blue Wolf Capital Partners, as alleged in paragraph 168 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 168 of the Complaint.  Subject to and without waiver of the foregoing general and specific objections, responds CTG transferred $1,984,330.21 to Blue Wolf Capital Partners from January 2013 to May 2016. The transfers were distributions made to BW Piezo's and the Blue Wolf Fund's equity owners, and CTG received no reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to make these transfers to maximize CTG Advanced Materials's assets and value, and thus BW Piezo's assets, upon the sale of CTG Advanced Materials. Blue Wolf Capital Partners knew that making these transfers would deprive CTG of assets available to CTG's creditors for satisfying their debts when Blue Wolf Capital Partners forced CTG into bankruptcy.

**INTERROGATORY NO. 17:**

State all facts supporting YOUR contention that CTG did not receive reasonably equivalent value for the $165,365.86 transferred to McDermott Will & Emery, LLP, as alleged in paragraph 170 of the COMPLAINT.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all facts" supporting the allegation in paragraph 170 of the Complaint. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that CTG transferred $165,365.86 to McDermott Will & Emery, LLP from March 2015 to May 2016. The transfers were made to pay for legal services rendered to CTG Advanced Materials, and CTG did not receive reasonably equivalent value for making these transfers. Blue Wolf Capital Partners forced CTG to pay these expenses

**INTERROGATORY NO. 18:**

IDENTIFY all transfers for which YOU allege Blue Wolf Capital Partners, LLC is liable and set forth specific facts and PERSONS with knowledge to support the basis for YOUR contention.

PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF ENTITIES' FIRST SET OF
INTERROGATORIES

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks the identity of "all transfers". The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody, or control. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that Blue Wolf Capital Partners, LLC is liable for every transfer in Schedule B identified as having been made for the benefit of BW Piezo, CTG Advanced Materials, Blue Wolf Capital Partners. The Trustee further identifies the following persons with knowledge to support the basis of its contentions:

1. Adam Blumenthal
2. Pierre Chao
3. Christopher Holmes
4. David Oldham
5. John Mei
6. Charles Miller
7. Lynn Chen
8. Mark Shaw
9. Kevin Ruelas
10. Arturo Ortega
11. Ralph Phillips
12. Pengdi Han
13. Cheryl Hanna
14. Haranjeet Narullah
15. Richard Feferman
16. David Tiffany

**INTERROGATORY NO. 19:**

IDENTIFY all transfers for which YOU allege Blue Wolf Capital Advisors, L.P. is liable and set forth specific facts and PERSONS with knowledge to support the basis for YOUR contention.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks the identity of "all transfers". The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody, or control. Trustee has requested or will request discovery and documents regarding transfers made between Blue Wolf Capital Fund II, L.P., and Blue Wolf Capital Advisors, L.P. Subject to and without waiver of the foregoing general and specific objections, Trustee responds that Blue Wolf Capital Advisors, L.P. is liable for every transfer in Schedule B identified as having been made for the benefit of BW Piezo, CTG Advanced Materials, Blue Wolf Capital Partners. The

20

Trustee further identifies the following persons with knowledge to support the basis of its contentions:

1. Adam Blumenthal
2. Pierre Chao
3. Christopher Holmes
4. David Oldham
5. John Mei
6. Charles Miller
7. Lynn Chen
8. Mark Shaw
9. Kevin Ruelas
10. Arturo Ortega
11. Ralph Phillips
12. Pengdi Han
13. Cheryl Hanna
14. Haranjeet Narullah
15. Richard Feferman
16. David Tiffany

**INTERROGATORY NO. 20:**

IDENTIFY all transfers for which YOU allege Blue Wolf Capital Fund II, L.P. is liable and set forth specific facts and PERSONS with knowledge to support the basis for YOUR contention.

**ANSWER:**

Trustee objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks the identity of "all transfers".  The Trustee also objects to this Interrogatory to the extent it calls for or is based on information in the Blue Wolf Entities' possession, custody, or control.  Trustee has requested or will request discovery and documents regarding transfers made by Blue Wolf Capital Fund II, L.P..  Upon information and believe, and subject to and without waiver of the foregoing general and specific objections, Trustee responds that Blue Wolf Fund II, L.P. received $5,669,848.62 from the proceeds of the sale of Advanced Materials. Trustee further responds that Blue Wolf Capital Fund II, L.P. is liable for every transfer in Schedule B identified as having been made for the benefit of BW Piezo, CTG Advanced Materials, Blue Wolf Capital Partners.  The Trustee further identifies the following persons with knowledge to support the basis of its contentions:

1. Adam Blumenthal
2. Pierre Chao
3. Christopher Holmes
4. David Oldham
5. John Mei
6. Charles Miller

21

7.  Lynn Chen
8.  Mark Shaw
9.  Kevin Ruelas
10. Arturo Ortega
11. Ralph Phillips
12. Pengdi Han
13. Cheryl Hanna
14. Haranjeet Narullah
15. Richard Feferman
16. David Tiffany

Respectfully submitted,

/s/*Edward Jason Dennis*

Edward Jason Dennis
Texas State Bar No. 24045776
jdennis@lynnllp.com
Samuel B. Hardy
Texas State Bar No. 24074360
shardy@lynnllp.com
Barira Munshi
Texas State Bar No. 24095924
bmunshi@lynnllp.com
Eliyahu Ness
California State Bar No. 311054
eness@lynnllp.com
**Lynn Pinker Hurst & Schwegmann, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

Special Litigation Counsel for
Corporate Recovery Associates, LLC,
Trustee for the Liquidating Trust of
Debtor Channel Technologies Group, LLC

1

## PROOF OF SERVICE

2

**STATE OF TEXAS, COUNTY OF DALLAS**

3        I am employed in the County of Dallas, State of Texas.  I am over the age of 18
and not a party to the within action; my business address is 2100 Ross Avenue, Suite
4    2700, Dallas, Texas 75201.

5
On March 4, 2021, I caused the document described below as **PLAINTIFF'S FIRST**
6    **AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF**
**ENTITIES' FIRST SET OF INTERROGATORIES** to be served on all interested
7    parties in this action via email:

8                        ## SEE ATTACHED SERVICE LIST

9
**[]        (BY MAIL)** I caused such envelope(s) fully prepaid to be placed in the United
10    States Mail at Dallas, Texas.  I am "readily familiar" with the firm's practice of
collection and processing correspondence or mailing.  Under that practice it would be
11    deposited with the U.S. Postal Service on that same day with postage thereon fully
prepaid at Dallas, Texas in the ordinary course of business.  I am aware that on motion
12    of the party served, service is presumed invalid if postal cancellation date or postage
meter date is more than one day after date of deposit for mailing in affidavit.
13

14    **[]        (BY OVERNIGHT-FEDERAL EXPRESS)** I caused said document(s) to be
picked up by U.S. Federal Express Services for overnight delivery to the offices of the
15    addressees listed on the Service List.

16    **[]        (BY PERSONAL SERVICE)** I caused to be delivered such document by hand
to the above-identified recipient through the use of First Legal Attorney Service whose
17    address is:   1517 West Beverly Boulevard, Los Angeles, CA   90026, and whose
telephone number is (213) 250-1111.
18

19    **[]        (BY FACSIMILE)** I caused said document(s) to be telephonically transmitted
to each addressee's telecopier (Fax) number as noted.
20

21    **[XX]  (BY ELECTRONIC MAIL)** I caused said document(s) to be served via
electronic transmission to each addressee's electronic mail address(es) as noted on the
22    attached Service List.

23    I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.
24

25    Executed on March 4, 2021, at Dallas, Texas.

26                                                */s/ Barira Munshi*
                                                Barira Munshi

27

28

PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF ENTITIES' FIRST SET OF
INTERROGATORIES

1

2

**SERVICE LIST**
**United States Bankruptcy Court**
**Central District of California, Northern Division**
**Case No. 9:16-BK-11912-DS**
**dv. No. 9:18-AP-01058-DS**

3

4

5

6

7

8

9

Howard J. Steinberg
steinbergh@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite
1900
Los Angeles, California 90067-2121

**Attorneys for Defendants**
**Blue Wolf Capital Partners,**
**LLC,**
**Blue Wolf Capital Fund II, L.P.,**
**Blue Wolf Capital Advisors**
**L.P., and BW Piezo Holdings,**
**LLC**

10

11

12

13

14

Cheryl S. Chang
Chang@Blankrome.com
Craig N. Haring
charing@blankrome.com
BLANK ROME LLP
2029 Century Park East, Sixth
Floor
Los Angeles, California 90067

**Attorneys for Gladstone**
**Investment Corporation**

15

16

17

18

19

20

Jonathan Boustani
jboustani@btlaw.com
Jonathan Sundheimer
Jonathan.sundheimer@btlaw.com
Barnes & Thornburg LLP
2029 Century Park East, Ste. 300
Los Angeles, CA 90067

**Attorney CTG Advanced**
**Materials, LLC and CTS**
**Corporation**

21

22

23

24

25

26

27

28

PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF ENTITIES' FIRST SET OF
INTERROGATORIES

1                                        VERIFICATION

2    STATE OF CALIFORNIA              §
                                      §
3    COUNTY OF SAN DIEGO              §

4

5          I, Richard Feferman, make this Declaration under oath pursuant to 28 U.S.C.

6    Section 1746. CORPORATE RECOVERY ASSOCIATES, LLC, ("CRA") as appointed

7    under the confirmed Chapter 11 plan of Channel Technologies Group, LLC ("CTG") is

8    the Liquidating Trustee for CTG. I am the Senior Managing Director for CRA. I have

9
     read the foregoing document, Plaintiff's First Amended Objections and Answers to
10
     Defendant Blue Wolf Entities' First Set of Interrogatories.  I declare under penalty of
11
     perjury that the contents of the foregoing are true and correct.
12

13

14   Executed on this 4th day of March, 2021.

15                                                                Richard Feferman

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S FIRST AMENDED OBJECTIONS AND ANSWERS TO DEFENDANT BLUE WOLF ENTITIES' FIRST SET OF
INTERROGATORIES

**EXHIBIT E**

Edward Jason Dennis
jdennis@lynnllp.com
Samuel B. Hardy
shardy@lynnllp.com
Barira Munshi
bmunshi@lynnllp.com
Eliyahu Ness
California State Bar No. 311054
eness@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

Special Litigation Counsel for Plaintiff

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
NORTHERN DIVISION

| | |
|---|---|
| In re | § CASE NO. 9:16-BK-11912-DS |
| CHANNEL TECHNOLOGIES GROUP, LLC, *Debtor.* | § § § |
| CORPORATE RECOVERY ASSOCIATES, LLC, as Trustee for the Liquidating Trust of Channel Technologies Group, LLC, | § Chapter 11 § § |
| *Plaintiff,* | § § ADV NO. 9:18-AP-01058-DS |
| v. | § § **PLAINTIFF'S SECOND** |
| BLUE WOLF CAPITAL PARTNERS, LLC, *et al.,* *Defendants.* | § **AMENDED INITIAL** § **DISCLOSURES** § § |

## **Preliminary Statement**

As required by Rule 26(a)(1) of the Federal Rules of Civil Procedure and the Court's Order, Plaintiff Corporate Recovery Associates, LLC, as Trustee for The Liquidating Trust of Channel Technologies Group, LLC (the "Trustee" or "Plaintiff")

hereby makes the following amended disclosures, based on the information currently and reasonably available. The Trustee does not represent that it is identifying every document, tangible thing, or witness possibly relevant to this lawsuit. Rather, the Trustee's disclosures represent a good faith effort to identify information that the Trustee, at this time, reasonably believes may be used to support its claims or defenses, as required by Rule 26(a)(1). Accordingly, these disclosures are made without prejudice to the Trustee's right to change or supplement these disclosures in the future, and without prejudice to the Trustee's right to introduce at trial additional evidence, documents, and witnesses as warranted by the development of facts underlying this lawsuit.

The Trustee also makes these disclosures subject to the Agreed Protective Order and its terms, as well as without waiving its right to withhold documents based on claims of privilege, including the attorney-client and work product privileges, the party communication privilege, the consulting expert privilege, or any other applicable privilege or immunity existing under law. The Trustee intends to assert all applicable privileges and immunities to discovery and is not waiving and does not intend to waive any such privileges or immunities.

1.    **The name and, if known, the address and telephone number of each individual likely to have discoverable information— along with the subjects of that information—that the Trustee may use to support its claims or defenses, unless the use would be solely for impeachment.**

| Name | Subject |
|---|---|
| Richard Feferman<br>c/o Jason Dennis<br>Sam Hardy<br>Lynn Pinker Cox & Hurst LLP<br>2100 Ross Avenue, Suite 2700<br>Dallas, Texas 75201<br>Phone: (214) 981-3800 | Feferman is the Senior Manager Director of the Trustee.<br><br>Feferman has knowledge of the following subjects:<br>• Documents received from CTG's Chief Restructuring Officer David Tiffany (the "CRO")<br>• The condition of the books and |

| | | records received from the CRO |
|---|---|---|
| Adam Blumenthal<br>c/o Howard Steinberg<br>steinbergh@gtlaw.com<br>GREENBERG TAURIG, LLP<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>T: 310.586.7702<br>F: 310.586.7800 | Blumenthal is a manager of at least one of the Blue Wolf Entities.<br><br>Blumenthal may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| Pierre Chao<br>c/o Howard Steinberg<br>steinbergh@gtlaw.com<br>Greenberg Taurig, LLP<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>T: 310.586.7702<br>F: 310.586.7800 | Chao was a former manager of CTG.<br><br>Chao may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| Christopher Holmes<br>c/o Howard Steinberg<br>steinbergh@gtlaw.com<br>Greenberg Taurig, LLP<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>T: 310.586.7702<br>F: 310.586.7800 | Holmes was a former manager of CTG.<br><br>Holmes may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| David Oldham<br>c/o Howard Steinberg<br>steinbergh@gtlaw.com<br>Greenberg Taurig, LLP<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067 | Oldham was a former manager of CTG.<br><br>Oldham may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities; | |

PLAINTIFF'S SECOND AMENDED INITIAL DISCLOSURES

| | | |
|---|---|---|
| T: 310.586.7702<br>F: 310.586.7800 | • The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| John Mei<br>c/o Howard Steinberg<br>steinbergh@gtlaw.com<br>Greenberg Taurig, LLP<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>T: 310.586.7702<br>F: 310.586.7800 | Mei was a former manager of CTG.<br><br>Mei may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| Charles Miller<br>c/o Howard Steinberg<br>steinbergh@gtlaw.com<br>Greenberg Taurig, LLP<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>T: 310.586.7702<br>F: 310.586.7800 | Miller was a former manager of CTG.<br><br>Miller may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| Lynn Chen<br>c/o Steve McAndrew<br>steve@kmcllp.com<br>KAUFMAN MCANDREW LLP<br>16633 Ventura Boulevard, Suite 500<br>Encino, CA 91436<br>T: 818.788.5767<br>F: 818.788.2992 | Chen was a former manager of CTG.<br><br>Chen may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| Mark Shaw<br>c/o Timothy Trager<br>ttrager@rppmh.com | Shaw was a former manager of CTG.<br><br>Shaw may have knowledge of the | |

| REICKER, PFAU, PYLE & MCROY LLP<br>1421 State Street, Suite B<br>Santa Barbara, CA 93101<br>T: 805.966.2440<br>F: 805.966.3320 | following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. |
|---|---|
| Kevin Ruelas<br>c/o Zubin Farinpour<br>eje@manningllp.com<br>MANNING & KASS ELLROD RAMIREZ Trester LLP<br>801 S. Figueroa St., 16th Floor<br>Los Angeles, CA 90017<br>T: 213.624.6900<br>F: 213.624.6999 | Ruelas was a former manager of CTG.<br><br>Ruelas may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. |
| Arturo Ortega<br>875 Weaver St.<br>Simi Valley, CA 93065<br>T: 818-274-8008 | Ortega was a former officer of CTG.<br><br>Ortega may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. |
| Ralph L. Phillips<br>01603 S.W. Greenwood Rd.<br>Portland, OR 97219<br>T:818.438.3770<br>Email:<br>Rlphillips4141@gmail.com | Phillips was a former manager of CTG.<br><br>Phillips may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and |

PLAINTIFF'S SECOND AMENDED INITIAL DISCLOSURES

| | | |
|---|---|---|
| | | • CTG's debts and liabilities. |
| Pendgi Han<br>14304 SE 88th Place<br>Newcastle, WA 98059 | Han was a former manager of CTG.<br><br>Han may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| Cheryl Hanna<br>Unknown Contact Information | Hanna was a former officer of CTG.<br><br>Hanna may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| Haranjeet Narulla<br>c/o Howard Steinberg<br>steinbergh@gtlaw.com<br>Greenberg Taurig, LLP<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>T: 310.586.7702<br>F: 310.586.7800 | Narulla is a manager of at least one of the Blue Wolf Entities.<br><br>Narulla may have knowledge of the following subjects:<br>• the services provided by CTG;<br>• The relationship between CTG and the Blue Wolf Entities;<br>• The decision-making process of CTG;<br>• Payments made by CTG for the benefit of BW Piezo Holdings and CTGAM;<br>• CTG's dealings with vendors; and<br>• CTG's debts and liabilities. | |
| David Tiffany<br>CR3 Partners, LLC<br>6171 W. Century Blvd., Suite 350<br>Los Angeles, CA 90045<br>T: (602) 799-7397<br>david.tiffany@cr3partners.com | Tiffany is CTG's Chief Restructuring Officer.<br><br>Tiffany may have knowledge of the following subjects:<br>• the services provided by CTG; and<br>• the maintenance of the business records of CTG. | |

6

2. **A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the Trustee has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.**

The Trustee identifies by BATES Numbers CTG000001-000385 documents previously produced in the State Court Lawsuit that the Trustee may use to support its claims or defenses in this case.    The Trustee has electronically produced these documents to each Defendant, subject to the protective order.

In addition to the produced documents, the Trustee further identifies the following categories of documents in Trustee's possession, custody or control that it may use to support its claims or defenses:

- Email communications by CTG employees;

- CTG's Operating Agreement;

- Documents relating to CTG's organization and structure;

- Accounting and/or financial documents, including but not limited to accounts receivables, accounts payable, bank instructions, bank statements, credit card statements, credit agreements, loan agreements, security agreements, revenue planning, capital expenditures, GDP, month-end close files, bank statements, payroll reports, Grant Thornton audits, yearly budgets, account balances, annual reports, fiscal year plans, WIP reports, 401Ks, and PLEX SQL data;

- Tax files;

- Credit agreements, investment agreements, loan agreements and/or security agreements entered into solely or jointly by CTG;

- EOI AP Invoices, MSI AP Invoices, CTG/EOI AP Invoices;

- Documents relating to Blue Wolf Entities' capital loan to BW Piezo;

- Documents relating to Blue Wolf Entities' stock information;

- Documents relating to the Blue Wolf Entities' equity interest;

- Documents relating to Gladstone Investment Corporation's equity interest;

- Documents relating to Board of Directors meetings, presentations, and/or minutes;

- Documents relating to customers, clients, and government affiliates;

- Documents relating to business plans, marketing plans, and/or administrative plans;

- Documents relating to CTG acquisitions;

- Documents relating to the sale of Advanced Materials;

- Documents relating to the sale of EOI;

- Marketing documents;

- Company presentations;

- Press releases and news articles;

- Correspondences to and/or from government entities submitted by or on behalf of CTG and/or the Blue Wolf Entities;

- Documents relating to government surveys prepared or submitted by or on behalf of CTG;

PLAINTIFF'S SECOND AMENDED INITIAL DISCLOSURES

- Documents relating to sales, purchases, and contracts with customers;

- Documents relating to Project Seawolf;

- Documents relating to CTG's business development;

- Human Resources documents relating to payroll, recruitment, workers' compensation claims, benefits and insurance, timecards; and

- Documents related to the bankruptcy of CTG.

In addition to the above categories, the Trustee may use any documents or pleadings filed, produced, or otherwise exchanged in this matter to support its defenses. Other documents and information in the Trustee's possession, custody, or control and which support the Trustee's claims may be identified as discovery is conducted in this matter, in which case, if appropriate and necessary, the Trustee's disclosures may be supplemented accordingly pursuant to Rule 26(e).

*          *          *

To further aid and facilitate discovery in this case, the Trustee would like to provide some additional background on the universe of CTG documents received by the Trustee upon his appointment. Upon assuming his role as Trustee, the Trustee obtained 166 banker's boxes ("Storage Documents") from the CRO, David Tiffany. These Storage Documents were organized with an Index and reflect CTG's physical copies of books and records. The Index provides a box number, a date range, and a description. Each box also has a clearly marked label that corresponds with the Index. These Storage Documents are currently located in a storage unit in San Diego. The Blue Wolf Defendants have previously

inspected and copied the Storage Documents in connection with the State Court Lawsuit.  It is Plaintiff's understanding that Defendants are not requesting to inspect the Storage Documents again. Attached as **Exhibit A** is an inventory report identifying by category and box number the hard copy documents in the Trustee's possession.

Upon assuming its role as Trustee, the Trustee received CTG's electronic data from the CRO, David Tiffany.  This electronic data includes PST email files for its employees and CTG's electronic books and records (including accounting and plex data).  This data is contained in three hard drives and a thumb drive (collectively, the "Electronic Documents").   The Blue Wolf Defendants have previously received the Electronic Documents in connection with the state court lawsuit *Corporate Recovery Associates, LLC,* as Trustee for the Liquidating Trust of Channel Technologies Group, LLC, *v. Ruelas, et al.,* Case No. 18-CV-05060 in the Superior Court of California and for the County of Santa Barbara (the "State Court Lawsuit").  Though Defendants indicated that they do not need a duplicate copy, the Trustee stands ready to provide another copy of these electronic documents now that the Court has entered a protective order upon request by a Defendant. In addition, the Trustee has highlighted specific directory and file locations as reflected in **Exhibit B** that the Trustee would point the Defendants to as containing documents relevant to the issues in dispute in this case.

   **3.    A computation of each category of damages claimed by the Trustee—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

10

In March 2016, Blue Wolf sold CTG Advanced Materials for approximately $73 million. Instead of returning to CTG the proceeds from the sale of assets of CTG Advanced Materials, Blue Wolf structured the transaction to have the purchaser, CTS Corporation, transfer the proceeds to the Blue Wolf Entities, CIT Bank, N.A., the Mezzanine Lenders, Pengdi Han, and to the Blue Wolf Entities' insiders as bonus payments. The transfers related to the sale of CTG Advanced Materials:

| Date | Amount | Received Transfer/Beneficiary |
|---|---|---|
| On or about March 2016 | $37,134,772.79 | CIT Bank, N.A.;<br>OneWest Bank N.A. |
| On or about March 2016 | $7,264,770.39 | Fidus Investment Corporation;<br>Fidus Mezzanine Capital II, L.P. |
| On or about March 2016 | $7,263,263.90 | Avante Mezzanine Partners SBIC, LP |
| On or about March 2016 | $1,340.39 | Avante Mezzanine Partners II, Inc. |
| On or about March 2016 | $1,515,005.70 | CTG Advanced Materials |
| On or about March 2016 | $26,000.00 | Pengdi Han;<br>DHAN, LLC |
| On or about March 2016 | $16,612,424.11 | Blue Wolf Fund II, L.P. |

The subsequent transfers related to the sale of CTG Advanced Materials:

| Date | Amount | Received Transfer/Beneficiary |
|---|---|---|
| On or about March 2016 | $2,303,366.24 | Pengdi Han;<br>DHAN, LLC |
| On or about March 2016 | $633,872.00 | Blue Wolf Capital Partners, LLC |

| On or about March 2016 | $752,245.09 | Gladstone Investment Corporation |
|---|---|---|
| On or about March 2016 | $1,340.39 | Avante Mezzanine Partners II, Inc. |
| On or about March 2016 | $199,861.70 | Fidus Investment Corporation; Fidus Mezzanine Capital II, L.P. |
| On or about March 2016 | $199,861.70 | Avante Mezzanine Partners SBIC, LP; Avante Mezzanine Partners II, Inc. |

In addition, CTG, through its officers, employees, and agents made the following transfers and incurred the following obligations:

| Date | Total Amount | Received Transfers | Beneficiary |
|---|---|---|---|
| 1/25/2013–4/30/2017 | $1,177,135.85 | Grant Thornton, LLP | Blue Wolf Entities; CTG Advanced Materials, LLC |
| 12/20/2012–9/30/2016 | $789,579.14 | Holland & Knight | Blue Wolf Entities CTG Advanced Materials, LLC |
| 12/20/2013–12/31/2015 | $1,959,987.31 | Fidus Investment Corporation; Fidus Mezzanine Capital II, L.P. | Blue Wolf Entities; CTG Advanced Materials, LLC |
| 12/3/2012–6/10/2016 | $2,731,668.15 | Gladstone Investment Corporation | Blue Wolf Entities; CTG Advanced Materials, LLC |
| 12/11/2015 | $50,000.00 | Raymond James & Associates, Inc. | Blue Wolf Entities; CTG Advanced Materials, LLC |
| 12/19/2013–2/18/2016 | $1,957,300.44 | Avante Mezzanine Partners SBIC, LP; Avante Mezzanine Partners II, Inc. | Blue Wolf Entities; CTG Advanced Materials, LLC |

PLAINTIFF'S SECOND AMENDED INITIAL DISCLOSURES

| 1/10/2013–5/13/2016 | $1,984,330.21 | Blue Wolf Capital Partners, LLC | Blue Wolf Entities; CTG Advanced Materials, LLC |
|---|---|---|---|
| 7/24/2013–10/28/2014 | $18,752,915.42 | CIT Bank, N.A.; OneWest Bank N.A. | Blue Wolf Entities; CTG Advanced Materials, LLC |
| 5/31/2013–2/25/2016 | $9,409,002.23 | CIT Bank, N.A.; OneWest Bank N.A. | Blue Wolf Entities CTG Advanced Materials, LLC; Electro Optical Industries |
| 4/3/2015 | $36,995.00 | Duff & Phelps, LLC | Blue Wolf Entities CTG Advanced Materials, LLC; Electro Optical Industries |
| 3/11/2015–5/26/2016 | $165,365.86 | McDermott Will & Emery, LLP | Blue Wolf Entities; CTG Advanced Materials, LLC |

**4.    Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

The Trustee is not aware of any at this time.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: January 27, 2021          Respectfully submitted,

/s/

Edward Jason Dennis
Texas State Bar No. 24045776
jdennis@lynnllp.com
Samuel B. Hardy
Texas State Bar No.
shardy@lynnllp.com
Barira Munshi
bmunshi@lynnllp.com
Eliyahu Ness
California State Bar No. 311054
eness@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

Special Litigation Counsel for
Corporate Recovery Associates, LLC,
Trustee for the Liquidating Trust of
Debtor Channel Technologies Group, LLC

PLAINTIFF'S SECOND AMENDED INITIAL DISCLOSURES

1

## PROOF OF SERVICE

2

**STATE OF TEXAS, COUNTY OF DALLAS**

3
    I am employed in the County of Dallas, State of Texas.  I am over the age of
18 and not a party to the within action; my business address is 2100 Ross Avenue,
4   Suite 2700, Dallas, Texas 75201.

5
    On January 27, 2021, I caused the document described below as
6   **PLAINTIFF'S SECOND AMENDED INITIAL DISCLOSURES** to be served on
all interested parties in this action via email:

7

## SEE ATTACHED SERVICE LIST

8
[]    **(BY MAIL)** I caused such envelope(s) fully prepaid to be placed in the United
9   States Mail at Dallas, Texas.  I am "readily familiar" with the firm's practice of
collection and processing correspondence or mailing.  Under that practice it would
10  be deposited with the U.S. Postal Service on that same day with postage thereon
fully prepaid at Dallas, Texas in the ordinary course of business.  I am aware that
11  on motion of the party served, service is presumed invalid if postal cancellation date
or postage meter date is more than one day after date of deposit for mailing in
12  affidavit.
13
[]    **(BY OVERNIGHT-FEDERAL EXPRESS)** I caused said document(s) to be
14  picked up by U.S. Federal Express Services for overnight delivery to the offices of
the addressees listed on the Service List.
15

16  []    **(BY PERSONAL SERVICE)** I caused to be delivered such document by
hand to the above-identified recipient through the use of First Legal Attorney
17  Service whose address is:  1517 West Beverly Boulevard, Los Angeles, CA  90026,
and whose telephone number is (213) 250-1111.
18

19  []    **(BY FACSIMILE)** I caused said document(s) to be telephonically
transmitted to each addressee's telecopier (Fax) number as noted.
20

21  **[XX]  (BY ELECTRONIC MAIL)** I caused said document(s) to be served via
electronic transmission to each addressee's electronic mail address(es) as noted on
22  the attached Service List.

23
I declare under penalty of perjury under the laws of the State of California that the
24  above is true and correct.

25
Executed on January 27, 2021, at Dallas, Texas.                *Stephen M. Russo*
26                                                              _____
                                                                Stephen M. Russo
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SERVICE LIST
### United States Bankruptcy Court
### Central District of California, Northern Division
### Case No. 9:16-BK-11912-DS
### Adv. No. 9:19-AP-01058-DS

Howard J. Steinberg
steinbergh@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite
1900
Los Angeles, California 90067-
2121

**Attorneys for Defendants
Blue Wolf Capital Partners,
LLC,
Blue Wolf Capital Fund II,
L.P.,
Blue Wolf Capital Advisors
L.P., and BW Piezo Holdings,
LLC**

Cheryl S. Chang
Chang@Blankrome.com
Craig N. Haring
charing@blankrome.com
Jeffrey Rhodes
jrhodes@blankrome.com
BLANK ROME LLP
2029 Century Park East, Sixth
Floor
Los Angeles, California 90067

**Attorneys for Gladstone
Investment Corporation**

Jonathan Boustani
jonathan.boustani@btlaw.com
Paul Laurin
Paul.laurin@btlaw.com
Jonathan Sundheimer
Jonathan.sundheimer@btlaw.com
Barnes & Thornburg LLP
2029 Century Park East, Ste. 300
Los Angeles, CA 90067

**Attorney CTG Advanced
Materials, LLC and CTS
Corporation**

16

# EXHIBIT A

| DISTRICT NAME | RECORD CODE | CUST BOX # | BOX LOCATION | MAJOR DESCRIPTION | MINOR DESCRIPTION |
|---|---|---|---|---|---|
| SAN FRANCISCO, OAKLAND, CA | A | 1 | SSLV02319000620602 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-EOI | 1 | LAVA013BB004340303 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 1 | LAVA022MM000320205 | ITC AP INVOICES 2012 | |
| SAN FRANCISCO, OAKLAND, CA | B-C | 2 | SSLV02319001030201 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 2 | LAVA013BB004140605 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 2 | LAVA022LL000620605 | ITC AP INVOICES 2012 | |
| SAN FRANCISCO, OAKLAND, CA | D-E | 3 | SSLV02319001030105 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 3 | LAVA013BB004140205 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 3 | LAVA022LL000610402 | ITC AP INVOICES 2012 | |
| SAN FRANCISCO, OAKLAND, CA | E-I | 4 | SSLV02319002110402 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 4 | LAVA013BB004140204 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 4 | LAVA022MM001310404 | ASSISTANT CONTROLLER OFFICE | |
| SAN FRANCISCO, OAKLAND, CA | J-L | 5 | SSLV02319001030306 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 5 | LAVA013BB004140305 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 5 | LAVA022LL002930604 | ASSISTANT CONTROLLER OFFICE | |
| SAN FRANCISCO, OAKLAND, CA | M | 6 | SSLV02319001030501 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 6 | LAVA013BB004140406 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 6 | LAVA022LL001630106 | ASSISTANT CONTROLLER OFFICE | |
| SAN FRANCISCO, OAKLAND, CA | M-N | 7 | SSLV02319001130802 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 7 | LAVA013BB004140906 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 7 | LAVA022MM000710709 | COST ACCOUNTING MANAGER | |
| SAN FRANCISCO, OAKLAND, CA | O-R | 8 | SSLV02319001020703 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 8 | LAVA013BB004140206 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 8 | LAVA022LL003020601 | COST ACCOUNTING MANAGER | |
| SAN FRANCISCO, OAKLAND, CA | S-T | 9 | SSLV02213002410602 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 9 | LAVA013BB004140904 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 9 | LAVA022MM001110205 | COST ACCOUNTING MANAGER | |
| SAN FRANCISCO, OAKLAND, CA | T-Z | 10 | SSLV02319001020708 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 10 | LAVA013BB004340203 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 10 | LAVA022MM000520606 | CORP MINUTES | |
| SAN FRANCISCO, OAKLAND, CA | MISC A-Z | 11 | SSLV02319002020306 | INCOMING INSPECTION QA CERTS | |
| LOS ANGELES, CA | HR-CTG | 11 | LAVA013BB004340105 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 11 | LAVA022LL000620206 | CORP MINUTES | |
| LOS ANGELES, CA | HR-CTG | 12 | LAVA013BB004340504 | TIMECARDS | |
| LOS ANGELES, CA | FIN CTG | 12 | LAVA022MM000530802 | ASSISTANT CONTROLLER FILE | |
| LOS ANGELES, CA | HR-CTG | 13 | LAVA013BB004340204 | TERMS A-DE | |
| LOS ANGELES, CA | FIN CTG | 13 | LAVA022LL002910502 | CONTROLLER FILES | |
| LOS ANGELES, CA | HR-CTG | 14 | LAVA013BB004340306 | TERMS DO-GT | |
| LOS ANGELES, CA | FIN CTG | 14 | LAVA022LL000610501 | CONTROLLER FILES | |

| | | | |
|---|---|---|---|
| LOS ANGELES, CA | HR-CTG | 15 LAVA013BB004340406 | TERMS GO-J |
| LOS ANGELES, CA | PO 2012 | 15 LAVA013BB004140506 | CTG POS |
| LOS ANGELES, CA | FIN CTG | 15 LAVA022LL001620706 | CONTROLLER FILES |
| LOS ANGELES, CA | PO 2012 | 16 LAVA013BB004140803 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 16 LAVA013BB004240805 | TERMS K-O |
| LOS ANGELES, CA | FIN CTG | 16 LAVA022LL000610306 | CONTROLLER FILES |
| LOS ANGELES, CA | PO 2012 | 17 LAVA013BB004140801 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 17 LAVA013BB004340305 | TERM BENEFITS T-Z |
| LOS ANGELES, CA | FIN CTG | 17 LAVA022LL000610504 | CONTROLLER FILES |
| LOS ANGELES, CA | HR-CTG | 18 LAVA013BB004240804 | TERMS PACHCO-RAMIREZ |
| LOS ANGELES, CA | PO 2012 | 18 LAVA013BB004140704 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 19 LAVA013BB004340501 | TERMS RATIOS-SEC |
| LOS ANGELES, CA | PO 2012 | 19 LAVA013BB004040906 | CTG POS |
| LOS ANGELES, CA | PO 2012 | 20 LAVA013BB004140306 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 20 LAVA013BB004340104 | TERMS S11 E-Z |
| LOS ANGELES, CA | HR-CTG | 21 LAVA013BB004340205 | PAYROLL REPORTS |
| LOS ANGELES, CA | PO 2014 | 21 LAVA013BB004140405 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 22 LAVA013BB004240704 | PAYROLL REPORTS |
| LOS ANGELES, CA | PO 2014 | 22 LAVA013BB004040904 | CTG POS |
| LOS ANGELES, CA | PO 2014 | 23 LAVA013BB004140104 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 23 LAVA013BB004340402 | PAYROLL REPORTS |
| LOS ANGELES, CA | PO 2014 | 24 LAVA013BB004040805 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 24 LAVA013BB004340301 | PAYROLL REPORTS |
| LOS ANGELES, CA | HR-CTG | 25 LAVA013BB004340106 | LEAD RESULTS |
| LOS ANGELES, CA | PO 2014 | 25 LAVA013BB004040806 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 26 LAVA013BB004340404 | PAYROLL REPORTS |
| LOS ANGELES, CA | PO 2015 | 26 LAVA013BB004140604 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 27 LAVA013BB004240901 | PAYROLL REPORTS |
| LOS ANGELES, CA | PO 2015 | 27 LAVA013BB004140106 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 28 LAVA013BB004140905 | 401K |
| LOS ANGELES, CA | PO 2015 | 28 LAVA013BB004040804 | CTG POS |
| LOS ANGELES, CA | PO 2015 | 29 LAVA013BB004140105 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 29 LAVA013BB004240806 | PAYROLL REPORTS |
| LOS ANGELES, CA | PO 2015 | 30 LAVA013BB004140606 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 30 LAVA013BB004340405 | PAYROLL REPORTS |
| LOS ANGELES, CA | PO 2016 | 31 LAVA013BB004140504 | CTG POS |
| LOS ANGELES, CA | HR-CTG | 31 LAVA013BB004340302 | PAYROLL REPORTS |
| LOS ANGELES, CA | CTG CO 2012 RYOL | 32 LAVA013BB004240905 | PAYROLL |
| LOS ANGELES, CA | PO 2016 | 32 LAVA013BB004140505 | CTG POS |
| LOS ANGELES, CA | CTG WOCKER COMP CL | 33 LAVA013BB004140806 | WORKER COMP CLAIMS |
| LOS ANGELES, CA | PO 2016 | 33 LAVA013BB004140804 | CTG POS |
| LOS ANGELES, CA | PO OTHER | 34 LAVA013BB004140705 | CTG OTHER POS |

| LOS ANGELES, CA | CTG RECRUITEMENT | 34 LAVA013BB004140805 | RECRUITEMENT | |
| LOS ANGELES, CA | PO OTHER | 35 LAVA013BB004140706 | CTG OTHER POS | |
| LOS ANGELES, CA | CTG BENEFITS AND I | 35 LAVA013BB004340101 | BENEFITS & INSURANCE | |
| LOS ANGELES, CA | PO OTHER | 36 LAVA013BB004040905 | CTG OTHER POS | |
| LOS ANGELES, CA | CTG TERMS 2013 | 36 LAVA013BB004340206 | TERMS | |
| LOS ANGELES, CA | CTG TERMS 2014 | 37 LAVA013BB004140304 | TERMS | |
| LOS ANGELES, CA | PO OTHER | 37 LAVA013BB004140903 | CTG OTHER POS | |
| LOS ANGELES, CA | PO OTHER | 38 LAVA013BB004140404 | LTG OTHER POS | |
| LOS ANGELES, CA | CTG TERMS 2015 A-L | 38 LAVA013BB004240906 | TERMS A-L | |
| LOS ANGELES, CA | PO OTHER | 39 LAVA013BB004140703 | LTG OTHER POS | |
| LOS ANGELES, CA | CTG TERMS 2015 M- | 39 LAVA013BB004240904 | TERMS M-Z | |
| LOS ANGELES, CA | HR-EOI EOI TERMS | 40 LAVA013BB004340202 | EOI TERMS | |
| LOS ANGELES, CA | MSI TERM5 | 41 LAVA013BB004240705 | TERMS | |
| LOS ANGELES, CA | LTG TERM5 2012 | 42 LAVA013BB004240706 | TERMS | |
| LOS ANGELES, CA | #NAME? | 43 LAVA013BB004340201 | TERMS | |
| LOS ANGELES, CA | HR-CTG | 44 LAVA022MM000710406 | CTG TERMS 2017 + FLAG LEAD TES | WORKERS COMP 2017 |
| LOS ANGELES, CA | HR-CTG | 45 LAVA022LL001630405 | 401K 2016-2017 PLAN DOC'S | |
| LOS ANGELES, CA | HR-CTG | 46 LAVA022MM000710801 | CTG+CO'S 2016 PAYROLL REPORTS | 2017 |
| LOS ANGELES, CA | HR-CTG | 47 LAVA022LL000610802 | CTG TERMS 2017 | |
| LOS ANGELES, CA | HR-CTG | 48 LAVA022MM000530907 | CTG TERMS 2017 | |
| LOS ANGELES, CA | EOI ACCTG | 1 1 LAVA013BB004040505 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 1 2 LAVA013BB003940706 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | CTG ACCTG | 1 3 LAVA013BB004240306 | EOI AP INVOICES | |
| LOS ANGELES, CA | EOI ACCTG | 2 1 LAVA013BB003940806 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 2 2 LAVA013BB004040206 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 2 3 LAVA013BB003940705 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 2 4 LAVA013BB003940804 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 2 5 LAVA013BB004040204 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 3 1 LAVA013BB004040404 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 3 2 LAVA013BB004040306 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 3 3 LAVA013BB004040303 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 3 4 LAVA013BB004040105 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 3 5 LAVA013BB004040205 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 4 1 LAVA013BB004040305 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 4 2 LAVA013BB004010308 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 4 3 LAVA013BB003940904 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 4 4 LAVA013BB004040605 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 5 1 LAVA013BB004040406 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 5 2 LAVA013BB004040405 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 6 1 LAVA013BB004040106 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 6 2 LAVA013BB003940805 | AP INVOICES, WIP REPORTS, CK R | |
| LOS ANGELES, CA | EOI ACCTG | 6 3 LAVA013BB004040705 | AP INVOICES, WIP REPORTS, CK R | |

| | | | |
|---|---|---|---|
| LOS ANGELES, CA | EOI ACCTG | 6 4 LAVA013BB004040104 | AP INVOICES, WIP REPORTS, CK R |
| LOS ANGELES, CA | EOI ACCTG | 6 5 LAVA013BB004040506 | AP INVOICES, WIP REPORTS, CK R |
| LOS ANGELES, CA | EOI ACCTG | 7 1 LAVA013BB004240701 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 7 2 LAVA013BB004040503 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 7 3 LAVA013BB003940906 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 7 4 LAVA013BB003940905 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 7 5 LAVA013BB004040304 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 8 1 LAVA013BB004240703 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 8 2 LAVA013BB004240702 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 8 3 LAVA013BB004240301 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 8 4 LAVA013BB004240302 | ASST CONTROLLER |
| LOS ANGELES, CA | EOI ACCTG | 8 5 LAVA013BB004240304 | ASST CONTROLLER |
| LOS ANGELES, CA | CTG ACCTG | 9 1 LAVA013BB004240604 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 9 2 LAVA013BB004240403 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 9 3 LAVA013BB004240605 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 9 4 LAVA013BB004240206 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 9 5 LAVA013BB004240205 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 10 1 LAVA013BB004240204 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 10 2 LAVA013BB004240606 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 10 3 LAVA013BB004240602 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 10 4 LAVA013BB004240601 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 10 5 LAVA013BB004240502 | AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 11 1 LAVA013BB004240203 | EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 11 2 LAVA013BB004240603 | EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 12 1 LAVA013BB004340304 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 12 2 LAVA013BB004240506 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 12 3 LAVA013BB004240504 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 12 4 LAVA013BB004240305 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 12 5 LAVA013BB004240104 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 13 1 LAVA013BB004240105 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 13 2 LAVA013BB004240106 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 13 3 LAVA013BB004240201 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 13 4 LAVA013BB004240202 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 13 5 LAVA013BB004240406 | CTG/EOI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 14 1 LAVA013BB004240505 | MSI AP INVOICES |
| LOS ANGELES, CA | CTG ACCTG | 14 2 LAVA013BB004240405 | MSI AP INVOICES |
| LOS ANGELES, CA | EOI ACCTG | 6A 1 LAVA013BB004040604 | AP INVOICES, WIP REPORTS, CK R |
| LOS ANGELES, CA | EOI ACCTG | 6A 2 LAVA013BB004040606 | AP INVOICES, WIP REPORTS, CK R |
| LOS ANGELES, CA | EOI ACCTG | 6A 3 LAVA013BB004040706 | AP INVOICES, WIP REPORTS, CK R |
| LOS ANGELES, CA | EOI ACCTG | 6A 4 LAVA013BB004040704 | AP INVOICES, WIP REPORTS, CK R |
| LOS ANGELES, CA | EOI ACCTG | 6A 5 LAVA013BB004040504 | AP INVOICES, WIP REPORTS, CK R |
| LOS ANGELES, CA | EOI ACCTG | 6A 6 LAVA013BB004240404 | AP INVOICES, WIP REPORTS, CK R |

LOS ANGELES, CA                    EOI ACCTG                              6A 7  LAVA013BB004240503              AP INVOICES, WIP REPORTS, CK R

# EXHIBIT B











← → ∨ ↑ ▮ › DataCopy (D:) › CTG › CTI_Marketing › CTG

- Advertising
- Blue Wolf Logo
- BOD Docs
- Branding
- Brochures & Data Sheets
- Communications Meetings
- Company_Presentations
- Competition
- Conferences & Trade Shows
- Customers
- Due Diligence
- ISO 9001
- Josh Work
- Marketing-PR Firm Search
- other co graphics
- Papers
- Pre-Proposals
- Press Releases
- Promotional_Items
- SBIR_STTR
- Strategic_Plan
- 87 Hemi Mold
- Barium Titanate
- CTG 2011 Print Advertising and Marketing Proposal-Rev4A
- CTG 2011 Print Advertising Proposal-Rev5
- Energy_Harvesting_Phase-I_Proposal
- Facilities
- G Douville
- Haun_Michael_photo
- History 06-11_SummarySTI_Final_2
- marcomrfpv1_JM
- marcomrfpv2_rc_JM_2
- new bois for ctg ELT
- Notes from 3-18-2011 Conv w-Danielle Murray
- Organizations to Join-Discuss
- Rear Adm Carr
- Rear Adm Ellis
- Vice Adm Donnelly
- Viking Notes - Rockwood

39 items















> DataCopy (D:) > SRV-03_CTI > Accounting

| | |
|---|---|
| 2014 Month End Close Files | Internal Reporting |
| 2015 Grant Thorton Audit | IronMTQACerts |
| 2015 Month End Close Files | Management |
| 2016 and 2017 CASH | MSI ASSET SALE CLOSED XX-XX-XX |
| 2016 Month End Close Files | officeclient.microsoft.com |
| 2016 TAX FILES | Payroll |
| 2016 Year Budget | Pension |
| 2017 MONTH END FILES | PLEX DB Testing |
| Advance Material Sale - Close date 3 11 16 | Procedures |
| Analysis | Ref Material (acctg, other) |
| A-R | Santa Barbara County |
| Backlog | SOAL SOFA MOR |
| BANK STATEMENTS | SONATECH |
| BANKRUPTCY CHAPTER# 11  -  10 14 16 | Bank |
| BLUE WOLF CAPITAL LOAN TO BWP | Finance (channel.SRV-STI_VOL1.STI.CTSTIGroups) (J) - Shortcut |
| BLUEWOLF STOCK INFORMATION | Sales Tax Q3 2016 |
| CAPEX | |
| CHERYLS FILES | |
| Corporate | |
| Cost Accounting | |
| Daily Bookings | |
| EOI SALE INFORMATION | |
| General | |
| ICE files | |

40 items

← → ∨ ↑ | 📁 > DataCopy (D:) > SRV-03_CTI > BC_DR                                   ∨  ↻   | Search BC_DR

| Name ^ | Date modified | Type | Size |
|---|---|---|---|
| 📁 Archived | 1/6/2021 6:51 PM | File folder | |
| 📁 background info | 3/10/2017 4:04 PM | File folder | |
| 📁 BIA Interviews | 3/10/2017 4:04 PM | File folder | |
| 📁 Draft Plan 6-8-2012 | 3/10/2017 4:04 PM | File folder | |
| 📄 Federal Register | 10/5/2012 6:20 PM | Adobe Acrobat Document | 285 KB |
| 📄 marking-booklet | 10/5/2012 5:18 PM | Adobe Acrobat Document | 3,520 KB |

6 items    1 item selected















| Name | Date modified | Type | Size |
|---|---|---|---|
| AR Aging Templates | 3/13/2017 12:49 PM | File folder | |
| AR DATA | 3/13/2017 12:49 PM | File folder | |
| Backlog | 3/13/2017 12:49 PM | File folder | |
| CIT Bank Instructions | 3/13/2017 12:49 PM | File folder | |
| Collections | 3/13/2017 12:50 PM | File folder | |
| Credit | 3/13/2017 12:50 PM | File folder | |
| CTG Archive | 3/13/2017 12:50 PM | File folder | |
| Customer Contacts | 3/13/2017 12:50 PM | File folder | |
| Customer Statements | 3/13/2017 12:50 PM | File folder | |
| DNB | 8/22/2016 2:03 PM | File folder | |
| EAST WEST Bank Instructions | 3/13/2017 12:50 PM | File folder | |
| EO Archive | 3/13/2017 12:50 PM | File folder | |
| Jenni | 3/13/2017 12:50 PM | File folder | |
| Meeting Notes | 9/12/2016 2:04 PM | File folder | |
| MSI Archive | 3/13/2017 12:50 PM | File folder | |
| NSWC | 3/13/2017 12:50 PM | File folder | |
| Short_list | 3/13/2017 12:50 PM | File folder | |
| xjunk | 3/13/2017 12:50 PM | File folder | |
| AR 1 16 17 Post Petition Collections | 1/16/2017 1:35 PM | Microsoft Excel Worksheet | 51 KB |
| AR 1 23 17 Post Petition Collections | 1/24/2017 11:15 AM | Microsoft Excel Worksheet | 43 KB |
| AR 1 30 17 Post Petition Collections | 1/31/2017 4:41 PM | Microsoft Excel Worksheet | 39 KB |
| AR 2 6 17 Post Petition Collections | 2/6/2017 7:04 PM | Microsoft Excel Worksheet | 40 KB |
| AR 2 13 17 Post Petition Collections | 2/13/2017 4:01 PM | Microsoft Excel Worksheet | 41 KB |
| AR 2 20 17 Post Petition Collections | 2/20/2017 3:45 PM | Microsoft Excel Worksheet | 42 KB |
| AR 2 24 17 Post Petition Collections | 2/27/2017 10:11 AM | Microsoft Excel Worksheet | 43 KB |
| AR 3 6 17 Post Petition Collections | 3/6/2017 10:01 AM | Microsoft Excel Worksheet | 44 KB |
| AR 12 31 16 write off | 1/11/2017 12:46 PM | Adobe Acrobat Document | 70 KB |
| CTG AR Aging 1.16.17 Update | 1/17/2017 5:43 PM | Microsoft Excel Worksheet | 50 KB |

DataCopy (D:) › SRV-04_Vol1 › AR_AGINGS

File    Home    Share    View

File   Home   Share   View

DataCopy (D:) › SRV-04_Vol1 › copper

| Name | Date modified | Type | Size |
|---|---|---|---|
| Blue Wolf | 3/13/2017 12:50 PM | File folder | |
| capex | 3/13/2017 12:50 PM | File folder | |
| capgemini | 3/13/2017 12:51 PM | File folder | |
| channel | 3/13/2017 12:51 PM | File folder | |
| desktop | 3/13/2017 12:51 PM | File folder | |
| ELT | 3/13/2017 12:51 PM | File folder | |
| email | 3/13/2017 12:51 PM | File folder | |
| Energy and Piezo | 3/13/2017 12:51 PM | File folder | |
| fac_EHS | 3/13/2017 12:51 PM | File folder | |
| HR | 3/13/2017 12:51 PM | File folder | |
| IT | 3/13/2017 12:51 PM | File folder | |
| keycontacts | 3/13/2017 12:51 PM | File folder | |
| legal | 3/13/2017 12:51 PM | File folder | |
| New MarrComm | 3/13/2017 12:51 PM | File folder | |
| oftm3arc | 3/13/2017 12:59 PM | File folder | |
| old laptop | 3/13/2017 1:01 PM | File folder | |
| PLEX | 3/13/2017 1:01 PM | File folder | |
| Safety | 3/13/2017 1:01 PM | File folder | |
| strategy session | 3/13/2017 1:01 PM | File folder | |
| Support Services | 3/13/2017 1:01 PM | File folder | |
| update | 3/13/2017 1:02 PM | File folder | |
| Electronic Devices polices | 2/21/2013 3:30 PM | Microsoft Word Document | 37 KB |
| Scanners_AcceptedSigned_20130301_183008 | 3/4/2013 11:04 AM | Adobe Acrobat Document | 1,494 KB |

← → ∨ ↑ 📁 › DataCopy (D:) › SRV-04_Vol1 › ELT

| Name ∧ | Date modified | Type | Size |
|---|---|---|---|
| 3+9 Materials | 3/13/2017 12:31 PM | File folder | |
| 4+8 Materials | 3/13/2017 12:31 PM | File folder | |
| BoD presentations | 3/13/2017 12:31 PM | File folder | |
| Christmas 2013 | 3/13/2017 12:33 PM | File folder | |
| Extra | 3/13/2017 12:33 PM | File folder | |
| GDP - Eng - Shaw | 3/13/2017 12:33 PM | File folder | |
| GDP ELT | 3/13/2017 12:33 PM | File folder | |
| GDP-Support-Copperman | 3/13/2017 12:33 PM | File folder | |
| NUWC Visit 16April2014 | 3/13/2017 12:33 PM | File folder | |
| OPS GDP - Douville | 3/13/2017 12:33 PM | File folder | |
| Optics GDP - Scopatz | 3/13/2017 12:33 PM | File folder | |
| Project Seawolf | 1/5/2021 10:39 PM | File folder | |
| Cost Model - CTG -3 - Fixed a | 2/21/2014 10:59 AM | Microsoft Excel Macro-Enabled ... | 269 KB |
| CTG Plex Phase 1-2 Benefits | 1/11/2013 4:17 PM | Microsoft Word Document | 18 KB |
| CTG Plex Phase 3 Benefits | 1/11/2013 4:19 PM | Microsoft Word Document | 18 KB |
| garys slideshow 2 | 2/21/2014 10:59 AM | Microsoft PowerPoint Presentati... | 1,152 KB |
| Novocure - Overview | 6/7/2017 11:06 AM | EML File | 1 KB |

File   Home   Share   View

DataCopy (D:) › SRV-04_Vol1 › OLT

| Name | Date modified | Type | Size |
|---|---|---|---|
| CapEx Photos- New | 3/13/2017 12:40 PM | File folder | |
| CapEx Photos- Old | 3/13/2017 12:41 PM | File folder | |
| Capital Appropriation Requests | 1/5/2021 10:43 PM | File folder | |
| Ceramics VSM Reviews | 3/13/2017 12:41 PM | File folder | |
| Company Presentations | 3/13/2017 12:41 PM | File folder | |
| CY14 Revenue Planning | 3/13/2017 12:41 PM | File folder | |
| CY15 Revenue Planning | 3/13/2017 12:41 PM | File folder | |
| GDP | 3/13/2017 12:41 PM | File folder | |
| Hinnrichs | 3/13/2017 12:41 PM | File folder | |
| Kaizen Playbook | 3/13/2017 12:41 PM | File folder | |
| MBOs | 3/13/2017 12:41 PM | File folder | |
| Ops AI Tracker | 3/13/2017 12:41 PM | File folder | |
| Ops CAPEX | 3/13/2017 12:41 PM | File folder | |
| Ops Dashboard | 3/13/2017 12:41 PM | File folder | |
| PLEX | 3/13/2017 12:41 PM | File folder | |
| Revenue - Business Line Reviews | 3/13/2017 12:41 PM | File folder | |
| Rewards and Recognition | 3/13/2017 12:41 PM | File folder | |
| SeaWolf 21June13 Meeting | 1/5/2021 10:45 PM | File folder | |
| Six_Sigma | 3/13/2017 12:41 PM | File folder | |
| Staff meeting | 3/13/2017 12:41 PM | File folder | |
| Value Stream Reviews - June 2013 | 3/13/2017 12:41 PM | File folder | |
| CTG Proposal Re-design Process_22Oct13 | 10/22/2013 9:52 PM | Microsoft PowerPoint Presentati... | 76 KB |
| CTG Safety Gemba Walk - Spreadsheet | 12/16/2014 1:58 PM | Microsoft Excel 97-2003 Worksh... | 331 KB |
| OLT - Shortcut | 8/20/2015 1:04 PM | Shortcut | 2 KB |
| Ops Surge Tracker OST_26June13 | 6/26/2013 6:33 PM | Microsoft Excel Worksheet | 16 KB |
| Shortcut to GDP | 2/18/2013 3:54 PM | Shortcut | 1 KB |
| Transformation and Growth Roadmap_CTG_CY13 | 6/5/2013 3:30 PM | Microsoft PowerPoint 97-2003 P... | 240 KB |
| Ultra visit_15May13_rev3_ULTRA USSI_22July14 | 7/22/2014 12:42 PM | Microsoft PowerPoint 97-2003 P... | 450 KB |





Security

File    Home    Share

← → ↑    > DataCopy (D:) > Systems > Groups > Security

| | | | |
|---|---|---|---|
| 11-5-13 DSS | EXPORT Compliance Training 12-2014 | REPSHIP FORMS | DSS Ltr re Bankruptcy questions_10-25-16 |
| 2014 CTG Security | FBI | SAFE INFO | DSS Ltr re Bankruptcy questions_10-25-16 |
| 2014 EOI Security | FedEx Approval Letter | SCGs | DSS_Cyber_Activity_Bulletin_3Dec10 |
| 2015 CTG Security | Floor Plans | SCIF | Emergency Notification List |
| 2016 CTG Security Audit | FngrPrnt Acct | Secure Rooms | Employee Clearance Notification Letter_LA |
| 2016 EOI Security | FOREIGN CONTACT | Security Awareness material | Eqmpt notice-2012-04 |
| 2016 Security - McCann | Foreign National | Security Clearance Forms | FOREIGN SALES 2014 |
| 2017 CTG Security Audit | FOREIGN TRAV_CONT | Security Education | FwdTechnologies2006-2007PhotoReleaseSummaryDocument |
| Administrative inquiry | Foreign Visitor BU | Security historical backup | ID Theft f14039 IRS Form |
| BAY ALARM | Forms | Security phone numbers | IP Safe |
| BAY ALARM CERTIFICATES | FSO Courses | Surveys | ISFD SMO Checks |
| BC-DR | Halloween 2014 | Susp. Contacts | MSSP IS Tracking Form |
| BC-EM Plan | HANDBOOK | Tampered Trailers | NCMS Las Vegas CUI Briefing, 19 June |
| BD Intl Sales Slides Rev | ID Theft | TECH CTL PLANS | NISPOM Change 1 |
| Board Resolutions_2013 | IdenTrust | TR-343 | Notice to stakeholders 10_9_13 |
| BRIEFS | Improper Shipmt | TUNA | OPSEC Holidays |
| BW Citizens | Inquiries FP Acct | VISITS | Photo Release Summary |
| BW Equity Docs | Insider Threat | Wkly Staff Mtg. Rept | Plex Online User Security Manual[1] |
| CAC Cards MAR Inc | INVESTIGATIONS_VIOLATIONS | wxp-audit.zip | Prop_Proprietary-Bus_Confidential_Legends |
| CAC-ECA Information | JCP DD 2345 MCTDA | 08 Defs and Terms | Room 1 IT User Brief Ack |
| Cameras CTG EOI | KMP Lists | 10-20-14 Channel Structure Chart | SAFE LOG-Active_10-2013 |
| CASE GUARD Co | Logos | 5200_01v3 | SCG Class Guide List |
| Citizenship Info | M00045 MK48 | 5200_01v4 CUI | SCIF AIs |
| Closed Areas | Marking guide | Avery Person8_Personnel Rept Labels Fldrs | Secure Room Upgrades |
| Co Cameras | Misc Security | CC1 SELF-INSPECTION ADDENDUM | SECURITY ASSIGNMENTS_8-2010 |
| COMSEC | MK48 IR&D | Channel Tech Inc UL | Security paragraph for brian |
| Corporate Docs | MK54 | classified marking-booklet | Security Seals |
| COURIER LETTERS | Monthly Corp Rd Up | Company Brochure - Photo Release Information | Security section - CTG 2015 handbook |
| CTG Advanced Matls | MSI | Copy of Customer Distribution CTG Wide 07.24.14 | Self Iinspectionchecklistfillable[1] |
| CTG fax numbers | NCMS | CTG Label_template | sf86_Dec2010 |
| CTG Picnic Pictures 8-11-2012 | New Folder | CTG Map | SF328_12_2014 |
| CTI Mens Locker room | NUWC N66604-15-Q-1658 | CTG_LEGAL TIMELINE_9-2013LA | Shredder 344 344052815MP |
| Cyber | NUWC Solicit 15-P-2062 | CUI Briefing, 19 June 15 NCMS | Signers for Classified Mail 7-15-16 |
| DD 2345 US-Canada Joint Certification | Old Historical | CUI NIST.SP.800-171 | Signers for Classified Mail 10-25-13 |
| DD254 | OPSEC | Darkhotel Report_1 | Subscription - Updates CKP |
| Destruction Eqmpt | pelton pre 2010 | DerivativeClassification | Sum of Briefings |
| Doc. Reg_Certs Xmit Destruct | Pelton Security | Designated Insider Threat Officer | SWFT-Access-Acct_4-23-2013 |
| Document Control | PROCEDURES | DISCO labels | Transducer Module 3 edited |
| DSS Audits | Progeny | DoD Direct8582.01 | UIUC pres 2 |
| DSS IS Systems_Current | PROJECTS | DOD HOTLINE | Violation Summary |
| DSS RFI Forms 10-14 | Proprietary Policy and Procedure | DOD Security DOC DATABASE 588 Added to Proof | |
| DT592 | Public Release 3-2015 | DOJ ongoing-export-case-fact-sheet | |
| Employee Lists | Receptionist | Draft CTG Supply Chain Security Program 5 | |
| EOI | Recpt Recv Trng | Draft CTG Supply Chain Security Program 8-3-15 | |
| EOI Testing | Renick | Draft CTG Supply Chain Security Program | |

175 items    1 item selected



← → ∨ ↑ 📙 › This PC › Elements (D:) › [DR RESULTS 18667]

| | | | |
|---|---|---|---|
| 📙 ANavarro_Export | 📊 Bill Cidzik | 📊 Gary Irwin | 📊 Miguel Ferreira |
| 📙 Brad Altavilla_Export | 📊 Bob Pino | 📊 Geoff Warner | 📊 Mike Hartman |
| 📙 Brad_Hinnrichs_Export | 📊 Brent Febo | 📊 Gilbert Jimenez | 📊 Mike Vaughn |
| 📙 Bruce_Johnson_Export | 📊 Brian Dolan | 📊 Greg Hutchison | 📊 MK-54 AETSAATS |
| 📙 Carla_McCann_Export | 📊 Brian Johnston | 📊 Guy Turner | 📊 Nancy Solorzano |
| 📙 CGrelier_Export | 📊 Carol Grigor | 📊 Harvey Reder | 📊 Pablo Cansino |
| 📙 CGrigor_Export | 📊 Carolyn Gamberutti | 📊 Heath Pray | 📊 Patrick McAllister |
| 📙 Chase_Henderson_Export | 📊 Cary Rosson | 📊 Irene Milstead | 📊 Pete Bonsignori |
| 📙 Cheryl_Hanna_Export | 📊 Cecily Mendibles | 📊 Jake Duhs | 📊 Peter Perotte |
| 📙 Chris_Holmes_Export | 📊 Charlene Montgomery | 📊 Jason Renick | 📊 Peter Vera |
| 📙 Dan_Freedland_Export | 📊 Chin Doan | 📊 Jeff Golden | 📊 Randall Duval |
| 📙 Denise_Cohen_Export | 📊 Chris Holmes | 📊 Jennifer Zaludek | 📊 Raul Arroyo |
| 📙 DForseth_Export | 📊 Chris McNeil | 📊 Jeremy Torres | 📊 Richard Franklin |
| 📙 DHughes_Export | 📊 Chuck Randall | 📊 Jessica Dewett | 📊 Rob Fader |
| 📙 Don_Blackston_Export | 📊 Chung Nguyen | 📊 Jill Grant | 📊 Rob Sheppard |
| 📙 GTurner_Export | 📊 Cindy Doan | 📊 Jim Bartek | 📊 Robert Brown |
| 📙 JAlvarez_Export | 📊 Cliff Taylor | 📊 John Hartman | 📊 Roman Reyes |
| 📙 Jill_Erskine_Export | 📊 CTG Meeting Area | 📊 John Mather | 📊 Rosanna Gonzalez |
| 📙 JLain_Export | 📊 CTG SB VTC | 📊 John Rodriguez | 📊 Ruben Hernandez |
| 📙 JLongyear_Export | 📊 CTGAdmin | 📊 John Urquidi | 📊 Ryan Schaafsma |
| 📙 JPrizler_Export | 📊 CTG-Copier | 📊 Johnny Suy | 📊 San Miguel |
| 📙 JTaylor_Export | 📊 CTG-Facilities | 📊 Jorge Ramirez | 📊 San Nicolas |
| 📙 MGilbert_Export | 📊 CTG-Helpdesk | 📊 Josh McDonough | 📊 Santa Barbara |
| 📙 MLara_Export | 📊 Curtis Stevens | 📊 Karen Vaughn | 📊 Santa Cruz |
| 📙 RalphPhillips | 📊 Customer Visitor Calendar | 📊 Kathy Weiler | 📊 Santa Rosa |
| 📙 RPerotte_Export | 📊 Damon De La Pena | 📊 Ken Murray | 📊 Sarah Reichert |
| 📙 RReyes_Export | 📊 Daniel Santana | 📊 Ken Stultz | 📊 Sergio De Hoyos |
| 📙 SGooding_Export | 📊 Dave Fugatt | 📊 Kent Palmer | 📊 Socorro Guerrero |
| 📙 SMonroy_Export | 📊 Dave Kendall | 📊 Kevin Cook | 📊 Spike Tucker |
| 📙 TAdams_Export | 📊 Dave Marks | 📊 Laura Furukawa | 📊 Tank01 |
| 📙 test_Export | 📊 Dave Oldham | 📊 Leander Cubit | 📊 Tank02 |
| 📙 TRoot_Export | 📊 David Cooper | 📊 Linda Akens | 📊 Ted Everson |
| 📄 ~Mark Shaw.pst.tmp | 📊 David Renick | 📊 Linda Beard | 📊 Tim Jock(1) |
| 📊 Accounts Payable | 📊 David Tiffany | 📊 Lourens Pretorius | 📊 Tim Jock |
| 📊 Accounts Receivable | 📊 Dawn Perrin | 📊 Lynn Chen | 📊 Timothy Ranger |
| 📊 Adam Mazzilli | 📊 Derinda Rogers | 📊 Maria Macias | 📊 Todd Soukup |
| 📊 Adam Poytress | 📊 Diana Byrum | 📊 Maria Miller(1) | 📊 Tom Ochi |
| 📊 Andres Gebhart | 📊 Discovery Search Mailbox | 📊 Maria Miller | 📊 Trong Doan |
| 📊 Anthony Moua | 📊 Don Fleming | 📊 Maria Ortega | 📊 Val Reyes-Wener |
| 📊 Arsen Melconian | 📊 Edward Garcia | 📊 Mark Shaw(1) | 📊 Vicente Torres |
| 📊 Art Krokus | 📊 EHS-Helpdesk | 📊 Mark Shaw | 📊 Victor Palato |
| 📊 Art Ortega | 📊 Ender Kuntsal | 📊 Martin Broten | 📊 Victor Sanchez |
| 📊 Barry Ramey | 📊 Eric Horning | 📊 Marty Ramirez | 📊 William Voigt |
| 📊 Barry Robinson | 📊 Filiberto Ruiz | 📊 Michael Beard | 📊 Winston Lech |
| 📊 Benjamin Casillas | 📊 Gabriel Ruiz Cervantes | 📊 Michael Turpin | |

179 items

**EXHIBIT F**

Edward Jason Dennis
jdennis@lynnllp.com
Samuel B. Hardy
shardy@lynnllp.com
Barira Munshi
bmunshi@lynnllp.com
Eliyahu Ness
eness@lynnllp.com
LYNN PINKER HURST & SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

Special Litigation Counsel for
Plaintiff

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In re | § | CASE NO. 9:16-BK-11912-DS |
| | § | |
| CHANNEL TECHNOLOGIES | § | Chapter 11 |
| GROUP, LLC, | § | |
|     *Debtor.* | § | ADV NO. 9:18-AP-01058-DS |
| | § | |
| | § | |
| CORPORATE RECOVERY | § | |
| ASSOCIATES, LLC, as Trustee for | § | |
| the Liquidating Trust of Channel | § | |
| Technologies Group, LLC, | § | DECLARATION OF RICHARD FEFERMAN |
| | § | IN SUPPORT OF TRUSTEE'S POSITION |
|     *Plaintiff,* | § | REGARDING STIPULATION OF DISPUTED |
| v. | § | ISSUES |
| | § | |
| BLUE WOLF CAPITAL PARTNERS, | § | |
| LLC, *et al.,* | § | |
| | § | |
|     *Defendants.* | § | |

## DECLARATION OF RICHARD FEFERMAN IN SUPPORT OF TRUSTEE'S POSITION REGARDING STIPULATION OF DISPUTED ISSUES

1

I, Richard Feferman, pursuant to 28 U.S.C. § 1746, declare the following:

1. My name is Richard Feferman. I am over 18 years of age, of sound mind, and capable of making this declaration. My business mailing address is 3830 Valley Centre Drive, PMB 705-152, San Diego, CA 92130.

2. The facts stated in this declaration are true and correct and within my personal knowledge:

3. I am the Senior Managing Director for Corporate Recovery Associates, LLC, Liquidating Trustee for the Liquidating Trust of Channel Technologies Group, LLC ("Trustee").

4. I make this declaration in support of the Trustee's position as stated in the jointly submitted STIPULATION OF DISPUTED ISSUES.

5. David Tiffany was appointed as the Chief Restructuring Officer of the Debtor by the Court in the related Chapter 11 bankruptcy action, Case No: 9:16-bk-11912-DS. *See* Docket No. 90.

6. Upon assuming its role as Trustee, the Trustee received certain hard copy documents of the Debtor from Tiffany (the "Storage Documents"). On April 23, 2018, Tiffany emailed me an Index for the Storage Documents. The Trustee obtained possession of the Storage Documents, consisting of 166 banker's boxes, in August of 2018. Thereafter, the Trustee placed the Storage Documents into its own warehouse in San Diego, California.

7. The Storage Documents reflect CTG's non-exhaustive physical copies of books and records that are and have been in the possession of Trustee. The Index provides a box number, a date range, and a description of the documents contained in each box. Each box has a clearly marked label that correspond with the Index.

8. Upon assuming its role as Trustee, the Trustee also received certain electronic data of CTG from Tiffany. This electronic data includes PST email files for its employees and CTG's electronic books and records (including accounting and plex data) (the "Electronic Data").

9. The Electronic Data is contained in three hard drives and a thumb drive.

10. The documents received by the Trustee consist almost exclusively of Electronically Stored Information ("ESI"), except for the 166 boxes of Storage Documents.

11. The ESI and Storage Documents have been kept and maintained in the regular, usual, and ordinary course of business.

12.    The ESI was produced to the Blue Wolf Defendants as duplicates of the Electronic Data as it was received from Tiffany. Upon information and belief, the duplicates were produced without any alterations. Upon information and belief, no documents were removed or added to the duplicates or Electronic Data as it was produced to the Blue Wolf Defendants.

13.    Upon information and belief, the ESI is organized, sortable, and searchable. The PST files included with the ESI are also sortable and searchable.

14.    In Exhibit B of Trustee's Second Amended Initial Disclosures, the Trustee has identified which file paths and folders contain documents responsive to the Blue Wolf Defendants' written discovery requests.

15.    The Trustee represents that the Blue Wolf Defendants have received a copy of the Electronic Documents and have had an opportunity to inspect and copy the Storage Documents in connection with the state court lawsuit *Corporate Recovery Associates, LLC,* as Trustee for the Liquidating Trust of Channel Technologies Group, LLC, *v. Ruelas, et al.,* Case No. 18-CV-05060 in the Superior Court of California and for the County of Santa Barbara (the "State Court Lawsuit").

I declare under penalty of perjury that the foregoing is true and correct.

Executed in the County of San Diego, State of California, on the 4th day of March, 2021.

_____
RICHARD FEFERMAN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled (*specify*): _____
_____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____    _____    _____
*Date*                            *Printed Name*                     *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## PROOF OF SERVICE OF DOCUMENT

## ATTACHMENT PAGE

1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

- **Jonathan Boustani**    jboustani@btlaw.com
- **Cheryl S Chang**    Chang@Blankrome.com, Hno@BlankRome.com
- **Edward J Dennis**    , eburch@lynnllp.com;srusso@lynnllp.com
- **Craig N Haring**    charing@blankrome.com
- **Paul J Laurin**    plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com
- **Andrew B Levin**    alevin@wcghlaw.com, Meir@virtualparalegalservices.com; pj@wcghlaw.com; jmartinez@wcghlaw.com
- **Christian A Orozco**    christian.a.orozco@usdoj.gov
- **Christopher O Rivas**    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com; laik@gtlaw.com
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov